UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT DAVIS,**<br>Plaintiff,<br>vs.<br>**JOCELYN BENSON,** Secretary of State for the State of Michigan, **JONATHAN BRATER,** Director of Michigan Bureau of Elections, **WAYNE COUNTY ELECTION COMMISSION,** and **BRENDA GREEN,** City Clerk for the City of Highland Park,<br>Defendants. | **2:26-CV-13454-TGB-KGA**<br>HON. TERRENCE G. BERG<br>**ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65(a) (ECF NO. 5),**<br>**DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS IN COUNTS (IV) THROUGH (VII),**<br>**AND DENYING AS MOOT PLAINTIFF'S EMERGENCY MOTION FOR DECLARATORY JUDGMENT UNDER MICHIGAN LAW WITH RESPECT TO COUNT (VI) (ECF NO. 7)** |

Plaintiff Robert Davis, proceeding pro se, filed a lawsuit on September 11, 2026 seeking emergency injunctive relief to enjoin the State of Michigan from preparing and sending what he considers to be defective ballots for the November 2026 state-wide elections. Davis filed a seven-count Complaint against Jocelyn Benson, Secretary of State for the State of Michigan, Jonathan Brater, Director of Michigan Bureau of

Elections, the Wayne County Election Commission, and Brenda Green, City Clerk for the City of Highland Park. ECF No. 1. The Complaint includes three claims brought under federal law against Defendants Secretary Benson and Director Brater (Counts I–III) and four claims brought under Michigan law against Defendants Wayne County Election Commission and Green (Counts (IV–VII). *Id.*

Now before the Court are Plaintiff's Emergency Motion for Preliminary Injunction Pursuant to Fed. R. Civ. P. 65(a), ECF Nos. 5, 6, and Emergency Motion for Declaratory Judgment Under Michigan Law With Respect to Count VI of the Verified Complaint. ECF No. 7. Because Davis represented that allegedly defective ballots were about to be sent out, but the opposing parties had not yet all been served or able to respond, the Court held a telephone conference with the parties on September 16, 2026, five days after the complaint was filed. Davis and counsel for Defendants participated in the teleconference and were given the opportunity to state their respective positions on the emergency motions.

For the reasons set forth below, Plaintiff's Emergency Motion for Preliminary Injunction Pursuant to Fed. R. Civ. P. 65(a) will be **DENIED**. Further, the Court will **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law claims in Counts IV through VII of the Complaint and will **DISMISS AS MOOT** Plaintiff's Emergency

Motion for Declaratory Judgment Under Michigan Law With Respect to Count VI of the Verified Complaint.

## I. BACKGROUND

According to Davis's Complaint, the Michigan Democratic Party held its nominating convention on August 29, 2026. Complaint ¶ 14, ECF No. 1. Davis, a registered Democrat, was present at the convention and openly voted in opposition to the nominations of Eli Savit and Garlin Gilchrist as the Democratic Party's nominees for Attorney General and Secretary of State, respectively. *Id.* ¶ 15. Savit and Gilchrist filed their affidavits of identity ("AOIs") on August 31, 2026, as required by Michigan Election Law, MCL 168.558(1). *Id.* ¶ 16. Davis believes that the AOIs contained errors that rendered them invalid and should prevent Savit and Gilchrist from appearing on the ballot.

On September 1, 2026, Davis filed a sworn complaint with the Michigan Secretary of State pursuant to Mich. Admin. Code R. 168.5 challenging the validity of Savit's and Gilchrest's AOIs. *Id.* ¶ 18. That same day, Davis filed a complaint for declaratory and mandamus relief against Secretary Benson in the Michigan Court of Claims, along with an emergency motion for temporary restraining order or in the alternative preliminary injunction and order to show cause. *Id.* ¶ 17. Following expedited briefing on Davis's complaint and motion, and on Secretary Benson's motion for summary disposition, the Michigan Court of Claims issued an order on September 4, 2026 granting Secretary Benson's

motion for summary disposition, denying Davis's motions, and dismissing with prejudice Davis's original and amended complaints. *Id.* ¶¶ 19–25.

Davis filed an emergency appeal to the Michigan Court of Appeals that same day, accompanied by motions for immediate consideration and to expedite the appeal. *Id.* ¶¶ 26–27. Davis filed his appellant's brief on September 8, 2026. *Id.* ¶ 28. Later that same day, the Michigan Court of Appeals denied Davis's motion to expedite the appeal without explanation. *Id.* Davis then filed an Emergency Interlocutory Application for Leave to Appeal with the Michigan Supreme Court on September 10, 2026, along with a motion to expedite the appeal. *Id.* ¶¶ 29–30. On September 11, 2026, the Michigan Supreme Court granted the motion to expedite and denied the application for leave to appeal. *Davis v. Sec'y of State*, No. 170671, 2026 WL 2678811 (Mich. Sept. 11, 2026).

That same day, Davis filed the instant federal Complaint against Secretary Benson, Director Brater, the Wayne County Election Commission, and City Clerk Green. ECF No. 1. In Counts I, II, and III of his Complaint, Davis asserts claims against Secretary Benson and Director Brater under 42 U.S.C. § 1983 for violation of his constitutional Procedural Due Process, Equal Protection, and First Amendment rights. In Counts IV, V, VI, and VII, Davis asserts state-law claims seeking declaratory relief under Mich. Ct. R. 2.605 against Defendants Wayne County Election Commission and City Clerk Green and the issuance of a

writ of mandamus against Defendant Wayne County Election Commission only.

On September 14, 2026, Davis filed an Emergency Motion for Preliminary Injunction Under Fed. R. Civ. P. 65(a), seeking to enjoin Secretary Benson from enforcing MCL § 24.264 of the Michigan Administrative Procedures Act ("APA"). Davis contends that this statute requires the Secretary of State's denial of his request before he can initiate a state-court action seeking to challenge the validity or applicability of a rule promulgated under the APA, and that Secretary Benson's failure to act under the statute is precluding him from initiating a state court action with respect to certification of candidates appearing on the November 3, 2026 general election ballot. ECF Nos. 5, 6.

The next day, Davis filed an Emergency Motion for Declaratory Judgment Under Michigan Law With Respect to Count VI of Verified Complaint. ECF No. 7. In that motion, Davis seeks a declaration that on September 8, 2026, the Wayne County Election Commission violated MCL § 168.23(1) of Michigan Election Law with respect to appointing a replacement commissioner for an absent member of the board of commissioners. *Id.* Davis contends that, as a result, all actions and votes of the Wayne County Election Commission at the September 8, 2026 meeting, including the vote to authorize the printing of the ballots for the November 3, 2026 general election, must be declared void and unenforceable. *Id.*

## II. DISCUSSION

### A. Emergency Motion for Preliminary Injunction

In this motion, Davis seeks to enjoin Secretary Benson from enforcing the provisions of MCL § 24.264 of the Michigan APA, which Davis contends requires Secretary Benson to deny his request for declaratory relief before Davis can initiate a state-court action in the Michigan Court of Claims. ECF Nos. 5, 6. Davis contends that § 24.264 "coupled with" Secretary Benson's alleged "deliberate refusal to provide a timely response" to Davis's expedited request for a declaratory ruling "has prevented [him] from initiating a state-court action" against Secretary Benson challenging the validity or applicability of Mich. Admin. Code R. 168.2(3) as to the "certification" of candidates for the November 3, 2026 general election. ECF No. 6, PageID.86. Davis requests expedited briefing and an emergency/expedited hearing on the motion "on or before Friday, September 18, 2026, which is the deadline for the dissemination of overseas military absentee ballots." *Id.* at PageID.86–87 (emphasis omitted).

Turning to Davis's request for a preliminary injunction, injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party requesting the "extraordinary and drastic remed[y]" of a preliminary injunction "bears the burden of justifying such relief." *A.C.L.U. Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (citations omitted). Because

Davis filed the instant motion before any Defendant was served in this case, the Court treats Davis's motion as an *ex parte* motion for a temporary restraining order ("TRO"). Fed. R. Civ. P. 65(b). Both TROs and preliminary injunctions are governed by Federal Rule of Civil Procedure 65.

In determining whether to grant a TRO, the Court applies the same factors as it does when determining whether to grant a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction. *A.C.L.U.*, 796 F.3d at 642 (quoting *Bays v. City of Fairborn,* 668 F.3d 814, 818–19 (6th Cir.2012)). But those factors are not created equally, *see Cretor Constr. Equip. LLC v. Gibson*, 738 F. Supp. 3d 950, 959–60 (S.D. Ohio 2024), and in First Amendment cases specifically, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *A.C.L.U.*, 796 F.3d at 642 (citing *Bays*, 668 F.3d at 819); *see also Obama for Am. v Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'") (citing *Jones v. Caruso,* 569 F.3d 258, 265 (6th Cir.2009)). "This is because the public's interest and any potential harm to the parties or

others largely depend on the constitutionality of the state action." *A.C.L.U.*, 796 F.3d at 642 (citation modified).

Davis contends that he has a strong likelihood of success on the merits of his First Amendment claim in Count III of his Complaint. ECF No. 6, PageID.88. Davis claims that MCL § 24.264 creates an unconstitutional prior restraint on his exercise of his First Amendment right to file a nonfrivolous lawsuit. ECF No. 6, PageID.88. According to Davis, Secretary Benson's "deliberate refusal to provide a timely response" to his expedited request for a declaratory ruling under MCL § 24.264 has prevented him from initiating a state-court action against Secretary Benson or Highland Park City Clerk Green with respect to the certification of candidates appearing on the November 3, 2026 general election ballot under Mich. Admin. Code R. 168.2(3). *Id.* at PageID.88–89. Davis asserts that "[t]he filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment." *Id.* at PageID.90 (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010)).

MCL § 24.264 requires exhaustion of the APA declaratory-ruling requirements for actions challenging the validity or applicability of a rule prior to filing a claim in state court, providing:

> Unless an exclusive procedure or remedy is provided by a statute governing the agency, *the validity or applicability of a rule*, including the failure of an agency to accurately assess the impact of the rule on businesses, including small

> businesses, in its regulatory impact statement, may be determined in an action for declaratory judgment if the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court[3] of the county where the plaintiff resides or has his or her principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. *An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously*. This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted.

MCL § 24.264 (emphases added);[1] *see also Warren Consol. Sch. Dist. v. Sch. Dist. of the City of Hazel Park*, No. 167643, — N.W.3d —, 2026 WL 627066, at *8 (Mich. Mar. 5, 2026) (stating that under MCL § 24.264, "[i]f the agency denies the request, *or constructively denies it by failing to act expeditiously*, then the party may commence a declaratory judgment action.") (emphasis added).

Davis argues that on August 22, 2026, he submitted an expedited request pursuant to MCL § 24.264 to the Secretary of State for a declaratory ruling concerning the applicability of Mich. Admin. Code R. 168.2(3) as to the "certification" of candidates for the November 3, 2026

---

[1] While MCL § 24.264 refers to filing in the circuit court, MCL 600.6419(1)(a) operates to transfer subject matter jurisdiction to the Court of Claims. *See Michigan Farm Bureau v. Dep't of Env't, Great Lakes & Energy*, 28 N.W.3d 629, 647 n.24 (Mich. 2024).

general election. ECF No. 6, PageID.91 (citing ECF No. 6-1, PageID.100–03). Davis asserts that, despite numerous follow-up emails for a two-week period through September 4th, he has not received a written response from Secretary Benson as of the date of filing the motion, September 14, 2026. *Id.* He contends that Secretary Benson's and Director Brater's "refusal to timely respond" has "prevented" him from filing a lawsuit in the Michigan Court of Claims. *Id.* at PageID.91–92. Davis asserts that he seeks declaratory relief regarding "time-sensitive election-related matters" and that Defendants' failure to respond with a written denial constitutes a "prior restraint" violating his First Amendment rights, and that MCL § 24.264 is therefore unconstitutional "as applied" to him. *Id.* at PageID.93–95.

Based on a plain reading of MCL § 24.264, the Court must disagree. MCL § 24.264 clearly provides that "[a]n action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request *or failed to act upon it expeditiously*." (emphasis added). During the September 16, 2026 telephone conference with the parties, the Court explored this question with Davis and he acknowledged that he believes Defendants have failed to act "expeditiously." This is not an unreasonable position, such that the statute does not act as an absolute bar to litigation absent the agency's denial of the complaint. Under the plain terms of the statute, Davis is not precluded from asserting a

declaratory judgment claim in the Michigan Court of Claims and arguing to that court that, considering the time sensitive nature of these election-related issues, the Defendants' failure to act upon Davis's requests from August 22nd to date constitutes a failure to act "expeditiously" and thus allows Davis to file suit in state court. Such a delay may constitute a "constructive" denial of Davis's request. Indeed, Davis recognizes in his own Verified Complaint that this relief is available to him, where he alleges "Defendants Secretary of State's and State Director of Elections' deliberate, unethical and intentional actions of delaying to issue a written denial to Plaintiff's August 22, 2026 expedited request for declaratory relief constitutes a constructive denial of Plaintiff's expedited request for declaratory relief for purposes of [MCL] § 24.264 of APA." Compl. ¶ 131, ECF No. 1. Thus, the requirements of § 24.264 do not operate to prevent Davis's access to the state court.

The Court notes that, in the different context of habeas and prisoner civil rights cases, where there is also an exhaustion of remedies requirement, courts have similarly held that a prisoner's right to petition the government for redress of grievances is not considered to be violated simply because a prison official fails to properly adhere to a grievance procedure's terms. Although a prisoner is required to exhaust administrative remedies before bringing a lawsuit against prison officials in federal court, a prisoner's constitutional right of access to the courts is not violated when a prisoner official "thwarts" the prisoner from taking

advantage of the grievance process "through machination, misrepresentation, or intimidation" because the prisoner is nonetheless able to argue to the court that administrative remedies were effectively not "available" to him. *See Ross v. Blake*, 578 U.S. 632, 642–43 (2016) (recognizing that the Prison Litigation Reform Act ("PLRA") "contains its own, textual exception to mandatory exhaustion" because "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies"); *see also Baltas v. Rivera*, No. 3:19-CV-1043, 2019 WL 3944435, at *11 (D. Conn. Aug. 21, 2019) (citing *Ross* for holding that "the failure to process [plaintiff's] grievances will not prevent the plaintiff from seeking redress in this action"). Like the PLRA, § 24.264 contains its own "textual exception to mandatory exhaustion" and exhaustion "hinges" on the Secretary acting "expeditiously."

Because MCL § 24.264 allows Davis to make the argument in state court that the Secretary has failed to act expeditiously, and, if he is successful, would then be able to exercise his First Amendment right to petition the government through the courts, the Court finds that Davis has failed to establish a "strong likelihood" of success on his First Amendment claim that MCL § 24.264 constitutes an unconstitutional prior restraint on Davis's right to petition the court.

"[A] finding that there is no likelihood of success on the merits is usually fatal[.]" *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). Consequently, the Court will only briefly review the

remaining factors. Turning to the second factor—irreparable harm—Davis argues that he meets this prong because he pleads that he has been prohibited from filing a nonfrivolous state-court action based on the allegations in his August 22, 2026 expedited request for a declaratory ruling from the Secretary of State. While it is true that "when reviewing a motion for preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated," *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001), as discussed above, this Court does not find that a constitutional right is being threatened or impaired. And therefore, Davis has failed to show irreparable harm from such a violation.

The third factor examines whether issuance of an injunction would cause substantial harm to others. As to this factor, Davis points out that when a plaintiff makes a showing that a challenged law is unconstitutional, "no substantial harm can be said to inhere to its enjoinment." ECF No. 6, PageID.97 (quoting *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001) (citation omitted)). But, as stated, Davis has failed to make such a likely showing of unconstitutionality in this case and thus this factor also weighs against the issuance of injunctive relief.

Finally, the fourth prong asks whether the issuance of an injunction would serve the public interest. Although Davis asserts that it is always in the public interest to enjoin the violation of citizens' constitutional

rights, ECF No. 6, PageID.97–98, he has not shown a likelihood that such a constitutional violation occurred here.

Therefore, none of the factors weigh in favor of granting Davis's motion for preliminary injunction, and that motion will be **DENIED**.

### B. The Court Will Decline to Exercise Supplemental Jurisdiction Over Davis's State Law Claims

Davis asserts four state law claims against Defendants Wayne County Election Commission and City of Highland Park City Clerk Brenda Green. Compl., ECF No. 1 (Counts IV through VII). He acknowledges that these claims fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367. *See id.*

Supplemental jurisdiction is a "'doctrine of discretion, not of plaintiff's right.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Schmidt v. PennyMac Loan Servs.*, 106 F. Supp. 3d 859, 872 (E.D. Mich. 2015) (Ludington, J.). Indeed, district courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (citation omitted). District courts can decline to exercise supplemental jurisdiction over pendant claims for a number of valid reasons, "including the circumstances of the particular case, the nature of the state law claims, the character of the

governing state law, and the relationship between the state and federal claims." *See City of Chicago,* 522 U.S. at 173.

Federal district courts should address cases involving supplemental jurisdiction in a manner that serves the principles of economy, convenience, fairness, and comity. *Id.* at 172–73. The supplemental jurisdiction statute, 28 U.S.C. § 1367, codifies these principles and provides that district courts may decline to exercise supplemental jurisdiction over a claim when: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Where "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–27. A district court's decision as to whether to exercise supplemental jurisdiction over a plaintiff's state-law claims is reviewed for abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (citing *Soliday v. Miami Cnty.*, *Ohio*, 55 F.3d 1158, 1164 (6th Cir. 1995)).

Considering these standards and applying them to this case, the Court exercises its "broad discretion" to decline to exercise supplemental

jurisdiction over Davis's three state-law declaratory judgment claims (Counts IV through VI) and his state-law mandamus claim (Count VII). The Court finds that principles of comity persuade the Court that it should not exercise jurisdiction over these state law claims that relate to the manner and processes through which the State of Michigan and its elected officials administer and participate in elections for local government offices, and raise novel and complex issues of state law against individuals associated with local governmental operations. "Those matters are best addressed by state—not federal—courts." *See Mulcahey v. Chocolay Twp., Mich.*, No. 2:24-CV-7, 2024 WL: 4604055, at *2 (W.D. Mich. Oct. 29, 2024), *aff'd sub nom. Mulcahey v. Twp. of Chocolay, Mich.*, No. 25-1396, 2026 WL 64236 (6th Cir. Jan. 8, 2026).

Further, retaining jurisdiction over these claims would undermine, not enhance, judicial efficiency because the claims are alleged against different Defendants and are governed by different laws than the three constitutional claims Davis purports to bring under federal law against Secretary Benson and Director Brater. The two state-law Defendants are not named as a Defendant in any of the constitutional claims in Counts I, II, and III.

Accordingly, in the interest of judicial economy, convenience, and fairness, the Court will not exercise supplemental jurisdiction over the state law claims in Counts IV through VII of the Complaint in this action and will **DISMISS** those claims without prejudice. This dismissal will

allow Davis to pursue these claims in state court immediately, at a time when a state court could, if it so decided, grant Davis the relief he seeks or perhaps other relief, and will allow the state courts to interpret the state election statutes and rules, a task more appropriately undertaken by the state courts than by federal courts.

And because the Court is declining to exercise supplemental jurisdiction over these state-law claims, Davis's Emergency Motion for Declaratory Judgment Under Michigan Law with Respect to Count VI, ECF No. 7, will be **DENIED AS MOOT.**

## III. CONCLUSION

For the reasons stated above, the Court **DENIES** Davis's Emergency Motion for Preliminary Injunction, ECF Nos. 5, 6.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to exercise supplemental jurisdiction over Davis's state-law claims in Counts IV through VII of his Complaint against Defendants Wayne County Election Commission and Brenda Green. Accordingly, those claims are **DISMISSED WITHOUT PREJUDICE** and Defendants Wayne County Election Commission and Brenda Green are **DISMISSED** from this action.

Finally, **IT IS FURTHER ORDERED** that Davis's Emergency Motion for Declaratory Judgment Under Michigan Law with Respect to Count VI, ECF No. 7, is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Dated: September 18, 2026 /s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE