UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS,

Plaintiff,

v

No. 26-13454

JOCELYN BENSON, in her official and individual capacities as the duly elected Secretary of State for the State of Michigan, JONATHAN BRATER, in his official and individual capacities as the duly appointed Director of Michigan Bureau Elections, WAYNE COUNTY ELECTION COMMISSION, and BRENDA GREEN, in her official capacity as the duly elected City Clerk for the City of Highland Park,

HON. TERRENCE G. BERG

MAG. KIMBERLY G. ALTMAN

Defendants.
_______________________________________________/

**DEFENDANTS' SECRETARY OF STATE JOCELYN BENSON AND DIRECTOR OF ELECTIONS JONATHAN BRATER'S BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov
P64713

Dated: October 2, 2026

# TABLE OF CONTENTS

Page

Table of Contents ........ i

Index of Authorities ........ iii

Concise Statement of Issue Presented ........ vii

Controlling or Most Appropriate Authority ........ vii

Introduction ........ 1

Statement of Facts ........ 1

A. Michigan requires the use of electronic pollbooks for elections. ........ 1

1. Promulgation of administrative rules. ........ 2

2. The use and function of the electronic pollbooks. ........ 4

B. A state court challenge is filed regarding Rule 168.48. ........ 6

C. Plaintiff files suit. ........ 7

Argument ........ 8

I. Plaintiff's motion for temporary restraining order or preliminary injunction must be denied because he does not satisfy the necessary factors required for such extraordinary relief. ........ 8

A. Plaintiff has not demonstrated a strong likelihood of success on the merits with respect to Count VII of his Amended Complaint. ........ 9

1. Plaintiff's preemption claim is not cognizable as pled. ........ 10

2. Plaintiff lacks standing to challenge Rule 168.48. ........ 12

3. Plaintiff's challenge to Rule 168.46 is barred by laches. ........ 16

4. Rule 168.48 does not conflict with 52 U.S.C. § 20701. ........ 19

B. Plaintiff will suffer no irreparable harm absent an injunction. ........ 22

C. The balance of equities and public interest weigh against granting any injunction....25

Conclusion and Relief Requested....25

## INDEX OF AUTHORITIES

Page

**Cases**

*Allen v. Wright*, 468 U.S. 737 (1984) ....................13

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ....................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................22

*Baskin v. Bath Tp. Bd. of Zoning Appeals,* 101 F.3d 702 (6th Cir. 1996) ....................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................22

*Benisek v. Lamone*, 585 U.S. 155 (2018) ....................23

*Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680 (6th Cir. 2000) ....................16

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007) ....................10

*Cf. Tennessee Scrap Recyclers Ass'n v. Bredesen,* 556 F.3d 442 (6th Cir. 2009) ....................9

*Child Evangelism Fellowship of Ohio, Inc. v. Cleveland Metro. Sch.*, 600 F. App'x 448 (6th Cir. 2015) ....................9

*Coal Operators and Assocs., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2002) ....................13

*Crookston v. Johnson,* 841 F.3d 396 (6th Cir. 2016) ....................17

*D.T. v. Sumner Cty. Sch.,* 942 F.3d 324 (6th Cir. 2019) ....................23

*Diamond v. Charles*, 476 U.S. 54 (1986) ....................15

*Donald J. Trump for President, Inc., v. Boockvar*, 493 F. Supp. 3d 331 (W.D. Pa. 2020) ....................16

*Elrod v. Burns,* 427 U.S. 347 (1976) ....................24

*EOG Res., Inc. v. Lucky Land Mgmt., LLC,* 134 F.4th 868 (6th Cir. 2025). 1, 23, 25

*Fox v Lee*, No. 4:18CV529-MW/CAS, 2019 WL 13141701 (ND Fla Apr 2, 2019) ....12

*Glennborough Homeowners Ass'n v. United States Postal Serv*, 21 F.4th 410 (6th Cir. 2021) ....15

*Gustafson v. City of Lake Angelus,* 76 F.3d 778 (6th Cir. 1996) ....10

*Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587 (2007) ....15

*Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021) ....15

*Ickes v Whitmer*, 1:22-cv-817, 2022 WL 4103030 (Sept 8, 2022, WD Mich) ....12

*Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015) ....12

*In re De Lorean Motor Co.,* 755 F.2d 1223 (6th Cir. 1985) ....9

*James B. Oswald Co. v. Neate*, 98 F.4th 666 (6th Cir. 2024) ....23

*KalshiEX, LLC v. Schuler*, ___ F.4th ___, 2026 WL 2884087 (Sept. 25, 2026, 6th Cir.) .... 10, 11, 12, 20

*Kendall Holdings, Ltd. v. Eden Cryogenics LLC,* 630 F. Supp.2d 853 (S.D. Ohio 2008) ....9

*Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.,* 34 F.4th 988 (11th Cir. 2022) ....15

*Leary v. Daeschner,* 228 F.3d 729 (6th Cir. 2000) ....9

*Lucking v. Schram*, 117 F.2d 160 (6th Cir. 1941) ....16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ....13

*Murphy v. NCAA*, 584 U.S. 453 (2018) ....19

*Nken v. Holder,* 556 U.S. 418 (2009) ....25

*North Carolina v. Rice*, 404 U.S. 244 (1971) ....13

*Pirtle v Nago*, No. 22-381, 2022 WL 3915570 (D Haw Aug 31, 2022) ....12

*Purcell v. Gonzalez,* 549 U.S. 1 (2006) ....17

*Serv. Employees Int'l Union Local 1 v. Husted,* 698 F.3d 341 (6th Cir. 2012) ......17

*Smith v DeBoyer*, No. 2:22-cv-1572, 2022 WL 16641857 (Oct 12, 2022, ED Mich 2022) ....................12

*Soudelier v Dep't of State Louisiana*, No. 22-2436, 2022 WL 3686422 (ED La Aug 25, 2022)....................12

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) ....................13

*SS Management, LLC, Plaintiff, v. Douglas County, et al.,* No. 3:25-CV-00555-CLB, 2026 WL 2906851, (D. Nev. Sept. 28, 2026) ....................11

*Stenberg v. Cheker Oil Co.,* 573 F.2d 921 (6th Cir. 1978)....................9

*Taylor v. KeyCorp.*, 680 F.3d 609 (6th Cir. 2012) ....................13

*Thompson v Nevada Secretary of State*, No. 2:25-cv-01284-CDS-EJY, 2026 WL 84538 (D Nev Jan 12, 2026) ....................12

*Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356 (6th Cir. 2022)....................9

*United States ex rel Feliciano v Ardoin*, 127 F4th 382 (CA 4, 2025), cert denied 145 S Ct 2799 (2025)....................12

*United States v. County of Washtenaw*, No. 26-11166, ___ F. Supp. 3d ___, 2026 WL 2453724 (E.D. Mich. Aug. 21, 2026) ....................19

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) ....................14

*William v. Rhodes*, 393 U.S. 23 (1968) ....................17

**Statutes**

Mich. Comp. Laws § 24.245a(1)(a)....................3

Mich. Comp. Laws § 24.245a(1)(b) ....................3

Mich. Comp. Laws § 24.245a(3) ....................3

Mich. Comp. Laws § 168.761d(14)....................22

Mich. Comp. Laws § 168.811....................22

Mich. Comp. Laws § 691.1031 .......... 18

**Constitutional Provisions**

52 U.S.C. § 20701 .......... *passim*

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Whether Plaintiff's motion for TRO/PI must be denied because there is no likelihood of success on the merits, Plaintiff will not suffer any irreparable harm absent an injunction, and the harms to the Defendants—and to the public—outweigh the harm to the Plaintiff?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Crookston v. Johnson,* 841 F.3d 396 (6th Cir. 2016)
*EOG Res., Inc. v. Lucky Land Mgmt., LLC,* 134 F.4th 868 (6th Cir. 2025)
*KalshiEX, LLC v. Schuler*, ___ F.4th ___, 2026 WL 2884087 (Sept. 25, 2026, 6th Cir.)
*Lance v. Coffman*, 549 U.S. 437 (2007)

## INTRODUCTION

Plaintiff Robert Davis's motion for temporary restraining order or preliminary injunction must be denied where he has failed to establish any of the necessary factors for granting such extraordinary relief. Most critically, Plaintiff has failed to demonstrate a likelihood of success on the merits of his claim that Rule 168.48 is preempted by Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701, or that he will suffer irreparable harm absent an injunction. Where there is no likelihood of either success on the merits or irreparable harm, an injunction is unwarranted—regardless of any showing on the other factors. *EOG Res., Inc. v. Lucky Land Mgmt., LLC,* 134 F.4th 868, 883 (6th Cir. 2025).

## STATEMENT OF FACTS

### A. Michigan requires the use of electronic pollbooks for elections.

The use of an electronic pollbook (EPB) to process voters on Election Day is a longstanding practice in Michigan and is required under the Michigan Election Law. Mich. Comp. Laws § 168.668b(1) ("Each city or township shall use the electronic poll book software developed, acquired, or approved by the bureau of elections in each election precinct in the city or township on election day to process voters and generate election precinct reports.") The Michigan Department of State (Department) has also promulgated administrative rules to provide further instruction for the use of the EPBs. *See* Mich. Admin. Code R. 168.41–168.48.

### 1. Promulgation of administrative rules.

Given changes in election processes, including the advent of early voting and technological advances, in March 2025 the Department submitted a request for rulemaking regarding EPBs to the Michigan Office of Administrative Hearings and Rules (MOAHR). (Defs' Ex A, pp 3-4.) The request was approved on March 6, 2025. (*Id.*, p 1.) Draft language was approved on May 27, 2025, which included language for printing and downloading reports from the EPBs for retention:

> Rule 6. (1) If the polling place produces required reports after the close of polls on election day, election inspectors at the polling place shall print from the electronic pollbook the required reports and include the reports in the physical pollbook.
>
> (2) If the receiving board produces reports after the close of polls on election day, election inspectors shall download the required reports to the approved form of transmission, seal it in a transfer case, and 2 election inspectors representing each of the major political parties shall deliver it to the receiving board. The receiving board shall print from the approved form of transmission the required reports for the election day polling place, early voting site, or vote center and include the list in the physical pollbook.

Uploading voter history and other files from the EBP to the qualified voter file (QVF):

> Rule 7. If the electronic pollbook is not connected via secure live connection to the qualified voter file while voting takes place, within 7 days after an election, the clerk responsible for administering the election shall upload the voting history and other required files from the electronic pollbook to the qualified voter file using the approved form of transmission.

And deleting local copies of software and associated files from the EPBs after the data has been uploaded to QVF and post-certification of an election:

> Rule 8. (1) Subject to subrule (2) of this rule, the electronic pollbook software and associated files must be deleted from all devices by the seventh day following the final canvass and certification of the election, unless a petition for recount has been filed and the recount has not been completed, a post-election audit has been scheduled, or the deletion of the data has been stayed by an order of the court or the secretary of state. If a precinct is selected for an audit, the electronic pollbook software and associated files must be deleted from all devices by the seventh day following completion of the audit.
>
> (2) The electronic pollbook software and associated files must not be deleted from devices until the bureau of elections or county clerk, as applicable, issues the release of security memorandum pertaining to that election. [*Id*., pp 5-7.]

The Department submitted its required regulatory impact statement on April 28, 2025, which was approved on May 14, 2025. (*Id*., pp 1, 8-15.) The Department also prepared a Notice of Public Hearing which was approved by MOAHR on May 27, 2025; the hearing was held on July 15, 2025. (*Id*., pp 2, 15.)

On July 28, 2025, MOAHR transmitted the ruleset to the Joint Committee on Administrative Rules (JCAR). (*Id*., pp 20-33.) At that point, JCAR had 15 session days to consider the rules and take certain specified actions. Mich. Comp. Laws § 24.245a(1)(a)-(d). Alternatively, JCAR may opt to take no action. Mich. Comp. Laws § 24.245a(3). If JCAR takes no action, "the office may immediately file the rule, with the certificate of approval required under section 45(1), with the secretary of state. The rule takes effect immediately on

being filed with the secretary of state unless a later date is indicated in the rule." *Id.* With respect to the EPB ruleset JCAR took no action and the 15 session days elapsed. MOAHR filed the ruleset with the Michigan Office of the Great Seal on October 23, 2025, and the rules became effective the same day.

### 2. The use and function of the electronic pollbooks.

How the EPBs are used for elections was recently explained in a declaratory ruling issued by the Department on September 30, 2026:

> In order to use the Election Day EPB, election jurisdictions must possess, for each precinct, a laptop computer that meets technical and security requirements (the "EPB laptop"). Prior to Election Day, clerks download the EPB package from [the qualified voter file or QVF] onto the computer they typically use to conduct election responsibilities. The EPB package exported from QVF includes the EPB software and a data file that includes the list of registered voters for each precinct, including any relevant status indicators for each voter (for example, whether the voter has already returned an absentee ballot). This is essentially a "snap shot" of the QVF for each precinct to use on Election Day. Clerks export the EPB software and data file onto encrypted flash drives corresponding to each precinct's EPB laptop. Next, they use the encrypted flash drive to install the EPB software and data file to the laptop to be used on Election Day.
>
> The EPB laptop is operated offline on Election Day, using the EPB software and data file loaded onto the laptop from the encrypted flash drive. When voters appear to vote on Election Day, they first complete a paper application to vote. After completing the application to vote, the voter is then checked in using the EPB. The election inspector enters the voter's information into the EPB along with relevant information about the voter, including that the voter has been issued a ballot and any remarks or other information (such as provisional ballot information). Election inspectors also have a paper printout of the pollbook on hand in case the EPB becomes unavailable.

(Defs' Ex B, Fracassi Aff., Attachment 3, p 5, 9.30.26 Dec. Ruling.) After the polls close, election inspectors perform additional duties, including printing reports from the EPB (Mich. Comp. Laws § 168.735):

> After the polls have closed, election inspectors, . . . collect the paper applications to vote for each precinct, which are delivered to the municipal clerk in a sealed envelope. When closing out the election on the EPB laptop, as required by R 168.46, election inspectors are instructed to save the three following reports in .pdf format, as well as a file that contains voting history, to the flash drive. Then, either the precinct inspectors or a receiving board will print out these three reports on paper:
>
> - Ballot summary report
> - List of voters report
> - Remarks report
>
> After these required reports are printed, the encrypted flash drive is removed from the EPB laptop and delivered to the municipal clerk in a sealed envelope.

(*Id*., pp 5-6.) Rule 168.47 provides that "within 7 days after an election, the clerk responsible for administering the election shall upload the voting history and other required files from the electronic pollbook to the qualified voter file." The following information is uploaded to the QVF as part of that process:

- List of voters (used to update voter history in QVF)
- Provisional ballot information (from the EPB)
- A log of activity on the EPB

(Defs' Ex B, Fracassi Aff., Attachment 3, p 6.) "After all these steps are taken, R 168.48 requires that 'the electronic pollbook software and associated files must be deleted from all devices by the seventh day following the final canvass and

certification of the election,' unless an exception applies." (*Id.*) As explained by the Department:

> In total, the following information for each voter and for EPB activity in general is retained after the clerk copy of EPB software and associated files are deleted:
>
> - A physical, paper application to vote completed by each voter
> - A physical, paper printout of the list of voters, including all voters issued a ballot and all remarks entered into the pollbook by election inspectors
> - An electronic list of voters
> - Electronic voter history, which is added to the QVF from the list of voters
> - Records of provisional ballots
> - An electronic log of activity on the EPB

(*Id.*) So, as explained in the ruling, EPB data is retained in multiple formats.

### B. A state court challenge is filed regarding Rule 168.48.

On August 12, 2026, Michelle McQueer, Clerk for Bridgewater Township, filed a complaint in the Michigan Court of Claims against Defendants requesting expedited declaratory and injunctive relief. (Defs' Ex. C, McQueer Compl w/o exs.) McQueer seeks to invalidate Rule 168.48 on three grounds; (1) that it is preempted by federal law, 52 U.S.C. § 20701, (2) that it exceeds the Secretary's authority and conflicts with other state statutes, and (3) that it was promulgated in violation of Michigan's Administrative Procedures Act, Mich. Comp. Laws § 24.201 *et seq*. (*Id.*, ¶¶ 47-69.) The court granted a temporary restraining order

permitting McQueer to retain her EBP materials for the August 4, 2026, primary election. (Defs' Ex. D, 8.13.26 Order.) The court also permitted Defendants to conclude pending administrative actions, including issuance of the declaratory ruling discussed above, before consideration of the merits of McQueer's claims. (Defs' Ex. E, 8.27.26 Order; ECF No. 22-3, Plf's Brf, PageId.320-342, 9.22.26 Order.) Under the court's most recent order, dated September 22, Defendants' next brief is due October 7, the date of this Court's hearing on the TRO motion. (ECF No. 22-3, Plf's Brf, PageId.320-342, 9.22.26 Order.)

### C. Plaintiff files suit.

Plaintiff filed his original six-count complaint on or about September 11, 2026, naming Defendants along with the Wayne County Election Commission and the City Clerk for Highland Park. (ECF No. 1, PageID.1.)[1] His claims generally revolved around his repeated efforts to disqualify Eli Savit and Garlin Gilchrist, the Michigan Democratic Party's nominees for Attorney General and Secretary of State, respectively, from the November general election ballot.

But on September 21, 2026, Plaintiff requested a declaratory ruling from the Department of State regarding whether Rule 168.48 was preempted by § 20701,

[1] This is the 13th election-related lawsuit Plaintiff has filed against the Secretary and/or the Director of Elections this year. The others were filed in the Michigan Court of Claims. *See Davis v. Benson, et al.*, 26-000099, 26-000103, 26-000104, 26-000114, 26-000135, 26-000145, 26-000147, 26-000148, 26-000153, 26-000158, 26-000167, 26-000187. Davis did not prevail in any of these cases.

the same issue pending in *McQueer*. (Defs' Ex. F.) The following day, September 22, 2026, the same day the court in *McQueer* issued its order, Plaintiff submitted another declaratory ruling request and filed an amended complaint adding Count VII in which he alleges, as in *McQueer*, that Rule 168.48 is preempted by § 20701. (Defs' Ex. F; ECF No. 20, PageID.246-250, ¶¶ 258-279.) On September 23, 2026, Plaintiff filed an emergency motion for temporary restraining order and/or for preliminary injunction regarding Count VII. (ECF No. 22, PageID.283.) This Court later ordered a response to Plaintiff's motion. (ECF No. 23, PageID.343.)

On September 30, 2026, the Department denied Plaintiff's requests for a declaratory ruling because he is not an "interested person" for purposes of seeking a ruling but provided a copy of the September 30 ruling. (Defs' Ex. F.)

## ARGUMENT

### I. Plaintiff's motion for temporary restraining order or preliminary injunction must be denied because he does not satisfy the necessary factors required for such extraordinary relief.

Like a preliminary injunction, a temporary restraining order is an extraordinary remedy "designed to preserve the relative positions of the parties until a trial on the merits can be held." *Cf. Tennessee Scrap Recyclers Ass'n v. Bredesen,* 556 F.3d 442, 447 (6th Cir. 2009). A court considers "four factors when determining whether to grant a temporary restraining order: '(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant

would otherwise suffer irreparable injury; (3) whether issuance of [a TRO] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of [a TRO].' " *Kendall Holdings, Ltd. v. Eden Cryogenics LLC,* 630 F. Supp.2d 853, 860 (S.D. Ohio 2008) (citation omitted).

No one factor is dispositive; rather the court must balance all four factors. *In re De Lorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985). But "where there is no likelihood of either success on the merits or irreparable harm, an injunction is unwarranted—regardless of the showing on the other factors." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022) (citation modified); *see also Child Evangelism Fellowship of Ohio, Inc. v. Cleveland Metro. Sch*., 600 F. App'x 448, 452–53 (6th Cir. 2015) ("Because [movant] cannot demonstrate a likelihood of success on the merits of its claim, we need not consider the other preliminary injunction factors."). The burden of persuasion is on the party seeking injunctive relief. *Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 925 (6th Cir. 1978).

### A. Plaintiff has not demonstrated a strong likelihood of success on the merits with respect to Count VII of his Amended Complaint.

Plaintiff must demonstrate a "strong likelihood of success on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 543 (6th Cir. 2007). To meet his burden, Plaintiff "must show more than a mere possibility of success." (*Id.*) (citation omitted). But Plaintiff has not shown a strong likelihood of success on his preemption claim for multiple reasons.

**1. Plaintiff's preemption claim is not cognizable as pled.**

Plaintiff's Count VII is premised on a violation of the Supremacy Clause through preemption. (ECF No. 20, PageID.246-279.) But "the Supremacy Clause is not the source of any federal rights ... and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). Because the clause is not a source of any federal right, "[a] claim premised solely on Supremacy Clause preemption 'is not cognizable under 42 U.S.C. § 1983.' " *Baskin v. Bath Tp. Bd. of Zoning Appeals,* 101 F.3d 702, *5 (Table) (6th Cir. 1996) (quoting *Gustafson v. City of Lake Angelus,* 76 F.3d 778, 792 (6th Cir. 1996)). Rather, only an equitable cause of action may exist to vindicate the pre-emptive aspect of the Supremacy Clause. *KalshiEX, LLC v. Schuler*, ___ F.4th ___, 2026 WL 2884087 at * 7 (Sept. 25, 2026, 6th Cir.) (discussing *Armstrong* and holding that plaintiff in that case could maintain equitable action to enjoin state from subjecting it to preempted state law).

Plaintiff recognizes these principles. (ECF No. 22-1, PageID.299-300.) But as pleaded, he only seeks relief under § 1983, (ECF No. 20, PageID.246-279), and his Supremacy Clause claim thus fails. *See SS Management, LLC, Plaintiff, v. Douglas County, et al.,* No. 3:25-CV-00555-CLB, 2026 WL 2906851, at *13 (D. Nev. Sept. 28, 2026) (dismissing Supremacy Clause claim brought only under § 1983.) Nevertheless, Plaintiff argues that he has a cognizable implied cause of

action to enjoin Defendants from taking or threatening action against him pursuant to a preempted law. (ECF No. 22-1, PageID.299-300.)

The Sixth Circuit recently addressed this issue in *KalshiEX, LLC*, 2026 WL 2884087, observing that *Armstrong* does not foreclose an equitable action:

> In *Armstrong*, the Supreme Court held that the Supremacy Clause is not "the source of any federal rights" and does not "create a cause of action." 575 U.S. at 324 [ ] (citation modified). But that limitation applies to circumstances in which a litigant seeks to "wield *Ex parte Young* as a cause-of-action-creating sword." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014). By contrast, a litigant has an equitable cause of action separate from the Supremacy Clause to seek an injunction where it claims that "federal law immunizes [it] from state regulation." *Armstrong*, 575 U.S. at 326 . . .; *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 [ ] (2002). We may entertain "the pre-emptive assertion in equity of a defense that would otherwise have been available in the State's enforcement proceedings at law." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 262 [ ] (2011) (Kennedy, J., concurring).

*KalshiEX, LLC*, 2026 WL 2884087, at *7. But here, Plaintiff, as a private person or voter, is not subject to Rule 168.48, and there is no enforcement proceeding against him, nor will there ever be one. Plaintiff has no equitable cause of action against Defendants under these circumstances. Moreover, it is more than likely that Title III of the Civil Rights Act of 1960 "displace[s]" any equitable cause of action. *KalshiEX, LLC*, 2026 WL 2884087, at *8. Title III is only enforceable by the U.S. Attorney General, *see* 52 U.S.C. § 20703, and multiple courts have held that there is no private remedy or right of action under the Act. *See Smith v. DeBoyer*, No. 2:22-cv-1572, 2022 WL 16641857 at * 3 (Oct 12, 2022, E.D. Mich.

2022); *Ickes v. Whitmer*, 1:22-cv-817, 2022 WL 4103030 at * 3 (Sept 8, 2022, W.D. Mich.); *United States ex rel Feliciano v. Ardoin*, 127 F.4th 382, 384 (4th Cir., 2025), cert denied 145 S. Ct. 2799 (2025); *Thompson v. Nevada Secretary of State*, No. 2:25-cv-01284-CDS-EJY, 2026 WL 84538 at *1 (D. Nev. Jan. 12, 2026); *Soudelier v. Dep't of State Louisiana*, No. 22-2436, 2022 WL 3686422, at *1 (E.D. La. Aug. 25, 2022); *Pirtle v. Nago*, No. 22-381, 2022 WL 3915570, at *3 (D. Haw. Aug. 31, 2022); *Fox v. Lee*, No. 4:18CV529-MW/CAS, 2019 WL 13141701, at *1 (N.D. Fla. Apr. 2, 2019).

**2. Plaintiff lacks standing to challenge Rule 168.48.**

Plaintiff's claim also fails for lack of standing. Standing is one component of Article III jurisdiction. If a plaintiff lacks Article III standing, the court has no subject matter jurisdiction to hear the claim. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015). This Court has no authority to render advisory opinions, issue opinions on abstract principles, or hear generalized grievances. *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

When a plaintiff lacks standing, the Court lacks jurisdiction and dismissal is warranted. *Taylor v. KeyCorp.*, 680 F.3d 609, 612–13 (6th Cir. 2012). "[T]he standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into a 'vehicle for the vindication of the

value interests of concerned bystanders.' " *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915–16 (6th Cir. 2002) (cleaned up).

A plaintiff can satisfy this requirement only by "clearly . . . alleg[ing] facts demonstrating" that: (1) he suffered an injury-in-fact; (2) such injury is "fairly traceable to the challenged conduct" of a named-defendant; and (3) such injury is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547–48 (2016) (internal quotations omitted). An injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). The alleged harm "'must affect the plaintiff in a personal and individual way.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992).) These elements are "not mere pleading requirements," but an "indispensable part of plaintiff's case[.]" *Lujan,* 504 U.S. at 561–62. Where a plaintiff's allegations fail to satisfy these elements, a court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas,* 495 U.S. 149*,* 155–56 (1990).

Here, Plaintiff has failed to make allegations establishing any actual "injury in fact" or a concrete interest at stake in the application of Rule 168.48. By its own terms, Rule 168.48 only applies to clerks and their staff, and neither imposes any

duty upon nor restricts the actions of ordinary citizens like Plaintiff. Simply put, Rule 168.48 does not have anything to do with the Plaintiff.

The only allegation in the amended complaint describing any effect upon Plaintiff claims merely that, "Plaintiff is concerned that his properly cast votes for U.S. Senator and Member of the U.S. House of Representatives for the 13th Congressional District and other voting and election data will be unlawfully deleted and unpreserved under the provisions of the Mich Admin Code, R 168.48." (ECF 20, PageID.249-250, ¶ 276). Of course, as explained earlier, this allegation is erroneous, and R 168.48 only concerns EPB data and does not provide for the deletion of any "votes." It is also entirely unclear about what "other voting and election data" Plaintiff is concerned, and whether his requested relief is limited only to his data in his local precinct, or to other jurisdictions in the state where Plaintiff does not vote. Regardless, Plaintiff does not allege any injury he claims to have suffered when the same process described in Rule 168.48 has been applied over the last decade, or that any of his votes or election data from past elections were lost. Instead, Plaintiff has alleged only a generalized concern that his data might be deleted.

But federal courts have repeatedly rejected claims to standing based on subjective fears or abstract concerns regarding the integrity of elections. *Glennborough Homeowners Ass'n v. United States Postal Serv*, 21 F.4th 410, 415

(6th Cir. 2021); cf. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 619–20 (2007) (Scalia, J., concurring) (recognizing that a plaintiff whose only injury is subjective mental angst "lacks a concrete and particularized injury" under Article III). *See also Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.,* 34 F.4th 988, 993 (11th Cir. 2022) ("purely psychic injuries, like disagreeing with government action, are not concrete, so they do not give rise to standing.") (citing *Diamond v. Charles*, 476 U.S. 54, 67 (1986); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (a plaintiff who is "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large ... does not state an Article III case or controversy."); *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (generalized grievance where "plaintiffs asserted ... that drive-thru voting hurt the 'integrity' of the election process"). Further, merely invoking "the possibility and potential for voter fraud," based only on "hypotheticals, rather than actual events," does not suffice. *Donald J. Trump for President, Inc., v. Boockvar*, 493 F. Supp. 3d 331, 406 (W.D. Pa. 2020).

Plaintiff's claims are plainly in the same vein, and present only generalized concerns about the proper administration of elections. Plaintiff has failed to demonstrate any harm to himself, and his claim is instead premised upon interests he shares with every citizen in the proper application of the Constitution and state

or federal laws. Rather, Plaintiff's allegations do little more than express his disagreement with the rule promulgated by the Department of State, and the relief he seeks would provide no direct or tangible benefit to him. Plaintiff thus lacks standing to bring this challenge to Rule 168.48.

**3. Plaintiff's challenge to Rule 168.48 is barred by laches.**

Laches is rooted in the principle that "equity aids the vigilant, not those who slumber on their rights." *Lucking v. Schram*, 117 F.2d 160 (6th Cir. 1941). An action may be barred by the equitable defense of laches if: (1) the plaintiff delayed unreasonably in asserting their rights and (2) the defendant is prejudiced by this delay. *Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Laches applies in this case.

First, Plaintiff failed to act diligently and unreasonably delayed asserting his claims regarding Rule 168.48. It is well-established that eleventh-hour requests for injunctions on the eve of an election are disfavored. "As a general rule, last-minute injunctions changing election procedures are strongly disfavored." *Serv. Employees Int'l Union Local 1 v. Husted,* 698 F.3d 341, 345 (6th Cir. 2012)(citing *Purcell v. Gonzalez,* 549 U.S. 1, 4-5 (2006)("Court orders affecting elections…can themselves result in voter confusion…As an election draws closer, that risk will increase.")); *William v. Rhodes*, 393 U.S. 23, 34-35 (1968) (affirming denial of request for injunction requiring last-minute changes to ballots, given risk of

disrupting election process). The Sixth Circuit has also recognized that the federal courts should not quickly "become entangled, as overseers and micromanagers, in the minutiae of state election processes." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 622 (6th Cir. 2016).

In *Crookston v. Johnson,* 841 F.3d 396, 398 (6th Cir. 2016) (cleaned up), the Sixth Circuit stayed an injunction affecting election procedures:

> There are many reasons to grant the stay. The first and most essential is that Crookston offers no reasonable explanation for waiting so long to file this action. When an election is "imminen[t] and when there is "inadequate time to resolve [] factual legal disputes" and legal disputes, courts will generally decline to grant an injunction to alter a State's established election procedures. That is especially true when a plaintiff has unreasonably delayed bringing his claim, as Crookston most assuredly has. Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.

The Court's reasoning is just as apt here, where the election process Plaintiff seeks to change is already underway.

Here, Plaintiff unreasonably delayed seeking relief from this Court. Michigan's process for handling EPB data has been consistent for well over a decade, and the current form of the rule Plaintiff seeks to enjoin went into effect in October of 2025. (Defs' Ex. B, Fracassi Aff., ¶ 17; Mich Admin R 168.48). But Plaintiff raised no objection to it until the 43rd day before the November 3, 2026 election when he submitted his request for a declaratory ruling. (*Id*., ¶ 20). Under Michigan law "there is a rebuttable presumption of laches if [an] action" that

affects elections "is commenced less than 45 days before the date of the election affected." Mich. Comp. Laws § 691.1031. Neither the amended complaint nor Plaintiff's motion offers any explanation or excuse for his delay in seeking relief from the courts.

Second, Defendants have been prejudiced by Plaintiffs' delay. The Department of State will issue guidance to election officials directing them to delete their local copy of the EPB data from the flash drives and EPB software on or after November 10. (Defs' Ex. B, Fracassi Aff., ¶ 23). EPB training for clerks for this election cycle has already been completed. (*Id.*, ¶ 28). If that directive were changed, the Department would have to issue new directives to all 83 counties and Michigan's 1,521 local jurisdictions. (*Id.*, ¶ 25-26). Also, because this process has been in place for over a decade, a sudden change to that process is likely to cause confusion or uncertainty among clerks during a time when there are many other matters vying for their attention. (*Id.*, ¶ 27). At the time of this brief, there are less than 32 days before the election. Moreover, leaving the EPB data on the laptops or flash drives can give rise to technical issues and pose security risks. (*Id.*, ¶ 29-31).

Had Plaintiff acted sooner, the Court could have decided the matter, and any subsequent appeal could have been resolved, well in advance of the filing deadline, and the resulting prejudice to Defendants could have been avoided. But, because

of Plaintiff's unreasonable delay, that is no longer possible. Plaintiff's claim, therefore, is barred by laches and he is therefore not likely to prevail on the merits.

**4. Rule 168.48 does not conflict with 52 U.S.C. § 20701.**

Even if Plaintiff could surmount the preceding arguments, his claim still fails where the rule does not conflict with 52 U.S.C. § 20701.

"Federal law can preempt state law in three ways: express preemption, conflict preemption, or field preemption." *United States v. County of Washtenaw*, No. 26-11166, ___ F. Supp. 3d ___, 2026 WL 2453724, at *6 (E.D. Mich. Aug. 21, 2026), citing *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). Based on the pleadings, conflict preemption is at issue here. (ECF No. 22-1, PageID.306.)

> "[S]tate law may be preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law." State law may also be preempted if it "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." "In other words, if the state law would cause the federal law's operation to be frustrated and its provisions to be refused their natural effect, the state law must yield to the regulation of Congress."

*KalshiEX, LLC,* 2026 WL 2884087, at *25 (cleaned up). In this case, neither form of preemption applies to preempt Rule 168.48.

Title III of the Civil Rights Act of 1960 requires, in relevant part, that:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any . . . election of which [federal] candidates . . . are voted for, *all records and papers which come into his possession relating to any application, registration, . . . or other act requisite to voting in such election,* except that, when

> required by law, such records and papers may be delivered to another officer of election . . . .

52 U.S.C. § 20701 (emphasis added).[2] As set forth in the Department's declaratory ruling, any record data from the EPB is retained either through the printing of physical, paper copies, by uploading data to the QVF, or both. (Defs' Ex. B, Fracassi Aff., Attachment 3, pp 5-6.) The Department also explained how Rule 168.48 complies with § 20701 by retaining records related to "any application" or "other act requisite to voting." (*Id*., pp 7-8.)

> First, there is the paper application to vote completed by each voter. Second, there is the paper pollbook that is printed and includes the list of voters. Third, the uploaded EPB data includes a list of voters, which is used to update voter history in QVF. The materials also cover "acts requisite to voting", including the aforementioned items and provisional ballot information, which is uploaded to and stored on QVF. To the extent inspector remarks can be said to relate to either applications or acts requisite to voting, these are also included in the printed pollbook.
>
> The Department is not aware of any other information or data on the EPB that could be said to comprise records or papers relating to applications or other acts requisite to voting that are not reflected in the above information, . . . . Accordingly, the materials described above include all items relevant to 52 USC 20701.

---

[2] This provision was recently interpreted by the Sixth Circuit in *United States v. Benson, et al*., 179 F.4th 470 (6th Cir. 2026). There, the Court concluded that § 20701 applies to records and papers election officials receive from an external source, which did not include Michigan's QVF as an "internally generated electronic database." 179 F.4th at 478-79.

(*Id*., p 8.) With respect to retention and preservation, the Department explained that nothing in § 20701 indicates that information must be kept in multiple formats, or specifically in paper or in electronic form, and that all the records are retained in one or more formats:

> [The] data is retained either in paper format or by uploading the data to the QVF (or both), consistent with the Department's administrative rules, R 168.46, R 168.47, and retention schedule. Rule 168.46 requires election inspectors to print any reports that are required to be retained from the EPB and include those reports in the physical pollbook. Printed reports include the ballot summary report, list of voters report, and the remarks report. Next, R 168.47 requires the upload of all voter history and other required files from the EPB to the QVF within 7 days after an election.
>
> Following these procedures, all record information that is deleted from the [EPB] devices under R 168.48 has already been retained and preserved either in a paper format or in the QVF and the deleted information is simply a copy of the information that is saved (more securely) elsewhere. At the point when the EPB software and associated files are deleted from the devices under R 168.48, they represent merely extra copies of papers and records that have been securely retained in other formats.

(*Id*., pp 8-9.) Thus, as the Department interprets § 20701, "all [EPB] records required to be retained under [§ 20701] are preserved." (*Id*., p 9.)

Neither in his complaint nor his brief does Plaintiff explain what records or papers he believes are not properly preserved. He simply states that he is "concerned that his properly cast votes" for federal offices "and other voting and election data will be unlawfully deleted and unpreserved" under Rule 168.48. (ECF No. 22-1, PageID.307, 308.) But any "properly cast votes" by Plaintiff in the

November election will be reflected on his ballot, which will be preserved for 22 months. Mich. Comp. Laws § 168.811.[3] Defendants do not know what Plaintiff is referring to when he mentions "other voting and election data" refers to but any application related to voting, any poll list containing his name, and his voter history for the election will all be preserved.

Plaintiff has simply failed to state a plausible claim for relief that Rule 168.48 is preempted. See, e.g., *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' ")

Where Plaintiff has no likelihood of succeeding on the merits of Count VII, his motion should be denied.

**B. Plaintiff will suffer no irreparable harm absent an injunction.**

Even if a plaintiff can show a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course." *EOG Res., Inc.,* 134

---

[3] Michigan has principally implemented § 20701 in Mich. Comp. Laws §§ 168.811, 168.761d(14), and Mich. Admin. Code, R. 168.790.

F.4th at 883 (quoting *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam)). The Sixth Circuit has clarified that even a strong showing on one factor does not eliminate the need for showing others, holding that, "it's true that courts 'balance' the four factors, but while 'the extent of an injury may be balanced against other factors, the existence of an irreparable injury is mandatory.'" (*Id.*) (internal citation omitted.) Showing irreparable harm is "indispensable," and "If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *Id.* at 885 (quoting *D.T. v. Sumner Cty. Sch.,* 942 F.3d 324, 327 (6th Cir. 2019)). Moreover, "where there is no likelihood of either success on the merits or irreparable harm, an injunction is unwarranted—regardless of the showing on the other factors." *Id.* (quoting *James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024) (internal citation omitted).

Irreparable harm may exist where a plaintiff can demonstrate a substantial likelihood of success on the merits of the plaintiff's claim that their constitutional rights have or will imminently be violated. *Elrod v. Burns,* 427 U.S. 347, 373-74 (1976). But here, Plaintiff's discussion of irreparable harm is limited to his own conclusion that his " 'constitutionally protected right to participate in elections on an equal basis with other citizens in the' State of Michigan has been significantly impaired and denied," on the basis of a restraining order entered by the Court of

Claims affecting the clerk in the Township of Bridgewater, Michigan—where Plaintiff does not vote. (ECF 22-1, PageID.308-313). Plaintiff thus argues that his vote is being treated differently than votes cast in Bridgewater. But this argument misses the mark.

First, once again, neither the rule nor the Court of Claims' order affects anyone's votes, because Rule 168.48 only concerns EPB data and *how* it is to be preserved. Plaintiff's argument is conspicuously lacking in any discussion or explanation as to how his vote is treated differently at all, let alone how he is being irreparably harmed as a result.

Second, while the Court of Claims' order is binding on the Secretary of State, Plaintiff does not explain how that court order is attributable to either the Secretary of State or Highland Park City Clerk and their enforcement of Rule 168.48. Rather, the Court of Claims' temporary restraining order is just that—a temporary order that preserves the status quo for the litigants while the case is litigated. Plaintiff's motion does not demonstrate how the Defendants in this case or their compliance with Rule 168.48 have caused him any injury that his requested TRO would redress.

Thus, Plaintiff has not demonstrated that he will suffer irreparable injury absent an injunction.

### C. The balance of equities and public interest weigh against granting any injunction.

Courts next turn from the harms the plaintiff might suffer to the harms the defendant might suffer and then ask where the greatest harm would fall. *EOG,* 134 F.4th at 885-86. Courts must "balance the competing claims of injury[,] . . . consider[ing] the effect on each party of the granting or withholding of the requested relief." *Id.* (quoting *Winter*, 555 U.S. at 24). The balance of harms and public interest factors "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009).

In this case, the public interest is furthered by allowing the upcoming election to be administered according to the laws and rules enacted and promulgated by the state government. Also, upending the established processes so close to an election risks creating confusion among the public or inviting errors by election officials.

In contrast, Plaintiff will be in no different position without a preliminary injunction than he already is today—and has been for more than a decade under the same policy. That is more so where the Plaintiff unreasonably delayed raising this challenge until just before an election to challenge a long-standing practice.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants respectfully request that this Honorable Court deny Plaintiff's motion for a temporary restraining order or preliminary injunction.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
P55439

Dated: October 2, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General