# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS,

Plaintiff,

v

JOCELYN BENSON, in her official and individual capacities as the duly elected Secretary of State for the State of Michigan, JONATHAN BRATER, in his official and individual capacities as the duly appointed Director of Michigan Bureau Elections, WAYNE COUNTY ELECTION COMMISSION, and BRENDA GREEN, in her official capacity as the duly elected City Clerk for the City of Highland Park,

Defendants.

No. 26-13454

HON. TERRENCE G. BERG

MAG. KIMBERLY G. ALTMAN

---

**AFFIDAVIT OF DEPUTY DIRECTOR OF ELECTIONS ADAM FRACASSI**

I, Adam Fracassi, being duly sworn, voluntarily state as follows:

1. I can testify competently to the facts contained within this affidavit based upon my personal knowledge.

2. I am the Deputy Director of Elections with the Michigan Bureau of Elections (Bureau). I have served in this capacity since September 16, 2024. The Bureau of Elections is an agency within the Michigan Department of State

(Department). I have been with the Bureau since May 6, 2018, and have served in a variety of different capacities.

3. I bring this affidavit in support of Defendants Jocelyn Benson and Jonathan Brater ("Defendants")' Response in Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order (TRO) and/or Preliminary Injunction Under Fed. R. Civ. P. 65 with respect to Count VII of First-Amended Verified Complaint ("Request for TRO"). If called as a witness, I could testify truthfully and accurately as to the information contained within this affidavit.

4. I am personally knowledgeable about the Department's work implementing the provisions of the Michigan Election Law that govern the Electronic Pollbook, or EPB, and the team that performs voter list maintenance activities at the state level, including work with the Qualified Voter File, or QVF and any other applications that interface with it, including the EPB.

**The Electronic Pollbook**

5. Michigan has developed and maintains its own electronic pollbook software application. This is typically referred to as the EPB. *See* MCL 168.668b, *and see generally* Election Officials Manual, Chapter 12, "Election Day and the Voting Process," and Chapter 13, "Closing the Polls and the Precinct Canvass" (July 2024) ("Manual").

6. Beginning at 4 p.m. the day before the election (or beginning at 2 p.m. Saturday for Detroit), authorized election officials download current voter data from the QVF and onto encrypted flash drives which then populate the data in the EPB software on a laptop. MCL 168.668b.

7. Election officials use the EPB to process each voter. That process may include assigning a voter the proper ballot, resolving any outstanding issues related to a voter's eligibility, or informing a voter in the wrong polling location the location of their correct polling location. *See* Manual, Ch. 12, pp. 8, 9, 11.

8. In addition to the EPB, all precincts have a backup paper poll book that can be used if the EPB is unavailable for any reason.

9. Voter activity is saved in the EPB software, and after the close of polls, the software is saved onto the encrypted flash drive.

10. Election officials print a number of reports from the EPB software which are then added to the paper pollbook, including a list of voters, remarks, and a ballot summary. *See* R 168.46. Paper records must be retained by the election official according to the retention schedule for each type of document. *See* Manual, Ch. 13, pp. 13-14, *and see* MCL 168.811.

11. Election officials also upload the EPB files onto the QVF, typically within seven days of an election. R 168.47.

12. Once uploaded to QVF, BOE becomes the custodian of the records and can access the EPB data from QVF by using a number of EPB-specific reports that query EPB uploads.

13. EPB data is available after the election in the same manner that other voting information is available: through QVF, and through the printed paper reports that are stored subject to the relevant retention schedules.

14. It is only after the data has been uploaded to QVF and the Bureau of Elections has notified election officials that security has been released that the officials may remove the local copy of the data and the EPB software from the laptops and flash drives. Security may be released after seven days following canvass and certification, so long as no recount, audit, or litigation is pending, and only upon the Bureau of Elections' instructions. *See* Manual, Ch. 13, pp. 13-14, MCL 168.799a(4), *and* R 168.48.

15. Removal of the EPB software and data from the laptops and flash drives relating to a prior election prevents the confusion that could arise from multiple sets of data, and the technical issues that might arise from multiple versions of the software remaining on the flash drives and laptops. Attempts to download EPB data for a current election onto a device that already contains data from a prior election will cause the device to malfunction and/or the new data not to download. This means voter information like status of absent voter ballots,

precinct changes, or voter registration status may be incorrect or out of date, or that election officials will be unable to use the EPB at all, preventing the election officials from being able to properly administer the election.

16. Removal of the EPB data from EPB software, flash drives, and laptops also ensures security of election and voter data. This is because electronic data containing sensitive voter information remaining on thousands of flash drives throughout the state is far less secure than data uploaded to the password-protected and regularly audited QVF.

17. The current process for handling EPB data has been a consistent part of Michigan's vote processing system for well over a decade and under multiple administrations. *See,* e.g., Electronic Pollbook Clerk's Manual For Windows 10 & BitLocker Flash Drives, Michigan Department of State Bureau of Elections, June 2017, p. 3 ("All EPB files should be deleted seven days after the final canvas. This keeps voter data secure and prevents the wrong files from being used in future elections") (excerpt attached as Defendants' Attachment 1), *and see* Electronic Pollbook Election Inspector's User Manual, Michigan Department of State Bureau of Elections, October 2012, p. 3 (same) (excerpt attached as Defendants' Attachment 2).

18. The rule formalizing this long-standing process was effective as of October 23, 2025. No comments were made at the public hearing, and while two written comments were received via email, neither was from Plaintiff.[1]

19. The Bureau recently issued a declaratory ruling to a number of parties regarding the exact issue Plaintiff now raises, which describes the process for saving, transferring, and storing the EPB-related records required to be retained by state and federal law, and explains, in depth, how the statutes and administrative rule codifying this process comply with federal law. That declaratory ruling, dated September 30, 2026 and addressed to Michelle McQueer, is incorporated here by reference, and attached as Defendants' Attachment 3.

20. Plaintiff also submitted a request for a declaratory ruling on this exact issue on September 21, 2026. While the Department determined he is not an interested party under MCL 24.263, and rejected his request for that reason, a copy of this declaratory ruling was provided to him via email, also on September 30, 2026.

**Impact of Delay and Change to Retention Policies**

21. As stated above, the existing process for treatment of voting data in the EPB has been in place for at least 14 years. It is unclear why Plaintiff has chosen to wait to bring these claims until after the 2026 primary, and less than

[1] *Request for Rulemaking record available here*: ARS Public - RFR Transaction.

three months before the 2026 general election. It is further unclear why Plaintiff is raising these claims since he is not a clerk and the promulgated rules do not apply to him.

22. Plaintiff has requested that the Court enjoin the Department from "enforc[ing] Mich Admin Code, R 168.48 in the impending November 3, 2026 general election," and elaborates that he wants "his properly cast votes for U.S. Senator and Member of the U.S. House of Representatives for the 13th Congressional District in the November 3, 2026 general election and other voting and election data to be properly preserved under 52 U.S.C. § 20701." Request for TRO, pp. 20, 28.

23. The Department will issue guidance to all election officials requiring removal of their local copy of the EPB data for the general election from the flash drives and EPB software on or after November 10, 2026, after they have uploaded the data to QVF and after security is lifted and the canvass is completed (barring a recount, audit, or legal order prohibiting the removal). *See* MCL 168.799a, MCL 168.581, *and* R 168.48.

24. Currently, only one township in Michigan – Bridgewater Township – has been ordered to retain its EPB flash drives and EPB laptops from the August 2026 primary, and no jurisdictions in Michigan have been ordered to retain their EPB flash drives and/or laptops for the November 2026 general election.

25. There are 1,521 local jurisdictions, and 83 counties, that would be affected by any changes to this procedure.

26. If the directive were changed, the Department would need to immediately issue additional instructions to election officials with an entirely new procedure for securely storing this sensitive information and possibly an alternative method of using the EPB for the next election if copies of EPB data have not been deleted. There is also a possibility that clerks would need to purchase additional materials to comply.

27. In addition, given the longstanding nature of the processes for treatment of EPB data, and the imminent general election, changing these processes would cause enormous confusion among clerks, during one of their busiest times of the year and in an election year for many state and federal offices.

28. Should a court deem the existing process invalid for any reason, the amount of work needed to re-educate all election officials, revise existing guidance, and ensure the availability of additional devices to store previous EPB data would be a massive undertaking. EPB training for this election cycle is already complete, as part of election cycle training that took months to complete and finished in June 2026. This would be a difficult undertaking in general, but is exacerbated by the fact that we are 33 days away from the general election as of the date of this affidavit.

29. As noted above, failure to delete the existing additional copy of EPB data from the EPB software, laptop, and/or flash drive can cause technical issues, as well as pose serious security risks. Plaintiff has not offered any assurances as to how these risks could be avoided.

30. Furthermore, if local copies of the data cannot be deleted statewide, election officials would need to purchase new equipment, including, at minimum, thousands of flash drives, and potentially EPB laptops as well, purchases for which local jurisdictions have had no reason to budget.

31. The Department anticipates a large volume of incidents caused by clerks using out-of-date software or data files for future elections if clerks across the state are ordered to maintain additional copies of EPB data as contemplated by Plaintiff's request for a TRO. The Department would also have to develop and implement new security protocols for thousands of flash drives, EPB laptops, and pollbook software kept around the state for months or years. This may also include reprogramming all or part of the pollbooks themselves. The Department therefore anticipates it will need to shift some of its limited resources to addressing the inevitable technical and security issues that would arise from such a drastic change.

AFFIANT SAYS NOTHING FURTHER.

Adam Fracassi
Deputy Director of Elections
Michigan Department of State

Subscribed and sworn to before me, a Notary Public,

on the 1st day of October, 2026.

10/1/26

Jennifer L. McEnerney
Print name exactly as it appears on application for commission as a notary public.

Notary Public, State of Michigan, County of Ingham

My Commission Expires: 4/30/29

Acting in the County of: Ingham

# Attachment 1

# Electronic Pollbook Clerk's Manual
# For Windows 10 & BitLocker Flash Drives

**Michigan Department of State**
**Bureau of Elections**

**June 2017**

## Electronic Pollbook User Manual - Table of Contents

The Electronic Pollbook User Manual is structured to be a comprehensive manual that covers the duties of all election officials using the EPB software. Pages 15-34 are designed to be used by election inspectors in the precinct while pages 36-37 are designed for receiving boards. The remaining pages are focused on the preparation of the EPB software and post-election day responsibilities.

INTRODUCTION TO THE ELECTRONIC POLLBOOK .......... 3
Getting Started .......... 4
  Laptop – Election Day Preparation .......... 4
  Downloading the EPB Software .......... 6
  Electronic Pollbook Software – Laptop Installation & Pre Election Day Setup .......... 11
  Software Installation .......... 11
  Preparing the Software for Election Day Use .......... 13
ELECTION DAY – ELECTION INSPECTOR'S GUIDE .......... 15
  Preparing the EPB for Opening the Polls .......... 15
  Election Day – Processing Voters .......... 17
  Assigning a Ballot .......... 17
  Voters with Status Flags .......... 19
  Processing a Spoiled Ballot .......... 20
  Missing Voters .......... 21
    Other Tab .......... 21
    Unlisted .......... 21
  Other Voter Types .......... 22
    Challenged Voters .......... 22
    Recording Absentee Ballots .......... 22
    Recording Voter Assist Terminal (VAT) Ballots .......... 23
  Correcting Mistakes .......... 24
  Reject a Ballot .......... 26
  Un-issued Defective Ballots .......... 26
  Backup Throughout the Day .......... 27
  Timeout .......... 27
  Switching Users .......... 27
ELECTION DAY – CLOSE OF POLLS .......... 29
  One Final Backup .......... 29
  Creating Reports .......... 29
    Ballot Summary .......... 30
    List of Voters .......... 32
    Remarks Report .......... 33
    Save Voter History .......... 34
Receiving Board and Post-Election Day .......... 36
  Printing Reports at the Receiving Board .......... 36
Importing Voter History .......... 38
Frequently Asked Questions .......... 43
Glossary .......... 45
Quick Reference Checklists .......... 46

# Introduction to the Electronic Pollbook

The Bureau of Elections developed computer software that can be used in the polling place on Election Day to process voters and generate precinct reports. The electronic pollbook (EPB) software is a unique download from the Qualified Voter File (QVF) software or the Elections Management Portal (EMP) web application that can be loaded on to a laptop prior to each election. Once the EPB software is loaded on the laptop, the software allows election inspectors to look up a voter's registration record, confirm their registration is correct, and assign a ballot to that voter, essentially automating the typical paper process. After the election is complete, the EPB software will generate reports to complete the official precinct record (paper binder pollbook) and a voter history file that can be uploaded into the QVF or EMP to update voter history in a matter of minutes.

## Key Features

☆ *Up to date voter registration and absent voter information in the precincts.*
The EPB software takes minutes to download from QVF/EMP and install on the EPB laptop, making it possible to wait until all voter registration information is entered and all absentee ballots have been issued before creating the file containing the voter registration list.

☆ *The ability to locate the voter's registration record by swiping their driver's license with a magnetic card reader.*
The EPB laptop comes with a magnetic card reader. The magnetic card reader will read the magnetic stripe on the back of the voter's Michigan driver's license. The EPB software takes the license number and matches it to the voter's voter registration record and brings it up on the laptop screen for the election inspector to review.

☆ *The ability to assign and record the voter's ballot immediately upon registration confirmation.*
Once the election inspector reviews the voter's voter registration record in the EPB software, the election inspector types the voter's ballot number in and clicks a couple of buttons to assign a ballot to the voter. Ultimately, once the voter reaches the EPB laptop, the entire process takes only a few moments before the voter is verified, has a ballot and is directed to a voting booth.

☆ *The ability to look up voters registered within the jurisdiction but not in the assigned precinct.*
If a match is not found for the voter, the EPB software can show the election inspector if the voter is registered in a different precinct, eliminating the need to call the local Clerk and sending the voter to the proper precinct quickly and efficiently.

☆ *Accurate printable reports, including a ballot summary that calculates for the election inspector.*
The EPB software keeps track of the List of Voters, including crossing out spoiled ballot numbers and labeling them as spoiled ballots. In addition, the Ballot Summary is designed to complete the math for the election inspector after they type in the numbers the EPB software cannot track.

☆ *Quick and accurate voter history entry*.
Coming full circle, after the election is over the EPB software saves a voter history file that is taken back to the QVF/EMP software. With a few clicks of the mouse, voter history for a precinct is uploaded in minutes. The entire EPB software process takes information from the QVF/EMP software and then puts it back into the QVF/EMP software.

## Important Considerations

When reviewing this comprehensive EPB manual, it's important to pay close attention to the setup of the encrypted flash drive and how it works. The encrypted flash drive is key to maintaining security throughout the process. The flash drive must be password protected, and passwords should **never** be kept with flash drives. The encrypted flash drive is used to transfer files back and forth between the QVF or EMP computer and the EPB laptop.

In addition to the security features of the encrypted flash drive, it is also important to understand when to delete files. All EPB files should be deleted seven days after the final canvas. This keeps voter data secure and prevents the wrong files from being used in future elections. Most importantly, practice! Walking through the manual well before every election will ensure you understand all of the features of the EPB software and will prepare you for successful implementation come election day. Just remember it is important to delete all practice files too!

# Attachment 2

# Electronic Pollbook Election Inspector's User Manual

Michigan Department of State
Bureau of Elections

October 2012

# Electronic Pollbook User Manual - Table of Contents

The Electronic Pollbook Election Inspector's User Manual is designed to be used by election inspectors in the precinct.

Election Day – Election Inspector's Guide ........ 4
**Preparing the EPB for Opening the Polls** ........ 4
**Election Day – Processing Voters** ........ 7
Processing Voters ........ 7
Assigning a Ballot ........ 7
Voters with Status Flags ........ 9
Processing a Spoiled Ballot ........ 10
Missing Voters ........ 11
Other Tab ........ 11
Unlisted ........ 11
Other Voter Types ........ 12
Challenged Voters ........ 12
Recording Absentee Ballots ........ 12
Correcting Mistakes ........ 13
Remarks ........ 14
Reject a Ballot ........ 14
Un-issued Defective Ballots ........ 15
Backup Throughout the Day ........ 15
Timeout ........ 16
Restoring the Database ........ 16
**Election Day – Close of Polls** ........ 18
One Final Backup ........ 18
Creating Reports ........ 18
Ballot Summary ........ 19
List of Voters ........ 21
Remarks Report ........ 22
Save Voter History ........ 23
**Glossary** ........ 25
**Quick Reference Checklist** ........ 26

# Introduction to the Electronic Pollbook

The Bureau of Elections developed computer software that can be used in the polling place on election day to process voters and generate precinct reports. The electronic pollbook (EPB) software is a unique download from the Qualified Voter File (QVF) software that can be loaded on to a laptop prior to each election. Once the EPB software is loaded on the laptop, the software allows election inspectors to look up a voter's registration record, confirm their registration is correct, and assign a ballot to that voter, essentially automating the typical paper process. After the election is complete, the EPB software will generate reports to complete the official precinct record (paper binder pollbook) and a voter history file that can be uploaded into the QVF software to update voter history in a matter of minutes.

**Key Features**

☆ *Up to date voter registration and absent voter information in the precincts.*
The EPB software takes minutes to download from QVF and install on the EPB laptop, making it possible to wait until all voter registration information is entered and all absentee ballots have been issued before creating the file containing the voter registration list.

☆ *The ability to locate the voter's registration record by swiping their driver's license with a magnetic card reader.*
The EPB laptop comes with a magnetic card reader. The magnetic card reader will read the magnetic stripe on the back of the voter's Michigan driver's license. The EPB software takes the license number and matches it to the voter's voter registration record and brings it up on the laptop screen for the election inspector to review.

☆ *The ability to assign and record the voter's ballot immediately upon registration confirmation.*
Once the election inspector reviews the voter's voter registration record in the EPB software, the election inspector types the voter's ballot number in and clicks a couple of buttons to assign a ballot to the voter. Ultimately, once the voter reaches the EPB laptop, the entire process takes only a few moments before the voter is verified, has a ballot and is directed to a voting booth.

☆ *The ability to look up voters registered within the jurisdiction but not in the assigned precinct.*
If a match is not found for the voter, the EPB software can show the election inspector if the voter is registered in a different precinct, eliminating the need to call the local Clerk and sending the voter to the proper precinct quickly and efficiently.

☆ *Accurate printable reports, including a ballot summary that calculates for the election inspector.*
The EPB software keeps track of the List of Voters, including crossing out spoiled ballot numbers and labeling them as spoiled ballots. In addition, the Ballot Summary is designed to complete the math for the election inspector after they type in the numbers the EPB software cannot track.

☆ *Quick and accurate voter history entry*.
Coming full circle, after the election is over the EPB software saves a voter history file that is taken back to the QVF software. With a few clicks of the mouse, voter history for a precinct is uploaded in minutes. The entire EPB software process takes information from the QVF software and then puts it back into the QVF software.

**Important Considerations**

When reviewing this comprehensive EPB manual, it's important to pay close attention to the setup of the encrypted flash drive and how the Privacy Zone works. The encrypted flash drive and Privacy Zone are key to maintaining a secure system. The encrypted flash drive is used to transfer files back and forth between the QVF computer and the EPB laptop. Those files must be saved in the Privacy Zone to keep voter data secure. The Privacy Zone is password protected by a password chosen by the jurisdiction.

In addition to the security features of the encrypted flash drive and Privacy Zone, it is also important to understand when to delete files. All EPB files should be deleted seven days after the final canvas. This keeps voter data secure and prevents the wrong files from being used in future elections. Most importantly, practice! Walking through the manual well before every election day will ensure you understand all of the features of the EPB software and will prepare you for successful implementation come election day. Just remember it is important to delete all practice files too!

Attachment 3

STATE OF MICHIGAN
JOCELYN BENSON, SECRETARY OF STATE
DEPARTMENT OF STATE
LANSING

AGHOGHO EDEVBIE
DEPUTY SECRETARY

September 30, 2026

Michelle McQueer, Bridgewater Township Clerk
The Honorable Representative Rachelle Smit
Shelly Lake, Irving Township Deputy Clerk
Tessa Stout, Irving Township Clerk
Kristie Walls, Otisco Township Deputy Clerk
Bill Richardson, Waterloo Township Clerk
David Olson, Hastings Township Clerk
Vicky Byrne, Otisco Township Clerk
Jo DeMarco, Ada Township Clerk
Patrice Johnson

Dear Requesters:

The Department of State (Department) acknowledges receipt of three[1] letters, in which requesters sought a declaratory ruling under the Administrative Procedures Act (APA), 1969 PA 306, MCL 24.201 *et seq*. The following lists the requesters and dates of request:

> Rep. Rachelle Smit and all listed clerks and deputy clerks, received October 22, 2025
> Patrice Johnson, received October 22, 2025
> Michelle McQueer, received July 6, 2026

An agency may issue a declaratory ruling if an "interested person" submits a request that presents a question of law and a reasonably complete statement of facts. MCL 24.263.[2]

**Timeline**

In separate requests on October 22, 2025, Representative Smit and eight local clerks, as well as Patrice Johnson, submitted a declaratory ruling request asking the following:

---

[1] Clerk DeMarco did not sign the Smit request; rather, Smit submitted a letter signed by DeMarco on Ada Township letterhead, with the request otherwise identical to the Smit request. As such, DeMarco is considered a signatory of the Smit request for purposes of this declaratory ruling.
[2] Here, because at least one or more requesters is an interested person, it is unnecessary for the Department to consider whether all requesters are interested persons under MCL 24.263.

> How can a local clerk comply with both proposed rule R 168.48's requirement that EPB's be deleted shortly after certification of a given election and 52 USC 20701's requirement that election records be retained for twenty-two months?

On November 25, 2025, the Department advised the requesters that the requests were received and that they would be considered after the Department's related Help America Vote Act (HAVA) complaints were resolved. See 52 USC 21112. This was because both the complaints and the requests concerned the applicability of R 168.48 in light of the federal retention statute; one requester had submitted a HAVA complaint on the same question; and the Department had instituted an isolation wall for resolution of the HAVA complaint, which prevented the Department and Bureau of Elections (Bureau) from discussing the questions presented in these declaratory ruling requests.

On July 6, 2026, one of the requesters, Michelle McQueer, submitted a request which asked the same question regarding deletion and retention, as well as two other questions. Thereafter, on August 12, 2026, McQueer initiated litigation on the same topic.[3]

The Department reviewed all relevant state and federal statutes when promulgating R 168.48. The Bureau also considered the applicability of the rule with regard to the HAVA in the complaint resolved August 31, 2026.[4]

All requests ask about the interplay between the rule and a federal (and in some cases, state) statute. Because the McQueer request includes the most detailed description of the purported facts underlying the request, as well as additional questions, this declaratory ruling responds primarily to that request. However, because the other requests involve the same federal statutory section, this declaratory ruling is issued in response to all requests.

**McQueer request**

The McQueer request presents a series of alleged facts, including purported facts about what information is recorded in the electronic pollbook (EPB). According to the request, "reports are printed and placed in the paper pollbook," and "the voter history file" is uploaded into the qualified voter file (QVF). The request then notes that R 168.48(1) requires deletion of the EPB software and its associated electronic files off devices by the seventh day following the final canvass and certification of the election, subject to certain exceptions. Finally, the statement of facts in the request cites 52 USC 20701 of the Civil Rights Act of 1960 (CRA), which requires retention of certain election records for 22 months when there is a federal office on the ballot, and MCL 168.811, which similarly requires retention of certain election records for 22 months. The federal statute, 52 USC 20701, also provides that "any officer of election or custodian who

---

[3] See *McQueer v Benson*, Court of Claims Case No. 26-000172-MZ.
[4] The HAVA complaint determination is available on the Department's website.

willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both."
The request presents 3 questions:

1. Does R 168.48(1) require deletion of the electronic pollbook software and its associated electronic files for the August 4, 2026, primary election by the seventh day following the final canvass and certification of that election?
2. Can electronic pollbook files instead be retained for 22 months without violating R 168.48?
3. If R 168.48 requires deletion of the records, how does a clerk comply with the rule and the retention requirements in MCL 168.811 and 52 USC 20701?

The first two questions ask about the meaning of R 168.48.

The same principles that apply when construing a statute apply to the construction of administrative rules. *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 167 (2017). "We begin by examining the language of the [rule], which provides the most reliable evidence of its intent." *City of Coldwater*, 500 Mich App at 167 (quotation marks, citations, and alteration omitted). If the language is unambiguous, the rule must be enforced as written, and no further construction is permitted. *Id*. (citation omitted).

A plain reading of the language of R 168.48 answers both the first and second questions. Rule 168.48 provides:

> (1) Subject to subrule (2) of this rule, the electronic pollbook software and associated files *must be* deleted from all devices by the seventh day following the final canvass and certification of the election, *unless* a petition for recount has been filed and the recount has not been completed, a post-election audit has been scheduled, or the deletion of the data has been stayed by an order of the court or the secretary of state. If a precinct is selected for an audit, the electronic pollbook software and associated files must be deleted from all devices by the seventh day following completion of the audit.
>
> (2) The electronic pollbook software and associated files *must not be* deleted from devices until the bureau of elections or county clerk, as applicable, issues the release of security memorandum pertaining to that election. [Emphasis added.]

The term "must" "indicates mandatory action." *GWCC Holdings, LLC v Alpine Twp*, 351 Mich App 333, 350 (2024). Relying on the plain language of the rule, the answer to the first question is yes, a clerk must delete the EPB software and its associated files from devices within 7 days of the final canvass and certification as long as security has been released for the election and

there are no pending recounts, audits, or orders from a court or the Secretary of State staying deletion of the data.

It follows then that the answer to the second question is no, a clerk cannot retain that information contrary to the requirement to delete it unless one of the stated exceptions to deletion are present (i.e., security has not been released or there is a pending recount, audit, or court order/order from the Secretary of State). *See, e.g., Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 366-367 (2016) (It is well settled “that agencies are bound to follow their own duly promulgated rules.”)[5] To be clear, however, while the software and associated files are deleted from the devices (often referred to as flash drives), the election-related data contained in the EPB is preserved in multiple ways, as discussed below.

The third question asks how to comply with both R 168.48 and the retention requirements of MCL 168.811 and 52 USC 20701. The request appears to presume that R 168.48 conflicts with the retention requirements in those statutes. Answering this question requires interpretation of both statutes in addition to the rule. As a general matter, an “agency has the authority to interpret the statutes it administers and enforces.” *O’Halloran v Sec’y of State*, 515 Mich 606, 635–636 (2024) (cleaned up). Further, “an agency’s interpretation of its own regulation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation.” *In re Petition of Attorney General for Investigative Subpoenas*, 274 Mich App 696, 701 (2007) (cleaned up).

MCL 168.811 provides in relevant part:

> All election returns, including *poll lists*, statements, tally sheets, absent voters’ return envelopes bearing the statement required by [MCL 168.761], absent voters' records required by [MCL 168.760], and other returns made by the election inspectors of the several precincts must be carefully preserved and may be destroyed after the expiration of 22 months following the primary or election at which the same were used. . . . [Emphasis added]

52 USC 20701 provides in relevant part:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any . . . election of which [federal] candidates . . . are voted for, *all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election,* except that, when required by law, such records and papers may be delivered to another officer of election . . . . [Emphasis added]

[5] In McQueer’s case, deletion has been stayed by order of the court. *McQueer v Benson*, Case No. 26-000172-MZ, Orders of the Michigan Court of Claims, issued August 27, 2026 and September 22, 2026.

The question posed, in light of these statutory sections, is whether the state's longstanding practice, now codified in rule, of requiring municipal clerks to delete copies of EPB information on flash drives after information has been printed and uploaded to QVF results in a failure to retain specified election returns as defined by MCL 168.811 or specified records and papers as defined by 52 USC 20701. In answering this question, the Department will first describe how EPBs are used and information is retained under the rule. Next, the Department will describe the requirements of MCL 168.811 and 52 USC 20701. Finally, the Department will address how the practice codified in R 168.48 results in compliance with these requirements.

**Operation of the EPB**

Rule 168.48 codified the Department's longstanding instruction regarding EPB data. The Department has not determined the exact date at which this instruction was first given, but it dates to at least 2012. Use of an electronic pollbook, also a longstanding practice, is required under MCL 168.668b(1) ("Each city or township shall use the electronic poll book software developed, acquired, or approved by the bureau of elections in each election precinct in the city or township on election day to process voters and generate election precinct reports.")

In order to use the Election Day EPB, election jurisdictions must possess, for each precinct, a laptop computer that meets technical and security requirements (the "EPB laptop"). Prior to Election Day, clerks download the EPB package from QVF onto the computer they typically use to conduct election responsibilities. The EPB package exported from QVF includes the EPB software and a data file that includes the list of registered voters for each precinct, including any relevant status indicators for each voter (for example, whether the voter has already returned an absentee ballot). This is essentially a "snap shot" of the QVF for each precinct to use on Election Day. Clerks export the EPB software and data file onto encrypted flash drives corresponding to each precinct's EPB laptop. Next, they use the encrypted flash drive to install the EPB software and data file to the laptop to be used on Election Day.

The EPB laptop is operated offline on Election Day, using the EPB software and data file loaded onto the laptop from the encrypted flash drive. When voters appear to vote on Election Day, they first complete a paper application to vote. After completing the application to vote, the voter is then checked in using the EPB. The election inspector enters the voter's information into the EPB along with relevant information about the voter, including that the voter has been issued a ballot and any remarks or other information (such as provisional ballot information). Election inspectors also have a paper printout of the pollbook on hand in case the EPB becomes unavailable.

After the polls have closed, election inspectors, in addition to other responsibilities, collect the paper applications to vote for each precinct, which are delivered to the

municipal clerk in a sealed envelope. When closing out the election on the EPB laptop, as required by R 168.46, election inspectors are instructed to save the three following reports in .pdf format, as well as a file that contains voting history, to the flash drive. Then, either the precinct inspectors or a receiving board will print out these three reports on paper:

- Ballot summary report
- List of voters report
- Remarks report

After these required reports are printed, the encrypted flash drive is removed from the EPB laptop and delivered to the municipal clerk in a sealed envelope.

Rule 168.47 provides that "within 7 days after an election, the clerk responsible for administering the election shall upload the voting history and other required files from the electronic pollbook to the qualified voter file." The following information is uploaded to QVF as part of this process:

- List of voters (used to update voter history in QVF)
- Provisional ballot information (from the EPB)[6]
- A log of activity on the EPB

After all these steps are taken, R 168.48 requires that "the electronic pollbook software and associated files must be deleted from all devices by the seventh day following the final canvass and certification of the election," unless an exception applies.

In total, the following information for each voter and for EPB activity in general is retained after the clerk copy of EPB software and associated files are deleted:

- A physical, paper application to vote completed by each voter
- A physical, paper printout of the list of voters, including all voters issued a ballot and all remarks entered into the pollbook by election inspectors
- An electronic list of voters
- Electronic voter history, which is added to the QVF from the list of voters
- Records of provisional ballots
- An electronic log of activity on the EPB

[6] Additional provisional ballot information is incorporated during the canvass.

**Rule 168.48 is consistent with MCL 168.811**

Relevant to Election Day voters, MCL 168.811 requires preserving all election returns, "including *poll lists*, *statements*, tally sheets, absent voters' return envelopes bearing the statement required by [MCL 168.761], absent voters' records required by [MCL 168.760], *and other returns made by the election inspectors* of the several precincts." (Emphasis added).

These documents include "poll lists" in multiple formats. First, there is a completed paper application to vote for each voter. Second, there is a paper pollbook that is printed and includes the list of voters. Third, the EPB data uploaded to QVF includes a list of voters, which is used to update voter history in QVF. To the extent "statements" or "returns" could be read as applying to voters (as opposed to results, which is more likely in this context), the documents also include "statements" in the form of election inspector remarks, which are on the paper pollbook, and as applied to Election Day voters, assuming "other returns made by the election inspectors" could include provisional ballot information, this information is uploaded to and stored in QVF.

The Department is not aware of any other information that could be said to comprise poll lists, statements, or other returns made by election inspectors that are not reflected in the above information, nor do the declaratory ruling requests list or describe any such information. Accordingly, the materials described above include all items relevant to MCL 168.811.

Regarding preservation, Michigan law generally requires the preservation of public records. MCL 399.811, MCL 750.491, MCL 18.1285. A public record is recorded information "prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." MCL 15.232(i). This definition encompasses electronic records that constitute public records. See also MCL 15.232(l).[7] The law also permits the reproduction of a record in a different format for retention, including by "data transfer," "digital migration," or "[p]rinting." MCL 24.402(1)(e), (g), (j), MCL 24.406. The law does not require government agencies to retain a public record in multiple formats and does not generally specify a format in which records must be preserved; similarly, MCL 168.811 does not expressly refer to the retention of electronic election records.

Consistent with these laws and the state's approved retention schedule, the EPB data is either printed or transferred via upload from the encrypted flash drives to the QVF for purposes of retention.[8] All EPB data or information that constitutes a public record is preserved as required in MCL 168.811 either electronically or in printed form (or both).

---

[7] Software is not a public record. See MCL 15.232(i), (j). See also *United States v. Benson, et al*., 179 F4th 470, 478-479 (CA 6, 2026), holding that software created by the state is not a record that comes into possession of the state for purposes of 52 US 20701.

[8] See Item # 23.242, 23.339, General Retention Schedule #23 – Election Records, available at GS23 Elections Records.

**Rule 168.48 is consistent with 52 USC 20701**

Turning to the CRA, as relevant to the EPB, 52 USC 20701 requires retaining and preserving "all election records and papers which come into the possession of an election official relating to any application … or other act requisite to voting in such election." These documents include "applications" in multiple formats.

First, there is the paper application to vote completed by each voter. Second, there is the paper pollbook that is printed and includes the list of voters. Third, the uploaded EPB data includes a list of voters, which is used to update voter history in QVF. The materials also cover "acts requisite to voting", including the aforementioned items and provisional ballot information, which is uploaded to and stored on QVF. To the extent inspector remarks can be said to relate to either applications or acts requisite to voting, these are also included in the printed pollbook.

The Department is not aware of any other information or data on the EPB that could be said to comprise records or papers relating to applications or other acts requisite to voting that are not reflected in the above information, nor do the declaratory ruling requests list or describe any such information. Accordingly, the materials described above include all items relevant to 52 USC 20701.

Regarding retention and preservation, these materials relate to applications and acts requisite to voting in the election. The EPB data also includes voter history, which includes records of who voted in the election. Nothing in the plain language of section 20701 suggests that election officials must retain and preserve the same election records in multiple formats. See, e.g, *General Medicine, P.C. v. Azar,* 963 F.3d 516, 521 (6th Cir. 2020) ("Although courts should not read statutory language as surplusage, courts also should not add language that Congress has not included.") Section 20701 does not specify whether materials are to be kept in paper or electronic form or otherwise refer to electronic records, but the U.S. Department of Justice (DOJ) has interpreted it to include such records.[9]

As explained above, this data is retained either in paper format or by uploading the data to the QVF (or both), consistent with the Department's administrative rules, R 168.46, R 168.47, and retention schedule. Rule 168.46 requires election inspectors to print any reports that are required to be retained from the EPB and include those reports in the physical pollbook. Printed reports include the ballot summary report, list of voters report, and the remarks report. Next, R 168.47 requires the upload of all voter history and other required files from the EPB to the QVF within 7 days after an election.[10]

---

[9] See U.S. Department of Justice, Federal Law Constraints of Post-Election "Audits," April 2024, p 2, https://www.justice.gov/crt/media/1348586/dl?inline.

[10] In addition to the rules, the Department's instructions include the requirement to print the listed reports and upload all voter history. See Election Day Electronic Pollbook: Election Inspector Manual, pages 35-46. This manual contains confidential information about the operation of the EPB and is not available to the general public.

Following these procedures, all record information that is deleted from the devices under R 168.48 has already been retained and preserved either in a paper format or in the QVF and the deleted information is simply a copy of the information that is saved (more securely) elsewhere. At the point when the EPB software and associated files are deleted from the devices under R 168.48, they represent merely extra copies of papers and records that have been securely retained in other formats. EPB software and associated files are deleted from the devices only after a digital or paper copy (or both) has been created and security has been released. Deletion does not occur if there is a pending recount, audit, or contrary order.

Accordingly, as the Department interprets the law, all records required to be retained under 52 USC 20701 are preserved.

The declaratory ruling requests could be interpreted to argue implicitly that even if the municipal clerks print or upload required reports, they nevertheless have an obligation under federal law to keep their local copy of the information as well. The Department notes, however, that section 20701 explicitly allows delivery of records that must otherwise be retained by one custodian to another custodian. 52 USC 20701 does not require retention of multiple copies of the same information; rather, it contemplates only one copy of each required record be preserved. Specifically, 52 USC 20701 states in relevant part:

> [E]xcept that, when required by law, such records and papers *may be delivered to another officer of election* and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, *and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian*. [Emphasis added.]

Even if one interprets the statute's requirement that "all" records and papers must be retained and preserved to mean that, in general, all copies of the same records and papers must be retained, there is an express exception to this requirement where, as here, the law requires the records and papers to be delivered to another officer of election (in this case, the county clerk with respect to the paper pollbook printouts and the Secretary of State with respect to the EPB electronic data). Accordingly, when the EPB records are uploaded to the QVF, the local clerk transfers the retention responsibility for those records to the Department, as permitted by section 20701. The county clerk retains the reports that are printed from the EPB and placed in the physical pollbook and is the custodian responsible for their retention. The Secretary of State is the custodian responsible for the uploaded electronic data. Pursuant to Section 20701, therefore, local clerks retain no responsibility for retention after complying with their duties to upload the EBP and deliver the paper printouts to the county clerk.

The request could also be interpreted to argue implicitly that the EPB software and associated files (that is, the flash drive and its contents) are themselves "records" and therefore must be

retained and preserved in the exact state in which they were used on Election Day. This is a fundamental misunderstanding of the difference between election software and equipment on the one hand, and election records on the other. Software and election equipment may *contain*, but are not *themselves,* records under the ambit of section 20701.

Federal courts recently confirmed this when interpreting the statutory language "all records and papers which come into [an official's] possession" in the context of QVF. In *United States v Benson, et al.*, DOJ argued that the unredacted QVF must be produced to DOJ in part because it was a record relating to registration. However, the federal district court rejected this argument because while QVF relates to registration, it is a software program created by the state, not a registration record that came into the state's possession:

> This interpretation of "come into [their] possession" is bolstered by the next words in the sentence: "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." Each of these terms refers to something that the voter submits or does as part of the registration process. Here, the meaning of "come into possession" is clarified by the rest of the sentence, which indicates the sorts of records covered by the statute: namely, records that election officials receive, rather than create. [819 F Supp 3d 753, 768-769 (WD Mich, 2026), affirmed *United States v Benson,* et al., 179 F4th 470 (CA 6, 2026).]

The court went on to explain that just because materials may have some relationship to the voting process, that does not mean section 20701 requires retention: "nothing in the CRA's text implies an intent to require states to preserve every election-related record they *create.*" *Id.* at 770 (emphasis in original).

In upholding the District Court's decision, the Sixth Circuit Court of Appeals noted that the state "did not acquire, obtain, or receive the qualified voter file from a third party. Instead, Michigan officials created it themselves…. So it is an internally generated electronic database, not a record acquired from an outside source." 179 F4th at 478-479. The Sixth Circuit also determined that the list of records contemplated by section 20701 are those records received by voters, not created by officials:

> And the statutory context confirms our conclusion. Election officers must preserve records that come into their possession relating to "any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Election officers do not create these kinds of records. Rather, they obtain them from third parties—generally voters or prospective voters. [*Id.* at 479.]

Thus, while QVF may contain (and in some contexts, could be considered to be) a record, it is not a record that comes into the possession of the state relating to registration, because it is a

software program. By the same token, the EPB software and associated files are programs that are created by the state and used by clerks and election inspectors to administer elections. The fact that the EPB is used to administer voting on Election Day does not in and of itself render the entirety of the EPB program a record to be retained and preserved under the CRA. Rather, only those records on the EPB that come into the possession of election officials and relate to applications or acts requisite to voting are records covered by the CRA.

This does not mean none of the materials contained on the encrypted flash drive are records subject to retention and preservation – this determination assumes that the specific reports noted above are. But section 20701 requires retention of encrypted flash drive contents (in some form) only to the extent they are records or papers that come into the election official's possession. If they are, they must be retained or preserved (or transferred for retention and preservation as required by law). If they are not, they need not be. The declaratory ruling requests do not identify any specific element of the contents of the encrypted flash drive that are claimed to be records that come into the possession of an election official and are alleged to be unretained by the state's procedures.

This interpretation is supported not only by recent federal court precedent but also the reality of election administration in Michigan and other states for well over a decade. Michigan's current EPB retention practice has spanned not only multiple Michigan Secretary of State administrations but multiple federal administrations.

Even more pertinent, the longstanding practice of storing data externally, deleting the copy of the data remaining on the equipment, and then re-using the equipment is not limited to EPBs and is not limited to Michigan. For years, Michigan and virtually every election jurisdiction in the country has used electronic voting equipment to tabulate ballots. In order to function, tabulators rely upon removable drives (similar to encrypted flash drives used in the EPB). These drives contain the programming for a specific election and ballot style, and on Election Day also store the electronic copies of election results (including cast vote records). After each election, data from these drives is uploaded to an external source for retention and then the copies of the data on these drives are deleted, so that the drives can be used for future elections. This practice is specifically authorized by the Voluntary Voting System Guidelines (VVSG), and has been for more than 20 years. See VVSG 1.0 (2005), page 82 (Removable storage media)[11] VVSG 1.1 (2015), page 92, (Removable storage media)[12] VVSG 2.0 (2021), page 100 (Erasable storage media preparation).[13]

Given this longstanding guidance, it is overwhelmingly unlikely that the practice of using a removable media device to upload data to an external source for retention for the 22-month retention period, deleting the copy of the data on the removable media device, and then re-using the removable media for future elections violates the record retention requirements of

[11] See Voluntary Voting System Guidelines Overview
[12] See VVSG.1.1.VOL.1.FINAL1.pdf
[13] See Voluntary Voting System Guidelines Version 2.0

the CRA. The VVSG is approved by the Election Assistance Commission, a bipartisan federal agency that coordinates with the DOJ and other federal agencies. It is equally implausible that voting equipment used nationwide to administer federal elections for more than two decades would be designed to be used in a way to follow a practice that violates federal law.

The state's EPB retention practice mirrors tabulator data practice almost exactly: a removable drive containing software/programming and data is used to temporarily store the electronic data when it is removed from the operating device (laptop computer or tabulator), the electronic data is uploaded to an external source for retention, and the removable device is then deleted and re-used for future elections. The state's practice falls well within federal requirements.

Further, the ability to re-use equipment from election to election (after records required to be retained are stored separately) is a practical necessity. If an encrypted flash drive must be retained in its exact election-day state, it is difficult to see why the same would not be true of the EPB laptop itself—and for that matter, the Election Day tabulator. Meaning, all jurisdictions in Michigan would have to purchase multiple sets of laptops, flash drives, and tabulators to conduct the multiple elections held during the 2-year election cycle. The costs of doing so likely would far exceed the means of these jurisdictions.[14]

**Additional policy considerations underlie Rule 168.48**

Finally, the Department notes that deleting duplicative copies of the data from the EPB software and associated files serves other practical purposes. Removal of the EPB software and data from the laptops and encrypted flash drives relating to a prior election prevents the confusion that could arise from multiple sets of data, and the technical issues that will arise from multiple versions of the software remaining on the encrypted flash drives and laptops. Attempts to download EPB data for a current election onto a device that already contains data from a prior election will cause the device to malfunction and/or the new data not to download. This means voter information like status of absent voter ballots, precinct changes, or voter registration status may be incorrect or out of date, or that election officials will be unable to use the EPB at all.

Removal of the EPB data from EPB software, encrypted flash drives, and laptops also ensures security of electronic election and voter data. This is because electronic data containing sensitive voter information remaining on thousands of flash drives throughout the state is far less secure than data uploaded to the password-protected and regularly audited QVF. Although

[14] Under a conservative estimate, the cost of a laptop computer and removable drive for each precinct is $1,000, and the cost of a tabulator and removable drive for each precinct is $7,000. That means the costs of these technology elements alone are $8,000 per precinct. With approximately 5,000 precincts in the state, the total statewide cost of this equipment alone is $40,000,000. A two-year election cycle can include up to 7 election dates (not counting special elections), meaning the cost could be up to $280,000,000.

the flash drives are encrypted and should be stored securely during retention, secure disposal of personal identifying information is more difficult to ensure if it is done 22 months later, potentially with a different clerk or staff, as opposed to right after the election.

Therefore, given the plain language of R 168.48 in context with the requirements to preserve the information in paper and electronically in the QVF, the Department finds the requirement in R 168.48 to delete the copy of the information from devices does not conflict with state and federal retention laws. Further, it serves important practical security purposes that help to protect the efficiency and integrity of our elections.

Accordingly, with respect to the third question, so long as the clerk follows the requirements of the ruleset and ensures required reports are printed and uploaded for retention, deletion of the extra copy of the EPB software and associated files does not violate state or federal law. Local clerks' duty to retain and preserve these records ends when local clerks deliver them to other officers of election, namely the Secretary of State and the county clerk. 52 USC 20701.

The foregoing constitutes a declaratory ruling with respect to the questions presented in the July 6, 2026, McQueer request, as well as the related requests.

Sincerely,

Aghogho Edevbie

Aghogho Edevbie
Deputy Secretary of State