UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS,

Plaintiff,

v

JOCELYN BENSON, in her official and individual capacities as the duly elected Secretary of State for the State of Michigan, JONATHAN BRATER, in his official and individual capacities as the duly appointed Director of Michigan Bureau Elections, WAYNE COUNTY ELECTION COMMISSION, and BRENDA GREEN, in her official capacity as the duly elected City Clerk for the City of Highland Park,

Defendants.

No. 26-13454

HON. TERRENCE G. BERG

MAG. KIMBERLY G. ALTMAN

---

**STATE DEFENDANTS' MOTION TO DISMISS**

Defendants Michigan Secretary of State Jocelyn Benson and Michigan Director of Elections Jonathan Brater ("the State Defendants"), by and through their attorneys, move this Honorable Court to dismiss the complaint against them in its entirety under Fed. R. Civ. Proc. 12(b)(1) and (6) for the following reasons:

1. Plaintiff's claims against the State Defendants in their official capacity are barred by the Eleventh Amendment.

2. Plaintiff's claims for money damages against the State Defendants are barred by immunity granted by law.

3. Plaintiff has not demonstrated his Article III standing for declaratory relief where he cannot show causation or redressability.

4. Plaintiff's claims alleging a violation of Procedural Due Process in Counts I fails to state a viable legal claim where the Amended Complaint fails to identify any property or liberty interest at stake.

5. Plaintiff's claims in Counts II and III alleging a violation of Equal Protection "Class of One" theory against the State Defendants fails to state a viable legal claim because he fails to make allegations comparing himself to another person who was similarly situated in all material respects, or otherwise failed to make allegations showing that there was no rational basis for the claimed difference in treatment.

6. Plaintiff's claim of conspiracy under 42 U.S.C. §1983 in Count IV fails to state a viable legal claim because he has not stated a violation of his constitutional rights in the other counts of the Amended Complaint.

7. Plaintiff's claim in Count V alleging that Michigan's Administrative Procedures Act is "void for vagueness" fails to state a viable legal claim challenging the constitutionality of the statute.

8. Plaintiff's claim in Count VI fails to state a plausible claim that the State Defendants' alleged "enforcement" of Mich. Comp. Laws § 24.264 creates a "forward-looking" denial of access to the courts where they do not administer the APA and Section 264 does not block Plaintiff's access to the courts where he did not attempt to file any action that was denied on that basis.

9. Plaintiff's claim raising a Supremacy Clause argument against Mich Admin Code, R. 168.48 fails to state a viable legal claim where the Supremacy Clause does not create a cause of action, where Plaintiff lacks standing to challenge a rule that only pertains to local clerks, where Plaintiff's claim is barred by laches, and where there is no conflict between Michigan's rule and federal law.

10. Concurrence in the relief sought through this motion was sought and denied on October 5, 2026.

## RELIEF REQUESTED

For these reasons, Defendants Michigan Secretary of State Jocelyn Benson and Michigan Director of Elections Jonathan Brater respectfully request that this Honorable Court grant the motion and dismiss the complaint against them in its entirety and with prejudice.

Respectfully submitted,

*/s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants Benson and Brater
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov
P64713

Dated: October 7, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS,

Plaintiff,

v

JOCELYN BENSON, in her official and individual capacities as the duly elected Secretary of State for the State of Michigan, JONATHAN BRATER, in his official and individual capacities as the duly appointed Director of Michigan Bureau Elections, WAYNE COUNTY ELECTION COMMISSION, and BRENDA GREEN, in her official capacity as the duly elected City Clerk for the City of Highland Park,

Defendants.

No. 26-13454

HON. TERRENCE G. BERG

MAG. KIMBERLY G. ALTMAN

---

**STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants Benson and Brater
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov
P64713

Dated: October 7, 2026

# TABLE OF CONTENTS

Page

Relief Requested ....................................................................................3

Table of Contents ..................................................................................... i

Index of Authorities ................................................................................ iii

Concise Statement of Issue Presented ........................................................ viii

Introduction .............................................................................................1

Statement of Facts .....................................................................................2

*AOI Filing Requirements* ..........................................................................2

*Candidate Affidavits of Identity and Proceedings in State Court* ....................3

*Plaintiff's Request for Declaratory Ruling* .....................................................5

*Michigan requires the use of electronic pollbooks for elections.* ....................5

Argument....................................................................................................8

I. Plaintiff's claims against the State Defendants in their official capacity are barred by the Eleventh Amendment. ..........................................8

II. Plaintiff's claims for money damages against the State Defendants in their individual capacity are barred by qualified immunity. .........................10

III. Plaintiff lacks standing where he cannot satisfy Article III's injury-in-fact, causation and redressability components. ..........................................13

IV. Plaintiff's claims against the State Defendants fail to state a plausible claim and must be dismissed. .................................................................21

A. Plaintiff has failed to state a plausible Procedural Due Process claim in Count I of the Amended Complaint. ....................................23

B. Plaintiff has failed to state plausible Equal Protection "Class of One" claims in Counts II and III of the Amended Complaint. ...........26

C. Plaintiff has failed to state a plausible claim for conspiracy under 42 U.S.C §1983 in Count IV of the Amended Complaint. ........30

D. Plaintiff has failed to state a plausible constitutional challenge to Mich. Comp. Laws §24.264 in Counts V or VI of the Amended Complaint. ........................................................................30

E. Plaintiff has failed to state a plausible Supremacy Clause challenge to Rule 168.48 in Count VII of the Amended Complaint. ..............................................................................37

Conclusion and Relief Requested ........................................................................37

# INDEX OF AUTHORITIES

Page

**Cases**

*Alabama v. Pugh,* 438 U.S. 781 (1978) ....................8

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005) ....................22

*Alden v. Maine*, 527 U.S. 706 (1999) ....................8

*Allen v. Wright*, 468 U.S. 737 (1984) ....................14

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................12

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .................... 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................... 21, 22

*Board of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972) ....................24

*Bright v. Gallia Cnty., Ohio*, 753 F.3d 639 (6th Cir. 2014) ....................24

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ....................12

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019) ....................11

*California v. Texas*, 593 U.S. 659 (2021) ....................18

*Carey v. Piphus,* 435 U.S. 247 (1978) ....................23

*Carman v. Yellen*, 112 F.4th 386 (6th Cir. 2024) ....................18

*Carroll v Carman*, 574 U.S. 13 (2014) ....................12

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181 (2d Cir. 2005) ....................14

*Chapman v. United States*, 500 U.S. 453 (1991) ....................34

*Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412 (6th Cir. 1996) ....................9

*Christopher v. Harbury*, 536 U.S. 403 (2002)....................................................35

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)....................15

*Coal Operators and Assocs., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2002)...........13

*Colten v. Kentucky*, 407 U.S. 104 (1972)...............................................................33

*Columbia Natural Resources v. Tatum*, 58 F.3d 1101 (6th Cir. 1995)...................34

*Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997).......................................................11

*Coyne v. Amer. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999)..................................13

*Davet v. City of Cleveland*, 456 F.3d 549 (6th Cir. 2006)......................................34

*Dep't of Educ v. Brown,* 600 U.S. 551 (2023).........................................................16

*Deutsche Bank National Trust Co. v. Tucker*, 621 F.3d 460 (6th Cir. 2010)..........34

*Diamond v. Charles*, 476 U.S. 54 (1986)...............................................................16

*Durham v. Martin*, 905 F.3d 432 (6th Cir. 2018)...................................................17

*Edelman v. Jordan*, 415 U.S. 651 (1974)..................................................................9

*Ex Parte Young*, 209 U.S. 123 (1908).......................................................................9

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)..................19

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013)...........................................35

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ......................................... 33, 34

*Green Party v. Hargett*, 700 F.3d 816 (6th Cir. 2012)............................................33

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).............................................................10

*Hewitt v. Helms*, 482 U.S. 755 (1987).....................................................................21

*Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021)..................................................17

*Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)..........................14

*Int'l Outdoor, Inc. v. City of Southgate*, 556 F. App'x 416 (6th Cir. 2014)............20

*Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) ....................................23

*Key v. Grayson*, 179 F.3d 996 (6th Cir. 1999)..........................................................11

*Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.,* 34 F.4th 988 (11th Cir. 2022)..........................................................................................................16

*Loesel v. City of Frankenmuth*, 692 F.3d 452 (6th Cir. 2012)...................................26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................ 14, 15, 17

*Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 673 (M.D. Tenn.)..........................................................................................................23

*Mullenix v Luna,* 577 U.S. 7 (2015)...........................................................................11

*North Carolina v. Rice*, 404 U.S. 244 (1971) ...........................................................14

*Olim v. Wakinekona*, 461 U.S. 238 (1983) ...............................................................24

*Parsons v. United States DOJ*, 801 F.3d 701 (6th Cir. 2015) ...................................20

*Pearson v. Callahan*, 555 U.S. 223 (2009)......................................................... 10, 12

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)......................................................26

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ............................................15

*Rapp v. Dutcher*, 557 F. App'x 444 (6th Cir. 2014) ..................................................30

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996)..........................................................................................................13

*Rogers v. Stratton Indus.*, 798 F.2d 913 (6th Cir. 1986) ...........................................13

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ....................................9

*Saucier v. Katz*, 533 U.S. 194 (2001) ................................................................ 10, 11

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009)...........................................16

*Taylor v. KeyCorp.*, 680 F.3d 609 (6th Cir. 2012) ....................................................13

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008)............................................................................... 21, 22

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .....15

*Vanderhoef v Dixon*, 938 F.3d 271 (6th Cir. 2019) .....12

*Vill. Of Hoffman Estates v. Flipside, Hoffman Estates Inc.,*455 U.S. 489 (1982).....33

*White v Pauly*, 137 S. Ct. 548 (2017) .....11

*Wilkinson v. Austin*, 545 U.S. 209 (2005).....23

*Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989) .....9

**Statutes**

42 U.S.C. § 1983 ..... 2, 1, 30

52 U.S.C. § 20701 .....1

Mich. Comp. Laws § 168.558.....2, 3

Mich. Comp. Laws § 168.558(1) .....2

Mich. Comp. Laws § 168.558(4) .....2, 3

Mich. Comp. Laws § 168.648.....8

Mich. Comp. Laws § 168.668b(1) .....5

Mich. Comp. Laws § 168.811.....6

Mich. Comp. Laws § 24.201.....7, 18

Mich. Comp. Laws § 24.263.....5, 31

Mich. Comp. Laws § 24.264..... 3, 7, 18, 31

**Rules**

Fed. R. Civ. P. 12(b)(6).....30

Fed. R. Civ. P. 10(c).....37

Fed. R. Civ. P. 12(b)(6).....*passim*

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ........................................................................13

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Whether all of Plaintiff's claims against the State Defendants fail to state a viable claim and must be dismissed under Fed. R. Civ. Proc. 12(b)(1) or (6)?

## INTRODUCTION

Plaintiff Robert Davis raises a variety of claims alleging different theories that his constitutional rights were or are being violated because the Michigan Secretary of State and the Michigan Director of Elections failed to disqualify the Michigan Democratic Party's nominees for the offices of Michigan Attorney General and Michigan Secretary of State. Plaintiff raised a similar claim challenging these candidates' eligibility in state court, which remains pending on appeal. Davis also seeks to challenge parts of Michigan's Administrative Procedures Act (APA), alleging that it is "void for vagueness" and prevented him from filing a lawsuit in state court. Plaintiff further claims that a promulgated rule concerning the retention of data from electronic poll books conflicts with the Civil Rights Act of 1960, 52 U.S.C. § 20701, and is void under the Supremacy Clause. Plaintiff's amended complaint seeks declaratory relief, as well as monetary relief in the amount of $250,000 for each count. Plaintiff does not seek any injunctive relief from the State Defendants, other than to enjoin their "enforcement" of Michigan's APA.

But Plaintiff's claims against the State Defendants fail for multiple reasons.

*First*, the Eleventh Amendment bars Plaintiff's claims against state officials, and state officials acting in their official capacity are not "persons" within the meaning of 42 U.S.C. §1983.

*Second*, Plaintiff's claims for money damages against the State Defendants in their individual capacities is barred by qualified immunity where Plaintiff has not demonstrated any clearly established constitutional rights that the State Defendants would have known at the time of the actions alleged in the amended complaint.

*Third,* Plaintiff lacks Article III standing for his claims seeking declaratory relief where he cannot show causation or redressability.

*Fourth*, all of Plaintiff's claims against the State Defendants fail to state plausible claims and must therefore be dismissed.

## STATEMENT OF FACTS

***AOI Filing Requirements***

The Michigan Election Law requires that candidates for state offices, among others, file an Affidavit of Identity (AOI) with the relevant filing official to obtain ballot access. Mich. Comp. Laws § 168.558(1). The AOI must contain specific information, including "a signed and notarized statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act . . . have been filed or paid[.]" Mich. Comp. Laws § 168.558(4).

Finally, "[a]n officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section, or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section." Mich. Comp. Laws § 168.558(4).

***Candidate Affidavits of Identity and Proceedings in State Court***

On August 31, 2026, Eli Savit and Garlin Gilchrist II filed AOIs as Michigan Democratic Party nominees for attorney general and secretary of state, respectively. (ECF 20, PageID.179, PageID.183, Am. Cmplt., ¶¶38, 50.)

Plaintiff filed challenges to the AOIs of both Savit and Gilchrist with the Michigan Secretary of State on September 1, 2026. (ECF 20, PageID.179, Am. Cmplt., ¶45). Later that same day, Plaintiff filed a lawsuit in the Michigan Court of Claims seeking declaratory and injunctive relief regarding the eligibility of Savit and Gilchrist to appear on the November ballot based on Plaintiff's claims that these candidates made false statements on their AOIs. (ECF 20, PageID.182, Am. Cmplt., ¶49).

The Michigan Court of Claims entered an emergency scheduling order requiring expedited briefing by the Secretary of State to be filed by the following day, September 2, 2026. (ECF 20, PageID.183, Am. Cmplt., ¶53.) On the morning of September 4, 2026, Judge Michael F. Gadola issued a final order

granting the Secretary's motion to dismiss Plaintiff's complaint on the basis that it was barred by Michigan's Campaign Finance Act, Mich. Comp. Laws § 169.215(17). (Defs' Ex 1, 26-187, Order 9/4/2026.) Plaintiff appealed to the Michigan Court of Appeals that same day. (ECF 20, PageID.184-185, Am. Cmplt., ¶58). On September 8, 2026, the Court of Appeals denied Plaintiff's motion to expedite the appeal. (ECF 20, PageID.185, Am. Cmplt., ¶60.) On September 10, 2026, the Michigan Supreme Court denied Plaintiff's application for leave to appeal the order denying his motion to expedite. (ECF 20, PageID.185-186, Am. Cmplt., ¶61-63.) As of the date of this brief, Plaintiff's appeal remains pending in the Court of Appeals.

Because of the timing of Plaintiff's state court lawsuit, the candidates could not have been notified of Davis's AOI challenges before the lawsuit and therefore they did not have an opportunity to respond to the challenges, as permitted under Mich. Admin. Code, Rule 168.6. (Defs' Ex 2, Fracassi Aff., ¶10.) Thus, there could not have been a determination by the Department as to the validity of the AOI challenges before Davis filed his lawsuits.

On September 16, 2026, the Michigan Bureau of Elections notified Plaintiff that, in light of the pending litigation, his AOI challenges to candidates Savit and Gilchrist would be held in abeyance until the litigation and any appeals are resolved. (ECF 20, PageID.191, Am. Cmplt., ¶84.)

***Plaintiff's Request for Declaratory Ruling***

On August 22, 2026, Plaintiff submitted a request with the Department of State for a declaratory ruling concerning the, "applicability of Mich. Admin. Code, R. 168.2(3) as to the 'certification' of candidates for the November 3, 2026 election." (ECF 20, PageID.211-212, Am. Cmplt., ¶157.)

The Department issued a response to Plaintiff's August 22, 2026 request on September 22, 2026. (Defs' Ex 3, MDOS Resp. to 8.22.26 Request.) The response concluded that Plaintiff's request failed to identify a specific filing official, or a specific candidate to whom the rule was allegedly incorrectly applied. (*Id*., p 1.) The Department thus concluded that Plaintiff failed to make a request "as to the applicability to an actual state of facts of a statute administered by the agency or of a rule…of the agency," as required under Mich. Comp. Laws § 24.263. *Id.* "Without any factual assertions, the Department is unable to issue a declaratory ruling." *Id*.

***Michigan requires the use of electronic pollbooks for elections.***

The use of an electronic pollbook (EPB) to process voters on Election Day is a longstanding practice in Michigan and is required under the Michigan Election Law. Mich. Comp. Laws § 168.668b(1) ("Each city or township shall use the electronic poll book software developed, acquired, or approved by the bureau of elections in each election precinct in the city or township on election day to

process voters and generate election precinct reports.") The Department of State promulgated administrative rules to provide further instruction for the use of the EPBs. *See* Mich. Admin. Code R. 168.41–168.48. This includes Rule 168.48, which provides for the deletion of materials from the EBPs and flash drives:

> (1) Subject to subrule (2) of this rule, the electronic pollbook software and associated files must be deleted from all devices by the seventh day following the final canvass and certification of the election, unless a petition for recount has been filed and the recount has not been completed, a post-election audit has been scheduled, or the deletion of the data has been stayed by an order of the court or the secretary of state. If a precinct is selected for an audit, the electronic pollbook software and associated files must be deleted from all devices by the seventh day following completion of the audit.
>
> (2) The electronic pollbook software and associated files must not be deleted from devices until the bureau of elections or county clerk, as applicable, issues the release of security memorandum pertaining to that election.

The Department recently issued a declaratory ruling explaining how the EPBs are used for elections, and how election data is retained and preserved to comply with state and federal retention laws, specifically Mich. Comp. Laws § 168.811 and 52 U.S.C. § 20701. (Defs' Ex 4.) The ruling determined that Rule 168.48(1) complies with both laws. (*Id.*)

Presently, there is a pending state court action raising the same claim as Plaintiff. (Defs' Ex 5, McQueer Compl w/o exs.) The plaintiff clerk in that case seeks to invalidate Rule 168.48 on three grounds; (1) that it is preempted by 52 U.S.C. § 20701, (2) that it exceeds the Secretary's authority and conflicts with

other state statutes, and (3) that it was promulgated in violation of Michigan's Administrative Procedures Act (APA), Mich. Comp. Laws § 24.201 *et seq*. (*Id*., ¶¶ 47-69.) The court granted a temporary restraining order permitting McQueer to retain her EBP materials for the August 4, 2026, primary election. (Defs' Ex 6, 8.13.26 Order.) Under the court's most recent order, Defendants' next brief is due October 7, the date of this Court's hearing on the TRO motion. (ECF No. 22-3, Plf's Brf, PageID.320-342, 9.22.26 Order.)

***Summary of Federal Proceedings Against the State Defendants***

Plaintiff initially filed this federal lawsuit seeking declaratory and monetary relief on September 11, 2026. Contemporaneously with the original complaint, Plaintiff also filed a motion for a preliminary injunction, describing this case as "an election-related matter" and seeking to enjoin the Secretary of State and Director of Elections from "enforcing the provision of Mich. Comp. Laws § 24.264 of the Administrative Procedures Act (APA) requiring the prior approval of the Defendant Secretary of State before Plaintiff can initiate a state-court lawsuit." (ECF 5, PageID.68-78, Mot. for PI; ECF 6, PageID.68-78).

***Timeline of Election Processes***

By the time Plaintiff filed this suit, nearly all ballot-related pre-election processes had concluded. The Secretary had to notify counties of the slate of candidates to appear on the November 3, 2026, ballot by the sixtieth day before the

election, which for this cycle was September 4, 2026, Mich. Comp. Laws § 168.648. (Def's Ex 2, ¶27.) The names of candidates appearing on ballots must be finalized by the same date. (Def's Ex 2, ¶28.) In addition to this being the statutory deadline, this was also the practical deadline to ensure that absent voter ballots were ready to be sent to military and overseas voters starting September 19, 2026 and to all other absentee voters starting September 24, 2026, as required by state and federal law. (Def's Ex 2, ¶28.)

## ARGUMENT

### I. Plaintiff's claims against the State Defendants in their official capacity are barred by the Eleventh Amendment.

Plaintiff's amended complaint expressly states that the Secretary of State and Director of Elections (State Defendants) are being sued in both their official and individual capacities. (ECF 20, PageID.186-187, PageID.202-203, PageID.210-211, PageID.219-221, PageID.232-233, PageID.240, PageID.246-247, Am. Cmplt., ¶¶65-69, 120-124, 151-155, 183-186, 212-215, 237-241, 259-262.)

The Eleventh Amendment to the United States Constitution prevents a state from being sued in federal court without its consent. *Alabama v. Pugh,* 438 U.S. 781, 782 (1978). An unconsenting state is immune from lawsuits brought in federal court by its own citizens, as well as by citizens of another state. *Alden v. Maine*, 527 U.S. 706, 712-713 (1999). The U.S. Supreme Court has consistently ruled that the Eleventh Amendment is a bar to lawsuits against states, state

agencies or state departments unless specifically overridden by an act of Congress, or unless the state has consented to be sued. *Id.*; *Pugh,* 438 U.S. at 782; *Edelman v. Jordan*, 415 U.S. 651 (1974). Further, state officials acting in their official capacity are also not "persons" under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

Applying this well-established framework, Plaintiff's claims against the Secretary of State and the Director of Elections in their official capacities are barred by the Eleventh Amendment. Further, because Plaintiff is not seeking prospective injunctive relief for his claims against the State Defendants (with the exception of Counts V and VI with respect the "enforcement" of the APA, and Count VII's request to enjoin the application of Mich. Admin. Code, R. 168.48, which fail for other reasons described below), the *Ex Parte Young*, 209 U.S. 123 (1908) exception to the Eleventh Amendment does not apply to Plaintiff's claims for declaratory and monetary relief. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015). Also, *Ex Parte Young* does not apply when a defendant state official, "has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Id.* (quoting *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996).. As a result, Plaintiff's claims against the State Defendants in their official capacities are barred by the Eleventh Amendment and must be dismissed under Fed. R. Civ. Proc. 12(b)(6).

## II. Plaintiff's claims for money damages against the State Defendants in their individual capacity are barred by qualified immunity.

Plaintiff's Amended Complaint includes a claim for an "award [of] damages, including punitive damages" against the State Defendants in their "personal capacity." (ECF 20, PageID.186-187, PageID.202-203, PageID.210-211, PageID.219-221, PageID.232-233, PageID.240, PageID.246-247, Am. Cmplt., ¶¶65-69, 120-124, 151-155, 183-186, 212-215, 237-241, 259-262.) Counts I through VII each seek relief in the form of monetary damages "in excess of $250,000." (ECF 20, PageID.201, 209, 218, 231, 238-239, 245-246, 251.) These claims must be dismissed based on qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages when officials have not violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The qualified immunity analysis consists of two distinct inquiries: whether, when taken in a light most favorable to the plaintiff, the facts alleged demonstrate that the defendant violated a constitutional right; and second, even if the court determines that a constitutional deprivation has been properly alleged under these facts, whether the right was clearly established as viewed within the specific context of the facts of the case. *Saucier v. Katz*, 533 U.S. 194, 201–202 (2001). A court may review either prong of the analysis first, and "[i]f

either prong is not met, then the government officer is entitled to qualified immunity." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019).

Under the "clearly established" prong, "[t]he right must have been 'clearly established' not just in an abstract sense, but in a 'particularized' sense." *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Moreover, the plaintiff must show that the right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. If reasonable state officers could disagree about the lawfulness of the conduct in question, immunity must be recognized. *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999).

"'[C]learly established law' should not be defined 'at a high level of generality'" but instead must be "particularized" to the case's facts. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011)). The dispositive question is "whether the violative nature of particular conduct is clearly established." This inquiry of whether the violative nature of a particular act is clearly established "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per

curiam)). The fundamental requirement is that there is a "fair and clear warning" to government officials, *Vanderhoef v Dixon*, 938 F.3d 271, 278 (6th Cir. 2019), meaning that "[a] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right,'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Qualified immunity also covers "mere mistakes in judgment, whether the mistake is one of fact or one of law." *Pearson*, 555 U.S. 227. *See also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'")

But here, Plaintiff has presented no legal authority whatsoever that establishes that the asserted rights to have immediate determinations of last-minute AOI challenges, immediate or even "expedited" determinations of declaratory rulings, to file lawsuits for declaratory judgments regarding the interpretation of administrative rules before first seeking a ruling from the agency, or the retention of EPB data were "clearly established" constitutional rights under existing and prevailing law such that these State Defendants would have understood that their alleged actions would violate Plaintiff's constitutional rights. Accordingly, the

State Defendants are entitled to qualified immunity against Plaintiff's claims for money damages under §1983, and all such claims must be dismissed under Fed. R. Civ. Proc. 12(b)(6).

**III. Plaintiff lacks standing where he cannot satisfy Article III's injury-in-fact, causation and redressability components.**

When plaintiffs lack standing, the Court lacks jurisdiction and dismissal is warranted under Fed. R. Civ. P. 12(b)(1). *Taylor v. KeyCorp.*, 680 F.3d 609, 612–13 (6th Cir. 2012). "[T]he standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into a 'vehicle for the vindication of the value interests of concerned bystanders.' " *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915–16 (6th Cir. 2002) (quoting *Coyne v. Amer. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (internal citations and quotations omitted)).

Here, Plaintiff's claims against the State Defendants are not cognizable where he has not demonstrated his standing to raise them. It is well-established that the plaintiff has the burden of proving jurisdiction in order to survive a motion to dismiss. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)) (emphasis omitted). As this Court is well aware, Article III of the Constitution limits the "judicial Power" of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Standing is one component of

Article III jurisdiction. If a plaintiff lacks Article III standing, then a court has no subject matter jurisdiction to hear the claim. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). District courts have no authority to render advisory opinions, issue opinions on abstract principles, or hear generalized grievances. *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

The "irreducible constitutional minimum" for standing requires (1) an injury-in-fact that is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury will likely be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In the Amended Complaint, Plaintiff has failed to satisfy any of these requirements.

First, an injury-in-fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). The alleged harm "'must affect the plaintiff in a *personal and individual way*.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n. 1)(emphasis added). These elements are "not

mere pleading requirements," but an "indispensable part of plaintiff's case[.]" *Lujan,* 504 U.S. 555, 561–62 (1992).

To meet Article III's "concrete injury" requirement, the "injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340. Both tangible and intangible harms can satisfy this requirement. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). "[T]raditional tangible harms, such as physical harms and monetary harms," "readily qualify as concrete injuries under Article III." *Id.* In the Amended Complaint, Plaintiff did not allege any bodily harm or financial loss. So, Plaintiff could only be asserting an intangible harm, which requires more analysis.

To identify intangible harm for Article III purposes, the Court in *Spokeo* found it useful to consider whether the asserted harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 578 U.S. at 340–41. Examples include "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. Some constitutional harms, such as free speech or free exercise violations, may also qualify. *Id.* (citing *Spokeo*, 578 U.S. at 340 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993))). The U.S. Supreme Court has also clarified that, "we have never held a litigant who asserts [a procedural] right is excused from demonstrating that it has a 'concrete interest that

is affected by the deprivation' of the claimed right." *Dep't of Educ v. Brown,* 600 U.S. 551, 562 (2023)(quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 496-497 (2009)).

But Plaintiff's claims against the State Defendants in the Amended Complaint fail to demonstrate any concrete, particularized harm to him. Instead, Plaintiff's complaint generally complains that his AOI challenges or request for declaratory ruling were not decided quickly enough, or—in Count VII—that voter data might not be retained in the manner he believes to be required by federal law, but his allegations fail to show how he was actually harmed as a result.

Further, to the extent that Plaintiff asserts an interest in the law being followed or the proper administration of elections, he fails to state an injury that is personal to him. Federal courts have repeatedly rejected claims to standing based on such subjective fears or abstract concerns regarding the integrity of elections. *See Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.,* 34 F.4th 988, 993 (11th Cir. 2022) ("purely psychic injuries, like disagreeing with government action, are not concrete, so they do not give rise to standing.") (citing *Diamond v. Charles*, 476 U.S. 54, 67 (1986); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (a plaintiff who is "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large ... does not state an Article III case or

controversy."); *Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (generalized grievance where "plaintiffs asserted ... that drive-thru voting hurt the 'integrity' of the election process"). Simply put, Plaintiff has failed to allege any concrete injury that is specific to him. As a result, he lacks Article III standing to raise these claims against the State Defendants.

Next, Plaintiff has failed to make allegations showing that the State Defendants are the cause for any possible injury to him. "To establish causation, a plaintiff must show a 'causal connection between the injury and the conduct complained of,' or, in other words, that the injury alleged is 'fairly . . . trace[able] to the challenged action of the defendant.'" *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018). The injury alleged cannot be the result of "the independent action of some third party." 504 U.S. at 560.

While Counts V, VI, and VII request injunctions preventing the State Defendants from "enforcing" Michigan's APA and Rule 168.48, they fail to demonstrate causation between any act by the State Defendants and any claimed injury to Plaintiff. He had to allege specific facts showing a causal connection between his injury and the State Defendants' conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[I]if a plaintiff's injury does not derive from the purportedly unlawful conduct or provision, but instead from some other source, a plaintiff will lack standing because the injury will not be 'fairly traceable

to enforcement of the allegedly unlawful provision.' " *Carman v. Yellen*, 112 F.4th 386, 399 (6th Cir. 2024) (quoting *California v. Texas*, 593 U.S. 659, 679 (2021)).

First, with respect to Count V and VI, Plaintiff is simply barking up the wrong tree. Plaintiff does not cite any authority vesting these State Defendants with the duty or authority to "enforce" Michigan's Administrative Procedures Act, Mich. Comp. Laws § 24.201, *et seq*., generally or Mich. Comp. Laws § 24.264 specifically. Rather, the plain text of § 64 provides simply:

> Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule, including the failure of an agency to accurately assess the impact of the rule on businesses, including small businesses, in its regulatory impact statement, may be determined in an action for declaratory judgment if the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his or her principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously. This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted.

Nothing in this section describes any duty assigned to the Secretary of State or the Director of Elections.[1] Instead, whether Plaintiff complied with this section would be something raised through a motion and ruled upon by the court once Plaintiff filed an action in the appropriate court. In short, Plaintiff has not shown that any injury arising from § 64 is "fairly traceable" to the State Defendants' actions. And, to whatever extent Plaintiff's claims might rely on the rulings of state court judges applying § 64 of the APA, such claims could only assert an injury caused by state court judgments, which would be precluded by the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 291 (2005) ("[T]his Court's appellate jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction.")

Second, Count VII fails to demonstrate any actual injury at all, let alone one caused by the State Defendants. As argued further below, Plaintiff lacks standing to raise a challenge to Mich. Admin. Code, R. 168.48 at all, where the rule only applies to clerks and their staff, and neither imposes any duty upon nor restricts the actions of ordinary citizens like Plaintiff. Instead, Plaintiff's claim is based upon allegations that he is "concerned" that unspecified data might be deleted. (ECF 20,

[1] Insofar as neither the Secretary of State nor Director of Elections are charged with administering the APA, it is arguable whether they are even proper parties to defend the constitutionality of the Act.

PageID.249-250, ¶ 276). That is insufficient to establish a concrete injury, and so Plaintiff has failed to make allegations showing that he has suffered any injury that is fairly traceable to the State Defendants' actions.

Lastly, to meet the redressability requirement for constitutional standing, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" by the court. *Int'l Outdoor, Inc. v. City of Southgate*, 556 F. App'x 416, 418–19 (6th Cir. 2014). That cannot happen here.

Counts I, II, III, and IV do not seek any injunctive relief, and request only declarations that the State Defendants violated Plaintiff's constitutional rights and an award of monetary damages. But for the reasons discussed above, Plaintiff's claims for money damages are barred by the Eleventh Amendment and the State Defendants' entitlement to qualified immunity. That leaves only Plaintiff's requests for declaratory relief, disconnected from any substantive remedy. However, under Article III, the relief sought by a plaintiff also "must provide redress for the injury." *Parsons v. United States DOJ*, 801 F.3d 701, 715 (6th Cir. 2015). "Redress is sought *through* the court, but *from* the defendant. . . . The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Id.*

(quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). Plaintiff's Amended Complaint does not allege that the declarations are necessary for any purpose, or that they would result in any concrete change in his circumstances. Instead, the declarations Plaintiff seeks would have no effect on him and would therefore be akin to advisory opinions. Because the requested declarations would not redress any claimed injury, all of Plaintiff's claims for declaratory relief fail to satisfy the requirement for redressability. Plaintiff lacks standing to bring these claims for declaratory relief on their own, and so they must be dismissed.

Because Plaintiff has not demonstrated an injury-in-fact, redressability or causation, he has failed to establish standing to raise his claims against the State Defendants, and so those claims must be dismissed under Fed. R. Civ. Proc. 12(b)(1).

## IV. Plaintiff's claims against the State Defendants fail to state a plausible claim and must be dismissed.

When considering a 12(b)(6) motion to dismiss for failure to state a claim, although the Court should presume that all well-pleaded material allegations of the complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). Moreover,

the court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits*, 552 F.3d at 434.

To survive dismissal, the plaintiff's claim must be plausible. *Bell Atl. Corp.,* 550 U.S. at 555. The inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). However, "a legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atl. Corp.*, 550 U.S. at 555. Thus, in evaluating the sufficiency of a plaintiff's pleadings, this Court may make reasonable inferences in the non-moving party's favor, "but [this Court is] not required to draw [P]laintiffs' inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. (quoting *Bell Atl. Corp.*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."''" *Id*. (citation omitted).

### A. Plaintiff has failed to state a plausible Procedural Due Process claim in Count I of the Amended Complaint.

A procedural due process analysis contains two questions: "the first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259 (1978).

For the first question, a protected right may arise from the Constitution itself, or through "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "The range of deprivations implicating a cognizable state-created liberty interests is narrow." *Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 673, 686 (M.D. Tenn.), *aff'd on other grounds* 978 F.3d 378 (6th Cir. 2020); *see also id.* at 687 ("[I]t is no small thing for a court to say that something is a cognizable liberty interest, such that procedural due process is applicable.").

Similarly, "Property interests...are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or

understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 656 (6th Cir. 2014), cert. denied, 135 S. Ct. 1561 (2015) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)).

As the U.S. Supreme Court has previously held:

> "[a] liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality." Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.

*Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1100-1101 (1982)).

Here, Plaintiff has not identified any legal authority recognizing a protected liberty or property interest in filing a challenge to candidate AOI's. For that matter, Plaintiff also cites no authority holding that there is a liberty interest in having a determination issued in response to such challenges immediately or within the time a plaintiff demands. The State Defendants are further unaware of any cases in the Sixth Circuit where a court has recognized a liberty interest at stake in these activities. While state law may allow citizens to initiate actions in state court to enforce the Michigan Election Law, there is simply no authority recognizing a protected liberty or property interest in such claims under federal law or the U.S. Constitution.

Moreover, even if Plaintiff could establish a protected interest that invoked Procedural Due Process guarantees, the allegations of the amended complaint fail to demonstrate any deficient procedures. Again, Plaintiff's challenges to the AOIs of candidates Savit and Gilchrist were filed only hours before his state court litigation, which remains pending at the time of this motion. It would hardly have been possible for the State Defendants to even notify the candidates of Plaintiff's challenges and receive any response from them (as they are allowed to do under Mich. Admin. Code, R. 168.6) in that time, let alone reach a final determination. And, as memorialized in the Bureau of Elections' September 16, 2026 letter, that still-pending litigation necessitated holding Plaintiff's AOI challenges in abeyance. (ECF 20, PageID.191.) That letter was sent only six days after the Michigan Supreme Court denied Plaintiff's application for leave, at which point it was then clear that there would not be a resolution of Plaintiff's litigation on an expedited basis. So, it was Plaintiff's decision to pursue a state-court lawsuit that has delayed determination of his AOI challenges, and not any act of the State Defendants. Plaintiff does not allege or explain what the State Defendants could have done differently in light of his state-court litigation.

Because Plaintiff has failed to identify a protected liberty or property interest, and because he has not made allegations showing any constitutionally

deficient procedures, he has failed to state a plausible Procedural Due Process claims and Count I must be dismissed under Fed. R. Civ. Proc. 12(b)(6).

**B. Plaintiff has failed to state plausible Equal Protection "Class of One" claims in Counts II and III of the Amended Complaint.**

Counts II and III each attempt to raise an Equal Protection claim based on a "class of one" theory," with Count II alleging that his AOI challenges to candidates Savit and Gilchrist were not determined before the statutory certification deadline, and Count III premised upon allegations that his August 22 declaratory ruling request was answered slower than others. Neither claim has merit.

"[A] plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012). "[T]he Supreme Court has recognized that a 'class-of-one' may bring an equal protection claim where the plaintiff alleges that: (1) he or 'she has been intentionally treated differently from others similarly situated'; and (2) 'there is no rational basis for the difference in treatment.' " *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Neither Count II nor Count III satisfy the first element. A plaintiff must allege that he is similarly situated to the comparator party(ies) "in all material respects." *Loesel*, 692 F.3d at 462. See also *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). First, with respect to Plaintiff's AOI challenges under Count II,

Plaintiff does not identify any similarly situated comparators. As discussed above, Plaintiff chose to file a lawsuit in state court before any determination could have been made as to his challenge and thereby short-circuited the AOI challenge process. Plaintiff does not allege that the challenger to whom he compares himself—Andrea Ellen Karpinski—filed a lawsuit demanding declaratory and mandamus relief *before* the State Defendants could make a determination on the challenge. See ECF 20, PageID.203-204, Am. Cmplt, ¶127-129. Plaintiff also does not allege that any other AOI challenges were determined *after* a lawsuit had been filed against the State Defendants regarding the same issues, and while that lawsuit remained pending.

Next, with regard to Plaintiff's August 22, 2026 declaratory ruling request, Plaintiff similarly fails to identify any similarly situated requests that were treated differently. Instead, Plaintiff points to two requestors: Attorney Dan Wholihan and Bridgewater Township Clerk Michelle McQueer. But Plaintiff's comparison misses the mark both times. Plaintiff admits that Mr. Wholihan's declaratory ruling request was submitted on November 27, 2023 and that the Department issued a determination on February 16, 2024. (ECF 20, PageID.213-214). So, by Plaintiff's own admission, the Department responded *three months* after Wholihan's request. But the Department responded to Plaintiff's August 22, 2026 request on September 22—barely a month after Plaintiff's request. To the extent

Plaintiff seeks to compare himself to Wholihan based on the determination coming before the candidate filing deadline, he is not similarly situated where Wholihan filed his request months in advance of that deadline and Plaintiff filed his request less than two weeks before the September 4 certification deadline.

Plaintiff's comparison to Clerk McQueer is also inapt. While Plaintiff refers to McQueer's July 6, 2024, request for declaratory ruling, he omits a considerable portion of the procedural history in that matter. (ECF 20, PageID.215). As noted by Court of Claims Judge Michael J. Riordan in his September 22, 2026 opinion and order, McQueer—and others—originally submitted a declaratory ruling request on October 25, 2025, which was one day before the rule took effect. (Ex 7, 9/22/2026 Order, p 4). The Department responded to that request just over a month later, on November 25, 2025, stating the request could not be answered until after related Help America Vote Act complaints had been concluded. (Ex 7, 9/22/2026 Order, p 5). That span of time is essentially identical to the time in which the Department responded to McQueer then filed another request on July 6, 2026. (Exhibit 7, 9/22/2026 Order, p 6). The Department ultimately issued a ruling on the October 22, 2025 and July 6, 2026 declaratory ruling requests on September 30, 2026. At best, McQueer's July 6 request was determined almost three months after it was submitted. So, it is not clear on what facts Plaintiff claims that McQueer received more expeditious treatment than Plaintiff did, where

his August 22 request was answered in one month. The facts in McQueer are simply not at all similar.

Plaintiff is not similarly situated to either Wholihan or McQueer, and if anything Plaintiff received a response to his August 22 request in roughly the same amount of time as they did—if not sooner. As a result, his claims asserting that he has been treated differently from them as a "class of one" simply fail.

Moreover, even if Plaintiff could show that he was similarly situated to the other individuals to whom he seeks to compare himself, there are readily-apparent reasons for any superficial differences in treatment. For example, regarding Plaintiff's AOI challenges and why they were not determined before the deadline to certify candidates, Plaintiff fails entirely to recognize that his challenges were not filed in the same time relative to that deadline. Karpinski's AOI challenge was filed on April 28 against a candidate seeking to appear on the August primary. In contrast, Plaintiff's challenge was filed 3 days before the September 4 deadline to certify candidates for the November general election. While it is true that candidates Savit and Gilchrist filed their AOIs as Michigan Democratic Party nominees for attorney general and secretary of state, respectively, on August 31, 2026, this only underscores that the situation is not at all similar to that with Karpinski's challenge.

Plaintiff has thus failed to state plausible equal protection claims and Counts II and III must be dismissed under Fed. R. Civ. Proc. 12(b)(6).

**C. Plaintiff has failed to state a plausible claim for conspiracy under 42 U.S.C §1983 in Count IV of the Amended Complaint.**

"A claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014) (citing *Bauss v. Plymouth Twp*., 233 Fed. Appx. 490, 500 (6th Cir. 2007)).

For the reasons already stated above, however, Plaintiff has failed to raise any cognizable protected rights or valid constitutional claims in Counts I through III. Consequently, there can be no "conspiracy" to violate Plaintiff's constitutional rights where the rights claimed are either not recognized under the law, or have not been violated in the manner alleged. As a result, Count IV fails to state a claim for which relief may be granted, and so must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**D. Plaintiff has failed to state a plausible constitutional challenge to Mich. Comp. Laws §24.264 in Counts V or VI of the Amended Complaint.**

In Count V of the Amended Complaint, Plaintiff alleges that Mich. Comp. Laws §24.264 is "void for vagueness" because it does not define a time period for an agency to respond to a request for a declaratory ruling. (ECF 20, PageID.232-239). Count VI invokes 42 U.S.C. §1983, similarly refers to Mich. Comp. Laws §

24.264 and its requirement to first request a declaratory ruling from the agency, and vaguely alleges that the State Defendants actions have "denied Plaintiff 'effective' and 'meaningful' access to the court," because the September 4, 2026 deadline for certifying candidates for the November general election has already passed. (ECF 20, PageID.239-257). The title for Count VII and the relief requested for that count both refer to "the forward-looking doctrine," but there are no allegations addressing the doctrine, citing any authority, or explaining its application to this claim. *Id*. But, however they are framed, Plaintiff's challenge to the validity or application of § 64 of Michigan's APA simply fails to state a plausible claim.

As a threshold matter, Plaintiff's claims fail outright where the Department of State already issued a determination regarding his August 22, 2026 request, and did so within a month of the request. By almost any measure, that is reasonably expeditious for a government agency. It is also worth noting that while Plaintiff repeatedly refers to "expedited" requests for declaratory rulings, there is no such thing. There is ***no*** provision for accelerated or "expedited" requests for declaratory rulings in the APA. While Plaintiff might subjectively expect an instant or immediate response, he is not entitled to one under Michigan law.

Indeed, declaratory rulings are not intended to be informal or impulsive answers to spur-of-the-moment questions. Instead, Mich. Comp. Laws § 24.263

provides that declaratory rulings are supposed to determine, "the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency," and that the rulings are *binding* on the agency unless set aside by a court. Agencies must, as a result, be afforded a reasonable amount of time to review the request and consider the circumstances before making a determination.

But more pointedly, Plaintiff's attacks are misdirected. The State Defendants do not administer the APA, and instead they—like all state officials—are bound to follow it. Plaintiff's Amended Complaint cites no law or authority making the Secretary of State or Director of Elections responsible for "enforcing" any part of the APA generally, or § 64 specifically. More pointedly, the portion of the statute with which Plaintiff appears to take issue—the requirement that: "An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously"—imposes no duty upon or grant any authority to the Secretary or Director.

Simply put, if Plaintiff believed that the Department of State was not responding "expeditiously" to his request for a declaratory ruling, he was free to file an action for declaratory judgment with the state courts making that argument. There would have been nothing the State Defendants could have done to stop him from doing so and could have at most merely made an argument to the court in

opposition. But Plaintiff's claim presumes that a court would reject an argument that the agency did not act "expeditiously," without his having made it to the state courts. But Plaintiff does not offer any allegation explaining why such an argument would have been "futile" if—as he claims in Count VII—the State Defendants were dilatory in order to prevent him from bringing suit. Consequently, Plaintiff has failed to state a plausible claim either that § 64 of the APA or any actions of the State Defendants obstructed or prevented him from filing an action in the state courts for declaratory relief.

But ultimately, Plaintiff's claims simply fail under the legal theories Plaintiff raises. First, Plaintiff claims that § 64 is "void for vagueness." The Sixth Circuit has held that a statute should not be struck as facially vague only if the plaintiff has 'demonstrated that the law is impermissibly vague in all of its applications." *Green Party v. Hargett*, 700 F.3d 816, 825 (6th Cir. 2012) (quoting *Vill. Of Hoffman Estates v. Flipside, Hoffman Estates Inc.,*455 U.S. 489, 497 (1982).) The purpose of this doctrine is, "to ensure that both those who enforce a statute and those who must comply with it know what is prohibited," and not "to convert into a constitutional dilemma the practical difficulties of crafting a law that is general enough to take into account a variety of human conduct yet specific enough to provide fair warning." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) and *Colten v. Kentucky*, 407 U.S. 104, 110 (1972) (internal quotation

marks omitted)). Federal courts must construe challenged state statutes, whenever possible, so as "to avoid constitutional difficulty." *Id.,* (quoting *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006)). Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality. *Id.* (quoting *Chapman v. United States*, 500 U.S. 453, 464 (1991)).

Courts apply a two-part test to determine whether a law is unconstitutionally vague: first, the law must give a person of "ordinary intelligence a reasonable opportunity to know what is prohibited, so that [they] may act accordingly[;]" and second, the standards of enforcement must be precise enough to avoid "involving so many factors of varying effect that neither the person to decide in advance nor the jury after the fact can safely and certainly judge the result." *Grayned*, 408 U.S. at 108 (internal citation omitted); *Columbia Natural Resources v. Tatum*, 58 F.3d 1101, 1105 (6th Cir. 1995). Also, any words not expressly defined in the statute are interpreted according to their ordinary, contemporary, and common meaning. *Deutsche Bank National Trust Co. v. Tucker*, 621 F.3d 460, 463 (6th Cir. 2010).

Count V fails entirely under this standard. Most notably, the phrase, "the agency has denied the request or failed to act upon it expeditiously," does not impose any duty or obligation on the Plaintiff. Instead, it is a limit on the agency designed to avoid the precise scenario imagined by Plaintiff's allegations—an agency refusing to issue a declaratory ruling in order to block a legal action.

Merriam-Webster defines "expeditious" as meaning, "marked by or acting with prompt efficiency."[2] Although "prompt efficiency" may vary depending on the circumstances of a request, that is likely by design, and Plaintiff cites no authority requiring that every word in a statute have only one meaning. A person of ordinary intelligence is more than capable of having an understanding of how "expeditious" may apply in a given set of circumstances, and a person can file an action for declaratory judgment in state court if they believe an agency has exceeded it. So, Plaintiff has not stated a plausible claim that § 64 is unconstitutionally vague, and Count V must be dismissed.

Count VI, in turn, purports to raise a claim based upon the "forward-looking doctrine." The Amended Complaint, however, cites no authority as the basis for the doctrine, or how it could or should apply to this case. But, in *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013), the Sixth Circuit described "forward-looking" claims alleging a denial of access to the Courts, where "the plaintiff accuses the government of creating or maintaining some 'frustrating condition,' that stands between the plaintiff and 'the courthouse door.'" *Id*. The Sixth Circuit quoted *Christopher v. Harbury*, 536 U.S. 403, 413 (2002), which itself described such claims as a category of denial-of-access which, "claim[] that systemic official

---

[2] *See* https://www.merriam-webster.com/dictionary/expeditious (last accessed October 6, 2026).

action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." The examples the Supreme Court used was prisoner-litigation seeking access to a law library or simply a lawyer, of challenging fees that a poor plaintiff cannot afford to pay. *Id.* The Supreme Court then summarized, stating, "the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

Again, Plaintiff's allegations fail to meet this standard. There was no official action blocking Plaintiff's access to the courts, and Plaintiff was able to file any action at any time. Instead, Plaintiff's claim is based on a belief that—if he had filed an action for declaratory relief—his claim might be rejected by the court based on whether he had exhausted the remedies available to him under the APA. But that claim is entirely speculative, and Plaintiff could have made the same allegations to a state court asserting that the Department had delayed, that there was a need for urgency, and why under those circumstances the Department had failed to act on his request "expeditiously." Plaintiff did not do so, and so he cannot now establish that there was any official obstacle when he made no attempt

to file an action. Moreover, Plaintiff has not made allegations showing that there is a "class of plaintiffs" being denied "an opportunity to litigate." Plaintiff had the opportunity, he simply chose not to take it.

So, Plaintiff has also failed to state a plausible "forward-looking" denial of access to courts claim and Count VI must be dismissed under Fed. R. Civ. Proc. 12(b)(6).

### E. Plaintiff has failed to state a plausible Supremacy Clause challenge to Rule 168.48 in Count VII of the Amended Complaint.

Pursuant to Fed. R. Civ. Proc. 10(c), the State Defendants adopt and incorporate by reference here the arguments raised in their response to Plaintiff's emergency motion for temporary restraining order as to the merits of Count VII of Plaintiff's Amended Complaint, as well as the pertinent exhibits. The pertinent arguments are found at ECF 37, PageID.648-660, and the exhibits are at ECF 37, PageID.665-770.

For the same reasons presented in that earlier brief, Plaintiff has failed to state a plausible claim for relief that Mich. Admin. Code, R. 168.48 is preempted by the Supremacy Clause, and so Count VII must be dismissed under Fed. R. Civ. Proc. 12(b)(6).

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants Michigan Secretary of State Jocelyn Benson and Michigan Director of Elections Jonathan Brater respectfully request that this

Honorable Court grant the motion and dismiss the complaint against them in its entirety and with prejudice.

Respectfully submitted,

*/s/Erik A. Grill*

Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants Benson and Brater
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov
P64713

Dated: October 7, 2026

**PROOF OF SERVICE**

I hereby certify that on October 7, 2026, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to all parties and counsel of record.

*/s/Erik A. Grill*

Erik A. Grill (P64713)
Assistant Attorney General