# EXHIBIT 7

# STATE OF MICHIGAN

# COURT OF CLAIMS

MICHELLE McQUEER, individually and in her capacity as Bridgwater Township Clerk,

Plaintiff,

v

Case No. 26-000172-MZ

JOCELYN BENSON, in her official capacity as Michigan Secretary of State, JONATHAN BRATER, in his Official Capacity as Director of Elections, and MICHIGAN DEPARTMENT OF STATE,

Hon. Michael J. Riordan

Defendants.

_______________________________________ /

OPINION AND ORDER DENYING DEFENDANTS' 8/20/26 AND PLAINTIFF'S 8/24/2026 MOTIONS FOR SUMMARY DISPOSITION

Plaintiff, Michelle McQueer, is the Clerk of the Township of Bridgewater. After filing two requests for declaratory rulings with (and not receiving responses from) defendants—Secretary of State (SOS) Jocelyn Benson, Director of the Bureau of Elections (BOE) Jonathan Brater, and the Michigan Department of State (MDOS)—regarding the application of the newly promulgated Mich Admin Code, R 168.48 (the Rule), which requires local clerks to delete electronic pollbook (EPB) software and associated files within seven days after an election is certified, plaintiff filed this lawsuit on August 12, 2026, challenging the validity of R 168.48. Plaintiff argues that the

Rule conflicts with first 52 USC 20701 and 20702 of the federal Civil Rights Act (CRA),[1] which collectively require a state's preservation of voting records for 22 months after the relevant election involving federal offices and make the willful destruction of those records a federal offense; second MCL 168.811 of the Michigan Election Law (MEL), which prohibits destruction of election records and federal-office ballots for 22 months after an election; and third Const 1963, art 2, § 4(1)(*l*), which requires that election officials keep ballots and other election material secure during an audit.

The Court is considering this election-related matter on an expedited basis. The parties filed cross motions for summary disposition, the Court ordered supplemental briefing, and then the Court heard oral argument on September 16, 2026. In the meantime, following the BOE's memorandum directing all local clerks to delete the EPB by August 31, 2026, the Court entered a temporary restraining order (TRO) directing plaintiff to maintain the EPB from the August 4, 2026 primary and preventing the enforcement of Rule 168.48 against her pending the resolution of this suit. This TRO will remain in place until further order of the Court.

For the reasons stated in this Opinion and Order, the Court DENIES the parties' motions for summary disposition at this time. However, the parties must notify the Court within 24 hours of defendants' issuance of the declaratory rulings resolving the requests made by plaintiff on October 22, 2025, and July 6, 2026. Also, as noted, the TRO prohibiting the enforcement of Rule 168.48 against plaintiff will remain in place.

---

[1] These provisions of the Help America Vote Act of 2002 (HAVA), Pub L 107–252, Title III, § 302, 116 Stat. 1706 (originally codified at 42 USC 15301 *et seq*.), were originally located at 42 USC 1974 and 1974a, before being transferred to a chapter of the CRA

## I. BACKGROUND

Under Michigan Election Law, MCL 168.1 *et seq*., each city or township must use EPB software approved and provided by the BOE in each election precinct on election day to process voters and generate precinct reports. MCL 168.668b(1). Plaintiff describes the EPB as "software on a laptop computer that election inspectors under [the clerk's] supervision use to process each voter at the polls, including recording the ballot number and ballot style issued to each voter." Township and city clerks download the EPB software from the MDOS-maintained qualified voter file (QVF) software shortly before the election. MCL 168.668b(2), (3). According to defendants, the election officials in each jurisdiction download current voter data from the QVF onto an encrypted flash drive, which populates the data into the EPB on one laptop per precinct, which is set in "airplane mode" for security purposes. Each precinct also maintains a backup paper pollbook.

According to defendants, after an election is complete, a voter history file is uploaded from the EPB into the QVF to update voter history. According to plaintiff, once an EPB and its associated files are deleted, the process is irreversible, and the electronic records in the form used in the EPB cannot be recovered. However, defendants maintain that the data from the EPB can be accessed from the QVF using specific reporting data. They argue that removal of EPB data from flash drives and laptops following each election ensures security of voter information and aids in preventing multiple data sets.

For over a decade, defendants provided "administrative guidance" requiring the deletion of EPBs following an election. In early March 2025, to address changes in the election process prompted by a constitutional amendment allowing early in-person voting in Michigan, MDOS submitted a request for rulemaking to the Michigan Office of Administrative Hearings and Rules

(MOAHR). MOAHR approved the request for rulemaking on March 6, 2025, a regulatory impact statement was filed in April 2025, and several draft rules were approved on May 27, 2025. A notice of public hearing was published in several newspapers but failed to mention that the proposed rules would require clerks to delete EPB files and software within seven days of election certification. Following a public hearing, the draft rules were transmitted to the Joint Committee on Administrative Rules (JCAR), on July 28, 2025. As a result of JCAR's inaction, the draft rules were deemed approved and became effective immediately upon filing with the SOS on October 23, 2025.

Relevant to this matter, the newly promulgated Rule 168.48 provides:

> (1) Subject to subrule (2) of this rule, the [EPB] software and associated files must be deleted from all devices by the seventh day following the final canvass and certification of the election, unless a petition for recount has been filed and the recount has not been completed, a post-election audit has been scheduled, or the deletion of the data has been stayed by an order of the court or the [SOS]. If a precinct is selected for an audit, the [EPB] software and associated files must be deleted from all devices by the seventh day following completion of the audit.
>
> (2) The [EPB] software and associated files must not be deleted from devices until the [BOE] or county clerk, as applicable, issues the release of security memorandum pertaining to that election.

On October 22, 2025—one day before the Rule took effect—plaintiff and six other local clerks and deputy clerks joined the Speaker Pro Tempore of the Michigan House of Representatives, Rachelle Smit, in requesting from defendants a declaratory ruling under Section 63 of the Administrative Procedures Act (APA), MCL 24.263, on the following question: "How can a local clerk comply with both proposed rule R 168.48's requirement that [EPBs] be deleted shortly after certification of a given election and 52 USC 20701's requirement that election records be retained for twenty-two months?"

On November 25, 2025, the BOE responded to the declaratory ruling request, stating, "The [MDOS] will consider requests regarding this rule after the [MDOS's] related HAVA complaints are concluded." The mentioned HAVA complaints were filed on September 11, 2025 and October 8, 2025 by private citizens—Stephanie Beltnick and Shelly Lake—under an enforcement mechanism outlined in 52 US 21112(a), allowing a person who believes there has been a violation of HAVA's Title III to file a complaint under state-based administrative complaint procedures. It is important to note that plaintiff was not a party to the HAVA complaints or the subsequent review process. According to defendants, both private-citizen HAVA complaints alleged that the instruction to delete the EPB data following an election violates the federal 22-month retention requirements (an issue that is substantially similar to the issue raised in this case regarding 52 USC 20701). SOS Benson is the respondent to those complaints and under the administrative review process adopted by MDOS, Director Brater adjudicates the complaints.[2]

According to defendants, there have been significant delays in resolving the private-citizen HAVA complaints because the complainants filed a federal lawsuit challenging Michigan's administrative HAVA-review process, *Beltinck v Benson*, United States District Court for the Western District of Michigan Case No. 25-cv-1374. That suit was ultimately dismissed on April 8, 2026, for lack of jurisdiction. Thus, the HAVA hearing before Director Brater was not conducted until July 9, 2026. Director Brater ultimately issued his final decision in that matter on August 31, 2026.

---

[2] Defendants implemented an isolation wall between staff designated to assist the SOS in responding to the HAVA complaints and staff assisting Director Brater with adjudicating those complaints.

In the meantime, on July 6, 2026, plaintiff, in her individual capacity, submitted a second request for a declaratory ruling from defendants pursuant to MCL 24.263. Plaintiff outlined a set of facts for consideration and requested an administrative declaratory ruling on the following questions:

> 1. Does R 168.48(1) require me to delete the [EPB] software and its associated electronic files for the August 4, 2026 primary by the seventh day following the final canvass and certification of that election?
>
> 2. May I instead retain those electronic files for the retention period described in MCL 168.811 and 52 USC 20701 without violating R 168.48?
>
> 3. If the rule requires deletion on these facts, how do I comply with both R 168.48 and the retention requirements of MCL 168.811 and 52 USC 20701?

Plaintiff also requested that the SOS stay the deletion of the EPB for the August 4, 2026 primary in Bridgewater Township pending the resolution of her declaratory ruling requests. Plaintiff recognized that "[t]he timing is short," and acknowledged that the Board of County Canvassers was required to certify the primary within 14 days after the election and that Rule 168.48 required deletion of the EPB within seven days after certification. Plaintiff asked for a response by July 27, 2026. According to defendants, plaintiff's request "did not make its way to the relevant staff at the [MDOS], and only became known upon the filing of Plaintiff's complaint" in this Court. However, defendants represent that the request would have been stayed pending resolution of the HAVA complaints, just as with the October 22, 2025 request.

The 2026 primary election occurred on August 4. The Washtenaw County Board of County Canvassers certified the primary results on August 12, 2026. The Court takes judicial notice of the fact that the results were certified by the Board of State Canvassers at its August 24, 2026 meeting. The BOE issued a memorandum on August 26, 2026, directing clerks to delete the EPBs for the August 2026 primary on August 31. Regardless of that BOE memo, this Court has

required plaintiff to preserve the EPB and defendants to refrain from enforcing the EPB-deletion requirement against her until further order of the Court.

On the same day the County Board of Canvassers certified the results, and having not received responses from defendants regarding her declaratory ruling requests, plaintiff filed this three-count lawsuit on August 12, 2026, requesting a series of declaratory judgments from the Court. As noted above, Count I is a request for a declaratory judgment that Rule 168.48 is preempted by federal statutes 52 USC 20701 and 20702 under the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2. Count II requests a declaratory judgment that Rule 168.48 exceeds the SOS's authority and conflicts with MCL 168.811. Count III is a claim for a declaratory judgment, in the alternative, that Rule 168.48 is invalid for failure to substantially comply with the APA in the promulgation process. On the same day she filed the complaint, plaintiff moved for a TRO and a preliminary injunction to prevent defendants from enforcing Rule 168.48 or requiring the deletion of the EPB software and associated files as it relates to the August 4, 2026 primary election pending a final judgment on the merits.

This Court issued an expedited scheduling order requiring that defendants respond to the complaint and motions by August 20, 2026. Defendants timely moved for summary disposition under MCR 2.116(C)(4), (7), and (10) in lieu of filing an answer and incorporated a response to the motion for a TRO and preliminary injunction. As discussed in more detail later, defendants argue, in part, that (1) plaintiff failed to exhaust her administrative remedies because she failed to seek a declaratory ruling from defendants that the Rule is invalid; (2) plaintiff's claims are barred by laches because she did not file this lawsuit until August 12, 2026—eight days after the primary election in question—causing prejudicial delay; (3) the doctrine of primary jurisdiction applies in this case as an ongoing federally mandated administrative proceeding is occurring that requires

this Court to abstain; and (4) plaintiff has not demonstrated a substantial likelihood that she will prevail on the merits of her claims or a particularized showing of irreparable harm to support her motions for a TRO and preliminary injunction. Because the HAVA complaints have now been resolved, some of defendants' concerns have been eliminated and the Court will not consider them.

Plaintiff responded to the motion for summary disposition, arguing that by not challenging the merits of plaintiff's claims, defendants left them unopposed. At oral argument, defendants explained that they could not provide a substantive argument without prematurely revealing how Director Brater planned to resolve the HAVA complaints or how defendants planned to resolve the declaratory ruling requests or without inadvertently making statements inconsistent with the administrative rulings. Plaintiff argues that she was not actually required to make a declaratory ruling request in this case but she had submitted two requests even so. Plaintiff contends that her claims are not barred by laches because she filed suit weeks before she was required to delete the EPB, and notes that deletion guidance had not yet been issued when she filed her complaint. She argues defendants cannot demonstrate prejudice because preservation of the EPB will not place a financial burden on MDOS or change its legal positions detrimentally in this case.

On the issue of primary jurisdiction, plaintiff argues that the doctrine is discretionary and would not apply in this case because 52 USC 20701 is codified within Title III of the CRA (and not in HAVA). Plaintiff argues that she can demonstrate a likelihood of success on the merits, as well as irreparable harm. She notes that she is the custodian of the records that, once deleted, cannot be recovered. Plaintiff asserts that more than 1,500 clerks face potential criminal liability

if the destruction is found to violate federal law.[3] Plaintiff argues that the notice provided of the administrative hearing on the proposed rule was inadequate to notify the public about the destruction of the backup files. She also seeks judgment in her favor under MCR 2.116(I)(2).

Defendant has replied, and this Court accepted an amicus curiae brief filed by the Republican National Committee, which aligns with plaintiff's position on the merits and argues that Rule 168.48 conflicts with both federal and state law.

On August 31, 2026, Director Brater issued a final determination in the HAVA administrative proceeding following the filing of HAVA complaints by Beltnick and Lake. Director Brater first summarized Beltnick's and Lake's arguments regarding the deletion of EPBs, revealing a general overlapping issue with the current lawsuit—whether Rule 168.48's provision requiring the deletion of EPBs within seven days of the canvass violates the "federal 22-month retention requirements and Michigan law." Director Brater also summarized the SOS's response to this argument much like defendants' position in this suit as asserting that the EPBs are not deleted completely; "rather, the records are kept in multiple formats and the removal from one format is not a violation of HAVA." Brater's final decision, however, made no findings or resolutions regarding the questions involved in this case, resolving the Beltnick and Lake matters and dismissing their HAVA complaints on other grounds.

[3] Such a finding also possibly could trigger the SOS's derivative federal criminal liability for forcing local clerks to prematurely delete EPBs connected with federal office elections. However, defendants contend the possibility of criminal liability is speculative as the United States Department of Justice has not brought an action to enforce the applicable statutes in 14 years. The Court finds this contention to be quite remarkable and reckless.

Following the conclusion of the HAVA administrative proceeding, this Court directed the parties to appear for a hearing on defendants' motion for summary disposition on September 16, 2026. The Court also directed the parties to provide supplemental briefing:

> on topics including 1) the application of Director Brater's August 31, 2026 final decision to this case; 2) the proper level of deference to be given to the August 31, 2026 final decision, taking into consideration *Loper Bright Enterprises v Raimondo*, 603 US 369; 144 S Ct 2244; 219 L Ed 2d 832 (2024); *In re Complaint of Rovas*, 482 Mich 90; 754 NW2d 259 (2008), and similar cases; 3) whether the Supremacy Clause of US Const, art VI, cl 2, impacts this case; 4) whether this challenge should be brought in federal court; and 5) what would be the harm or cost to any parties of retaining or storing the [EPB] software and data.

Defendants argue that the Supremacy Clause comes into play in this case because plaintiff contends that Rule 168.48 conflicts with provisions in Title III of the CRA. Thus, this is a case of conflict preemption. Accordingly, defendants argue, if the Court reaches the merits in this matter, the Court will be required to consider whether Title III conflicts with, and therefore preempts, Rule 168.48. However, defendants contend that the Court cannot reach the merits because plaintiff cannot bring her challenge in any court—state or federal—as there is no private cause of action under Title III. Defendants concede that plaintiff "is not using Title III as a cause of action per se," but claim "she is essentially seeking to compel compliance with Title III, and that she cannot do." As to the applicability of Brater's HAVA decision to the current proceeding, defendants admit they originally believed it could "shed light on the claims or issues presented in this case," but that Brater's ultimate decision did not extend that far, rendering it inapplicable. Also, because plaintiff is not alleging a HAVA violation, this Court need not consider the HAVA final determination. But if the Court does so, it must give Brater's interpretation respectful deference.

Defendants further contend that the failure to delete EPB data following the certification of an election will harm voters in the district or force them to incur additional costs. Plaintiff

represents a small district with only one voting precinct. It requires only one laptop and one encrypted flash drive to run an election. If the EPB is not deleted before the general election, defendants argue, taxpayer funds will need to be used to purchase another laptop and another encrypted flash drive, which defendants assert will incur a cost of $100 to the clerk. The harm will be even greater in larger districts with many precincts and, extrapolated over the 5,000 voting precincts identified by defendants, will accumulate to a substantial cost. Such separate equipment is required to eliminate the risk of duplicate or incorrect data being uploaded to the QVF.

Plaintiff agrees with defendants that the final HAVA decision has no effect in this case and suggests that defendants improperly refused to answer the requests for declaratory ruling knowing that the HAVA decision never would have an effect. Even if the HAVA decision was relevant to the questions presented in this suit, plaintiff argues that the Court would owe no deference to Brater's administrative interpretation, only respectful consideration. Plaintiff further contends that the doctrine of primary jurisdiction was rendered inapplicable by the final resolution of the HAVA proceeding. Plaintiff also notes that despite defendants' assertion that it could not resolve the declaratory ruling requests until the completion of the HAVA proceeding, 14 days had elapsed by the date of this Court's hearing and yet defendants had not issued declaratory rulings.

Plaintiff continues that there is a dispute about whether the information that survives the EPB deletion requirement—printed reports and a partial upload from the EPB to the QVF—satisfy the federal 22-month record retention requirement. Plaintiff points to a document prepared by defendants that identifies items from the EPB that are not part of the voter list, including the precinct where the voter cast their ballot. Brater, in an affidavit filed in this matter, attested that the uploaded EPB data can be queried in the QVF and that printed reports are retained elsewhere but does not indicate that the EPB files survive. Plaintiff argues that 52 USC 20701 requires the

retention of "all records and papers" that relate to "any application, registration, . . . or other act requisite to voting in such election." The Department of Justice, which enforces 52 USC 20701, has interpreted the statute as extending beyond papers to include other records, even those created in digital and electronic form. This would include the EPB, plaintiff contends. In plaintiff's estimation, the only complete record is the EPB and the upload to the QVF and the paper reports are derivative and, therefore, are not the "record" that must be retained under the federal statute.

In regard to the harm retention of the EPB might cause, plaintiff contends that she has maintained the laptop and encrypted flash drive in a secure, locked location. The only cost retention could impose is a replacement encrypted drive for a future election, at a cost of only about $100. The drives would not be reused and so there would be no danger of information not being accurately replaced.

## II. RELEVANT STATUTES AND REGULATIONS

Resolution of this case involves the consideration, interpretation, and application of several statutes and one Michigan administrative regulation. First, relevant to the current proceedings are two election-related statutes within the federal Civil Rights Act. 52 USC 20701 states:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, . . . are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State . . .designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

52 USC 20702 states:

> Any person, whether or not an officer of election or custodian, who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 301 [52 USCS 20701] to be retained and preserved shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The federal statutes therefore require election officers to retain and preserve for 22 months "all records and papers" "relating to any application, registration, . . . or other act requisite to voting in such election" as related to federal office elections. And the willful failure to do so or to destroy such records and papers is a federal offense.

Consistent with 52 USC 20701, the Michigan Legislature enacted MCL 168.811, which states:

> All election returns, including poll lists, statements, tally sheets, absent voters' return envelopes bearing the statement required by section 761, absent voters' records required by section 760, and other returns made by the election inspectors of the several precincts must be carefully preserved and may be destroyed after the expiration of 22 months following the primary or election at which the same were used. All applications executed under section 523, all voter registration applications executed by applicants under section 497(3) and (4), and all absent voters' applications must be carefully preserved and may be destroyed after the expiration of 6 years following the primary or election at which those applications were executed. All ballots used at any primary or election, other than ballots containing a federal office, may be destroyed after 30 days following the final determination of the board of canvassers with respect to the primary or election unless a petition for recount has been filed and not completed or unless the destruction of the ballots is stayed by an order of a court. All ballots containing a federal office, and all presidential primary ballot selection forms, may be destroyed after the expiration of 22 months following the primary or election at which those ballots were cast or forms were used.

Plaintiff contends that defendants promulgated a rule with retention requirements inconsistent with the federal and state statutes. That rule—Rule 168.48—states:

> (1) Subject to subrule (2) of this rule, the [EPB] software and associated files must be deleted from all devices by the seventh day following the final canvass

> and certification of the election, unless a petition for recount has been filed and the recount has not been completed, a post-election audit has been scheduled, or the deletion of the data has been stayed by an order of the court or the [SOS]. If a precinct is selected for an audit, the [EPB] software and associated files must be deleted from all devices by the seventh day following completion of the audit.
>
> (2) The [EPB] software and associated files must not be deleted from devices until the [BOE] or county clerk, as applicable, issues the release of security memorandum pertaining to that election.

Plaintiff also contends that requiring the deletion of EPBs violates the constitutional right to an election audit in Const 1963, art 2, § 4(1)(*l*), which provides that "[e]very citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights," including:

> The right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections. The [SOS] shall conduct election audits, and shall supervise and direct county election officials in the conduct of such audits. No officer or member of the governing body of a national, state, or local political party, and no political party precinct delegate, shall have any role in the direction, supervision, or conduct of an election audit. Public election officials shall maintain the security and custody of all ballots and election materials during an election audit. Election audits shall be conducted in public based on methods finalized and made public prior to the election to be audited. All funding of election audits shall be publicly disclosed.

## III. RELIEF SOUGHT

Plaintiff seeks a declaratory judgment that Rule 168.48 is invalid because it is preempted by the federal statutes cited above and it conflicts with MCL 168.811 and thus it was not in defendants' authority to promulgate this rule. In the alternative, plaintiff seeks a declaratory judgment that the Rule is invalid because it was not promulgated in compliance with the APA.

MCR 2.605 governs a trial court's power to enter a declaratory judgment. The court rule provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a

declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). See also *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017). The language in this rule is permissive, and the decision whether to grant declaratory relief is within the trial court's sound discretion. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 126; 715 NW2d 398 (2006). An actual controversy exists "when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Shavers v Attorney General*, 402 Mich 554, 588-589; 267 NW2d 72 (1978).

Plaintiff seeks both a preliminary and permanent injunction preventing the enforcement of Rule 168.48 against her. The Court recognizes that an injunction is an "extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 613-614; 821 NW2d 896 (2012) (quotation marks and citation omitted); see also *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). "The purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights." *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012) (quotation marks and citation omitted). The party seeking the preliminary injunction bears the burden of proving the existence of, and the Court must consider, four factors:

> (1) whether the applicant has demonstrated that irreparable harm will occur without the issuance of an injunction, (2) whether the applicant is likely to prevail on the merits, (3) whether the harm to the applicant absent an injunction outweighs the harm an injunction would cause to the adverse party, and (4) whether the public interest will be harmed if a preliminary injunction is issued. [*Slis v Michigan*, 332 Mich App 312, 337; 956 NW2d 569 (2020).]

The Court of Appeals has outlined various factors relevant to a Court's decision to enter a permanent injunction, including:

> (a) the nature of the interest to be protected, (b) the relative adequacy to the plaintiff of injunction and of other remedies, (c) any unreasonable delay by the plaintiff in bringing suit, (d) any related misconduct on the part of the plaintiff, (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied, (f) the interests of third persons and of the public, and (g) the practicability of framing and enforcing the order or judgment. [*Janet Travis, Inc*, 306 Mich App at 274 (quotation marks and citations omitted).]

The Court must "balance the benefit of an injunction to a requesting plaintiff against the damage and inconvenience to the defendant, and will grant an injunction if doing so is most consistent with justice and equity." *Id*. at 274-275.

## IV. ANALYSIS OF DEFENDANTS' GROUNDS IN SUPPORT OF DISMISSAL

Defendants contend that this Court lacks jurisdiction to consider plaintiff's claims because she failed to exhaust her administrative remedies by seeking a declaratory ruling from the SOS. Defendants also assert that this action should be dismissed under the laches doctrine because plaintiff did not file this suit until August 12, 2026, eight days after the primary election for which she challenged the deletion of the EPB.[4]

[4] In their August 20, 2026 motion for summary disposition, defendants also sought dismissal under the doctrine of primary jurisdiction. Defendants contended that any decision reached by this Court "would interfere with an ongoing administrative proceeding"—the HAVA proceeding presided over by Director Brater. That proceeding has now concluded, rendering this argument moot.

## A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Both the October 22, 2025 request for declaratory ruling joined by plaintiff and the July 6, 2026 request for a declaratory ruling filed by plaintiff personally were submitted to defendants pursuant to MCL 24.263 of the APA. MCL 24.263 states, in relevant part:

> On request of an interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency. . . . A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. . . . A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case.

An additional provision of the APA, MCL 24.264, states:

> Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule . . . may be determined in an action for declaratory judgment if the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. . . . The agency shall be made a party to the action. An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously. This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted.

In *Warren Consol Sch Dist v Sch Dist of the City of Hazel Park*, ___ Mich ___, ___; ___ NW3d ___ (2026) (Docket No. 167643), slip op at 13, the Michigan Supreme Court compared the two statutes and held that MCL 24.264 expressly requires exhaustion before filing suit, while MCL 24.263 does not:

> [MCL 24.263] gives agencies the permissive authority to issue declaratory rulings regarding the applicability of a statute or a rule administered by an agency. [MCL 24.264] explicitly requires exhaustion of the [MCL 24.263] declaratory ruling provision only for actions challenging the validity or applicability of a rule. This eliminates the exhaustion requirement regarding issues involving the validity or applicability of a statute, likely because issues regarding the meaning of statutes are

> more appropriately left to the courts and the validity of statutes is an issue reserved for the judicial branch. The language of [MCL 24.264] imposes the exhaustion requirement only when the action is brought "under this section," meaning [MCL 24.264], which applies only to the validity or applicability of rules. [*Id*. at ___; slip op at 13, quoting LeDuc, Michigan Administrative Law (2025 ed), § 8:11, p 612.]

Both declaratory ruling requests questioned the applicability of Rule 168.48 to local clerks attempting to comply with 52 USC 20701, a question properly raised under MCL 24.263. However, plaintiff's argument in this Court is distinct from that raised previously. Here, she argues that Rule 168.48 is invalid because it conflicts with federal and state statutes, and therefore it was not in the SOS's authority to promulgate such a rule. Had plaintiff raised this same argument in the declaratory judgment requests, they would have fallen within the ambit of MCL 24.264 because they would have articulated a challenge to the validity of Rule 168.48 itself. Accordingly, the Court will treat the declaratory judgment requests as being submitted pursuant to MCL 24.264, making the exhaustion of remedies provision applicable.

The exhaustion of administrative remedies serves several purposes:

> (1) an untimely resort to the courts may result in delay and disruption of an administrative scheme; (2) any type of appellate review is best made after the agency has developed a full record; (3) resolution of the issues may require the technical competence of the agency, and (4) the administrative agency's settlement of the dispute may render a judicial resolution unnecessary. [*Genesis Ctr, PLC v Fin & Ins Servs Comm'r*, 246 Mich App 531, 543; 633 NW2d 834 (2001).]

In this case, plaintiff initiated the process for administrative review by joining the October 22, 2025 declaratory ruling request and then submitting her own request on July 6, 2026. The administrative review process has taken an unusually long time, at no fault of plaintiff. Initially, defendants informed plaintiff and her cohorts that they could not issue a declaratory ruling until the resolution of the HAVA proceeding because they did not want to make any inconsistent statements. Defendants did not respond to the July 6, 2026 request but have since indicated that

they would have delayed entering a declaratory ruling for the same reason. As a result, the August 4 primary came and went without plaintiff being given any instruction on how she could comply with both Rule 168.48 and 52 USC 20701.

Plaintiff filed this suit on August 12 without the benefit of an administrative decision. Essentially, plaintiff had no choice but to file the current lawsuit before the declaratory rulings entered. Plaintiff understood that she would be required to delete the EPBs by operation of Rule 168.48 before the declaratory rulings issued, a situation in which she played no part in creating. Indeed, on August 26, defendants notified plaintiff and all other local clerks that they were required to delete the EPBs from the August 4 primary on August 31. Director Brater did not issue his much-anticipated final decision in the HAVA proceeding until August 31, and ultimately, that decision resolved no issue raised in either declaratory ruling request. At the Court's September 16 hearing, defense counsel indicated that the declaratory rulings resolving the October 22, 2025 and July 6, 2026 requests have been drafted and would likely be released within the next two weeks. If plaintiff was required to adhere to the timeline advocated by defendants, by the time of these rulings, it certainly would be much too late for plaintiff to file an initial suit seeking the relief she now requests. Even if defendants are not at fault for the delay, the power to resolve the HAVA administrative proceedings and enter the declaratory rulings was completely in their hands. The Court will not support defendants delaying in resolving the administrative proceedings and then fault plaintiff for filing suit before her administrative remedies were exhausted. Accordingly, the Court rejects defendants' request to dismiss based on the failure to exhaust administrative remedies.

B. LACHES

The Court of Appeals described the doctrine of laches in *Davis v Secretary of State*, 346 Mich App 445, 462; 12 NW3d 653 (2023):

> Laches is an equitable tool that may be used to remedy the inconvenience or prejudice to a party caused by an improper delay in asserting a right. *Public Health Dep't v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996). The issue of whether relief will be withheld on the basis of laches is contingent upon the facts and circumstances of the particular case. *Henderson v Connolly's Estate*, 294 Mich 1, 19; 292 NW 543 (1940). When no acceptable explanation is proffered for a plaintiff's delay, a plaintiff's requested relief should be barred by unexcused laches. See *id*. Rather, equity will aid the vigilant, not those that "slumber on their rights." *Id*. The purpose of the rule is to promote diligence, discourage laches, and "prevent the enforcement of stale demands." *Id*. As the Court of Claims observed, legal challenges that affect elections are especially prone to causing profound harm to the public and to the integrity of the election process the closer in time those challenges are made to the election, making laches especially appropriate to apply in such matters. *Purcell v Gonzalez*, 549 US 1, 4-6; 127 S Ct 5; 166 L Ed 2d 1 (2006); *New Democratic Coalition v Secretary of State*, 41 Mich App 343, 356-357; 200 NW2d 749 (1972). "[E]lections require the existence of a reasonable amount of time for election officials to comply with the mechanics and complexities of our election laws." *Id*. at 356. "Courts can reasonably endeavor to avoid unnecessarily precipitate changes that would result in immense administrative difficulties for election officials." *Id*. at 357.

In seeking dismissal of this case based on laches, defendants note that the challenged rule took effect in October 2025 and yet plaintiff waited until August 12, 2026 to file suit. Again, the Court notes that plaintiff joined with other local clerks to seek a declaratory ruling on October 22, 2025—the day before the Rule went into effect. Defendants delayed in resolving that request because HAVA proceedings had been initiated by third parties and then a federal lawsuit related to the HAVA proceedings was filed. When no decision had been reached, plaintiff filed an individual request for a declaratory ruling on July 6, 2026. Defendants again indicated that it could not enter a declaratory ruling until the HAVA proceedings concluded. Plaintiff was not a party to the HAVA proceedings and played no part in their delay and ultimate inapplicability here. She

filed her suit on August 12 when she realized she soon would be required to delete the August primary EPB under Rule 168.48 without receiving an official answer to her declaratory ruling request.

Director Brater did not reach a final decision in the HAVA proceeding until August 31, 2026. Based on defendants' ultimately inaccurate statement in response to the October 22, 2025 declaratory ruling request that the HAVA final decision would likely resolve questions asked in that request, it would have been premature for this Court to consider plaintiff's challenges until the administrative HAVA proceedings were concluded. Accordingly, the Court cannot fault plaintiff for waiting until August 12 to file suit. Thus, the Court finds the doctrine of laches ill-suited to the current matter.

C. PRIVATE CAUSE OF ACTION

Although not raised as a separate ground for summary disposition, the Court notes that defendants also argue that plaintiff could not file this suit in any court because Title III of the HAVA does not provide a private cause of action. In support of this position, defendants cite a long list of unpublished federal court opinions and orders, as well as an opinion from a Michigan circuit court. In *Smith v DeBoyer*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued October 12, 2022 (Docket No. 2:22-cv-11572), for example, the Eastern District noted that 52 USC 20701 and 20702 are criminal statutes, and individuals could not bring private causes of action against the government officials tasked with implementing these statutes for their violation of the statutes.

Plaintiff does not contend that defendants violated the record retention provisions of 52 USC 20701 or 20702. Rather, plaintiff filed suit to ensure that she, as a local election official,

complies with state and federal law and therefore will not be criminally charged.[5] Thus, the matter before this Court is not the type of private cause of action that is contemplated by and prohibited under the statutes.

## V. PLAINTIFF'S MOTION FOR SUMMARY DISPOSITION

Plaintiff seeks summary disposition in her favor pursuant to MCR 2.116(I)(2), which states, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." Plaintiff argues that this case involves purely legal questions that can be resolved without fact discovery. Review of this motion would be premature. Defendants represented at the September 16 hearing that declaratory rulings resolving the October 22, 2025 and July 6, 2026 requests regarding the interplay and application of Rule 168.48, MCL 168.811, and 52 USC 20701 and 20702 will be entered in the near future. Therefore, defendants' ability to argue the substantive merits in this case has been hampered by the ongoing administrative proceedings. The Court will not adjudicate the action in either party's favor, or enter an injunction, without full briefing on the merits from both sides.

## VI. CONCLUSION

Accordingly:

1. The Court DENIES defendants' motion for summary disposition and plaintiff's cross-motion for summary disposition without prejudice to the parties seeking this relief later in the proceedings.

[5] Plaintiff's suit also could derivatively save the SOS from being criminally charged federally.

2. The parties must notify the Court within 24 hours of the issuance of the declaratory rulings resolving the requests made on October 22, 2025, and July 6, 2026.

3. Within one week of the issuance of the declaratory rulings, the parties must file supplemental briefs and/or renewed summary disposition motions. The parties will be allowed one week to file responses. No reply may be filed without leave of the Court.

4. The TRO prohibiting the enforcement of Rule 168.48 against plaintiff and permitting plaintiff to retain the EPB from the August 4, 2026 primary remains in place.

5. This is not a final order resolving all issues in this case.

Date: 09/22/2026

Michael J. Riordan
Judge, Court of Claims

Court of Claims
State of Michigan