**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT DAVIS,
Plaintiff,
vs.

Case No. 26-cv-13454
Hon. Terrence G. Berg
Mag. Kimberly G. Altman

WAYNE COUNTY ELECTION COMMISSION, JOCELYN BENSON MICHIGAN SECRETARY OF STATE, DIRECTOR OF STATE ELECTIONS JONATHAN BRATER, and CITY CLERK FOR THE CITY OF HIGHLAND PARK BRENDA GREEN,

Defendants.

/

ROBERT DAVIS
Pro Se for Plaintiff
180 Eason
Highland Park, MI 48203
(313) 523-7118
DavisRobert854@gmail.com

JAMES HEATH
Wayne County Corporation Counsel
REBECCA A. CAMARGO (P66013)
Principal Attorney Corporation Counsel
Attorneys for Defendant WCEC
500 Griswold, 21st Floor
Detroit, MI 48226
(313)224-6733; (313)224-7667 (Fax)
rcamargo@waynecountymi.gov

/

**DEFENDANT WAYNE COUNTY ELECTION COMMISSION'S BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE of CONTENTS

INDEX OF AUTHORITIES ........ ii

STATEMENT OF ISSUE PRESENTED ........ v

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 1

ARGUMENT ........ 4

CONCLUSION ........ 10

CERTIFICATE OF SERVICE ........ 11

TABLE OF EXHIBITS ........ 12

# INDEX of AUTHORITIES

**CASES**:

*Benisek v. Lamone*,
585 U.S. 155, (2018) ........................................................ 9

*Bills v. Henderson*,
631 F.2d 1287, 1299 (6th Cir. 1980) ........................................ 5

*Brown-Graves Co v. Central States*, *Southeast and Southwest Areas Pension Fund*
206 F.3d 680 (6th Cir. 2000) ................................................ 8

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*.,
511 F.3d 535 (6th Cir. 2007) ............................................... 5

*Cf. Tennessee Scrap Recyclers Ass'n v. Bredesen*,
556 F.3d 442, (6th Cir. 2009) .............................................. 4

*Elrod v. Burns*,
427 U.S. 347 (1976) .......................................................... 9

*EOG Res., Inc. v. Lucky Land Mgmt.*, LLC,
134 F.4th 868 (6th Cir. 2025) .............................................. 9

*Golden v. Kelsey-Hayes Co*.
73 F.3d 648, (6th Cir. 1996) ............................................... 4

*Golf Village North, LLC v. City of Powell, Ohio*,
42 F.4th 593 (6th Cir. 2022) ................................................ 5

*In re DeLorean Motor Co.*,
755 F.2d 1223, (6th Cir. 1985) ............................................. 4,9

*Levin v. Childers*,
101 F.3d 44, (6th Cir. 1996) ............................................... 5

*Lewellen v. Metropolitan Government of Nashville & Davidson County*,
34 F.3d 345 (6th Cir. 1994) ................................................ 5

*Lucking v. Schram,*
117 F.2d 160 (6th Cir. 1941). .................................................. 7

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................... 9

*Padula v. Leimbach*,
656 F.3d 595 (7th Cir. 2011). .................................................. 5

*Purcell v. Gonzalez*,
549 U.S. 1, 4-5 (2006) ........................................................ 8

*Serv. Employees Int'l Union Local 1 v. Husted*,
698 F.3d 341, (6th Cir. 2012) .................................................. 8

*Stenberg v. Cheker Oil Co.*,
573 F.2d 921, (6th Cir. 1978) .................................................. 4

*Thompson v. DeWine*,
976 F.3d 610, (6th Cir. 2020) .................................................. 4

*TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*,
430 F.3d 783 (6th Cir. 2005). .................................................. 6

*United States v. Edward Rose & Sons*,
384 F.3d 258 (6th Cir. 2004). .................................................. 9

*Vill. of Willowbrook v. Olech*,
528 U.S. 562 (2000) ........................................................... 6

**STATUTES & COURT RULES:**

42 U.S.C.S. § 1983 ........................................................... 4

MCL § 169.201, et. seq. ........................................................ 6

Michigan Campaign Finance Act (MCFA)................................ *passim*

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Whether Plaintiff's motion for TRO and/or PI must be denied because there is no likelihood of success on the merits, Plaintiff has suffered no injury and the harms to Defendant outweighs any harm to Plaintiff.

## INTRODUCTION

Plaintiff Robert Davis's motion for temporary restraining order or preliminary injunction must fail because he is not entitled to relief. Plaintiff does not have a property or liberty interest in the enforcement of Michigan election law and Defendant did not violate Plaintiff's equal protection by denying him access to speak at an open meeting outside of public comment.

## STATEMENT OF FACTS

On September 8, 2026, the Wayne County Election Commission ("WCEC") met during an open meeting pursuant to the Michigan Open Meetings Act ("OMA") with a quorum of two of its three members present. Prior to the meeting, on Sunday, September 6, 2026, Plaintiff emailed the WCEC, as well as other Wayne County elections employees, a request to speak at the September 8 meeting. (Exhibit 1). On the morning of the September 8 meeting, Plaintiff sent an additional email making the same claims (Exhibit 2).

Plaintiff's emails claimed that Democratic Party nominees for Attorney General, Eli Savit ("Savit") and Secretary of State, Garlin Gilchrist II (Gilchrist"), were not properly certified by the Secretary of State. Plaintiff claimed that both nominees filed a false affidavit of identity ("AOI") because they allegedly failed to file required campaign statements under the Michigan Campaign Finance Act

("MCFA"). Based on that assertion, Plaintiff demanded that the Commission members not allow the nominees to appear on the ballot.

Plaintiff cited MCL 168.689 as a basis for allowing him to speak at the meeting. MCL 168.689 states in part, that

> "(T)he board of election commissioners of each county shall prepare the official ballots for use at any state, district or county election held therein, and shall have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners…to supply each election precinct in such county with a sufficient number for such precinct, and not less than 25% more than the total number of votes cast therein at the corresponding election held 4 years previous for the office which received the greatest number of votes."

At the September 8, 2026, WCEC meeting, one of the Commission members asked the undersigned for an oral legal opinion regarding Plaintiff's email. The undersigned informed the Commission members that they did not need to take into consideration Plaintiff's claims because Plaintiff lacked standing to challenge the nominees pursuant to the MCFA. In particular, MCL 169.215(17) states that:

> "Except as otherwise provided in section 57, there is no private right of action, either in law or in equity, under this act. Except as otherwise provided in section 57, the remedies provided in this act are the exclusive means by which this act may be enforced and by which any harm resulting from a violation of this act may be redressed. The criminal penalties provided by this act may only be enforced by the attorney general and only upon referral by the secretary of state as provided under subsection (10) or (13)."

The undersigned relied on her interpretation of the above statute as well as numerous previous cases against Plaintiff in which state circuit court judges as well as state court of appeals rulings affirmed that Plaintiff lacked standing to bring claims against candidates for MCFA violations.

Based on the undersigned oral opinion, the WCEC declined to allow Plaintiff to speak prior to its certification of the ballots. The WCEC then certified the ballots and opened up the meeting to public comment. Plaintiff spoke during public comment.

On September 9, 2026, the ballot proofs were sent to the printer and prior to September 19, 2026, all Wayne County absentee ballots had been delivered to the local clerks (pursuant to statute). As of October , all election day ballots had been printed. As of the writing of this filing, every single Wayne County ballot has been printed at a cost of over $350,000. (Exhibit 3)

Weeks later after the beginning of the printing of ballots, Plaintiff filed the instant action.

## ARGUMENT

### I. PLAINTIFF IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER (TRO) REGARDING COUNTS VIII AND IX BECAUSE PLAINTIFF DOES NOT SATISFY THE REQUIRED ELEMENTS FOR THE EXTRAORDINARY RELIEF.

Like a preliminary injunction, a temporary restraining order (TRO) is considered to be an extraordinary remedy, which is "designed to preserve the relative positions of the parties until a trial on the merits can be held." *Cf. Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009). When considering a motion for a TRO or preliminary injunction, a district court looks to four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm in the absence of preliminary relief; (3) whether the injunctive relief will cause substantial harm to others; and (4) whether the public interest will be served by granting relief. *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020) (per curiam).

Courts have repeatedly held that "[n]one of these factors, *standing alone*, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co*. (*In re Golden*), 73 F.3d 648, 653 (6th Cir. 1996) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)) (emphasis added). And importantly, ". . . no single factor is determinative as to the appropriateness of equitable relief." *Id.* Lastly, the burden of persuasion is on the party seeking injunctive relief. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

#### A. Plaintiff Has Not Demonstrated a Strong Likelihood of Success on The Merits With Respect to Both Count VIII And Count XI of His Amended Complaint.

In Plaintiff's TRO Motions, Plaintiff asserts that he is likely to succeed on the merits based on his two claims brought under 42 U.S.C.S. § 1983 (Counts VIII and IX) which allege violations of Plaintiff's Due Process and Equal Protection by

County Defendants, respectfully. To satisfy the first element, Plaintiff must demonstrate "a strong likelihood of success on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 543 (6th Cir. 2007). To meet this burden, Plaintiff must "show more than a mere possibility of success." *Id.* Plaintiff has not met this burden for either Count, and each will be examined in turn.

i. **Plaintiff's Due Process Claim.**

Under Count VIII, Plaintiff brings forth claims of due process violations, ultimately alleging County Defendant deprived him of due process when he was denied the opportunity to be added to the agenda as a speaker at the Wayne County Election Commission meeting on September 8, 2026. Plaintiff seeks to disguise this as the basis of his claim, while in reality, Plaintiff is simply alleging due process violations as a guise for this Federal Court to rule on the alleged violations of state law. A plaintiff cannot transform or convert a violation of state or local law into a federal constitutional claim simply by asserting that the conduct violates substantive or procedural due process. *Lewellen v. Metropolitan Government of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994), The court of appeals has consistently maintained that a deviation from state-created procedures or a violation of municipal or state law does not, by itself, equate to a federal constitutional violation. *Id.*; *Golf Village North, LLC v. City of Powell, Ohio*, 42 F.4th 593 (6th Cir. 2022); *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011).

In *Bills v. Henderson*, the court reiterated that "not every deviation from an established state procedure constitutes a federal constitutional violation," and that procedural rules concerning hearings cannot by themselves serve as a basis for a protected liberty interest. *Bills v. Henderson*, 631 F.2d 1287, 1299 (6th Cir. 1980). Likewise, in *Levin v. Childers*,101 F.3d 44, 46 (6th Cir. 1996), the court noted that procedural requirements alone do not create a substantive liberty interest, and the

"mere violation of such procedures is not a constitutional violation," as there is a "fundamental logical flaw in viewing the process as a substantive end in itself." *Id.*

Plaintiff attempts to allege a violation of his federal rights under this Count, but in reality, the sole basis for this § 1983 claim is alleged violations of the Michigan Campaign Finance Act (MCFA), MCL 169.201 et.seq. These are claims he lacks standing to bring.

ii. **Plaintiff's Equal Protection Claim**

Under Count IX, Plaintiff brings forth claims of equal protection violations by County Defendant for denying Plaintiff the opportunity to be added to the agenda as a speaker at the Wayne County Election Commission meeting on September 8, 2026. The Equal Protection Clause "prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 788 (6th Cir. 2005). The Supreme Court has recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that: (1) they have been intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Here, Plaintiff's claim is simply ridiculous. Plaintiff emailed the WCEC and election officials on a Sunday, a mere two days before the meeting. Additionally, Plaintiff followed up by emailing Wayne County Election Director Greg Mahar and the WCEC members less than *2 hours* before the meeting began in which Plaintiff requested to be added to the agenda as a speaker. Further, after Plaintiff was denied access to the agenda, there was an opportunity for Plaintiff to voice his concerns

during the "public comments" portion of the meeting, which occurred at the end, just as it does in every meeting the WCEC holds. Plaintiff claims that because he was not afforded special treatment to be added to the agenda that he was "treated differently" from other similarly situated individuals who petitioned the Defendant Wayne County Election Commission challenging if a candidate was "properly certified" by a filing official prior to the Defendant Wayne County Election Commission voting to authorize the printing of the ballot for a particular election. However, as stated above, Plaintiff had the same opportunity as everyone else to voice his unfounded claims and ideas during the public comments portion of the meeting.

Further, Plaintiff then uses this baseless idea of an equal protection violation to petition this Court to rule on whether the WCEC violated state election laws and to invalidate the resolutions passed at the meeting—again, all because Plaintiff was denied the opportunity to speak. Which again, he *was* afforded the opportunity and he took that opportunity during public comment.

Ultimately, Plaintiff has failed to properly plead any violation of his equal protection rights, and Plaintiff has failed to show "more than a mere possibility of success" on the merits of this claim.

iii. **Plaintiff's Requested Relief Under Both Counts is Barred by Laches.**

Laches is rooted in the principle that "equity aids the vigilant, not those who slumber on their rights." *Lucking v. Schram,* 117 F.2d 160 (6th Cir. 1941). An action may be barred by the equitable defense of laches if: (1) the plaintiff delayed unreasonably in asserting their rights; and (2) the defendant is prejudiced by this

delay. *See Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000).

Under both claims, Plaintiff has simply waited too long to bring them and unreasonably delayed asserting his claims. "As a general rule, last minute injunctions changing election procedures are strongly disfavored." *Serv. Employees Int'l Union Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion . . . As an election draws closer, that risk will increase.")).

Here, the ballots for the November election have already been approved by the WCEC, and in accordance with both Federal and Michigan Election law, the Wayne County Clerk's Office has already delivered the necessary ballots to local clerks who in turn have already delivered those ballots to absentee voters, such as military personnel overseas. In fact, absentee voters have already begun returning voted ballots, as the election is less than a month away at the time of this filing, Further, the cost to print the ballots is $350,000, so if this Court did grant Plaintiff his requested relief it would cost County taxpayers a substantial amount and impose a tremendous burden on the election process, causing delays to local clerk staff and election officials. Additionally, it would cause local clerks and the County Clerk to be in violation of Michigan election laws.

Regardless, even if Plaintiff's lawsuit was proper, Plaintiff waited too long to file this action; and not only that, he also seeks to use this Court as a means to circumvent his failure to properly exhaust his administrative remedies. Lastly, and at the cost of sounding repetitive, if Plaintiff requested relief were to be granted it would come at the cost of voters receiving their absentee ballots on time and would cause Wayne

County to violate both Federal and State election laws. For those reasons, Plaintiff's claims should be barred by laches.

B. **Plaintiff Will Not Suffer Irreparable Harm Without an Injunction.**

In addition to Plaintiff failing to demonstrate a likelihood to win on the merits, even if he could show a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course." *EOG Res., Inc. v. Lucky Land Mgmt.*, LLC, 134 F.4th 868 (6th Cir. 2025) (quoting *Benisek v. Lamone*, 585 U.S. 155, 158 (2018)). A showing of irreparable harm is considered to be "indispensable" and "if the plaintiff isn't facing imminent and irreparable injury, there is no need to grant relief now as opposed to at the end of the lawsuit." *Id.* At 855.

Irreparable harm may exist where a plaintiff can demonstrate a substantial likelihood of success on the merits of the plaintiff's claim that their constitutional rights have or will imminently be violated. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). Plaintiff cannot do that here as he lacks standing to bring a claim against the nominees under the MCFA.

C. **The Harm Against Others And The Harm to The Public's Interest Far Outweigh Any Need For an Injunction.**

Whether the public interest will be served by granting a TRO is one of four equitable factors a district court must balance when determining whether to grant preliminary injunctive relief, such as a temporary restraining order. *In re DeLorean*, 755 F.2d 1223. Specifically, the court must assess "whether the public interest would be served" or "advanced by" the issuance of such extraordinary relief. *United States v. Edward Rose & Sons*, 384 F.3d 258, 263 (6th Cir. 2004). The balance of harms and public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, the potential detriment to the public's interest far outweighs the other three factors in the TRO analysis, because granting Plaintiff's TRO would cause an immense burden on Wayne County and Local Election Officials as well as the voters themselves. At the risk of sounding repetitive, the ballots for the November election have already been approved by the WCEC, and in accordance with both Federal and Michigan Election law, the Wayne County Clerk's Office has already delivered the necessary ballots to local clerks who in turn have already delivered those ballots to absentee voters, such as military personnel overseas. The election is under a month away from the date of this filing, and if Plaintiff's requested injunction were to be granted it would come at the risk of the updated ballots not being ready in time for the election, not to mention the voters who have already voted would possibly need new ballots, which is just simply impossible.

## CONCLUSION

Wherefore**,** Defendant Wayne County Election Commission respectfully requests the Court deny Plaintiff's request for TRO/PI as he has not met his burden.

Respectfully submitted,

BY: *<u>/s/REBECCA A. CAMARGO</u>*
**REBECCA A. CAMARGO (P66013)**
Principal Attorney Corporation Counsel
Attorney for Defendant WCEC
500 Griswold, 21st Floor
Detroit, Michigan 48226
(313) 224-6733
rcamargo@waynecountymi.gov

Date: October 9, 2026

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2026, I filed a copy of the *foregoing* with the Clerk of the Court using the electronic filing system which will send electronic notification of this filing to all parties, and via US Mail to all non-ECF participants: None.

/s/*Susan Sweetman*

# TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | 9/6/2026 Email with Attachments |
| Exhibit 2 | 9/8/2026 Email |
| Exhibit 3 | Affidavit of C. Thompson |