# EXHIBIT
# 1

| | |
|---|---|
| **From:** | Robert Davis |
| **To:** | Gregory Mahar; Rebecca Camargo; Eric Sabree; Judge David Braxton; Cathy M Garrett |
| **Cc:** | Vincenzo Convertino; Susan Sweetman; Jennifer Redmond; savite@washtenaw.org; bensonj4@michigan.gov; MDOS-BOERegulatory; Fracassi, Adam (MDOS); Brater, Jonathan (MDOS); garlin.gilchrist@michigan.gov; garlin@garlingilchrist.com; garlin@garlin.org; gilchristg@michigan.gov; Meingast, Heather (AG); Grill, Erik (AG) |
| **Subject:** | Request To Be Added To Agenda of Wayne County Election Commission"s September 8, 2026 Meeting To Present Challenge To Certifications of Democratic Nominees for Governor, Attorney General and Secretary of State |
| **Date:** | Sunday, September 6, 2026 8:46:44 AM |
| **Attachments:** | FILED TIME STAMPED--Davis Verified Complaint against Wayne County Election Commission re Benson Gubernatorial JUDGE MCCARTHY.pdf<br>Davis signed notarized 2nd sworn complaint challenging Eli Savit affidavit of identity September 4 2026.pdf<br>Davis signed notarized complaint challenging validity Garlin Gilchrist affidavit of identity filed August 31, 2026.pdf<br>Davis signed notarized sworn complaint challenging validity of Eli Savit affidavit of identity filed August 31 2026.pdf<br>Redacted Copies of Affidavits of Identity Filed by Winnie Brinks Gilchrist Savit 2026 election cycle records produced on September 1 2026.pdf<br>Secretary of State Promulgaged Rules effective June 8 2026 re Disqualification from Ballot based on affidavit of identity and challenges to affidavit of identity.pdf<br>D Etta Wilcoxon July 22 2026 Unpublished Court of Appeals opinion re late filing fees campaign finance reports affdiavit of identity.pdf |

---

Good morning, Ms. Camargo, Director Brater and Distinguished Members of the Wayne County Election Commission:

Pursuant to MCL 168.689 of Michigan Election Law, I am respectfully requesting to be added to the agenda for the Wayne County Election Commission's September 8, 2026 meeting to present my challenge and objections to the "certifications" of the Michigan Democratic Party's nominees for Governor, Attorney General and Secretary of State.

Pursuant to MCL 1689 of Michigan Election Law, the Wayne County Election Commission has the statutory legal duty to determine whether candidates have been "properly certified" by the filing official, which in this case is the Secretary of State, prior to authorizing the printing of the ballots for the November 3, 2026 general election. See *Davis v Wayne County Election Commission,* 349 Mich.App. 355; 28 NW3d 354, 364 (2023) (emphasis supplied) ("As a general premise, it is true that MCL 168.689 authorizes, indeed requires, the Commission to do what the statute states: to 'prepare the official ballots for use' in Wayne County and to 'have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners' for 'use at any state, district or county election held therein....'"); see also *Barrow v Detroit Election Comm*, 305 Mich App 649, 671; 854 NW2d 489 (2014) (*Barrow II)* ("It is well established that it is the province of the election commission, not the city clerk, to approve and furnish the ballots to be used in an election.").

Here, the Secretary of State, deliberately and intentionally, violated Mich Admin Code, R 168.2(3) and (4) by failing to "**perform some investigation into the status of each candidate's campaign finance records history *before certifying the candidate's name to appear on a ballot.***" *Wilcoxon v Garrett,* unpublished per curiam opinion of the Court of Appeals, issued July 22, 2026 (Docket No. 375547); slip op at p 6 (emphasis supplied).

As the Court of Appeals recently explained in Wilcoxon, "[**a]mendments have been made to both MCL 168.558(4) and Rule 168.2(3)**...***to require that officials check state and county records to ensure that a candidate has made accurate statements in the affidavit.***" *Wilcoxon,* slip op at p 5 (emphasis supplied).

The evidence attached clearly shows that the Secretary of State has failed to fulfil her statutory legal duties with respect to properly verifying whether she or the Democratic nominees for

Attorney General and Secretary of State made false statements on their affidavits of identity with respect to their respective compliance with the Michigan Campaign Finance Act (MCFA) filing requirements under MCL 168.558(4).

The allegations with respect to Gubernatorial Candidate Jocelyn Benson are set forth in the Wayne County Circuit Court lawsuit, *Davis v Wayne County Election Commission,* Case No. 26-015190-AW, which remains pending before Judge Kathleen McCarthy. The allegations and legal arguments set forth therein are hereby incorporated by reference herein as if they were fully stated and set forth herein.

With respect to the Democratic Party nominee for Attorney General, Eli Savit, the allegations set forth in my timely filed sworn complaints filed in accordance with Mich Admin Code, R 168.5, are the basis for my instant request for the Wayne County Election Commission to determine that he was NOT "properly certified" by the Democratic Secretary of State. The allegations set forth in the sworn complaints dated September 1st and 4th, 2026, which are attached hereto, are hereby incorporated by reference herein as if they were fully stated and set forth herein.

And, as to the Democratic Party nominee for Secretary of State, Garlin Gilchrist II, the allegations set forth in my timely filed sworn complaint filed in accordance with Mich Admin Code, R 168.5, are the basis for my instant request for the Wayne County Election Commission to determine that he was **NOT** "properly certified" by the Democratic Secretary of State. The allegations set forth in the sworn complaint dated September 1st, 2026, which is attached hereto, are hereby incorporated by reference herein as if they were fully stated and set forth herein.

It is important to advise the Wayne County Election Commission that despite there being three (3) ***timely*** filed challenges being filed under Mich Admin Code, R 168.5, which remain pending before the Secretary of State, it is believed the Secretary of State issued her "notice" to the various County Clerks under MCL 168.648 **without** rendering a decision on the timely filed challenges and without conducting the investigations required under Mich Admin Code, R 168.2(3). *Wilcoxon, supra.* ***This is a clear violation of due process.***

The Court of Appeals has held that MCL 168.558 applies to both primary and general elections. *Moore v Genesee Co,* 337 Mich App 723, 728-729; 976 NW2d 921 (2021); see also *Kahlilia Davis v Secretary of State,* unpublished order of the Court of Appeals, entered August 22, 2022 (Docket No. 362455). As such, Democratic nominees Eli Savit and Garlin Gilchrist, who executed affidavits of identity (AOIs) that contained a false statement, cannot appear on the November 3, 2026 general election as the democratic party nominees for Attorney General or Secretary of State, respectively. MCL 168.558(4); Mich Admin Code, R 168.2(4); *Moore*, 337 Mich App at 728-729; see also *Kahlilia Davis v Secretary of State*, unpublished order of the Court of Appeals, entered August 22, 2022 (Docket No. 362455).

Please be advised that the affidavits of identity for Democratic Party Nominees for Attorney General and Secretary of State were **NOT** filed with the Democratic Secretary of State until Monday, August 31, 2026, after they were officially nominated at the Democratic Fall State Convention held on Saturday, August 29th. MCL 168.558(1) of Michigan Election Law required that the affidavits of identity be filed with the Secretary of State "within 1 business after being nominated at the convention."

**Please advise ASAP if my request to present my objections and challenges on the record *before* the Wayne County Election Commission votes to authorize the printing of the ballots will be honored.**

**Also, please confirm receipt of this email and its attachments with a reply email. I have included representatives from the Michigan Secretary of State, as well as the challenged candidates in this email communication.**

**Respectfully submitted,**
**Robert Davis**
**180 Eason**
**Highland Park, MI 48203**

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

D. ETTA WILCOXON,

Plaintiff-Appellant,

v

CATHY M. GARRETT, GIL FLOWERS, and JANICE WINFREY,

Defendants-Appellees.

UNPUBLISHED
July 22, 2026
8:59 AM

No. 375547
Wayne Circuit Court
LC No. 24-007307-CZ

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

In this action, plaintiff, D. Etta Wilcoxon, brought claims involving alleged violations of the Michigan Election Law (MEL), MCL 168.1 *et seq*., and the Michigan Campaign Finance Act (MCFA), MCL 169.1 *et seq*., against election officials for both Wayne County and the city of Detroit.[1] Defendants Cathy M. Garrett and Gil Flowers (hereinafter collectively referred to as the "county officials") moved for summary disposition of the claims against them under MCR 2.116(C)(8), for failure to state a claim upon which relief could be granted. Defendant Janice Winfrey concurred in the county officials' motion. The trial court granted the motion on April 3, 2025, dismissing the claims against the county officials with prejudice. Further, on April 23, 2025, the trial court dismissed the claims against defendant Winfrey with prejudice. Plaintiff appeals as of right from the order of April 23, 2025, which is the final order in this matter. We affirm.

## I. BACKGROUND

In May 2024, plaintiff filed a complaint seeking declaratory judgment against defendants related to plaintiff's candidacy for the 2024 general election. Plaintiff alleged that the county officials should have waived late filing fees plaintiff owed for her earlier campaigns because she

[1] Plaintiff sued each individual in their official capacity: Cathy M. Garrett, as Wayne County Clerk; Gil Flowers, as Wayne County Campaign Finance Manager; and Janice Winfrey, as Detroit City Clerk.

established her right to waiver of the past-due filing fees. Plaintiff also alleged that Winfrey violated MCL 168.560b because plaintiff's full first name was used in media reports about the election, which did not match how plaintiff requested that her name appear on the ballot.

In August 2024, Garrett disqualified plaintiff from the November 2024 general election because plaintiff owed over $25,000 in late filing fees and fines for her earlier campaigns when she ran for Detroit city council and Detroit city clerk. Garrett also found that plaintiff falsely stated in her affidavit of identity that she had paid all late filing fees and fines. Therefore, plaintiff was not permitted to appear on the ballot as the Green Party candidate for the United States House of Representatives.

Before the November 2024 election, plaintiff moved for a writ of mandamus and an order to have the county officials show cause why plaintiff's name should not appear on the 2024 general ballot. Plaintiff argued that the county officials previously waived enforcement of any outstanding fees she owed or that the county officials were estopped from enforcing the late campaign fees, some of which dated back to 2005. The trial court disagreed with plaintiff's arguments and concluded that the county officials did not err in ruling that plaintiff was disqualified from the ballot because plaintiff did not prove her entitlement to have the late fees waived under MCL 169.215(1)(f).

After the November 2024 election, the county officials moved for summary disposition for plaintiff's failure to state a claim upon which relief could be granted, MCR 2.116(C)(8), arguing that plaintiff's claims were moot because the election had already occurred and there was no longer an actual controversy. The county officials further argued that plaintiff failed to establish a right to have her past-due filing fees waived. Winfrey concurred in the county officials' motion. The trial court agreed that there was no actual controversy because the election had passed and plaintiff's complaint was limited to her candidacy in 2024. Nonetheless, the trial court addressed the merits of plaintiff's claims and ruled that plaintiff had failed to show that the county officials erred by refusing to waive past-due filing fees, MCL 169.215(1)(f). The trial court also determined that there was no actual controversy regarding plaintiff's claim against Winfrey. Accordingly, the trial court dismissed plaintiff's claims against the defendants in their entirety with prejudice. This appeal follows.

## II. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is available under MCR 2.116(C)(8), for failure to state a claim upon which relief could be granted. A motion under MCR 2.116(C)(8) tests the legal sufficiency of the claim based on the factual allegations in the complaint. *Id*. at 159. When considering a motion under (C)(8), the trial court must accept all factual allegations as true and decide the motion on the pleadings alone. *Id*. at 160. The motion may only be granted when the claim is so clearly unenforceable that no factual development could possibly justify recovery. *Id*.

"Whether an issue is moot is a question of law that this Court reviews de novo." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019). Lastly, we review a trial court's

decision on a motion to amend a complaint for abuse of discretion. *Milne v Robinson*, 513 Mich 1, 7; 6 NW3d 40 (2024).

## III. ANALYSIS

On appeal, plaintiff argues that the trial court should not have granted summary disposition under MCR 2.116(C)(8) by allowing the County to retroactively apply an administrative rule adopted in 2022, which disqualified plaintiff from the general ballot in November 2024 because of her failure to pay past-due filing fees incurred before 2022, and because plaintiff established good cause to support her requests to waive past-due filing fees she still owed. Plaintiff also argues that the trial court should not have dismissed her claims against Winfrey because Winfrey violated MCL 169.560b. Defendants argue that plaintiff's claims are moot and without merit. We address each in turn.

### A. CLAIMS AGAINST THE COUNTY OFFICIALS

#### 1. MOOTNESS & AMENDMENT

Defendants argue that this action is moot because plaintiff stated in her complaint that she was a candidate only for the November 2024 general election and by the time the trial court ruled on the motion for summary disposition, that election had already been held. This Court will not reach moot issues, because there must be a real controversy between the parties, not a hypothetical one. *In re Detmer/Beaudry*, 321 Mich App 49, 55-56; 910 NW2d 318 (2017). An issue is moot if this Court's decision would not have any practical legal effect on the existing controversy or a subsequent event renders it impossible for this Court to fashion a remedy. *Garrett v Washington*, 314 Mich App 436, 449-450; 886 NW2d 762 (2016).

MCR 2.605(A)(1) provides that, "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." However, without an actual controversy, a trial court lacks jurisdiction to issue a declaratory judgment. *McGill v Auto Ass'n of Mich*, 207 Mich App 402, 407; 526 NW2d 12 (1994). In the context of an action seeking declaratory judgment, an actual controversy exists when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve the plaintiff's legal rights. *Shavers v Attorney General*, 402 Mich 554, 588-589; 267 NW2d 72 (1978). Where the injury sought to be prevented is only hypothetical, an actual controversy does not exist. *Recall Blanchard Comm v Secretary of State*, 146 Mich App 117, 121; 380 NW2d 71 (1985). The plaintiff must allege and prove an actual justiciable controversy. *Shavers*, 402 Mich at 589.

When the trial court ruled on plaintiff's motion for a writ of mandamus, it generally addressed the merits of plaintiff's request for a declaratory judgment shortly before the election. When the county officials later moved for summary disposition, the election had already occurred. Accordingly, there was no actual controversy as a trial court order granting plaintiff relief surrounding her candidacy for an election that had already occurred would have no practical effect. See *Garrett*, 314 Mich App at 449-450. Therefore, the trial court correctly granted summary disposition for defendants regarding plaintiff's claims involving the 2024 election.

However, because the trial court granted summary disposition under MCR 2.116(C)(8), the trial court was obligated to consider whether plaintiff should be permitted to amend her complaint. MCR 2.116(I)(5) provides that when a court is asked to rule on a motion brought under MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."

Before the trial court ruled on the motion for summary disposition, plaintiff filed a motion to amend her complaint. However, for unknown reasons, the trial court did not rule on the motion to amend. In her proposed amended complaint, plaintiff alleged that she intended to run in the 2026 general election, and all subsequent elections, which showed that there was an actual controversy. Plaintiff also advised the trial court, when the trial court granted defendant's motion for summary disposition, that she had taken steps to become a candidate in 2026. Therefore, because plaintiff will continue to have problems running for public office in the future, until the issues with her late filing fees are resolved, it is apparent that there continues to exist an actual controversy between the parties. Plaintiff may also face real injury in the future, by not having her name on the ballot in other elections. Accordingly, the trial court erred when it failed to address whether plaintiff could amend her complaint.

Nonetheless, the amendment of the complaint was not justified. The amendment of a party's pleadings is not justified if it would be futile. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003). "A determination of futility must be based on the legal insufficiency of the claim on its face." *Id*. at 139. Where the amended claim merely restates allegations already made, it is considered futile. *PT Today, Inc v Comm'r of the Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006).

Plaintiff continued to argue in her proposed amended complaint that she was entitled to have her late filing fees waived for the reasons she included in her original complaint. But as discussed later, the trial court properly granted judgment for the county officials with regard to its decision not to waive the fees, due to lack of good cause. Therefore, plaintiff has not shown that the trial court's failure to rule on her motion to amend her complaint prejudiced plaintiff because her amended complaint was not justified.

### 2. MICH ADMIN CODE, R 168.2

Turning to the merits of plaintiff's claims, plaintiff argues that the county officials improperly disqualified her from the ballot in 2024 by retroactively applying Mich Admin Code, R 168.2 to late fines and filing fees owed by plaintiff, which were imposed before the new rule went into effect in 2022. We disagree.

Rule 168.2 provides, in relevant part, as follows:

> (1) For the purposes of the candidate's statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid, an outstanding notice of error or omission is not a statement, report,

> late filing fee, or fine for the purposes of section 558(4) of the Michigan election law, 1954 PA 116, MCL 168.558. A candidate with an outstanding notice of error or omission may be disqualified based on the unfiled or unpaid statement, report, late filing fees, or fines upon which the notice was based.
>
> * * *
>
> (3) The filing official shall examine the campaign finance records of the secretary of state and county clerk for any county in which the candidate previously sought nomination or election, if applicable, to determine whether the candidate made a false statement in the affidavit of identity.
>
> (4) *The filing official shall disqualify a candidate who falsely states that as of the date he or she signed the affidavit of identity, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid.* Candidates disqualified on this basis cannot reverse disqualification by filing a corrected affidavit. [Emphasis added.]

MCL 168.558 also provides that candidates are required to file accurate affidavits of identity, subject to perjury, and that an officer must not certify a candidate who files a false affidavit of identity. Amendments have been made to both MCL 168.558(4) and Rule 168.2(3) to specifically provide that candidates who file false affidavits of identity are not to be certified and to require that officials check state and county records to ensure that a candidate has made accurate statements in the affidavit. However, the requirements that candidates pay late filing fees and accurately attest that any late fees have been paid are not newly imposed duties on candidates for public office.

Plaintiff's primary argument is that Rule 168.2(3) adopts a new duty for election officials to affirmatively check a candidate's affidavit of identity before certifying that candidate for an election; therefore, Rule 168.2 should not apply to her because the records show that she owed late filing fees dating back to at least 2013, and possibly even 2005, before the rule went into effect. However, even if Rule 168.2(3) imposes new obligations on election officials, it does not adopt new legal obligations for candidates or impact candidates' vested rights. The adoption of Rule 168.2 does not impose new requirements on candidates, or adopt new penalties for false affidavits of identity, because candidates have been required to make truthful statements in their affidavits of identity even before December 2022. Although Rule 168.2(3) now expressly requires that an officer must compare statements in an affidavit of identity to campaign records for the state and county before certifying a candidate, we do not agree with plaintiff that Rule 168.2(3) does not apply to her.

Moreover, Rule 168.2 was not retroactively applied to plaintiff. In *Warren City Council v Buffa*, 346 Mich App 528, 548; 12 NW3d 681 (2023), this Court explained that legislative amendments are prospective only, unless the Legislature indicates an intent to apply an amendment retroactively. Retroactive application is disfavored if (1) it would impair vested rights, (2) create a new obligation and impose a new duty, or (2) attach a disability to past transactions. *Id*. Because

the retroactive application of an amended statute may cause unfairness by upsetting settled transactions or depriving individuals of legitimate expectations, a statute applies retroactively if it does not impact vested rights. *Id*.

However, considering events that occurred before a rule was enacted does not in and of itself constitute retroactive application. *Id*. at 549-550. The *Buffa* Court rejected the argument that an amendment to a city charter, barring the mayor of Warren from serving the greater of three terms or 12 years, could not apply to the then mayor, who had already served four terms and was running for his fifth term. *Id*. at 532, 548-550. The term limit was added by an amendment in 2020, but provided that any terms or years served before the amendment was adopted would count toward an individual's term limit. *Id*. at 534. This Court relied on the following factors in its analysis of whether the amendment was intended to apply retroactively:

> First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. *[Id*. at 549, quoting *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 38-39; 852 NW2d 78 (2014).]

Applying the above factors, this Court explained that the amendment to the city charter did not apply retroactively, but that did not prevent the mayor's previous terms from being counted under the terms of the amendment. The inclusion of antecedent events did not render the amendment retroactive. *Buffa*, 346 Mich App at 549-550. Furthermore, there was no effort to apply the amendment against the then mayor, by removing him from office in his fourth term. *Id*. at 550. This Court held that the amendment need not apply retroactively in order to account for the terms previously served by the mayor. *Id*.

As discussed, applying the amendments to both MCL 168.558 and Rule 168.2, adopted after plaintiff incurred the disputed late filing fees, does not impact any vested rights of plaintiff, because before those amendments were adopted, plaintiff still was required to file her affidavit of identity, under penalty of perjury, affirmatively stating that she had paid all outstanding late fees and filed all campaign reports. Before Rule 168.2 was adopted, election officials were also required to review affidavits of identity and disqualify those candidates who submitted false affidavits. Accordingly, while plaintiff may have appeared on ballots in the past when she owed late filing fees, that did not give her a vested right to continue to appear on ballots after Rule 168.2 was adopted, requiring that election officials perform some investigation into the status of each candidate's campaign finance records history before certifying the candidate's name to appear on a ballot. Similar to the amendment in *Buffa*, 346 Mich App at 549-550, Rule 168.2 does not apply retroactively, but election officials may rely on antecedent events, including records of a candidate's failure to pay filing fees.

Therefore, the trial court did not err when it agreed with the county officials' decision to disqualify plaintiff because of her past-due filing fees.

3. WAIVER OF FEES

Plaintiff next argues that the county officials should have waived her obligation to pay the fees assessed, per MCL 168.215(1)(f). We disagree.

MCL 169.215(19)(d) provides that, "[t]he clerk of each county shall do all of the following: . . . (d) Upon written request, waive the payment of a late filing fee if the request for a waiver is based on good cause as prescribed in subsection (1)(f)." Notably, MCL 169.215(1)(f)(*i*) provides that "incapacitating physical illness, hospitalization, accident involvement, death, or incapacitation for medical reasons of a person required to file, a person whose participation is essential to the preparation of the statement or report, or a member of the immediate family of these persons" constitutes good cause. Plaintiff is correct that MCL 169.215(1)(f) uses the term "shall," which is mandatory, *Ellison v Dep't of State*, 320 Mich App 169, 180; 906 NW2d 221 (2017), MCL 169.215(1)(f). However, MCL 169.215(1)(f) only requires that the county clerk grant a waiver when there is good cause and adequate documentation. Because both of those requirements have not been established by plaintiff, the county officials were not under a mandatory duty to grant her requests for waivers.

Here, plaintiff offered two grounds for waiver of her late filing fees. First, she produced a letter from her personal physician, dated August 27, 2015, that states that plaintiff suffered from a gastrointestinal condition which prevents her from sitting for long periods of time. Second, plaintiff offered the death of her campaign treasurer as good cause for waiving her late fees. We conclude that neither established good cause to waive the late fees.

The letter from plaintiff's physician indicated that plaintiff suffered from a medical condition in August 2015 that limited her ability to sit for long periods of time. However, the letter does not explain whether the condition existed beyond 2015 and would have impacted her ability to make the required filings. Moreover, it is not apparent that the inability to sit for long periods prevented plaintiff from completing the appropriate paperwork, for instance, if she took frequent breaks or had assistance. Accordingly, plaintiff's letter from her physician did not prove good cause to waive the late fees, even those due in 2015.

The death of plaintiff's campaign treasurer also does not prove good cause for not timely filing all the paperwork due over multiple years. First, plaintiff has not produced adequate documentation to prove that the death impacted the ability to file the necessary reports. Despite plaintiff providing her own affidavit, she failed to establish when the treasurer died and that only the treasurer had access to the information necessary to file campaign finance reports. Further, the record demonstrates that plaintiff has since formed other committees for her subsequent campaigns; therefore, the treasurer's death does not give her good cause for not filing other campaign reports.

Plaintiff also seems to allege that Flowers, and other staff working for the County, prevented plaintiff and her campaign staff from filing the necessary paperwork, primarily because they were given inaccurate passwords, presumably so they could electronically file the necessary reports. Plaintiff produced an affidavit from another campaign staffer, who described his problems with filing a single report in 2017, which he eventually was able to file in person. Again, given the amount of time that has passed and plaintiff's other campaign committees, the problems

plaintiff's staff experienced in 2017, filing a single report, do not prove good cause for waiving fees due in other campaigns.

Lastly, plaintiff raises arguments regarding waiver, laches, and statute of limitations to support her claims. These arguments are primarily based on the fact that the County allowed plaintiff to appear on ballots in the past, when she already owed late fees, and the county officials are only now taking action against delinquent candidates.

Specifically, plaintiff relies on laches to argue that the county officials should be barred from enforcing Rule 168.2 against plaintiff, when the grounds for keeping her off the ballots include late fees that were assessed well before 2022. "Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time." *Nykoriak v Napoleon*, 334 Mich App 370, 382; 964 NW2d 895 (2020) (quotation marks, brackets, and citations omitted). In practical terms, "laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier." *Id*.

Here, plaintiff has not properly demonstrated that laches should have applied to the county official's decision to disqualify plaintiff. Plaintiff essentially blames the county officials for waiting to punish her for not paying her late fees for many years. But it does not make sense to apply laches to the county officials and allow plaintiff to appear on future ballots, because it is undisputed that she had not paid past-due filing fees for years. Courts will not apply the equitable doctrine of laches to a party who has "unclean hands." *Davis v Secretary of State*, 346 Mich App 445, 463; 12 NW3d 653 (2023). Further, before applying laches, courts consider any possible injury to the public. *Id*. Allowing plaintiff to refuse to pay late fees for many years and still be treated the same as other candidates who have paid outstanding fees, would not be in the public interest.

Plaintiff also argues that the county officials waived enforcement of any late fees. Waiver consists of the intentional relinquishment of a known right. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 254; 776 NW2d 145 (2009). The party asserting waiver has the burden of proof. *Id*. at 255. Before Rule 168.2 was adopted in 2022, county clerks were not required to look beyond an affidavit of identity to certify a candidate. Accordingly, before 2022, clerks may have only refused to certify a candidate if statements in the affidavit were clearly false. There is no merit to plaintiff's argument that the county officials should not be permitted to enforce Rule 168.2 against her because plaintiff was allowed to appear on past ballots when she owed past-due late fees. Clerks were not instructed by the secretary of state to review records related to past-due campaign finance fines before certifying a candidate before 2022. The County imposed late fees against plaintiff, but the county officials did not take action against her candidacy until 2024, after Rule 168.2 went into effect in 2022. These facts do not support a finding that the county officials intentionally waived any of its rights with regard to penalizing plaintiff for failing to pay late fees.

To the extent that plaintiff also raises a statute of limitations argument, she has not demonstrated that she is entitled to relief. Even assuming, without deciding, that a six-year limitations period applies to the collection of outstanding campaign fees and fines, MCL 600.5813, plaintiff has not demonstrated that all the fees and fines imposed would fall outside of the six-year

window predating 2024. Plaintiff has also not established that fees or fines no longer collectable are not subject to the reporting requirements of MCL 168.558(4), i.e., that those outstanding fees must be acknowledged in the affidavit. Accordingly, the trial court did not err when it determined that plaintiff was not entitled to have her unpaid filing fees waived.

B. CLAIM AGAINST WINFREY

Plaintiff's only claim against Winfrey arises from how plaintiff's name appeared on the ballot for the Detroit mayoral election in 2021. Plaintiff preferred to use only her first initial and her middle name, rather than have her full first name appear on the ballot. Plaintiff alleged that Winfrey released plaintiff's name to the media as "Dallias Wilcoxon," rather than plaintiff's preferred iteration of "D. Etta Wilcoxon." To support her claim, plaintiff provided her own affidavit, dated May 13, 2024, in which she stated that her name appeared in the press differently than what she had requested through Winfrey's office; two news articles from 2021 stating that "Dallias Wilcoxon" was a candidate; and a copy of the proof ballot from the City, in which plaintiff's name was to appear as "D. Etta Wilcoxon," in the August 2021 primary for mayor.

MCL 168.558(1) states that when filing a nominating petition, qualifying petition, filing fee, or affidavit of candidacy for office in any election (other than a presidential election), a candidate must file with the local filing officer, or the secretary of state when nominated at a convention, two copies of an affidavit of identity. Among the personal information that should be included in the affidavit of identity is "the manner in which the candidate wishes to have his or her name appear on the ballot." MCL 168.558(2). See also MCL 168.560b.

Plaintiff argues that Winfrey violated MCL 168.560b because she released plaintiff's full legal name to the media in the spring of 2021, when candidates were just starting to campaign for the August 2021 primary. Although plaintiff is correct that she had a right to request how her name should appear on the ballot, per MCL 168.560b, there is nothing in that statute that regulates how election officials should release the names of individuals who were not yet candidates and were in the process of taking steps to appear on a ballot months later. Notably, plaintiff does not dispute that her name was correctly included on the 2021 ballot.

Further, plaintiff's factual allegations against Winfrey involve how plaintiff's name appeared in press releases or election records in 2021. Therefore, this claim appears to be limited to only the 2021 election, and the trial court properly ruled that there was no actual controversy with regard to plaintiff's allegations against Winfrey because the election had already occurred. See *Garrett*, 314 Mich App at 449-450. Further, plaintiff did not propose amending her complaint to add any new allegations involving Winfrey's preparation of ballots but simply reiterated her allegations that Winfrey had previously released information about plaintiff without using her preferred iteration of her name. As plaintiff's proposed amended complaint merely reiterates her claims against Winfrey, any amendment of the complaint was futile. See *PT Today*, 270 Mich App at 143.

Accordingly, the trial court properly dismissed this part of plaintiff's complaint, even if the trial court erred by not first reviewing plaintiff's proposed amended complaint.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young

STATE OF MICHIGAN
SECRETARY OF STATE

*In re:* **Robert Davis' Sworn Complaint #2 Challenging Validity of Affidavit of Identity Filed On August 31, 2026 By Eli Savit, Democratic Party Nominee for Attorney General, To Qualify for November 3, 2026 General Election Ballot Due To Friends of Eli Savit's Failure To File July 2026 Quarterly Campaign Report Required Under MCL 169.233(1)(c) of Michigan Campaign Finance Act (MCFA).**

______________________________________________/

ROBERT DAVIS
Complainant
180 Eason
Highland Park, MI 48203
Davisrobert854@gmail.com

______________________________________________/

**SWORN COMPLAINT #2 OF ROBERT DAVIS CHALLENGING VALIDITY OF AFFIDAVIT OF IDENTITY FILED ON AUGUST 31 2026 BY ELI SAVIT, DEMOCRATIC PARTY NOMINEE FOR ATTORNEY GENERAL.**

**ROBERT DAVIS**, a natural person, being first duly sworn and deposed, and under the penalty of perjury states the following:

1. That I am the complainant in the above-entitled matter.

2. **This sworn complaint is separate and distinct from the sworn complaint I filed against Eli Savit on September 1, 2026.**

3. That I have first-hand knowledge as to the facts stated, pled and alleged herein.

4. That I am a qualified and registered voter of the city of Highland Park, County of Wayne, State of Michigan.

5. That I am currently a registered member of the Michigan Democratic Party.

6. That I was attended and was physically present at the Michigan Democratic Party's August 29, 2026 Fall State Nominating Convention held in Lansing, MI at the Lansing Convention Center.

7. That at the Michigan Democratic Party's August 29, 2026 Fall State Nominating Convention, I openly and vocally voted **"NAY"** in opposition to the nomination of Eli Savit as the Michigan Democratic Party's nominee for Attorney General.

8. That effective June 8, 2026, Mich Admin Code, R 168.1 through 168.6 governs challenges to candidates' affidavits of identity. (**See Secretary of State's Promulgated Rules, Mich Admin Code, R 168.1 through R 168.6, as amended effective June 8, 2026 attached**).

9. Thus, this sworn complaint challenging the validity of Eli Savit's affidavit of identity filed with the Secretary of State on August 31, 2026, is governed by Mich Admin Code, R 168.1 through R 168.6, as amended effective June 8, 2026.

10. This sworn complaint challenging the validity of Eli Savit's affidavit of identity filed with the Secretary of State on August 31, 2026 has been properly sworn before a notary public and timely filed in accordance with pursuant to R 168.5, as amended effective June 8, 2026.

## SECRETARY OF STATE HAS STATUTORY LEGAL DUTY UNDER R 168.2(3) TO COMPARE STATEMENTS IN AN AFFIDAVIT OF IDENTITY TO CAMPAIGN FINANCE RECORDS MAINTAINED BY SECRETARY OF STATE AND COUNTY CLERKS *BEFORE* CERTIFYING A CANDIDATE.

11. Mich Admin Code, R 168.2(3) provides:

> (3) The filing official shall examine the campaign finance records of the secretary of state and county clerk for any county in which the candidate previously sought nomination or election, if applicable, to determine whether the candidate made a false statement in the affidavit of identity.

12. Recently, the Michigan Court of Appeals had an opportunity to analyze and interpret Mich Admin Code, R 168.2(3) and MCL 168.558. In *Wilcoxon v Garrett*, unpublished per curiam opinion of Court of Appeals, issued July 22, 2026 (Docket No. 375547); slip op at 5, the Court of Appeals held: "**Rule 168.2(3) now expressly requires that an officer *must* compare statements in an affidavit of identity to campaign records for state and county *before* certifying a candidate**[.]" (emphasis supplied).

13. The Court of Appeals in *Wilcoxon, supra*, further held: "**Amendments have been made to both MCL 168.558(4) and Rule 168.2(3) to require that officials check state and county records to ensure that a candidate has made accurate statements in the affidavit.**" *Wilcoxon*, slip op 5 (emphasis supplied).

14. Pursuant to MCL of 168.558(1) of Michigan Election Law, a political party's nominee for Attorney General must file their affidavit of

identity with the Secretary of State "within 1 business day after being nominated" at the party's fall state convention. See *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 24, 2026 (Docket No. 382032); slip op pp 6-8.

15. Therefore, under R 168.2(3), the Secretary of State, as the filing official that is responsible for accepting a political party's nominee for Attorney General's affidavit of identity is required to "**perform some investigation into the status of each candidate's campaign finance records history *before* certifying that candidate's name to appear on a ballot.**" *Wilcoxon*, slip op at p 6 (emphasis supplied).

**ELI SAVIT, DEMOCRATIC NOMINEE FOR ATTORNEY GENERAL, FILED A FALSE AFFIDAVIT OF IDENTITY ON AUGUST 31, 2026 BECAUSE AS OF AUGUST 31, 2026, ALL CAMPAIGN FINANCE STATEMENTS OR REPORTS "REQUIRED OF" ELI SAVIT OR A CANDIDATE COMMITTEE ORGANIZED FOR THE BENEFIT OF HIS ELECTION TO OFFICE WERE NOT FILED.**

16. "The filing of certain documents—including AOIs—is governed by MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 797-798 (2021), quoting *Nykoriak v. Napoleon,* 334 Mich.App. 370, 375-377, 964 N.W.2d 895 (2020).

17. "The failure to supply a facially proper affidavit of identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot." *Stumbo v. Roe,* 332 Mich.App. 479, 481; 957 N.W.2d 830 (2020).

18. Moreover, "[c]andidates are required to strictly comply with MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 798 (2021), citing *Nykoriak,* 334 Mich.App. at 377, 964 N.W.2d 895.

19. "[I]f a candidacy applicant has failed to comply with the statutory requirements, the election officials have a clear legal duty not to certify the applicant." *Moore v Genesee County*, 337 Mich.App. 723, ___; 976 NW2d 921, 927 (2021).

20. According to the Secretary of State's public website that contains an up-to-date listing of candidates who are being recommended to be certified to appear on the November 3, 2026 general election ballot, **on August 31, 2026**, pursuant to MCL 168.558(1) of Michigan Election Law, Eli Savit filed his affidavit of identity with the Secretary of State to qualify for Attorney General.[1]

21. Pursuant to MCL 168.558(4) of Michigan Election Law, provides in relevant part:

> (4) **An affidavit of identity must include a signed and notarized statement** ***that as of the date of the affidavit, all statements, reports,*** **late filing fees, and fines** ***required of the candidate or any candidate committee organized to support the candidate's election*** **under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282,** ***have been filed*** **or paid; .... An officer shall not**

[1] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboePublicReport&electionType=GEN&electionYear=2026 (last accessed on September 1, 2026 at 3:22 a.m.)

> **certify to the board of election commissioners the name of a candidate** who fails to comply with this section, ***or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section.*** [emphasis supplied].

22. A review of the Washtenaw County Clerk's campaign finance database and the Secretary of State campaign finance database has revealed that as of August 31, 2026, Eli Savit's candidate committees organized for his election as Washtenaw County Prosecutor and for his election for Michigan Attorney General have outstanding campaign finance reports that are required under the Michigan Campaign Finance Act (MCFA).

**The Friends of Eli Savit Candidate Committee Failed To File July 2026 Quarterly Campaign Statement "*Required*" Under MCL 169.233(1)(c) of Michigan Campaign Finance Act With Washtenaw County Clerk As Of August 31, 2026.**

23. According to the Washtenaw County Clerk's campaign finance database, on May 20, 2019, Eli Savit filed a Statement of Organization for The Friends of Eli Savit Candidate Committee, which was organized for the purpose of supporting Eli Savit's election as the Washtenaw County Prosecutor.[2] (**See Statement of Organization for Friends of Eli Savit attached**).

---

[2] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

24. In November 2019, Eli Savit was elected the Washtenaw County Prosecutor. The Friends of Eli Savit Candidate Committee, to date, remains **ACTIVE**.[3]

25. According to the Washtenaw County Clerk's campaign finance database, on July 25, 2025, the Friends of Eli Savit Candidate Committee timely filed its July 2025 Campaign Statement.[4] (**See Friends of Eli Savit Candidate Committee's July 2025 Campaign Statement attachment**).

26. The Friends of Eli Savit Candidate Committee's July 2025 Campaign Finance Statement reported having **an ending balance of $372.55.**[5] (**See Friends of Eli Savit Candidate Committee's July 2025 Campaign Statement attached**).

27. On October 17, 2025, however, the Friends of Eli Savit Candidate Committee filed an "**Amended**" Statement of Organization in which a

---

[3] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

[4] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

[5] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

**"Reporting Waiver"** was ***requested***.[6] **(See Friends of Eli Savit Candidate Committee's Amended Statement of Organization filed on October 17, 2025 attached).**

28. There were no other campaign finance reports attached to or filed with the "**Amended**" Statement of Organization filed on October 17, 2025.

29. Despite showing an **ENDING BALANCE OF $372.55** on its July 2025 Quarterly Campaign Statement, the Friends of Eli Savit requested a "Reporting Waiver" on its "Amended" Statement of Organization filed with the Washtenaw County Clerk on October 17, 2025.

30. Notably, since the filing of the "**Amended**" Statement of Organization filed on October 17, 2025, the Friends of Eli Savit Candidate Committee has **NOT** filed any of the campaign statements required under MCL 169.233 and MCL 169.235 of MCFA.[7]

31. Additionally, and perhaps most importantly, as of the date of Eli Savit signing and/or filing his affidavit of identity with the Secretary of State

---

[6] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

[7] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

on August 31, 2026, the Washtenaw County Clerk has **NOT GRANTED** the Friends of Eli Savit Candidate Committee a "Reporting Waiver."

32. With respect to the Friends of Eli Savit candidate committee (Id.# C-2019-005), **the Defendant Secretary of State's *very own campaign finance database* shows that <u>on July 20, 2026 the Friends of Eli Savit candidate committee</u> <u>made a $4,575.13 "expenditure" in the form of a "contribution"</u> to the Democratic State Central Committee (Id.# 00380)**[8]. **(See Page 12 of 52 of Democratic State Central Committee's 2026 Pre-Election Campaign Statement filed on August 18, 2026 attached)**. This **incriminating evidence**, which is in the possession of the Defendant Secretary of State, clearly shows that the **<u>reporting waiver on which the Defendant Secretary of State mistakenly relies was extinguished by operation of law on July 20, 2026.</u>**

33. Defendant Secretary of State's entire meritless defense with respect to Count I is that the Friends of Eli Savit candidate committee "is currently on a reporting waiver and does not owe any outstanding reports." (Fracassi Affidavit Ex A ¶ 13.) This is a FALSE statement as a matter of statute and the Defendant's *very own* campaign finance

[8] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 3, 2026 at 6:15 a.m.)

records. **(See Page 12 of 52 of Democratic State Central Committee's 2026 Pre-Election Campaign Statement filed on August 18, 2026 attached).**

34. MCL 169.233(6) of the Michigan Campaign Finance Act (MCFA), which governs the filing of July and October quarterly campaign statements and pre and post election campaign statements, provides:

> (6) A **candidate committee** or a committee other than a candidate committee **that files a written statement under section 24(5) or (6)** or that is automatically considered to have made a statement under section 24(5) **is not required to file a campaign statement under subsection (1), (3), or (4)** ***unless it received or expended an amount in excess of $1,000.00. If the committee receives or expends an amount in excess of $1,000.00 during a period covered by a filing, the committee is then subject to the campaign filing requirements under this act***. [emphasis supplied.]

35. On October 17, 2025, the Friends of Eli Savit candidate committee (Id.# C-2019-005) filed an "**Amended**" Statement of Organization with the Washtenaw County Clerk seeking a "Reporting Waiver". **(See Friends of Eli Savit candidate committee's Amended Statement of Organization filed with Washtenaw County Clerk on October 17, 2025 attached)**. After filing the "Amended" State of Organization that requested a "Reporting Waiver", the Friends of Eli Savit candidate committee (Id.# C-2019-005) did **NOT** file the October 2025 Quarterly Campaign Statement, 2026 Annual Campaign Statement, **July 2026 Quarterly Campaign Statement** as **required** under MCL 169.233(1)(c) and MCL 169.235 of the MCFA.

36. A review of the Defendant Secretary of State's *very own campaign finance database,* however, has revealed that **on July 20, 2026 the Friends of Eli Savit candidate committee made a $4,575.13 "expenditure" in the form of a "contribution" to the Democratic State Central Committee (Id.# 00380)**[9]. **(See Page 12 of 52 of Democratic State Central Committee's 2026 Pre-Election Campaign Statement filed on August 18, 2026 attached).**

37. This is significant because pursuant to MCL 169.233(1)(c)(*i*) of the MCFA:

> "A committee, other than an independent committee, an independent expenditure committee, or a political committee required to file with the secretary of state, supporting or opposing a candidate shall file complete campaign statements as required by this act and the rules promulgated under this act according to the following schedule:
>
> *****
>
> (c) For candidate committees only, in a year in which there is no election for the candidate the candidate committee is supporting or opposing: **(i) Not later than July 25 with a closing date of July 20 of that year**." [emphasis supplied.]

38. Therefore, because the Friends of Eli Savit candidate committee (Id.# C-2019-005) **made an "expenditure" in the form of a "contribution"** to the Democratic State Central Committee (Id#

---

[9] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 3, 2026 at 6:15 a.m.)

000380) that **exceeded the $1,000 threshold within the reporting period for the July 2026 Quarterly Campaign Statement**, pursuant to MCL 169.233(6) of the MCFA, the Friends of Eli Savit candidate committee (Id.# C-2019-005) **"automatically" lost** its reporting waiver by statute and was thus **"required"** to file a July 2026 Quarterly Campaign Statement with the Washtenaw County Clerk accurately reporting its $4,575.13 "contribution" and "expenditure" to the Democratic State Central Committee (Id.# 000380). *See* MCL 169.233(6) of MCFA.

39. The revival of the filing requirements under MCL 169.233(1)(c) is **automatic** under MCL 169.233(6) of the MCFA. Contrary to Defendant Secretary of State's and Adam Fracassi's flawed, meritless and frivolous interpretations and applications of the MCFA, the revival of the Friends of Eli Savit candidate committee's (Id.# C-2019-005) filing requirements under MCL 169.233(1)(c) of the MCFA does **not** depend on the committee amending its Statement of Organization, on the county clerk revoking the waiver, or on the State Bureau of Elections or the Defendant Secretary of State making a "determination."

40. The Defendant Secretary of State did not conduct a thorough review and examination of the Defendant Secretary of State's very own campaign finance database, otherwise the Defendant Secretary of

State would have discovered what Plaintiff easily discovered with respect to the Friends of Eli Savit candidate committee's July 20, 2026 $4,575.13 "contribution" and "expenditure" to the Democratic State Central Committee (Id. #00380). (**See Page 12 of 52 of Democratic State Central Committee's 2026 Pre-Election Campaign Statement filed on August 18, 2026 attached**).

41. The Defendant Secretary of State's very own campaign finance database clearly shows and proves the Friends of Eli Savit candidate committee failed to file the July 2026 Quarterly Campaign Statement **"required"** under MCL 169.233(1)(c) of the MCFA.

42. That to the best of my knowledge, information and belief, all of the facts and allegations stated herein in each numbered paragraph are true and correct.

43. If called and sworn as a witness, I am competent to testify as to the facts stated herein.

44. Please send all responses to this sworn challenge to my email address: davisrobert854@gmail.com.

45. **This sworn complaint is separate and distinct from the sworn complaint I filed against Eli Savit on September 1, 2026.**

FURTHER AFFIANT SAYETH NOT.

9-4-26

ROBERT DAVIS

Subscribed and sworn to before me

On this 4 day of September, 2026

Notary Public Signature

Brianna Daniels

Printed Name of Notary Public

State of Michigan, County of Macomb

My Commission Expires 12/20/29

Acting in the County of Oakland

BRIANNA DANIELS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires December 20, 2029
Acting in the County of Oakland

STATE OF MICHIGAN
SECRETARY OF STATE

*In re:* **Robert Davis' Sworn Complaint Challenging Validity of Affidavit of Identity Filed On August 31, 2026 By Garlin Gilchrist, II, Democratic Party Nominee for Secretary of State, To Qualify for November 3, 2026 General Election Ballot.**

______________________________________________/

ROBERT DAVIS
Complainant
180 Eason
Highland Park, MI 48203
Davisrobert854@gmail.com

______________________________________________/

**SWORN COMPLAINT OF ROBERT DAVIS CHALLENGING VALIDITY OF AFFIDAVIT OF IDENTITY FILED ON AUGUST 31 2026 BY GARLIN GILCHRIST II, DEMOCRATIC PARTY NOMINEE FOR SECRETARY OF STATE.**

ROBERT DAVIS, a natural person, being first duly sworn and deposed, and under the penalty of perjury states the following:

1. That I am the complainant in the above-entitled matter.
2. That I have first-hand knowledge as to the facts stated, pled and alleged herein.
3. That I am a qualified and registered voter of the city of Highland Park, County of Wayne, State of Michigan.
4. That I am currently a registered member of the Michigan Democratic Party.

5. That I attended and was physically present at the Michigan Democratic Party's August 29, 2026 Fall State Nominating Convention held in Lansing, MI at the Lansing Convention Center.

6. That at the Michigan Democratic Party's August 29, 2026 Fall State Nominating Convention, I openly and vocally voted **"NAY"** in opposition to the nomination of Garlin Gilchrist, II as the Michigan Democratic Party's nominee for Secretary of State.

7. That effective June 8, 2026, Mich Admin Code, R 168.1 through 168.6 governs challenges to candidates' affidavits of identity. (**See Secretary of State's Promulgated Rules, Mich Admin Code, R 168.1 through R 168.6, as amended effective June 8, 2026 attached**).

8. Thus, this sworn complaint challenging the validity of Garlin Gilchrist II's affidavit of identity filed with the Secretary of State on August 31, 2026, is governed by Mich Admin Code, R 168.1 through R 168.6, as amended effective June 8, 2026.

9. This sworn complaint challenging the validity of Garlin Gilchrist's affidavit of identity filed with the Secretary of State on August 31, 2026 has been properly sworn before a notary public and timely filed in accordance with pursuant to R 168.5, as amended effective June 8, 2026.

## SECRETARY OF STATE HAS STATUTORY LEGAL DUTY UNDER R 168.2(3) TO COMPARE STATEMENTS IN AN AFFIDAVIT OF IDENTITY TO CAMPAIGN FINANCE RECORDS MAINTAINED BY SECRETARY OF STATE AND COUNTY CLERKS *BEFORE* CERTIFYING A CANDIDATE.

10. Mich Admin Code, R 168.2(3) provides:

> (3) The filing official shall examine the campaign finance records of the secretary of state and county clerk for any county in which the candidate previously sought nomination or election, if applicable, to determine whether the candidate made a false statement in the affidavit of identity.

11. Recently, the Michigan Court of Appeals had an opportunity to analyze and interpret Mich Admin Code, R 168.2(3) and MCL 168.558. In *Wilcoxon v Garrett,* unpublished per curiam opinion of Court of Appeals, issued July 22, 2026 (Docket No. 375547); slip op at 5, the Court of Appeals held: "**Rule 168.2(3) now expressly requires that an officer *must* compare statements in an affidavit of identity to campaign records for state and county *before* certifying a candidate**[.]" (emphasis supplied).

12. The Court of Appeals in *Wilcoxon, supra,* further held: "**Amendments have been made to both MCL 168.558(4) and Rule 168.2(3) to require that officials check state and county records to ensure that a candidate has made accurate statements in the affidavit.**" *Wilcoxon*, slip op 5 (emphasis supplied).

13. Pursuant to MCL of 168.558(1) of Michigan Election Law, a political party's nominee for Attorney General must file their affidavit of identity with the Secretary of State "within 1 business day after being nominated" at the party's fall state convention. See *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 24, 2026 (Docket No. 382032); slip op pp 6-8.

14. Therefore, under R 168.2(3), the Secretary of State, as the filing official that is responsible for accepting a political party's nominee for Attorney General's affidavit of identity is required to "**perform some investigation into the status of each candidate's campaign finance records history *before* certifying that candidate's name to appear on a ballot**." *Wilcoxon*, slip op at p 6 (emphasis supplied).

**GARLIN GILCHRIST, II, DEMOCRATIC NOMINEE FOR SECRETARY OF STATE, FILED A FALSE AFFIDAVIT OF IDENTITY ON AUGUST 31, 2026 BECAUSE AS OF AUGUST 31, 2026, ALL CAMPAIGN FINANCE STATEMENTS OR REPORTS "REQUIRED OF" GARLIN GILCHRIST, II OR A CANDIDATE COMMITTEE ORGANIZED FOR THE BENEFIT OF HIS ELECTION TO OFFICE WERE NOT FILED.**

15. "The filing of certain documents—including AOIs—is governed by MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 797-798 (2021), quoting *Nykoriak v. Napoleon,* 334 Mich.App. 370, 375-377, 964 N.W.2d 895 (2020).

16. "The failure to supply a facially proper affidavit of identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot." *Stumbo v. Roe,* 332 Mich.App. 479, 481; 957 N.W.2d 830 (2020).

17. Moreover, "[c]andidates are required to strictly comply with MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 798 (2021), citing *Nykoriak,* 334 Mich.App. at 377, 964 N.W.2d 895.

18. "[I]f a candidacy applicant has failed to comply with the statutory requirements, the election officials have a clear legal duty not to certify the applicant." *Moore v Genesee County*, 337 Mich.App. 723, ___; 976 NW2d 921, 927 (2021).

19. According to the Secretary of State's public website that contains an up-to-date listing of candidates who are being recommended to be certified to appear on the November 3, 2026 general election ballot, **on August 31, 2026**, pursuant to MCL 168.558(1) of Michigan Election Law, Garlin Gilchrist filed his affidavit of identity with the Secretary of State to qualify for Secretary of State.[1]

[1] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboePublicReport&electionType=GEN&electionYear=2026 (last accessed on September 1, 2026 at 3:22 a.m.)

20. Pursuant to MCL 168.558(4) of Michigan Election Law, provides in relevant part:

> (4) **An affidavit of identity must include a signed and notarized statement** ***that as of the date of the affidavit, all statements, reports,*** **late filing fees, and fines** ***required of the candidate or any candidate committee organized to support the candidate's election*** **under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282,** ***have been filed*** **or paid**; .... **An officer shall not certify to the board of election commissioners the name of a candidate** who fails to comply with this section, ***or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section.*** [emphasis supplied].

21. A review of the Secretary of State's campaign finance database has revealed, however, that Garlin Gilchrist's candidate committee organized for his candidacy for Governor of Michigan failed to file required campaign statements under MCL 169..228(3) of the Michigan Campaign Finance Act (MCFA).

**The Garlin Gilchrist for Governor Candidate Committee Failed To File Campaign Statements Required Under MCL 169.228(3) of MCFA.**

22. According to the Secretary of State's campaign finance database, on March 6, 2025, Garlin Gilchrist, II filed an original Statement of Organization with the Secretary of State for the Garlin Gilchrist for Governor Candidate Committee (Id. #521896), which was organized to

support Garlin Gilchrist's candidacy for Governor as a representative of the Michigan Democratic Party.[2]

23. MCL 169.228(3) of MCFA provides:

> (3) **Accompanying a campaign statement reporting the receipt of a contribution from a *person whose treasurer does not reside in, whose principal office is not located in, or whose funds are not kept in this state, shall be a statement certified as true and correct by an officer of the contributing person setting forth the full name, address, along with the amount contributed, of each person who contributed to the total amount of the contribution*.** The occupation, employer, and principal place of business shall be stated for each person who contributed more than $100.00. **This subsection does not apply if the contributing person *is registered* as a committee under section 24.** [emphasis supplied.]

24. MCL 169.211(2) of MCFA defines "person" to mean:

> (2) **"Person" means a** business, individual, proprietorship, limited liability company, firm, partnership, joint venture, syndicate, business trust, labor organization, company, corporation, **association, committee, or any other organization or group of persons acting jointly**. [emphasis supplied.]

25. On July 25, 2025, the Garlin Gilchrist for Governor Candidate Committee filed its July 2025 Quarterly Campaign Statement, which reported having received a contribution in the amount of $8,325 from the Democratic Lieutenant Governor Association (DLGA) PAC. **(See p 592 of 2650 of the Garlin Gilchrist for Governor Candidate**

---

[2] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 6:27 a.m.)

**Committee's July 2025 Quarterly Campaign Statement attached).**[3]

26. On the Garlin Gilchrist for Governor Candidate Committee's July 2025 Quarterly Campaign Statement, it lists the Democratic Lieutenant Governor's Association (DLGA) PAC's address as: 1090 Vermont Ave., NW Ste 750, Washington, D.C. 20005-4970. **(See p 592 of 2650 of the Garlin Gilchrest for Governor Candidate Committee's July 2025 Quarterly Campaign Statement attached).**[4]

27. A review of the Secretary of State's campaign database, however, has revealed that the Democratic Lieutenant Governor's Association (DLGA) PAC was **DISSOLVED** as a Political Action Committee (PAC) **effective February 24, 2021. (See Secretary of State's February 24, 2021 Letter Granting Dissolution of Democratic Lieutenant Governor's Association PAC attached).**

28. The Democratic Lieutenant Governor's Association (DLGA) PAC had requested DISSOLUTION of its Michigan PAC on October 26, 2020 with the filing of its campaign statement. **(See Democratic**

---

[3] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 6:36 a.m.)

[4] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 6:46 a.m.)

**Lieutenant Governor's Association PAC October 26, 2020 Request for Dissolution attached**).

29. The Democratic Lieutenant Governor's Association (DLGA) PAC's October 26, 2020 request for Dissolution lists the name and address of its Treasurer as follows:

ROSHAN PATEL
1090 Vermont Ave NW Ste 750
Washington, DC 20005

30. Although the Democratic Lieutenant Governor's Association (DLGA) is no longer registered as a PAC under MCL 169.224 of MCFA, the Democratic Lieutenant Governor's Association (DLGA) is registered with the Federation Election Commission (FEC) **under Federal Law**. **(See DLGA's FEC Statement of Organization attached)**.

31. The FEC Statement of Organization lists DLGA's official bank and depository as Amalgamated Bank, 1825 K Street, NW, Washington, DC 20006.

32. Pursuant to MCL 169.228(3) of MCFA, because the Democratic Lieutenant Governor's Association (DLGA) is a "***person whose treasurer does not reside in, whose principal office is not located in, or whose funds are not kept in this state,"*** the Garlin Gilchrist for Governor Candidate Committee was "required" to file a "***a statement certified as true and correct by an officer of the contributing person setting forth the full name, address, along***

***with the amount contributed, of each person who contributed to the total amount of the contribution.***"

33. MCL 169.228(3) applies to the Democratic Lieutenant Governor's Association's PAC's (DLGA) $8,325 contribution because as of the date of the contribution DLGA was **NOT and IS NOT** registered as a committee under MCL 169.224 of the MCFA.

**Garlin Gilchrist for Governor Committee's Failure To File Statement Under MCL 169.221(4) of MCFA For Having A Treasurer That Is NOT A Qualified Elector and Nonresident of Michigan.**

34. On March 6, 2025, Garlin Gilchrist filed the original Statement of Organization for the Garlin Gilchrist for Governor Candidate Committee (Id #521896), which lists nonresident Jay Peterson as the Treasurer.[5]

35. The address listed on the Garlin Gilchrist for Governor Candidate Committee's original and amended Statements of Organization for Jay Peterson is as follows[6]:

> 122 C St., NW Ste. 360
> Washington, DC 20001

---

[5] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 7 a.m.)

[6] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 7 a.m.)

36. In fact, on Blue Wave's website, in his company profile, Jay Peterson lists his residence as being outside of the State of Michigan.[7]

37. MCL 169.221(4) of MCFA governs candidate committee's that have a nonresident serving as Treasurer.

38. MCL 169.221(4) of MCFA provides, in relevant part:

> ***A committee with a nonresident treasurer shall file, with its statement of organization,*** **an irrevocable written stipulation, signed by the treasurer, agreeing that legal process affecting the committee, served on the secretary of state or an agent designated by the secretary of state, has the same effect as if personally served on the committee.** This appointment remains in force as long as any liability of the committee remains outstanding within this state. [emphasis supplied.]

39. Although MCL 169.221(2) of the MCFA mandates that "[a] candidate committee must have a treasurer who is a qualified elector of this state", the Garlin Gilchrist for Governor Candidate has defied this statutory requirement and appointed a nonresident to serve as Treasurer, and thus, the filing requirements of MCL 169.221(4) applies.

40. As of August 31, 2026 and September 1, 2026, the Garlin Gilchrist for Governor Candidate Committee has **NOT** filed the stipulation signed by its nonresident Treasurer required under MCL 169.221(4).

---

[7] See https://www.bluewavepolitics.com/our-team-1 (last accessed on September 1, 2026 at 7:07 a.m.)

**Garlin Gilchrist for Michigan Committee's Failure To File Statement Under MCL 169.221(4) of MCFA For Having A Treasurer That Is NOT A Qualified Elector and Nonresident of Michigan.**

41. This same filing deficiency is true for Garlin Gilchrist for Michigan Candidate Committee (Id. #0612275), which was organized for the purpose of supporting Garlin Gilchrist's candidacy for Secretary of State.[8]

42. The Garlin Gilchrist for Michigan Candidate Committee also lists a nonresident as the Treasurer.

43. The Garlin Gilchrist for Michigan Candidate Committee lists nonresident Sean White as Treasurer.

44. The Garlin Gilchrist for Michigan Candidate Committee, as of August 31, 2026 and September 1, 2026 has **NOT** filed the stipulation signed by its nonresident Treasurer required under MCL 169.221(4).

45. That to the best of my knowledge, information and belief, all of the facts and allegations stated herein in each numbered paragraph are true and correct.

46. If called and sworn as a witness, I am competent to testify as to the facts stated herein.

---

[8] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 7:20 a.m.)

47. Please send all responses to this sworn challenge to my email address:

davisrobert854@gmail.com

**FURTHER AFFIANT SAYETH NOT.**

9/1/26

**ROBERT DAVIS**

Subscribed and sworn to before me

On this 1 day of September, 2026

**Notary Public Signature**

Brianna Daniels

**Printed Name of Notary Public**

State of Michigan, County of Macomb

My Commission Expires 12/20/29

Acting in the County of Oakland

BRIANNA DANIELS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires December 20, 2029
Acting in the County of Oakland

STATE OF MICHIGAN
SECRETARY OF STATE

*In re:* **Robert Davis' Sworn Complaint Challenging Validity of Affidavit of Identity Filed On August 31, 2026 By Eli Savit, Democratic Party Nominee for Attorney General, To Qualify for November 3, 2026 General Election Ballot.**

_______________________________________________/

**ROBERT DAVIS**
Complainant
180 Eason
Highland Park, MI 48203
Davisrobert854@gmail.com

_______________________________________________/

**SWORN COMPLAINT OF ROBERT DAVIS CHALLENGING VALIDITY OF AFFIDAVIT OF IDENTITY FILED ON AUGUST 31 2026 BY ELI SAVIT, DEMOCRATIC PARTY NOMINEE FOR ATTORNEY GENERAL.**

**ROBERT DAVIS**, a natural person, being first duly sworn and deposed, and under the penalty of perjury states the following:

1. That I am the complainant in the above-entitled matter.
2. That I have first-hand knowledge as to the facts stated, pled and alleged herein.
3. That I am a qualified and registered voter of the city of Highland Park, County of Wayne, State of Michigan.
4. That I am currently a registered member of the Michigan Democratic Party.

5. That I was attended and was physically present at the Michigan Democratic Party's August 29, 2026 Fall State Nominating Convention held in Lansing, MI at the Lansing Convention Center.

6. That at the Michigan Democratic Party's August 29, 2026 Fall State Nominating Convention, I openly and vocally voted **"NAY"** in opposition to the nomination of Eli Savit as the Michigan Democratic Party's nominee for Attorney General.

7. That effective June 8, 2026, Mich Admin Code, R 168.1 through 168.6 governs challenges to candidates' affidavits of identity. (**See Secretary of State's Promulgated Rules, Mich Admin Code, R 168.1 through R 168.6, as amended effective June 8, 2026 attached**).

8. Thus, this sworn complaint challenging the validity of Eli Savit's affidavit of identity filed with the Secretary of State on August 31, 2026, is governed by Mich Admin Code, R 168.1 through R 168.6, as amended effective June 8, 2026.

9. This sworn complaint challenging the validity of Eli Savit's affidavit of identity filed with the Secretary of State on August 31, 2026 has been properly sworn before a notary public and timely filed in accordance with pursuant to R 168.5, as amended effective June 8, 2026.

## SECRETARY OF STATE HAS STATUTORY LEGAL DUTY UNDER R 168.2(3) TO COMPARE STATEMENTS IN AN AFFIDAVIT OF IDENTITY TO CAMPAIGN FINANCE RECORDS MAINTAINED BY SECRETARY OF STATE AND COUNTY CLERKS *BEFORE* CERTIFYING A CANDIDATE.

10. Mich Admin Code, R 168.2(3) provides:

> (3) The filing official shall examine the campaign finance records of the secretary of state and county clerk for any county in which the candidate previously sought nomination or election, if applicable, to determine whether the candidate made a false statement in the affidavit of identity.

11. Recently, the Michigan Court of Appeals had an opportunity to analyze and interpret Mich Admin Code, R 168.2(3) and MCL 168.558. In *Wilcoxon v Garrett*, unpublished per curiam opinion of Court of Appeals, issued July 22, 2026 (Docket No. 375547); slip op at 5, the Court of Appeals held: "**Rule 168.2(3) now expressly requires that an officer *must* compare statements in an affidavit of identity to campaign records for state and county *before* certifying a candidate**[.]" (emphasis supplied).

12. The Court of Appeals in *Wilcoxon, supra,* further held: "**Amendments have been made to both MCL 168.558(4) and Rule 168.2(3) to require that officials check state and county records to ensure that a candidate has made accurate statements in the affidavit.**" *Wilcoxon*, slip op 5 (emphasis supplied).

13. Pursuant to MCL of 168.558(1) of Michigan Election Law, a political party's nominee for Attorney General must file their affidavit of

identity with the Secretary of State "within 1 business day after being nominated" at the party's fall state convention. See *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 24, 2026 (Docket No. 382032); slip op pp 6-8.

14. Therefore, under R 168.2(3), the Secretary of State, as the filing official that is responsible for accepting a political party's nominee for Attorney General's affidavit of identity is required to "**perform some investigation into the status of each candidate's campaign finance records history *before* certifying that candidate's name to appear on a ballot**." *Wilcoxon*, slip op at p 6 (emphasis supplied).

## ELI SAVIT, DEMOCRATIC NOMINEE FOR ATTORNEY GENERAL, FILED A FALSE AFFIDAVIT OF IDENTITY ON AUGUST 31, 2026 BECAUSE AS OF AUGUST 31, 2026, ALL CAMPAIGN FINANCE STATEMENTS OR REPORTS "REQUIRED OF" ELI SAVIT OR A CANDIDATE COMMITTEE ORGANIZED FOR THE BENEFIT OF HIS ELECTION TO OFFICE WERE NOT FILED.

15. "The filing of certain documents—including AOIs—is governed by MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 797-798 (2021), quoting *Nykoriak v. Napoleon,* 334 Mich.App. 370, 375-377, 964 N.W.2d 895 (2020).

16. "The failure to supply a facially proper affidavit of identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot." *Stumbo v. Roe,* 332 Mich.App. 479, 481; 957 N.W.2d 830 (2020).

17. Moreover, "[c]andidates are required to strictly comply with MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 798 (2021), citing *Nykoriak,* 334 Mich.App. at 377, 964 N.W.2d 895.

18. "[I]f a candidacy applicant has failed to comply with the statutory requirements, the election officials have a clear legal duty not to certify the applicant." *Moore v Genesee County*, 337 Mich.App. 723, ___; 976 NW2d 921, 927 (2021).

19. According to the Secretary of State's public website that contains an up-to-date listing of candidates who are being recommended to be certified to appear on the November 3, 2026 general election ballot, **on August 31, 2026**, pursuant to MCL 168.558(1) of Michigan Election Law, Eli Savit filed his affidavit of identity with the Secretary of State to qualify for Attorney General.[1]

20. Pursuant to MCL 168.558(4) of Michigan Election Law, provides in relevant part:

> (4) **An affidavit of identity must include a signed and notarized statement *that as of the date of the affidavit, all statements, reports,* late filing fees, and fines *required of the candidate or any candidate committee organized to support the candidate's election* under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, *have been filed* or paid**; .... **An officer shall not**

[1] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboePublicReport&electionType=GEN&electionYear=2026 (last accessed on September 1, 2026 at 3:22 a.m.)

> **certify to the board of election commissioners the name of a candidate** who fails to comply with this section, ***or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section***. [emphasis supplied].

21. A review of the Washtenaw County Clerk's campaign finance database and the Secretary of State campaign finance database has revealed that as of August 31, 2026, Eli Savit's candidate committees organized for his election as Washtenaw County Prosecutor and for his election for Michigan Attorney General have outstanding campaign finance reports that are required under the Michigan Campaign Finance Act (MCFA).

**The Friends of Eli Savit Candidate Committee Failed To File Required Campaign Finance Reports With Washtenaw County Clerk As Of August 31, 2026.**

22. According to the Washtenaw County Clerk's campaign finance database, on May 20, 2019, Eli Savit filed a Statement of Organization for The Friends of Eli Savit Candidate Committee, which was organized for the purpose of supporting Eli Savit's election as the Washtenaw County Prosecutor.[2] (**See Statement of Organization for Friends of Eli Savit attached**).

---

[2] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

23. In November 2019, Eli Savit was elected the Washtenaw County Prosecutor. The Friends of Eli Savit Candidate Committee, to date, remains **ACTIVE**.[3]

24. According to the Washtenaw County Clerk's campaign finance database, on July 25, 2025, the Friends of Eli Savit Candidate Committee timely filed its July 2025 Campaign Statement.[4] (**See Friends of Eli Savit Candidate Committee's July 2025 Campaign Statement attachment**).

25. The Friends of Eli Savit Candidate Committee's July 2025 Campaign Finance Statement reported having **an ending balance of $372.55**.[5] (**See Friends of Eli Savit Candidate Committee's July 2025 Campaign Statement attached**).

26. On October 17, 2025, however, the Friends of Eli Savit Candidate Committee filed an "**Amended**" Statement of Organization in which a

---

[3] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

[4] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

[5] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

"**Reporting Waiver**" was ***requested***.[6] **(See Friends of Eli Savit Candidate Committee's Amended Statement of Organization filed on October 17, 2025 attached)**.

27. There were no other campaign finance reports attached to or filed with the "**Amended**" Statement of Organization filed on October 17, 2025.

28. Despite showing an **ENDING BALANCE OF $372.55** on its July 2025 Quarterly Campaign Statement, the Friends of Eli Savit requested a "Reporting Waiver" on its "Amended" Statement of Organization filed with the Washtenaw County Clerk on October 17, 2025.

29. Notably, since the filing of the "**Amended**" Statement of Organization filed on October 17, 2025, the Friends of Eli Savit Candidate Committee has **NOT** filed any of the campaign statements required under MCL 169.233 and MCL 169.235 of MCFA.[7]

30. Additionally, and perhaps most importantly, as of the date of Eli Savit signing and/or filing his affidavit of identity with the Secretary of State

---

[6] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

[7] See https://campaignfinance.us/washtenaw.mi/iDocuments.php?iCommitteeID=2419&cmdOk=View+Campaign+Statements (last accessed on September 1, 2026 at 3:34 a.m.)

on August 31, 2026, the Washtenaw County Clerk has **NOT GRANTED** the Friends of Eli Savit Candidate Committee a "Reporting Waiver."

31. The Dissolution of a candidate committee is governed by MCL 169.224(7) of the MCFA, which provides:

> (7) Upon the dissolution of a committee, the committee shall file a statement indicating dissolution with the filing officials with whom the committee's statement of organization was filed. **Dissolution of a committee must be accomplished pursuant to rules promulgated by the secretary of state under the administrative procedures act of 1969**, 1969 PA 306, MCL 24.201 to 24.328. [emphasis supplied.]

32. In *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090) examined a candidate committee's request for dissolution and the candidate committee's obligations to ***continue*** to file campaign statements and reports required under the MCFA ***until*** such time as a dissolution is **GRANTED** by the appropriate filing official.

33. As explained by the Court of Appeals in *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090); slip op at p 9, under MCL 169.233(1)(c) of MCFA, the Friends of Eli Savit Candidate Committee related to Eli Savit's election as Washtenaw County Prosecutor was required to file campaign statements/reports as follows:

> (1) A committee, other than an independent committee, an independent expenditure committee, or a political committee

> required to file with the secretary of state, supporting or opposing a candidate shall file complete campaign statements as required by this act and the rules promulgated under this act according to the following schedule:
>
> * * *
>
> (c) For candidate committees only, in a year in which there is no election for the candidate the candidate committee is supporting or opposing:
> (i) Not later than July 25 with a closing date of July 20 of that year.
> (ii) Not later than October 25 with a closing date of October 20 of that year.

34. As explained by the Court of Appeals in *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090); slip op at p 9, the Friends of Eli Savit Candidate Committee was also required to file annual campaign statements under MCL 169.235(1) of MCFA, which states:

> In addition to any other requirements of this act for filing a campaign statement, a committee shall also file a campaign statement not later than January 31 of each year. The campaign statement has a closing date of December 31 of the previous year. The period covered by the campaign statement filed under this subsection begins the day after the closing date of the previous campaign statement. A campaign statement filed under this subsection is waived if a postelection campaign statement has been filed that has a filing deadline within 30 days of the closing date of the campaign statement required by this subsection.

35. As noted by Court of Appeals in *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090); slip op at p 9, as set forth in MCL 169.215(18) of MCFA, the obligation to file campaign statements may be waived in certain circumstances as follows:

> The secretary of state may waive the filing of a campaign statement required under section 33, 34, or 35 if the closing date of the particular campaign statement falls on the same or a later date as the closing date of the next campaign statement filed by the same person, or if the period that would be otherwise covered by the next campaign statement filed by the same person is 10 days or less.

36. "**Otherwise, this obligation to file campaign statements continues until dissolution of the committee**." *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090); slip op at p 10 (emphasis supplied).

37. "Former Mich Admin Code, R 169.28(2), which was in effect until June 14, 2026 [8], **required a campaign committee to file a final statement that covers the period from the closing date of the last report filed to the date of dissolution**." *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090); slip op at p 10 (emphasis supplied).

38. The Friends of Eli Savit Candidate Committee's request for dissolution filed with the Washtenaw County Clerk on October 17,

---

[8] Mich Admin Code R 169.28 was rescinded June 14, 2026, and replaced with Mich Admin Code R 168.314, effective June 15, 2026. Like the former rule, as to the filing of a final campaign statement, Mich Admin Code R 168.314(2) states: "A dissolution must consist of a campaign statement that covers the period from the closing date of the last report filed to the date of dissolution and must include a statement as to the disposition of any residual assets and a statement disclosing the payment or forgiveness of any debts."

2025 is governed by the former Mich Admin Code, 169.28(2). *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090); slip op at p 10.

39. The Former Mich Admin Code, R 169.28 stated:

> (1) A committee which determines it will no longer receive contributions or make expenditures may dissolve by filing a form prescribed by the secretary of state.
>
> (2) **A dissolution shall consist of a campaign statement that covers the period from the closing date of the last report filed to the date of dissolution and shall include a statement as to the disposition of residual funds.**
>
> (3) **A committee may not dissolve if it has assets, outstanding debts, or unpaid late filing fees.** [emphasis supplied.]

40. In this case, the Friends of Eli Savit Candidate Committee **failed to file the "required campaign statement that covers the period from the closing date of the last report filed to the date of dissolution**[.]" Mich Admin Code, R 169.28(2).

41. Additionally, the Friends of Eli Savit Candidate Committee **failed to "include a statement as to the disposition of residual funds."** Mich Admin Code, R 169.28(2).

42. As noted, the Friends of Eli Savit Candidate Committee's July 2025 Quarterly Campaign Statement reported having **an ending balance of $372.55.** Consequently, the Friends of Eli Savit Candidate Committee was **INELIGIBLE** for dissolution under the former Mich Admin Code, R 169.28(3).

43. The Washtenaw County Clerk has **NOT** granted the Friends of Eli Savit Candidate Committee's request for a "Reporting Waiver" because as of its last campaign statement, which was the July 2025 Quarterly Campaign Statement, the candidate committee reported having **an ending balance of $372.55. (See Friends of Eli Savit's July 2025 Quarterly Campaign Statement attached)**.

44. Therefore, because the "**obligation to file campaign statements continues *until dissolution* of the committee**," *Davis, supra*, slip op at 10, under MCL 169.233(1)(c) of the MCFA, the Friends of Eli Savit were **required to file** an October 2025 Quarterly Campaign Statement, and under MCL 169.235(1) of the MCFA, the Friends of Eli Savit also were required to file a January 2026 Annual Campaign Statement.

45. Additionally, pursuant to MCL 169.233(1)(c), the Friends of Eli Savit also was required to filed a July 2026 Quarterly Campaign Statement.

46. As of August 31, 2026, and as of September 1, 2026, the Friends of Eli Savit had **NOT** filed the October 2025 Quarterly Campaign Statement, the January 2026 Annual Campaign Statement nor the July 2026 Quarterly Campaign Statement as required under MCL 169.233(1)(c) and MCL 169.235(1) of MCFA. See *Davis v Secretary of State*, unpublished per curiam opinion of Court of Appeals, issued August 28, 2026 (Docket No. 382090); slip op at pp 9-11.

**The Eli Savit For Attorney General Candidate Committee Failed To File Campaign Statements Required Under MCL 169.228(3) of MCFA.**

47. On May 12, 2025, Eli Savit filed an original Statement of Organization with the Secretary of State for the Eli Savit for Attorney General Candidate Committee (Id. #0606504), which was organized to support Eli Savit's candidacy for Attorney General as a representative of the Michigan Democratic Party.[9]

48. MCL 169.228(3) of MCFA provides:

> (3) **Accompanying a campaign statement reporting the receipt of a contribution from a *person whose treasurer does not reside in, whose principal office is not located in, or whose funds are not kept in this state, shall be a statement certified as true and correct by an officer of the contributing person setting forth the full name, address, along with the amount contributed, of each person who contributed to the total amount of the contribution*.** The occupation, employer, and principal place of business shall be stated for each person who contributed more than $100.00. **This subsection does not apply if the contributing person *is registered* as a committee under section 24.** [emphasis supplied.]

49. MCL 169.211(2) of MCFA defines "person" to mean:

> (2) **"Person" means a** business, individual, proprietorship, limited liability company, firm, partnership, joint venture, syndicate, business trust, labor organization, company, corporation, **association, committee, or any other organization or group of persons acting jointly**. [emphasis supplied.]

---

[9] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 4:39 a.m.

50. On August 18, 2026, the Eli Savit for Attorney General Candidate Committee filed its Pre Convention Campaign Statement, which reported having received a contribution in the amount of $83,250 from the Democratic Attorneys General Association (DAGA). **(See p 89 of 614 of the Eli Savit of Attorney General Candidate Committee's 2026 Pre Convention Campaign Statement attached)**.[10]

51. On the Eli Savit of Attorney General Candidate Committee's 2026 Pre Convention Campaign Statement, it lists the Democratic Attorneys General Association's address as: 1580 Lincoln St., Ste. 1125, Denver, CO. 80203. **(See p 89 of 614 of the Eli Savit of Attorney General Candidate Committee's 2026 Pre Convention Campaign Statement attached)**.[11]

52. A review of the Secretary of State's campaign database, however, has revealed that the Democratic Attorneys General Association (DAGA) was **DISSOLVED** as a Political Action Committee (PAC) **effective May 5, 2011. (See Secretary of State's May 5, 2011 Letter Granting DAGA Dissolution request attached)**.

---

[10] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 4:46 p.m.)

[11] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 4:46 p.m.)

53. The Democratic Attorneys General Association (DAGA) had requested DISSOLUTION of its Michigan PAC on January 27, 2011. (**See DAGA's January 27, 2011 Request for Dissolution attached**).

54. The Democratic Attorneys General Association's (DAGA) January 27, 2011 request for Dissolution lists the name and address of its Treasurer as follows:

> Travis Berry
> 1580 Lincoln St., Ste. 1125
> Denver, CO 80203

55. Although the Democratic Attorneys General Association (DAGA) is no longer registered as a PAC under MCL 169.224 of MCFA, the Democratic Attorneys General Association (DAGA) is registered with the Federation Election Commission (FEC) **under Federal Law**. (**See DAGA's FEC Statement of Organization attached**).

56. The FEC Statement of Organization lists its official bank and depository as Amalgamated, 275 7th Ave., New York, NY 10001.

57. Pursuant to MCL 169.228(3) of MCFA, because the Democratic Attorneys General Association (DAGA) is a "***person whose treasurer does not reside in, whose principal office is not located in, or whose funds are not kept in this state,"*** the Eli Savit for Attorney General Candidate Committee was "required" to file a "***a statement certified as true and correct by an officer of the contributing person setting forth the full name, address, along with the***

***amount contributed, of each person who contributed to the total amount of the contribution.***"

58. MCL 169.228(3) applies to the Democratic Attorneys General Association's (DAGA) $83,250 contribution because as of the date of the contribution DAGA was **NOT and IS NOT** registered as a committee under MCL 169.224 of the MCFA.

**Failure To File Statement Under MCL 169.228(3) of MCFA For Contribution Received From Leadership For Educational Equity (LEE).**

59. On July 25, 2025, the Eli Savit for Attorney General Candidate Committee filed its July 2025 Quarterly Campaign Statement, which reported having received a contribution in the amount of $2,500 from Leadership For Education Equity (LEE). **(See p 86 of 187 of the Eli Savit of Attorney General Candidate Committee's July 2025 Quarterly Campaign Statement attached)**.[12]

60. On the Eli Savit of Attorney General Candidate Committee's July 2025 Quarterly Campaign Statement, it lists the Leadership For Education Equity (LEE) address as: 800 N. King St., Ste 304-4181, Wilmington, Delaware 19801. **(See p 86 of 187 of the Eli Savit of Attorney**

[12] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 4:46 a.m.)

**General Candidate Committee's July 2025 Quarterly Campaign Statement attached**).[13]

61. According to its website, Leadership for Educational Equity (LEE) is a nonprofit civic leadership development organization that works with Teach for America alumni and members to expand educational opportunity. Its listed mission is to Inspire and support members to engage civically and overcome racial and economic barriers in education. It operates primarily as a 501(c)(4) organization alongside a related 501(c)(3) foundation arm.[14]

62. A review of the Secretary of State's campaign database, however, has revealed that Leadership for Education Equity (LEE) was **DISSOLVED** as a Political Action Committee (PAC) **effective March 30, 2016. (See Secretary of State's March 30, 2016 Letter Granting LEE's Dissolution request attached**).

63. Leadership for Education Equity (LEE) had requested **DISSOLUTION** of its Michigan PAC on March 25, 2016. (**See LEE's March 25, 2016 Request for Dissolution attached**).

---

[13] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 4:46 a.m.)

[14] See https://www.leadershipforequity.org/ (last accessed on September 1, 2026 at 5:35 a.m.)

64. Leadership for Education Equity's (LEE) Original Statement of Organization lists the name and address of its "Out-of-State" Treasurer as follows:

Beki Bahar-Engler
1805 7th Street, NW, 8TH Floor
Washington, DC 20001

**(See LEE's Original Statement of Organization attached).**

65. Pursuant to MCL 169.228(3) of MCFA, because Leadership For Educational Equity (LEE) is a "***person whose treasurer does not reside in, whose principal office is not located in, or whose funds are not kept in this state,"*** the Eli Savit for Attorney General Candidate Committee was "required" to file a "***a statement certified as true and correct by an officer of the contributing person setting forth the full name, address, along with the amount contributed, of each person who contributed to the total amount of the contribution***."

66. MCL 169.228(3) applies to the Leadership For Educational Equity's (LEE) $2,500 contribution because as of the date of the contribution LEE was **NOT and IS NOT** registered as a committee under MCL 169.224 of the MCFA.

**Failure To File Statement Under MCL 169.228(3) of MCFA For Contribution Received From Democratic Women of South Orange County.**

67. On August 27, 2026, the Eli Savit for Attorney General Candidate Committee filed a "Late Contribution" Report under MCL 169.232 of MCFA after receiving a "Late Contribution" from Democratic Women of South Orange County in the amount of $2,000. (**See p 2 of 7 of Eli Savit of Attorney General Candidate Committee's August 27, 2026 Late Contribution Report attached**).[15]

68. On the Eli Savit of Attorney General Candidate Committee's August 27, 2026 "Late Contribution" Report, it lists the address for Democratic Women of South Orange County as follows:

P.O. Box 383
San Clemente, California 92674

69. According to its website, the Democratic Women of South Orange County is a "100% volunteer led organization, a chartered club of the Democratic Party of Orange County, and value inclusivity and transparency. We work to advance the Democratic Party agenda and thereby promote the well-being of our communities for now and into the future. Our primary mission is to get Democrats elected."[16]

---

[15] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on September 1, 2026 at 4:46 a.m.)

[16] See https://www.dwsoc.org/about-us.html (last accessed on September 1, 2026 at 5:49 a.m.)

70. A review of the Secretary of State's campaign database, however, has revealed that Democratic Women of South Orange County is **NOT** registered as a PAC under MCL 169.224 of the MCFA.

71. A review of the Secretary of State's campaign finance database further reveals that the Democratic Women of South Orange County has **NEVER** been registered as a PAC under MCL 169.224 of MCFA.

72. Pursuant to MCL 169.228(3) of MCFA, because Democratic Women of South Orange County is a "***person whose treasurer does not reside in, whose principal office is not located in, or whose funds are not kept in this state,***" the Eli Savit for Attorney General Candidate Committee was "required" to file a "***a statement certified as true and correct by an officer of the contributing person setting forth the full name, address, along with the amount contributed, of each person who contributed to the total amount of the contribution***."

73. MCL 169.228(3) applies to the Democratic Women of South Orange County's $2,000 contribution because as of the date of the contribution LEE was **NOT and IS NOT** registered as a committee under MCL 169.224 of the MCFA.

74. That to the best of my knowledge, information and belief, all of the facts and allegations stated herein in each numbered paragraph are true and correct.

75. If called and sworn as a witness, I am competent to testify as to the facts stated herein.

76. Please send all responses to this sworn challenge to my email address: davisrobert854@gmail.com

**FURTHER AFFIANT SAYETH NOT.**

9/1/26

**ROBERT DAVIS**

Subscribed and sworn to before me

On this 1 day of September, 2026

**Notary Public Signature**

Brionna Doniels

**Printed Name of Notary Public**

State of Michigan, County of Macomb

My Commission Expires 12/20/29

Acting in the County of Oakland

BRIANNA DANIELS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires December 20, 2029
Acting in the County of Oakland

26-015190-AW FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 8/28/2026 2:51 PM Carla Keefe

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**
**THIRD JUDICIAL CIRCUIT**

**ROBERT DAVIS,**
Plaintiff,

**Case No. 26- -AW**
**Hon.**

**v.**

**WAYNE COUNTY ELECTION COMMISSION,**
Defendant.
______________________________________/

**ROBERT DAVIS, *Pro se***
Plaintiff
180 Eason
Highland Park, MI 48203
(313) 523-7118
Davisrobert854@gmail.com
______________________________________/

| |
|---|
| **Pursuant to Third Circuit Court Docket Directive No. 2026-07, All Actions Involving Election Issues Shall Be Assigned To The Docket of Judge Kathleen McCarthy, as the Chief Judge's Desginee.** |
| **There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the verified complaint.** |

**ELECTION-RELATED MATTER**

**VERIFIED COMPLAINT**

**NOW COMES,** Plaintiff, ROBERT DAVIS ("Plaintiff" or "Plaintiff Davis"), in his own proper person, and for his Verified Complaint, states the following:

## I. PARTIES

1. Plaintiff, Robert Davis ("**Plaintiff" or "Plaintiff Davis**"), is a resident and registered voter of the city of Highland Park, County of Wayne, State of Michigan. Plaintiff is a registered member of the Michigan Democratic Party

and voted in the Democratic Party's primary election held on August 4, 2026. Plaintiff does **NOT** support the candidacy of the Michigan Democratic Party nominee, Jocelyn Benson, for Governor.

2. Defendant, Wayne County Election Commission ("**Defendant Election Commission**"), is the three-member board comprised of the Chief Judge of the Wayne County Probate, the Wayne County Clerk, and the Wayne County Treasurer, who has the statutory authority to authorize the printing of the ballots for the November 3, 2026 general elections.
3. Pursuant to MCL 168.689 of Michigan Election Law, Defendant Election Commission has the statutory duty to approve the printing of the ballots and to independently determine whether a candidate has been "***properly***" certified by the filing official to appear on November 3, 2026 general elections ballot. See *Davis v Wayne Co. Election Commission*, 349 Mich.App. 355; ___NW3d ___ (2023) (Docket Nos. 368615; 368628); see also *Southeastern Mich Fair Budget Coalition v Killeen,* 153 Mich App 370, 373-376; 395 NW2d 325 (1986).
4. That an actual controversy exists between the parties named herein.

## II. JURISDICTION

5. The Wayne County Circuit Court has jurisdiction over claims for declaratory relief pursuant to MCR 2.605.

6. Venue is proper in the Wayne County Circuit Court because the Defendant Election Commission is a governmental entity whose members are officers exercising their statutory authority in Wayne County. See MCL §600.1615.
7. Pursuant to MCL §600.1627, venue is proper in the Wayne County Circuit Court because Wayne County is the "county in which all or part of the cause of action arose[.]"
8. The Wayne County Circuit Court has jurisdiction over claims for mandamus and other relief under the Michigan Election Law. See MCL §168.590f(1), MCL §168.552(6), and MCR 3.305(A)(2).

## IV. CAUSES OF ACTION

### COUNT I

### Declaratory Judgment Declaring That The Defendant Wayne County Election Commission Has A Statutory Duty Under MCL 168.689 To Independently Determine Whether Gubernatorial Candidate Jocelyn Benson Was Properly Certified To Appear On The November 3, 2026 General Election Ballot As The Michigan Democratic Party's Nominee For Governor.

9. Plaintiff incorporates, repeats and realleges the foregoing allegations as though they were fully set forth and stated herein.
10. For this count, pursuant to MCR 2.605, Plaintiff seeks the entry of a declaratory judgment against the Defendant Wayne County Election Commission declaring that the Defendant Wayne County Election Commission has a statutory legal duty under MCL 168.689 of Michigan Election Law to independently determine whether gubernatorial candidate

Jocelyn Benons was "properly certified" by the Michigan Secretary of State to appear on the November 3, 2026 general election ballot as the Democratic nominee for Governor.

11. Pursuant to MCR 2.605, an actual controversy exists between the Plaintiff and Wayne County Election Commission.

12. On Monday, August 24, 2026, the State Board of Canvassers officially certified the election results from the August 4, 2026 primary election.

13. On Monday, August 24, 2026, the State Board of Canvassers certified gubernatorial candidate Jocelyn Benson as the Democratic Party's nominee for Governor.

14. Pursuant to MCL 168.841(1) of Michigan Election Law, "[u]pon making the determination the board of state canvassers shall immediately prepare a certificate of determination and deliver the properly certified certificate of determination to the secretary of state."

15. Additionally, pursuant to MCL 168.687 of Michigan Election Law, the board of state canvassers was required to forward its certification of the Democratic Party's primary election results for Governor to the Defendant Wayne County Election Commission.

16. The Plaintiff has sent numerous emails to the Defendant Wayne County Election Commission and to the Wayne County Clerk requesting the Defendant Wayne County Election Commission not to certify gubernatorial candidate Jocelyn Benson as the Democratic Party's nominee for Governor for

the November 3, 2026 general election because Jocelyn Benson filed a false affidavit of identity in violation of MCL 168.558(4) of Michigan Election Law.

17. To date, however, Plaintiff has not received a written response from the Defendant Wayne County Election Commission or the Wayne County Clerk, who serves as the secretary of the Defendant Macomb County Election Commission.

18. Prior to filing the instant lawsuit, however, Greg Mahar, Director of Wayne County Elections, did inform Plaintiff that **no date has been set or determined** for the Defendant Wayne County Election Commission to convene and meet to approve the printing of the ballots for the November 3rd general election.

**Gubernatorial Candidate Jocelyn Benson's Submission of False Affidavit of Identity In Violation of MCL 168.558(4) of Michigan Election Law.**

19. Although gubernatorial candidate Jocelyn Benson won the August 4, 2026 democratic primary election for Governor according to the official certified election results, the Court of Appeals has held that MCL 168.558 applies to **both primary and general elections**. *Moore v Genesee* Co, 337 Mich App 723, 728-729; 976 NW2d 921 (2021); see also *Kahlilia Davis v Secretary of State*, unpublished order of the Court of Appeals, entered August 22, 2022 (Docket No. 362455).

20. As such, gubernatorial candidate Jocelyn Benson, who executed an affidavit of identity (AOI) that contained a false statement, cannot appear on the

November 3, 2026 general election as the democratic party nominee for Governor. MCL 168.558(4); *Moore*, 337 Mich App at 728-729; see also *Kahlilia Davis v Secretary of State*, unpublished order of the Court of Appeals, entered August 22, 2022 (Docket No. 362455).

21. Now that the August 4, 2026 democratic primary election has been completed and its results having been certified by the state board of canvassers on Monday, August 24, 2026, pursuant to MCL 168.57 of Michigan Election Law, "[t]he board of state canvassers shall forthwith certify such nominations to the secretary of state."

22. Pursuant to MCL 168.841(1) of Michigan Election Law, "[u]pon making the determination the board of state canvassers shall immediately prepare a certificate of determination and deliver the properly certified certificate of determination to the secretary of state."

23. Additionally, pursuant to MCL 168.687 of Michigan Election Law, the board of state canvassers was required to forward its certification of the Democratic Party's primary election results for Governor to the Defendant Wayne County Election Commission.

24. Upon receiving the certified primary election results from the state board of canvassers, pursuant to MCL 168.648, the Secretary of State "***at least 60 days*** and not more than 90 days preceding ***any regular state*** or district primary ***or election***, ***shall*** **send to the county clerk of each county a notice in writing of such** primary ***or election***, ***specifying in such notice***

***the federal, state and district offices for which candidates are to be*** nominated ***or elected***…" (emphasis supplied).

25. Thus, pursuant to MCL 168.648, the deadline for the Secretary of State to send to the county clerk of each county a notice specifying the various offices for which candidates are to be elected is **September 4, 2026.**

26. **After the Secretary of State send the notice to the Wayne County Clerk on September 4, 2026, under MCL 168.689, the Wayne County Election Commission is charged with the statutory duty of determining whether candidates were "properly certified" by the Secretary of State to be placed on the November 3, 2026 general election.**

27. Pursuant to MCL 168.689, the various county boards of election commission are charged with the statutory duty of approving and authorizing the printing of the ballots for the November 3, 2026 general election and NOT the Secretary of State. See *Davis v Wayne County Election Commission*, 349 Mich.App. 355; 28 NW3d 354, 364 (2023) (emphasis supplied) ("As a general premise, it is true that MCL 168.689 authorizes, indeed requires, the Commission to do what the statute states: to 'prepare the official ballots for use' in Wayne County and to 'have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners' for 'use at any state, district or county election held therein....'"); see also *Barrow v Detroit Election Comm*, 305 Mich App 649,

671; 854 NW2d 489 (2014) (*Barrow II*) ("It is well established that it is the province of the election commission, not the city clerk, to approve and furnish the ballots to be used in an election.").

**Disqualification of Party Nominee After Primary Election**

28. MCL 168.59 of Michigan Election Law provides the process if a party's nominee "**become[s] disqualified for any reason**" for the November 3, 2026 general election.

29. MCL 168.59 of Michigan Election Law provides:

> **When the candidate of a political party, *after having been nominated to the office of governor*,** shall die, withdraw as provided in section 58 of this act, remove from the state, ***or become disqualified for any reason*, *the state central committee of such party shall meet forthwith and by a majority vote of the members thereof shall select a candidate to fill the vacancy thereby caused*.** The name of the candidate so selected shall be immediately certified by the chairman and the secretary of said committee to the secretary of state and to the board of election commissioners for each county, whose duty it is to prepare the official ballots, and said board shall cause to be printed or placed upon such ballots in the proper place the name of the candidate so selected and certified to fill such vacancy. [emphasis supplied.]

30. Pursuant to MCL 168.714 of Michigan Election Law, **September 19, 2026 is the deadline** for county clerks to deliver absent voter ballots for November General Election to local clerks. (**See Secretary of State's Election Manual for November 3, 2026 General Election attached**).

31. Pursuant to MCL 168.759a and Mich.Const.1963, art. II, 4, **September 19, 2026 is the deadline** for local city and township clerks to electronically transmit or mail (as requested) an absent voter ballot to each absent military

or overseas voter who applied for an absent voter ballot 45 days or more before the election (MOVE deadline). (**See Secretary of State's Election Manual for November 3, 2026 General Election attached**).

**Jocelyn Benson, The Democratic Party Nominee For Governor, Filed A False Affidavit of Identity In Violation of MCL 168.558(4) of Michigan Election Law.**

32. Pursuant to MCL 168.53 and MCL 168.558(1) of Michigan Election Law, purportedly on April 16, 2026, gubernatorial candidate Jocelyn Benson filed with the Secretary of State her nominating petitions and two (2) copies of her affidavit of identity to qualify as a candidate for Governor for the Democratic Party. (**See Redacted Copies of Gubernatorial Candidate Jocelyn Benson's Affidavit of Identity filed on April 16, 2026 attached**).

33. Gubernatorial candidate Jocelyn Benson's affidavit of identity to qualify as a candidate for Governor **was signed and dated on April 9, 2026**. (**See Redacted Copies of Gubernatorial Candidate Jocelyn Benson's Affidavit of Identity filed on April 16, 2026 attached**).

34. MCL 168.558(4) of Michigan Election Law provides, in relevant part:

> (4) **An affidavit of identity must include a signed and notarized statement that *as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate* or any candidate committee organized to support the candidate's election under the *Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid*; .....**
>
> **An officer shall not certify to the board of election commissioners the name of a candidate who** fails to comply with this section, **or the name of a candidate who executes**

> **an affidavit of identity that contains a false statement with regard to any information or statement required under this section**. [emphasis supplied.]

35. By signing the affidavit of identity on April 9, 2026, gubernatorial candidate Jocelyn Benson attested to the fact that "as of the date of the affidavit….all late filing fees, and fines required of the candidate….have been filed or paid." MCL 168.558(4).

36. However, after reviewing certain public records, including campaign finance records on the Secretary of State's public website, Plaintiff discovered that gubernatorial candidate Jocelyn Benson's affidavit of identity contains a FALSE statement with respect to gubernatorial candidate Jocelyn Benson's compliance with the campaign finance statement under MCL 168.558(4) of Michigan Election Law.

37. Gubernatorial candidate Jocelyn Benson is currently the duly elected Secretary of State.

38. In March 2009, gubernatorial candidate Jocelyn Benson formed the Jocelyn Benson for Secretary of State candidate committee (Id. #514336-7), which was organized to support gubernatorial candidate Jocelyn Benson's candidacy for Secretary of State. (**See Statement of Organization for Jocelyn Benson for Secretary of State candidate committee attached**).

39. In 2018, gubernatorial candidate Jocelyn Benson was elected as the Defendant Secretary of State and was subsequently reelected as the Defendant Secretary of State in 2022.

40. Gubernatorial candidate Jocelyn Benson's current term office as the Secretary of State expires on January 1, 2027.

41. The Jocelyn Benson for Secretary of State candidate committee (Id #514336-7) remains ACTIVE.

42. On February 4, 2015, former Secretary of State Ruth Johnson issued the Jocelyn Benson for Secretary of State candidate committee a "Notice of Failure to File" the 2015 Annual Campaign Statement. (**See February 4, 2015 Notice of Failure to File issued to Jocelyn Benson for Secretary of State candidate committee attached**).

43. On February 12, 2015, former Secretary of State Ruth Johnson properly assessed the Jocelyn Benson for Secretary candidate committee (Id. #514336-7) and then Secretary of State candidate Jocelyn Benson a $50 late filing fee for failing to timely file the 2015 Annual Campaign Statement as required under MCL 169.235(1) and (3) of the Michigan Campaign Finance Act (MCFA). (**See February 12, 2025 Late Filing Fee assessed attached**).

44. According to Defendant Secretary of State's online campaign finance database, **on February 25, 2015**, the $50 late filing fee for the 2015 Annual Campaign Statement **was paid by "check".**[1]

45. Upon information and belief, the $50 late filing fee was paid from the treasury of the Jocelyn Benson for Secretary of State candidate committee.

---

[1] See https://mi-boe.entellitrak.com/etk-mi-boe-prod/page.request.do?page=page.miboeCommitteePublicSearch (last accessed on August 6, 2026)

46. Upon information and belief, the $50 late filing fee was **NOT** paid by then secretary of state candidate Jocelyn Benson from her personal funds.

47. Plaintiff has filed multiple FOIA requests with the Secretary of State, nonparties Department of Treasury, and State Bureau of Elections, seeking copies of the $50 check and proof of payment of the $50 filing fee to ascertain the actual "payor" of the $50 late filing fee.

48. To date, the Secretary of State has purposely delayed providing Plaintiff with documents that are responsive to Plaintiff's FOIA request requesting proof of payment of the $50 late filing fee and a copy of the $50 check that was remitted on February 25, 2015.

49. Finding out who the actual "payor" of the $50 late filing fee for the untimely filing of the 2015 Annual Campaign Statement is essential because pursuant to MCL 169.235(3) of MCFA:

> "**The *candidate shall pay* the late filing fee assessed under this subsection, and *the candidate shall not use committee funds to pay that fee*.**" (emphasis supplied).

50. If the $50 late filing fee for the untimely filing of the 2015 Annual Campaign Statement was paid by the Jocelyn Benson for Secretary of State candidate committee, and **NOT** by gubernatorial candidate Jocelyn Benson, then the affidavit of identity gubernatorial candidate Jocelyn Benson signed on April 9, 2026 to qualify as a candidate for Governor is **FALSE**!

51. Plaintiff has filed a **separate and distinct** complaint under the MCFA against the Jocelyn Benson for Secretary of State candidate committee for its

failure to properly report the $50 late filing fee on its campaign reports as a "debt" and the subsequent payment of the $50 late filing fee as an "expenditure" on its 2015 July/October campaign statements. (**See Plaintiff's Campaign Finance Complaint against Jocelyn Benson for Secretary of State candidate committee attached**).

52. The Secretary of State has since referred Plaintiff's campaign finance complaint against the Jocelyn Benson for Secretary of State candidate committee to the Michigan Attorney General Dana Nessel for investigation. **(See Secretary of State's Letter referring Plaintiff's Campaign Finance Complaint to Michigan Attorney General attached**).

53. It's important to note that Plaintiff's campaign finance complaint filed against the Jocelyn Benson for Secretary of State candidate committee does **NOT** address any of the allegations or claims as pled in this verified complaint.

54. Pursuant to Mich Admin Code, R 168.2(3), the Secretary of State, as the filing official for candidates for Governor, "***shall examine*** **the** ***campaign finance records of the secretary of state and county clerk*** **for any county in which the candidate previously sought nomination or election,** if applicable, ***to determine whether the candidate made a false statement in the affidavit of identity***." (**See Mich Admin Code, R 168.2(3) attached**).

55. The Secretary of State, however, failed to fulfil her statutory legal duties under R 168.2(3) to examine the campaign finance records and filings of gubernatorial candidate Jocelyn Benson.

56. "The filing of certain documents—including AOIs—is governed by MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 797-798 (2021), quoting *Nykoriak v. Napoleon,* 334 Mich.App. 370, 375-377, 964 N.W.2d 895 (2020).

57. "The failure to supply a facially proper affidavit of identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot." *Stumbo v. Roe,* 332 Mich.App. 479, 481; 957 N.W.2d 830 (2020).

58. Moreover, "[c]andidates are required to strictly comply with MCL 168.558." *Reed-Pratt v Detroit City Clerk*, 339 Mich.App. 510,__; 984 NW2d 794, 798 (2021), citing *Nykoriak,* 334 Mich.App. at 377, 964 N.W.2d 895.

59. "[I]f a candidacy applicant has failed to comply with the statutory requirements, the election officials have a clear legal duty not to certify the applicant." *Moore v Genesee County*, 337 Mich.App. 723, ___; 976 NW2d 921, 927 (2021).

60. Accordingly, pursuant to MCL 168.558(4) of Michigan Election Law, because gubernatorial candidate Jocelyn Benson's affidavit of identity contains a **FALSE** statement that as of April 9, 2026 all late filing fees "*required of*" her had been paid, when in fact they had **NOT**, gubernatorial candidate Jocelyn

Benson **CANNOT** be certified by the Defendant Wayne County Election Commission to appear on the November 3, 2026 general election ballot as a the democratic party nominee for Governor. *Moore v Genesee County*, 337 Mich.App. 723, ___; 976 NW2d 921, 927 (2021).

**Defendant Wayne County Election Commission Has The Statutory Duty Under MCL 168.689 of Michigan Election Law To Determine Whether Gubernatorial Candidate Jocelyn Benson Has Been "Properly Certified" To Appear On The November 3, 2026 General Election Ballot**.

61. Pursuant to MCL 168.689, the various county boards of election commission are charged with the statutory duty of approving and authorizing the printing of the ballots for the November 3, 2026 general election and NOT the Secretary of State. See *Davis v Wayne County Election Commission*, 349 Mich.App. 355; 28 NW3d 354, 364 (2023) (emphasis supplied) ("As a general premise, it is true that MCL 168.689 authorizes, indeed requires, the Commission to do what the statute states: to 'prepare the official ballots for use' in Wayne County and to 'have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners' for 'use at any state, district or county election held therein....'"); see also *Barrow v Detroit Election Comm*, 305 Mich App 649, 671; 854 NW2d 489 (2014) (*Barrow II*) ("It is well established that it is the province of the election commission, not the city clerk, to approve and furnish the ballots to be used in an election.").

62. The task of preparing and printing ballots for any **state,** district, or county election falls on county election commissions, like the Defendant Wayne County Election Commission, pursuant to MCL 168.689, which provides:

> **The board of election commissioners of each county *shall* prepare the official ballots for use at any state, district or county election held therein, *and shall have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners***, and ballots for all proposed constitutional amendments or other questions to be submitted at such election to supply each election precinct in such county with a sufficient number for such precinct, and not less than 25% more than the total number of votes cast therein at the corresponding election held 4 years previous for the office which received the greatest number of votes. [emphasis supplied.]

63. As noted, Pursuant to MCL 168.714 of Michigan Election Law, **September 19, 2026 is the deadline** for county clerks to deliver absent voter ballots for November General Election to local clerks. (**See Secretary of State's Election Manual for November 3, 2026 General Election attached**).

64. Pursuant to MCL 168.759a and Mich.Const.1963, art. II, 4, **September 19, 2026 is the deadline** for local city and township clerks to electronically transmit or mail (as requested) an absent voter ballot to each absent military or overseas voter who applied for an absent voter ballot 45 days or more before the election (MOVE deadline). (**See Secretary of State's Election Manual for November 3, 2026 General Election attached**).

65. The Court of Appeals previously addressed the meaning of the phrase ***"properly certified"*** and whether it permits a county election commission to make an independent determination regarding whether a ballot question or

candidate was ***"properly"*** certified. See *Southeastern Mich Fair Budget Coalition v Killeen*, 153 Mich App 370, 373-376; 395 NW2d 325 (1986).

66. In *Southeastern Mich Fair Budget Coalition v Killeen*, 153 Mich App 370, 373-376; 395 NW2d 325 (1986), the question was whether resolutions adopted by the Detroit City Council and certified for inclusion on an upcoming election ballot by the city clerk would appear on the ballot. The questions certified by the city clerk were advisory questions (i.e., questions asking the voters for advice about how the city council should proceed in certain matters). *Id*. at 374-376.

67. On the advice of counsel, the Wayne County Election Commission refused to place those questions on the ballot, believing that there was "no constitutional or statutory authority for placing the resolutions on the state general election ballot." *Id*. at 376. The first question the Court of Appeals answered was whether the Commission had authority to refuse to place on the ballot an item that had been certified by the official authorized to make that certification. *Id.*

68. The Court of Appeals examined MCL 168.689, and in particular the phrase "***properly certified***," to conclude that the Wayne County Board of Election Commissioners had the authority to determine not only whether a candidate, constitutional amendment, or ballot question had been certified, but also whether any of those had been properly certified. *Id*. at 377-378.

69. "Accordingly, where it is apparent to the board of county election commissioners that the question is not entitled to placement on the ballot, it may refuse to place it thereon and leave the certifying body to its legal recourse. We interpret 'properly' in this context to mean that the election commissioners are required to determine that, on its face, the question is entitled to placement on the ballot." *Id.* at 378.

70. The second question addressed by the Court of Appeals was whether the advisory questions were, in fact, entitled to placement on the ballot. The Court of Appeals held that the questions posed were clearly advisory. Id. at 378. And "they are advisory questions in the areas of federal military intervention in Central American and federal military spending, with respect to which the city council has no power to act officially." *Id.* at 378-379.

71. The Court of Appeals explained that, while no constitutional or statutory authority explicitly prohibited advisory questions, nothing in the relevant statutes represented the Legislature's authorization "to spend public funds in a straw vote in an area entirely outside the powers of the city council . . . ." *Id.* at 382.

72. While an advisory question concerning an area in which the city council had authority to act might be proper, advisory questions concerning topics that clearly fell outside the scope of the city council's powers were not. *Id.* at 382-384. Thus, while advisory questions might be properly placed on the ballot as

a general matter, the particular questions at issue could not be placed on the ballot. *Id*. at 384.

73. Pursuant to *Southeastern Mich Fair Budget Coalition*, the duty of the Defendant Election Commission at issue here is to "determine that, on its face, the [candidate] is entitled to placement on the ballot." *Southeastern Mich Fair Budget Coalition*, 153 Mich App at 378.

74. The Court has implied that a "facial" review amounts to a ministerial review. See *Berry v Garrett*, 316 Mich App 37, 45; 890 NW2d 882 (2016) ("Rather, by doing nothing more than the ministerial task of completing a facial review of the affidavits [of identity], defendants would undertake to perform their clear legal duty under [MCL 168.558(4)] to 'not certify to the board of election commissioners the name of a candidate who [had] fail[ed] to comply' with [MCL 168.558(2)].") (third and fourth alterations in original).

75. And in *Southeastern Mich Fair Budget Coalition*, the review at issue was a purely legal matter concerning the scope of the city council's authority. *Southeastern Mich Fair Budget Coalition*, 153 Mich App at 382-384.

76. A facial review of the relevant campaign finance documents, specifically the "check" that was issued to pay the $50 late filing fee, will reveal gubernatorial candidate Jocelyn Benson filed a false affidavit of identity in violation of MCL 168.558(4); and thus, she shall **not** be certified, authorized or approved by the Defendant Wayne County Election Commission to appear on the November 3, 2026 general election ballot.

77. Additionally, as noted, Plaintiff is supporting another candidate for Governor and Plaintiff's candidate of choice would lose votes if Jocelyn Benson were allowed to remain on the November 3, 2026 general election ballot in Wayne County as the democratic party nominee for Governor.

78. Plaintiff will suffer irreparable harm as this would result in a loss of votes for Plaintiff's candidate of choice.

**WHEREFORE**, Plaintiff requests this Honorable Court enters judgment and grants the following relief against the Defendant Wayne County Election Commission as follows:

a. Enter a declaratory judgment declaring that under MCL 168.689, the Defendant Wayne County Election Commission has a statutory legal duty to independently determine whether gubernatorial candidate Jocelyn was "properly" certified by the Secretary of State to appear on the November 3, 2026 general election as the Democratic Party nominee as Governo.

b. Enter a declaratory judgment declaring that Defendant Wayne County Election Commission has a statutory legal duty under MCL 168.689 **not** to print gubernatorial candidate Joceuln Benson's name on the November 3, 2026 general election ballot as the Democratic Party nominee for Governor because she filed an affidavit of identity that contained a false statement in violation of MCL 168.558(4) of Michigan Election Law.

c. Enter a declaratory judgment declaring that Defendant Wayne County Election Commission has the sole statutory duty under MCL 168.689 to authorize the printing of the ballots for the November 3, 2026 general election and to determine what candidate names are authorized to appear on the November 3, 2026 general election ballot.

d. Enter an order enjoining the Defendant Wayne County Election Commission from proceeding with printing ballots for the November 3, 2026 general election with gubernatorial candidate Jocelyn Benson's name printed thereon as the Democratic Party's nominee for Governor.

e. Enter an order awarding Plaintiff his court costs and attorney's fees.

f. An order awarding whatever other equitable relief appears appropriate to the Court at the time of final judgment.

**COUNT II**

**Writ of Mandamus Compelling Defendant Wayne County Election Commission To Remove And To Not Include Gubernatorial Candidate Jocelyn Benson's Name From The November 3, 2026 General Election Ballot.**

79. Plaintiff incorporates, repeats and realleges the foregoing allegations as though they were fully set forth and stated herein.

80. For this count, pursuant to MCR 3.305, Plaintiff seeks the entry of a writ of mandamus against the Defendant Wayne County Election Commission.

81. If the Court grants Plaintiff declaratory relief with respect to Count II of the verified complaint, entry of a writ of mandamus compelling the Defendant Wayne County Election Commission remove the name of gubernatorial candidate Jocelyn Benson as the democratic party nominee for Governor from the November 3, 2026 general election will be most appropriate.

82. "A writ of mandamus is the appropriate remedy for a party seeking to compel action by election officials." *Davis v Secretary of State*, ___Mich.App.___, ____; ____NW2d_____ (2023) (Docket No. 362841); slip op at p 9, citing *Attorney*

*General v Bd of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016).

83. "To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result." *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). (quotation marks and citations omitted).

84. "A clear legal duty, like a clear legal right, is one that `is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided.'" *Hayes v. Parole Bd.*, 312 Mich. App. 774, 782, 886 N.W.2d 725 (2015), quoting *Rental Props. Owners Ass'n*, 308 Mich. App. at 518-519, 866 N.W.2d 817.

85. "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Berry v. Garrett*, 316 Mich. App. 37, 42, 890 N.W.2d 882 (2016), quoting *Hillsdale Co. Senior Servs., Inc. v. Hillsdale Co.*, 494 Mich. 46, 58 n. 11, 832 N.W.2d 728 (2013) (quotation marks omitted).

86. As a registered voter of the County of Wayne, State of Michigan, who is opposed to Jocelyn Benson's candidacy and who is supporting another candidate for Governor and who has petitioned the Defendant Wayne County

Election Commission to independently determine whether Jocelyn Benson was "properly certified" by the Secretary of State, Plaintiff has a clear legal right to the performance of the duty sought to be compelled. See *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016); *League of Women Voters,* 506 Mich. at 587, 957 N.W.2d 731; see also *Deleeuw v. Bd. of State Canvassers*, 263 Mich. App. 497, 505-506, 688 N.W.2d 847 (2004); *Helmkamp v. Livonia City Council*, 160 Mich. App. 442, 445, 408 N.W.2d 470 (1987) ("[I]n the absence of a statute to the contrary, ... a private person ... may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public." [Quotation marks omitted.]).

87. It is well-settled in Michigan jurisprudence that the removal of candidates' names from the ballot is a ministerial duty. See *Barrow v. Detroit* Election Comm., 301 Mich. App. 404, 412, 836 N.W.2d 498 (2013) (Barrow I) ("The inclusion or exclusion of a name on a ballot is ministerial in nature.").

88. Lastly, other than filing the instant action, Plaintiff has no adequate remedy at law to ensure that the provisions of MCL 168.560b(3) and (4) are adhered to and complied with.

89. Additionally, as noted, Plaintiff is supporting another candidate for Governor and Plaintiff's candidate of choice would lose votes if Jocelyn Benson were allowed to remain on the November 3, 2026 general election ballot in Wayne County as the democratic party nominee for Governor.

90. Plaintiff will suffer irreparable harm as this would result in a loss of votes for Plaintiff's candidate of choice.

91. Similarly, pursuant to MCL 168.567, the Defendant Wayne County Election Commission has a clear legal duty to correct the November 3, 2026 general election ballot by removing Jocelyn Benson's name from appearing on the November 3rd general election ballot as the democratic party nominee.

92. MCL 168.567 states:

> "The boards of election commissioners shall correct such errors as may be found in said ballots, and a copy of such corrected ballots shall be sent to the secretary of state by the county clerk."

93. "**MCL 168.567 is a mechanism by which boards of election commissioners must correct errors in ballots that are later found**." *Davis v Wayne County Election Commission*, 349 Mich.App. 355, ___; ____NW3d ____ (2023) (Docket No. 368615), slip op at p 13 (emphasis supplied).

94. In *Berry*, the Court of Appeals addressed a similar issue concerning a challenge to affidavits of identity filed by candidates for township trustee and township supervisor. *Berry*, 316 Mich App at 40. Both failed to state in their affidavits of identity their precinct number, a requirement previously stated in MCL 168.558(2). *Berry*, 316 Mich App at 40.

95. The Court of Appeals explained that under MCL 168.558(4), the defendants had a clear legal duty " 'not to certify to the board of election commissioners the name of a candidate who [had] fail[ed] to comply' with the requirement,

under § 558(2), of duly including the precinct number where the candidate was registered to vote." *Berry*, 316 Mich App at 44, quoting MCL 168.558(4).

96. The Court of Appeals in *Berry* further explained that because the defendants had failed to comply with their clear legal duty under MCL 168.558(4), they then had a clear legal duty to correct "such errors as may be found in the resulting, improper ballots" under MCL 168.567. *Berry*, 316 Mich App at 44.

97. Again, as register voter of the County of Wayne, State of Michigan, Plaintiff has a clear legal right to the performance of the duty sought to be compelled. *League of Women Voters,* 506 Mich. at 587, 957 N.W.2d 731; see also *Deleeuw v. Bd. of State Canvassers,* 263 Mich. App. 497, 505-506, 688 N.W.2d 847 (2004); *Helmkamp v. Livonia City Council,* 160 Mich. App. 442, 445, 408 N.W.2d 470 (1987) ("[I]n the absence of a statute to the contrary, ... a private person ... may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public." [Quotation marks omitted.]).

98. It is well-settled in Michigan jurisprudence that the removal of candidates' names from the ballot is a ministerial duty. See *Barrow v. Detroit Election Comm.,* 301 Mich. App. 404, 412, 836 N.W.2d 498 (2013) (*Barrow I*) ("The inclusion or exclusion of a name on a ballot is ministerial in nature.").

99. Additionally, it is also well-settled in Michigan jurisprudence that it is a ministerial duty for the Defendant Wayne County Election Commission to correct errors on primary election ballots in accordance with MCL 168.567.

*Berry,* 316 Mich. App. at 44-45, 890 N.W.2d 882 ("[T]he action that plaintiff now seeks to compel is decidedly 'ministerial' in nature. The duty to correct the ballots under § 567 is set forth 'with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'").

100. Other than filing the instant action, Plaintiff has no adequate remedy at law to require the Defendant Wayne County Election Commission to correct the error on the November 3, 2026 general election ballot under MCL 168.567 and to ensure only qualified candidates that have strictly complied with the requirements of MCL 168.558 are on the November 3, 2026 general election ballot.

**WHEREFORE**, Plaintiff requests this Honorable Court enters judgment and grants the following relief against the Defendant Wayne County Election Commission as follows:

a. Enter a writ of mandamus compelling the Defendant Wayne County Election Commission to "correct" the ballots for the November 3, 2026 general election as authorized under MCL 168.567 by removing Jocelyn Benson's name from appearing on the November 3, 2026 general election ballot as the democratic party nominee for Governor.

b. Enter a writ of mandamus compelling the Defendant Wayne County Election Commission to "correct" the ballots for the November 3, 2026 general election as authorized under MCL 168.567 and MCL 168.689 by **NOT** printing Jocelyn Benson's name on the November 3, 2026 general election ballot as the democratic party nominee for Governor.

c. Award Plaintiff his court costs.

d. Enter an order awarding whatever other equitable relief the Court deems appropriate at the time of final judgment.

Dated: August 28, 2026

Respectfully submitted,
/s/ROBERT DAVIS
**ROBERT DAVIS, *Pro Se***
Plaintiff
180 Eason
Highland Park, MI 48203
(313) 523-7118
Davisrobert854@gmail.com

**VERIFICATION UNDER MCR 1.109(D)(3)(b)**

"I, ROBERT DAVIS, declare under the penalties of perjury that the foregoing facts and allegations set forth in each of the numbered paragraphs in this Verified Complaint have been examined by me and that its contents are true to the best of my information, knowledge, and belief."

Dated: August 28, 2026

Respectfully submitted,
**/s/ ROBERT DAVIS**
**ROBERT DAVIS, *pro se***
Plaintiff
180 Eason
Highland Park, MI 48203
(313) 523-7118

Kent

# Affidavit of Identity and Receipt of Filing

*All information must be completed unless otherwise noted. Missing or incorrect information may result in disqualification. Judicial candidates should use a combined judicial affidavit of identity/qualification form rather than this form.*

## SECTION 1 — Candidate information

| First name | Middle name | Last name |
|---|---|---|
| Winnie | Theresa | Brinks |

Year of birth: 1968

☐ My name has formally changed in the last 10 years for a reason other than marriage or divorce. My former name is: ______

| Residential address | City | ZIP |
|---|---|---|
| [redacted] | Grand Rapids | 49506 |

| Mailing address, if different than above | City | ZIP |
|---|---|---|
| | | |

| Phone number | Email | Campaign website, if applicable |
|---|---|---|
| [redacted] | [redacted] | |

## SECTION 2 — Office & ballot information

| Office name | Jurisdiction | District/Ward |
|---|---|---|
| Lieutenant Governor | State | |

Select one:
- ⦿ I am running for a partisan office, and my political party is: Democratic
- ○ I am running for a nonpartisan office without party affiliation (*judicial office: see note above*)
- ○ I am running for a partisan office without party affiliation.

☐ Primary election ______ DATE (MM/DD/YYYY) ☑ General election 11/03/2026 DATE (MM/DD/YYYY)

Term of office ***(select one)***: ☑ Regular term ☐ Partial term expiring: ______ DATE (MM/DD/YYYY) ☐ Recall

Indicate exactly how you want your name to be printed on the ballot **(use upper and lowercase letters)**:
Winnie Brinks

Filing method (*Select one*):
- ○ Petitions ☐ Return to me in January ☐ Destroy in January
- ○ $100 filing fee (*if applicable*)
- ⦿ Certification of party nomination and certificate of acceptance (*if applicable*)

## SECTION 3 — Certification & attestation

☑ I previously ran in Michigan for office that required filing reports under the Michigan Campaign Finance Act. I ran in the following counties: state, Kent

By signing, I certify that:
- At this date, all statements, reports, late filing fees, and fines required of me or any candidate committee organized to support my election under the Michigan Campaign Finance Act have been filed or paid; and
- I am a United States citizen and meet the statutory and constitutional requirements for the office sought; and
- I acknowledge that making a false statement in this affidavit is perjury - a felony punishable by a fine up to $1,000 or imprisonment for up to five years or both and may result in disqualification from the ballot.

[signature] Candidate signature — Date: 8/29/26

| Notary signature | [signature] | Notary name | Jeff Winston |
|---|---|---|---|
| County of commission | Kent | Acting in the County of | Ingham |
| My commission expires DATE (MM/DD/YYYY) | 4-13-2028 | Date of notarization (MM/DD/YYYY) | 8-29-26 |

## Office use only

| Date of filing (MM/DD/YYYY) | Received by DATE (MM/DD/YYYY) | Reviewed by | Check number |
|---|---|---|---|
| 8/31/26 | BW/8/31/26 | BW | NA |

| Number of petition sheets | Campaign Finance Number |
|---|---|
| NA | 0615882 |

RECEIVED/FILED
MICHIGAN DEPT OF STATE
2026 AUG -31 08:12AM
ELECTIONS/GREAT SEAL

Kent

# Affidavit of Identity and Receipt of Filing

*All information must be completed unless otherwise noted. Missing or incorrect information may result in disqualification. Judicial candidates should use a combined judicial affidavit of identity/qualification form rather than this form.*

**SECTION 1 — Candidate information**

| First name | Middle name | Last name |
|---|---|---|
| Winnie | Theresa | Brinks |

Year of birth: 1968

☐ My name has formally changed in the last 10 years for a reason other than marriage or divorce. My former name is: ______

| Residential address | City | ZIP |
|---|---|---|
| [redacted] | Grand Rapids | 49506 |

| Mailing address, if different than above | City | ZIP |
|---|---|---|
| | | |

| Phone number | Email | Campaign website, if applicable |
|---|---|---|
| [redacted] | [redacted] | |

**SECTION 2 — Office & ballot information**

| Office name | Jurisdiction | District/Ward |
|---|---|---|
| Lieutenant Governor | State | |

Select one:
- ◉ I am running for a partisan office, and my political party is: Democratic
- ○ I am running for a nonpartisan office without party affiliation (*judicial office: see note above*)
- ○ I am running for a partisan office without party affiliation.

☐ Primary election ______ DATE (MM/DD/YYYY) ☑ General election 11/03/2026 DATE (MM/DD/YYYY)

Term of office ***(select one)***: ☑ Regular term ☐ Partial term expiring: ______ DATE (MM/DD/YYYY) ☐ Recall

Indicate exactly how you want your name to be printed on the ballot **(use upper and lowercase letters)**: Winnie Brinks

Filing method (*Select one*):
- ○ Petitions ☐ Return to me in January ☐ Destroy in January
- ○ $100 filing fee (*if applicable*)
- ◉ Certification of party nomination and certificate of acceptance (*if applicable*)

RECEIVED/FILED
MICHIGAN DEPT OF STATE
2026 AUG -31 08:12 AM
ELECTIONS/GREAT SEAL

**SECTION 3 — Certification & attestation**

☑ I previously ran in Michigan for office that required filing reports under the Michigan Campaign Finance Act. I ran in the following counties: state, Kent

By signing, I certify that:
- At this date, all statements, reports, late filing fees, and fines required of me or any candidate committee organized to support my election under the Michigan Campaign Finance Act have been filed or paid; and
- I am a United States citizen and meet the statutory and constitutional requirements for the office sought; and
- I acknowledge that making a false statement in this affidavit is perjury - a felony punishable by a fine up to $1,000 or imprisonment for up to five years or both and may result in disqualification from the ballot.

[signature] Candidate signature — Date: 8/29/26

| | |
|---|---|
| Notary signature: [signature] | Notary name: Jeff Winston |
| County of commission: Kent | Acting in the County of: Ingham |
| My commission expires DATE (MM/DD/YYYY): 4-13-2028 | Date of notarization (MM/DD/YYYY): 8-29-26 |

**Office use only**

| | | | |
|---|---|---|---|
| Date of filing (MM/DD/YYYY): 8/31/26 | Received by DATE (MM/DD/YYYY): BW 8/31/26 | Reviewed by: BWEY | Check number: NA |
| Number of petition sheets: NA | | Campaign Finance Number: 0415 882 | |

STATE OF MICHIGAN
DEPARTMENT OF STATE
LANSING

# Certificate of Acceptance

I, Winnie Brinks, hereby certify that
(Name of Nominee)

I accept the nomination of the Democratic
(Name of Party)

Party for the office of Lieutenant Governor to be voted for at the
(Title of Office)

general election to be held on the 3rd day of November, 2026.

I reside at [redacted], Grand Rapids.
(Street Address) (City or Township)

My mailing address is [redacted], Grand Rapids, MI, 49506.

(Signature of Nominee)

RECEIVED/FILED
MICHIGAN DEPT OF STATE
2026 AUG -31 08:12 AM
ELECTIONS/GREAT SEAL

1/2

Wayne

# Affidavit of Identity and Receipt of Filing

*All information must be completed unless otherwise noted. Missing or incorrect information may result in disqualification. Judicial candidates should use a combined judicial affidavit of identity/qualification form rather than this form.*

**SECTION 1 Candidate information**

| First name | Middle name | Last name | |
|---|---|---|---|
| Garlin | Dorell | Gilchrist | |
| Year of birth: 1982 | ☐ My name has formally changed in the last 10 years for a reason other than marriage or divorce. My former name is: | | |
| Residential address: [redacted] | | City: Detroit | ZIP: 48226 |
| Mailing address, if different than above | | City | ZIP |
| Phone number: [redacted] | Email: [redacted]n | Campaign website, if applicable: garlingilchrist.com | |

**SECTION 2 Office & ballot information**

| Office name | Jurisdiction | District/Ward |
|---|---|---|
| Secretary of State | State | |

Select one:
- ◉ I am running for a partisan office, and my political party is: Democratic
- ○ I am running for a nonpartisan office without party affiliation (*judicial office: see note above*)
- ○ I am running for a partisan office without party affiliation.

☐ Primary election ____ DATE (MM/DD/YYYY) ☑ General election 11/03/2026 DATE (MM/DD/YYYY)

Term of office ***(select one)***: ☑ Regular term ☐ Partial term expiring: ____ DATE (MM/DD/YYYY) ☐ Recall

Indicate exactly how you want your name to be printed on the ballot **(use upper and lowercase letters)**:
Garlin Gilchrist II

Filing method (*Select one*):
- ○ Petitions ☐ Return to me in January ☐ Destroy in January
- ○ $100 filing fee (*if applicable*)
- ◉ Certification of party nomination and certificate of acceptance (*if applicable*)

RECEIVED/FILED MICHIGAN DEPT OF STATE 2026 AUG -31 08:17 AM ELECTIONS/GREAT SEAL

**SECTION 3 Certification & attestation**

☑ I previously ran in Michigan for office that required filing reports under the Michigan Campaign Finance Act. I ran in the following counties: state, Wayne

By signing, I certify that:

- At this date, all statements, reports, late filing fees, and fines required of me or any candidate committee organized to support my election under the Michigan Campaign Finance Act have been filed or paid; and
- I am a United States citizen and meet the statutory and constitutional requirements for the office sought; and
- I acknowledge that making a false statement in this affidavit is perjury - a felony punishable by a fine up to $1,000 or imprisonment for up to five years or both and may result in disqualification from the ballot.

[signature] Candidate signature — Date: 29 AUG 2026

| | |
|---|---|
| Notary signature: [signature] | Notary name: Vaughn Derderian |
| County of commission: Oakland | Acting in the County of: Ingham |
| My commission expires DATE (MM/DD/YYYY): 11/22/2032 | Date of notarization (MM/DD/YYYY): 8/29/26 |

**Office use only**

| | | | |
|---|---|---|---|
| Date of filing (MM/DD/YYYY): 8/31/26 | Received by DATE (MM/DD/YYYY): BL / 8/31/26 | Reviewed by: BN | Check number: NA |
| Number of petition sheets: NA | | Campaign Finance Number: 0612275 | |

 2/2

Wayne

# Affidavit of Identity and Receipt of Filing

*All information must be completed unless otherwise noted. Missing or incorrect information may result in disqualification. Judicial candidates should use a combined judicial affidavit of identity/qualification form rather than this form.*

**SECTION 1 Candidate information**

| First name | Middle name | Last name |
|---|---|---|
| Garlin | Dorell | Gilchrist |

Year of birth: 1982
☐ My name has formally changed in the last 10 years for a reason other than marriage or divorce. My former name is: ______

| Residential address | City | ZIP |
|---|---|---|
| [redacted] | Detroit | 48226 |
| Mailing address, if different than above | City | ZIP |
| | | |

| Phone number | Email | Campaign website, if applicable |
|---|---|---|
| [redacted] | [redacted]n | garlingilchrist.com |

**SECTION 2 Office & ballot information**

| Office name | Jurisdiction | District/Ward |
|---|---|---|
| Secretary of State | State | |

Select one:
- ⦿ I am running for a partisan office, and my political party is: Democratic
- ○ I am running for a nonpartisan office without party affiliation (*judicial office: see note above*)
- ○ I am running for a partisan office without party affiliation.

☐ Primary election ______ DATE (MM/DD/YYYY) ☑ General election 11/03/2026 DATE (MM/DD/YYYY)

Term of office ***(select one)***: ☑ Regular term ☐ Partial term expiring: ______ DATE (MM/DD/YYYY) ☐ Recall

Indicate exactly how you want your name to be printed on the ballot **(use upper and lowercase letters)**:
Garlin Gilchrist II

Filing method (*Select one*):
- ○ Petitions ☐ Return to me in January ☐ Destroy in January
- ○ $100 filing fee (*if applicable*)
- ⦿ Certification of party nomination and certificate of acceptance (*if applicable*)

RECEIVED/FILED MICHIGAN DEPT OF STATE 2026 AUG -31 08:17 AM ELECTIONS/GREAT SEAL

**SECTION 3 Certification & attestation**

☑ I previously ran in Michigan for office that required filing reports under the Michigan Campaign Finance Act. I ran in the following counties state, Wayne

By signing, I certify that:
- At this date, all statements, reports, late filing fees, and fines required of me or any candidate committee organized to support my election under the Michigan Campaign Finance Act have been filed or paid; and
- I am a United States citizen and meet the statutory and constitutional requirements for the office sought; and
- I acknowledge that making a false statement in this affidavit is perjury - a felony punishable by a fine up to $1,000 or imprisonment for up to five years or both and may result in disqualification from the ballot.

[signature] Candidate signature — Date: 29 AUG 2026

| | |
|---|---|
| Notary signature: [signature] | Notary name: Vaughn Derderian |
| County of commission: Oakland | Acting in the County of: Ingham |
| My commission expires DATE (MM/DD/YYYY): 11/22/2032 | Date of notarization (MM/DD/YYYY): 8/29/26 |

**Office use only**

| | | | |
|---|---|---|---|
| Date of filing (MM/DD/YYYY): 8/31/26 | Received by DATE (MM/DD/YYYY): BW/8/31/26 | Reviewed by: [signature] | Check number: N/A |
| Number of petition sheets: NA | | Campaign Finance Number: 0612275 | |

STATE OF MICHIGAN
DEPARTMENT OF STATE
LANSING

# Certificate of Acceptance

I, Garlin Gilchrist II, hereby certify that
(Name of Nominee)

I accept the nomination of the Democratic
(Name of Party)

Party for the office of Secretary of State to be voted for at the
(Title of Office)

general election to be held on the 3rd day of November, 2026.

I reside at [redacted], Detroit.
(Street Address) (City or Township)

My mailing address is [redacted] [redacted] Detroit, MI 48226.

RECEIVED/FILED
MICHIGAN DEPT OF STATE
2026 AUG -31 08:17 AM
ELECTIONS/GREAT SEAL

(Signature of Nominee)

Washtenaw 1/2

# Affidavit of Identity and Receipt of Filing

*All information must be completed unless otherwise noted. Missing or incorrect information may result in disqualification. Judicial candidates should use a combined judicial affidavit of identity/qualification form rather than this form.*

**SECTION 1 Candidate information**

| First name | Middle name | Last name | |
|---|---|---|---|
| Eli | Noam | Savit | |
| Year of birth: 1983 | ☐ My name has formally changed in the last 10 years for a reason other than marriage or divorce. My former name is: | | |
| Residential address: [redacted] | | City: Webster Township | ZIP: 48105 |
| Mailing address, if different than above: 4993 Hidden Brook Ct | | City: Ann Arbor | ZIP: 48105 |
| Phone number: [redacted] | Email: [redacted] | Campaign website, if applicable: eliformichigan.com | |

**SECTION 2 Office & ballot information**

| Office name | Jurisdiction | District/Ward |
|---|---|---|
| Attorney General | State | |

Select one:
- ⦿ I am running for a partisan office, and my political party is: Democratic
- ○ I am running for a nonpartisan office without party affiliation (*judicial office: see note above*)
- ○ I am running for a partisan office without party affiliation.

☐ Primary election ______ DATE (MM/DD/YYYY) ☑ General election 11/03/2026 DATE (MM/DD/YYYY)

Term of office ***(select one)***: ☑ Regular term ☐ Partial term expiring: ______ DATE (MM/DD/YYYY) ☐ Recall

Indicate exactly how you want your name to be printed on the ballot **(use upper and lowercase letters):** Eli Savit

Filing method (*Select one*):
- ○ Petitions ☐ Return to me in January ☐ Destroy in January
- ○ $100 filing fee (*if applicable*)
- ⦿ Certification of party nomination and certificate of acceptance (*if applicable*)

RECEIVED/FILED MICHIGAN DEPT OF STATE 2026 AUG 31 08:22 AM ELECTIONS/GREAT SEAL

**SECTION 3 Certification & attestation**

☑ I previously ran in Michigan for office that required filing reports under the Michigan Campaign Finance Act. Ran in the following counties Washtenaw

By signing, I certify that:
- At this date, all statements, reports, late filing fees, and fines required of me or any candidate committee organized to support my election under the Michigan Campaign Finance Act have been filed or paid; and
- I am a United States citizen and meet the statutory and constitutional requirements for the office sought; and
- I acknowledge that making a false statement in this affidavit is perjury - a felony punishable by a fine up to $1,000 or imprisonment for up to five years or both and may result in disqualification from the ballot.

[signature] 8/29/26

Candidate signature — Date

| | |
|---|---|
| Notary signature: [signature] | Notary name: Jeff Winston |
| County of commission: Kent | Acting in the County of: Ingham |
| My commission expires DATE (MM/DD/YYYY): 4-13-2028 | Date of notarization (MM/DD/YYYY): 8-29-2026 |

**Office use only**

| | | | |
|---|---|---|---|
| Date of filing (MM/DD/YYYY): 8/31/26 | Received by DATE (MM/DD/YYYY): [initials] 8/31/26 | Reviewed by: [initials] | Check number: NA |
| Number of petition sheets: N/A | | Campaign Finance Number: 0606564 | |

Washtenaw 942

# Affidavit of Identity and Receipt of Filing

*All information must be completed unless otherwise noted. Missing or incorrect information may result in disqualification. Judicial candidates should use a combined judicial affidavit of identity/qualification form rather than this form.*

**SECTION 1 Candidate information**

| First name | Middle name | Last name |
|---|---|---|
| Eli | Noam | Savit |

Year of birth: 1983

☐ My name has formally changed in the last 10 years for a reason other than marriage or divorce. My former name is: 

| Residential address | City | ZIP |
|---|---|---|
| [redacted] | Webster Township | 48105 |

| Mailing address, if different than above | City | ZIP |
|---|---|---|
| 4993 Hidden Brook Ct | Ann Arbor | 48105 |

| Phone number | Email | Campaign website, if applicable |
|---|---|---|
| [redacted] | [redacted]n | eliformichigan.com |

**SECTION 2 Office & ballot information**

| Office name | Jurisdiction | District/Ward |
|---|---|---|
| Attorney General | State | |

Select one:
- ◉ I am running for a partisan office, and my political party is: Democratic
- ○ I am running for a nonpartisan office without party affiliation (*judicial office: see note above*)
- ○ I am running for a partisan office without party affiliation.

☐ Primary election ______ DATE (MM/DD/YYYY) ☑ General election 11/03/2026 DATE (MM/DD/YYYY)

Term of office ***(select one)***: ☑ Regular term ☐ Partial term expiring: ______ DATE (MM/DD/YYYY) ☐ Recall

Indicate exactly how you want your name to be printed on the ballot **(use upper and lowercase letters):**
Eli Savit

Filing method (*Select one*):
- ○ Petitions ☐ Return to me in January ☐ Destroy in January
- ○ $100 filing fee (*if applicable*)
- ◉ Certification of party nomination and certificate of acceptance (*if applicable*)

RECEIVED/FILED MICHIGAN DEPT OF STATE 2026 AUG -3 08:22 AM ELECTIONS/GREAT SEAL

**SECTION 3 Certification & attestation**

☑ I previously ran in Michigan for office that required filing reports under the Michigan Campaign Finance Act. State in the following counties Washtenaw

By signing, I certify that:
- At this date, all statements, reports, late filing fees, and fines required of me or any candidate committee organized to support my election under the Michigan Campaign Finance Act have been filed or paid; and
- I am a United States citizen and meet the statutory and constitutional requirements for the office sought; and
- I acknowledge that making a false statement in this affidavit is perjury - a felony punishable by a fine up to $1,000 or imprisonment for up to five years or both and may result in disqualification from the ballot.

Eli Savit (signature) — Candidate signature — Date: 8/29/26

| Notary signature | (signature) | Notary name | Jeff Winston |
|---|---|---|---|
| County of commission | Kent | Acting in the County of | Ingham |
| My commission expires DATE (MM/DD/YYYY) | 4-13-2028 | Date of notarization (MM/DD/YYYY) | 8-29-26 |

**Office use only**

| Date of filing (MM/DD/YYYY) | Received by DATE (MM/DD/YYYY) | Reviewed by | Check number |
|---|---|---|---|
| 8/31/26 | Bw 8/31/26 | (signature) | NA |
| Number of petition sheets | N/A | Campaign Finance Number | 0606504 |

STATE OF MICHIGAN
DEPARTMENT OF STATE
LANSING

# Certificate of Acceptance

I, Eli Savit, hereby certify that
(Name of Nominee)

I accept the nomination of the Democratic
(Name of Party)

Party for the office of Attorney General to be voted for at the
(Title of Office)

general election to be held on the 3rd day of November, 2026.

I reside at [redacted], Webster Township.
(Street Address) (City or Township)

My mailing address is [redacted], Ann Arbor, MI 48105.

RECEIVED/FILED
MICHIGAN DEPT OF STATE
2026 AUG - 31 08:22 AM
ELECTIONS/GREAT SEAL

Eli Savit
(Signature of Nominee)

**DEPARTMENT OF STATE**

**BUREAU OF ELECTIONS**

**DISQUALIFICATION FROM BALLOT BASED UPON CONTENTS OF AFFIDAVIT OF IDENTITY**

(By authority conferred on the secretary of state by section 31 of the Michigan election law, 1954 PA 116, MCL 168.31)

**R 168.1 Definitions.**

Rule 1. As used in these rules:

(a) "Affidavit of identity" or "affidavit" means the filing made under section 558 of the Michigan election law, 1954 PA 116, MCL 168.558.

(b) "Compliance statement" means the statement required by section 558(4) of the Michigan election law, 1954 PA 116, MCL 168.558, that the candidate does not owe any statements, reports, fines, or late filing fees.

(c) "Filing official" means the township, city, or county clerk, or the secretary of state with which the affidavit of identity is filed.

(d) "Notice of error or omission" means the notice issued under section 16(6) of the Michigan campaign finance act, 1976 PA 388, MCL 169.216.

History: 2022 AACS; 2025 AACS; 2026 MR 11, Eff. June 8, 2026.

**R 168.2 Statement on the affidavit of identity regarding compliance with the campaign finance act.**

Rule 2. (1) For the purposes of the candidate's statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid, an outstanding notice of error or omission is not a statement, report, late filing fee, or fine for the purposes of section 558(4) of the Michigan election law, 1954 PA 116, MCL 168.558. A candidate with an outstanding notice of error or omission may be disqualified based on the unfiled or unpaid statement, report, late filing fees, or fines upon which the notice was based.

(2) When submitting an affidavit of identity, the candidate shall disclose every jurisdiction in the state of Michigan in which the candidate previously sought nomination or election. The candidate is not required to disclose a jurisdiction in which the candidate previously sought nomination or election if the only offices for which the candidate previously sought nomination or election in that jurisdiction are not offices for which candidates are required to file campaign finance statements under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282. A failure to disclose a jurisdiction or jurisdictions in which the candidate previously sought nomination or election shall not be a reason to disqualify a candidate from appearing on the ballot.

(3) The filing official shall examine the campaign finance records of the secretary of state and county clerk for any county in which the candidate previously sought nomination or election, if applicable, to determine whether the candidate made a false statement in the affidavit of identity.

(4) The filing official shall disqualify a candidate who falsely states that as of the date he or she signed the affidavit of identity, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid. Candidates disqualified on this basis cannot reverse disqualification by filing a corrected affidavit.

(5) A candidate who files a statement of organization and does not request a reporting waiver is presumed to owe the campaign statement for the reporting period that includes the date the candidate committee was formed.

(6) A candidate who, as of the date he or she signed the affidavit of identity, has not responded to a notice of error or omission shall not be disqualified solely for that reason.

History: 2022 AACS.

**R 168.3 Other information on the affidavit of identity.**

Rule 3. (1) Subject to subrule (2) of this rule, a candidate who omits information required by section 558(2) of the Michigan election law, 1954 PA 116, MCL 168.558, may correct the omission by filing a new affidavit of identity up until the filing deadline elapses. The filing official shall disqualify a candidate who fails to correct an omission by the filing deadline. For purposes of this subrule, omissions include, but are not limited to, blanks or incomplete information on the affidavit of identity, but do not include omissions on the compliance statement required by section 558(4) of the Michigan election law, 1954 PA 116, MCL 168.558.

(2) The filing official shall disqualify a candidate who provides false information as of the date the candidate signed the affidavit of identity regarding information required by section 558(2) of the Michigan election law, 1954 PA 116, MCL 168.558. Candidates disqualified on this basis cannot reverse disqualification by filing a corrected affidavit.

History: 2022 AACS.

**R 168.4 Date of signing; notarization.**

Rule 4. (1) The affidavit of identity must be signed, sworn to, and dated by the candidate. All information given and statements made by the candidate on the affidavit of identity must be true as of the date that the affidavit is signed.

(2) An affidavit of identity must be notarized in accordance with the Michigan law on notarial acts, 2003 PA 238, MCL 55.261 to 55.315.

History: 2022 AACS.

**R 168.5 Affidavit of identity challenge.**

Rule 5. (1) The filing official shall reject any challenge received more than 7 days after the deadline for the filing of the affidavit of identity.

(2) The filing official shall reject any challenge that is not in the form of a signed and notarized complaint.

History: 2025 AACS; 2026 MR 11, Eff. June 8, 2026.

**R 168.6 Candidate response to challenge.**

Rule 6. (1) The filing official shall render a decision without consideration of a candidate's response to a challenge to the candidate's affidavit of identity if the response is received more than 7 days after the candidate was provided with the challenge.

(2) The filing official shall decline to consider a response that is not signed.

History: 2025 AACS; 2026 MR 11, Eff. June 8, 2026.