UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT DAVIS,**<br>Plaintiff,<br>vs.<br>**JOCELYN BENSON,** Secretary of State for the State of Michigan, **JONATHAN BRATER,** Director of Michigan Bureau of Elections, **WAYNE COUNTY ELECTION COMMISSION, BRENDA GREEN,** City Clerk for the City of Highland Park, **GARLIN GILCHRIST, II, ELI SAVIT, and MICHIGAN DEMOCRATIC PARTY,**<br>Defendants. | **2:26-CV-13454-TGB-KGA**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION TO SUPPLEMENT THE RECORD (ECF NO. 51)**<br>**AND DENYING PLAINTIFF'S EMERGENCY MOTIONS FOR TEMPORARY RESTRAINING ORDER (TRO) AND/OR PRELIMINARY INJUNCTION UNDER FED. R. CIV. P. 65 WITH RESPECT TO COUNTS VIII AND IX OF FIRST AMENDED VERIFIED COMPLAINT (ECF NOS. 29, 30)** |

Plaintiff Robert Davis, proceeding pro se, filed a seven-count Verified Complaint on September 11, 2026 against Jocelyn Benson, Secretary of State for the State of Michigan, Jonathan Brater, Director of Michigan Bureau of Elections, the Wayne County Election Commission, and Brenda Green, City Clerk for the City of Highland Park, seeking emergency injunctive relief to enjoin the State of Michigan from preparing and sending what he considers to be defective ballots for the November 2026 state-wide elections. ECF No. 1. Three days later

Davis filed an emergency preliminary injunction as to one federal claim, ECF No. 5, followed the next day by a motion for declaratory judgment as to a state law claim, ECF No. 6. After convening a telephonic status conference, the Court issued a written order denying Davis's emergency motion for preliminary injunctive relief, declining to exercise supplemental jurisdiction over Davis's four state law claims, and dismissing those claims without prejudice. ECF No. 19.

Four days later, Davis filed a Verified First Amended Complaint asserting nine constitutional claims against the same four Defendants named in his original Complaint, and adding three new Defendants—Garlin Gilchrist, Eli Savit, and the Michigan Democratic Party. ECF No. 20. That Amended Complaint was immediately followed by two more Emergency Motions for Temporary Restraining Orders (TROs) and/or Preliminary Injunctions Under Fed. R. Civ. P. 65, ECF Nos. 29, 30, which are now before the Court and pertain to Counts VIII and IX of the First Amended Complaint In these TRO motions, Davis seeks to enjoin Defendant Wayne County Election Commission ("WCEC" or the "Election Commission") from enforcing any and all resolutions, actions, and votes taken at its meeting on September 8, 2026, including its resolution authorizing the printing of the ballots for the November 3, 2026 general election. Davis contends that the Election Commission violated his procedural due process and equal protection rights as guaranteed under the Fourteenth Amendment of the United States Constitution.

WCEC and Defendants Michigan Democratic Party ("MDP"), Eli Savit, and Garlin Gilchrist II (the "MDP Defendants") filed expedited responses to Davis's motions, as ordered by the Court, ECF Nos. 42, 44, Defendants Benson and Brater filed a notice of joinder/concurrence in WCEC's response, ECF No. 43, and Davis filed a reply brief in support of his two motions, ECF No. 50.The Court held a hearing on Davis's motions on October 21, 2026, at which Davis and counsel for WCEC and the MDP Defendants appeared and argued. After the hearing, Davis filed an "Emergency Motion to Supplement Record," ECF No. 51, which seeks to add several documents and an audio recording of the September 8, 2026 meeting to the record. The motion is **GRANTED**. The Court has carefully considered the relevant authorities and the arguments of counsel. For the reasons set forth below, Davis's Emergency Motions for Temporary Restraining Order (TRO) and/or Preliminary Injunction Under Fed. R. Civ. P. 65 with Respect to Counts VIII and IX of First Amended Verified Complaint, ECF Nos. 29 and 30, will be **DENIED**.

## I. BACKGROUND

### A. Plaintiff's Allegations

At the Michigan Democratic Party's Fall State Nominating Convention on August 29, 2026, the MDP nominated Eli Savit and Garlin Gilchrist as its candidates for Attorney General and Secretary of State, respectively. ECF No. 29-3, PageID.505; ECF No. 29-4, PageID.527. On August 31, 2026, the first business day following the convention, the

MDP filed affidavits of identity for its nominees, including Savit and Gilchrist, with the Secretary of State, as required by M.C.L. § 168.558(1). ECF No. 29-3, PageID.508; ECF No. 29-4, PageID.530.

On September 1, 2026, Davis filed complaints with the Secretary of State under Mich. Admin. Code R. 168.5 challenging both affidavits, alleging the affidavits contained inaccurate or incomplete financial disclosure information. ECF No. 29-3, PageID.505; ECF No. 29-4, PageID.527. That same day, Davis filed suit in the Michigan Court of Claims seeking to prevent Savit and Gilchrist from appearing on the November 3, 2026 ballot based on the same underlying theory that the candidates made false statements in their affidavits of identity relating to outstanding campaign finance reports under the Michigan Campaign Finance Act ("MCFA"), M.C.L. § 169.201 *et seq*. *Davis v. Benson*, No. 26-000187-MB (Mich. Ct. Cl.). On September 4, 2026, the Court of Claims dismissed Davis's case with prejudice, stating that "[b]ecause there is no private right of enforcement of the MCFA and plaintiff has not pursued an MCFA complaint in relation to either candidate [with the Secretary of State], the Court GRANTS the [Secretary of State's] motion for summary disposition. Opinion and Order, ECF No. 44-2, PageID.1083. The Court of Claims explained that "[t]he MCFA precludes a direct cause of action and requires that plaintiff pursue his claims through the administrative process outlined in the statute," which Davis failed to do. *Id.* PageID.1087. The Michigan Court of Appeals and Michigan Supreme

Court subsequently declined to interfere with that ruling before the election. *See Davis v. Sec'y of State*, No. 382336 (Mich. Ct. App. Sept. 8, 2026); *Davis v. Sec'y of State*, 38 N.W.3d 754 (Mich. 2026).

In Counts VIII and IX of Plaintiff's First Amended Complaint ("FAC"), Davis alleges that on September 6, 2026, he emailed the WCEC, as well as other Wayne County elections employees, in order to make a request to speak at the upcoming September 8, 2026 meeting so that he could "present his challenge and objections to the 'improper' certification of Eli Savit and Garlin Gilcrest as the Democratic nominees for Attorney General and Secretary of State, respectively." FAC ¶¶ 282, 333, ECF No. 20. Davis's email claimed that Gilchrist and Savit made false statements on their affidavits of identity with respect to their respective compliance with the MCFA filing requirements. ECF No. 29-2, PageID.497–99. Davis thus demanded that the WCEC members not allow Savit's and Gilchrist's names to appear on the ballot. *Id.*

Davis cited M.C.L. § 168.689 as a basis for allowing him to speak. That statute states in relevant part:

> The board of election commissioners of each county shall prepare the official ballots for use at any state, district or county election held therein, and shall have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners … to supply each election precinct in such county with a sufficient number for such precinct, and not less than 25% more than the total number of votes cast therein at

> the corresponding election held 4 years previous for the office which received the greatest number of votes.

M.C.L. § 168.689.

On the morning of September 8th, Davis sent another email to the same parties making the same claims. ECF No. 29-2, PageID.499. Davis alleges that WCEC Director Greg Maher sent him a reply that his correspondence and request would be provided to the WCEC for their consideration at the 11 a.m. meeting that day. FAC ¶¶ 283, 334, ECF No. 20; ECF No. 29-2, PageID.500.

Davis appeared virtually for the September 8th meeting. The Court viewed the video recording of the meeting provided to the Court on October 22, 2026. ECF No. 51-1. The Wayne County Clerk, Cathy M. Garrett, and Wayne County Treasurer, Eric Sabree, attended, but the Chief Judge of the Probate Court, the Honorable David Braxton, was absent and excused. ECF No. 29-5, PageID.539. Davis states that Sabree presided over the meeting on behalf of the WCEC in the absence of Chief Judge Braxton. FAC ¶¶ 284–86, ECF No. 20; ECF No. 29-5, PageID.539. Davis alleges that the two members of the WCEC attending the September 8th meeting did not vote to appoint a replacement for the Chief Judge, as required by M.C.L. § 168.23. FAC ¶¶ 287–89, ECF No. 20. That statute states, in relevant part:

> The chief or only judge of probate of the county or probate court district, the county clerk, and the county treasurer shall constitute a board of county election commissioners for each

> county. … In the absence or disqualification of any member of the board of county election commissioners other than the county clerk, the members of the board who are present shall appoint the county prosecuting attorney, county sheriff, or register of deeds in the absent or disqualified member's place, and the appointed county officer, on being notified, shall attend without delay and act as a member of the board.

M.C.L. § 168.23(1). Davis contends that the WCEC's failure to comply with this statute renders all actions taken at the September 8, 2026 meeting void, including the WCEC's rejection of Davis's challenge to the alleged "improper certification" of Savit and Gilchrist as candidates. FAC ¶ 290, ECF No. 20.

At the meeting, one of the WCEC members asked Wayne County's Corporation Counsel, Rebecca Camargo, for an oral legal opinion regarding Davis's email request. ECF No. 29-5, PageID.540. Ms. Camargo advised that Davis lacked standing to challenge the certification because M.C.L. § 169.215 of the MCFA expressly provides that there is no private right of action for alleged campaign-finance violations. *See id.*; *see* M.C.L. § 169.215(17).[1] Based on that oral opinion,

---

[1] This section provides:

> Except as otherwise provided in section 57, there is no private right of action, either in law or in equity, under this act. Except as otherwise provided in section 57, the remedies provided in this act are the exclusive means by which this act may be enforced and by which any harm resulting from a violation of this act may be redressed. The criminal penalties provided by this act may only be enforced by the attorney

the WCEC declined to allow Davis to speak prior to its certification of the ballots, but informed Davis that his comments "will be reserved for public comment." ECF No. 29-5, PageID.540. The WCEC then certified the ballots, while authorizing election staff "to adjust the ballot in accordance with any court rulings relative to the November 3, 2026 General Election candidates." *Id.* at PageID.540–41. The WCEC thereafter opened the meeting to public comment, at which Davis spoke. *Id.* at PageID.541.

On September 9, 2026, the ballot proofs were sent to the printer and all Wayne County absentee ballots were delivered to the local clerks, as directed by statute, prior to September 19, 2026. *See* Connor Thompson Affidavit ("Thompson Aff.") ¶¶ 5–10, ECF No. 42-3.

**B. Davis's Motions for Emergency TRO/PI (ECF Nos. 29, 30)**

As described above, Davis filed this suit days after the Election Commission's September 8 meeting, on September 11, 2026. ECF No. 1. He sought emergency relief to overturn the certification of the ballots in two TRO and Declaratory Judgment motions, ECF Nos. 5 and 7, but those were denied, ECF No. 19, so on September 22, 2026, Davis filed his FAC, adding, as relevant here, Counts VIII and IX against the WCEC. FAC ¶¶ 280–357, ECF No. 20. Count VIII of Davis's FAC asserts a violation of Davis's procedural due process rights, and Count IX asserts a violation of Davis's equal protection rights as a "class of one." *Id.* On

---

general and only upon referral by the secretary of state as provided under subsection (10) or (13).

September 25, 2026 Davis followed up by filing the instant Emergency Motion for Temporary Restraining Order (TRO) and/or Preliminary Injunction Under Fed. R. Civ. P. 65 with Respect to Count VIII of First Amended Verified Complaint, ECF No 29, and then on September 27, 2026, by filing another Emergency Motion for Temporary Restraining Order (TRO) and/or Preliminary Injunction Under Fed. R. Civ. P. 65 with Respect to Count IX of First Amended Verified Complaint. ECF No. 30. In both motions, Davis seeks to "enjoin the enforcement of any and all resolutions, actions and votes taken or approved at [WCEC's] September 8, 2026 meeting, including its resolution authorizing the printing of the ballots for the November 3, 2026 general election." ECF No. 29, PageID.458; ECF No. 30, PageID.544.

Defendant WCEC filed a consolidated response in opposition to Davis's two motions on October 9, 2026, as ordered by the Court. ECF No. 42. Defendants Benson and Brater filed a Notice of Joinder/Concurrence in WCEC's response that same day, ECF No. 43, and the MDP Defendants filed a separate consolidated response in opposition to Davis's two motions. ECF No. 44. Davis filed a consolidated reply brief in support of his two motions. ECF No. 50. The Court heard oral argument on the emergency motions on October 21, 2026, and Davis filed an emergency motion to supplement the record on October 22, 2026. ECF No. 51.

## II. LEGAL STANDARD

Courts consider four factors when determining whether to grant a preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025) (quoting *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023)). The standard for issuing a temporary restraining order is the same as for a preliminary injunction. *See Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Thus, the Court will analyze them together.

The Sixth Circuit has "often cautioned that these are factors to be balanced, not prerequisites to be met." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (citation omitted). At the same time, the Sixth Circuit has "also held that a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed. And in the case of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *Id.* (citation modified); *see also U.S. Sportsmen's All. Found. v. Ctrs. for Disease Control and Prevention*, 167 F.4th 813, 818 (6th Cir. 2026) ("If the

plaintiff fails to show a likelihood of success on the merits, the court may deny the injunction without any further consideration.”).

“A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.” *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). “[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy.” *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citation omitted). Plaintiff, as the party seeking the preliminary injunction, bears the burden of justifying the relief he seeks. *See id.* (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 441 (1974)).

## III. DISCUSSION

### A. Likelihood of Success

The first factor that the Court must consider is whether Davis “has demonstrated a strong likelihood of success on the merits.” *Handel’s Enters., Inc. v. Schulenburg*, 765 F. App’x 117, 121 (6th Cir. 2019) (citation omitted). “Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.” *Gonzales v. Nat’l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). To meet his burden, Davis “must show more than a mere

possibility of success." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (citation omitted).

**1. Whether Davis has standing to bring his constitutional claims against WCEC**

The MDP Defendants first argue that Davis lacks standing to obtain the relief he seeks in his motions. ECF No. 44, PageID.1061–62. Defendant WCEC also asserts that Davis lacks standing to bring a claim for an alleged violation of the MCFA. ECF No. 42, PageID.925–26.

To establish standing, Davis must show: (1) a concrete and particularized injury; (2) fairly traceable to the WCEC's September 8th resolutions; and (3) likely to be redressed by the relief he seeks. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

As a preliminary matter, the Court notes that Davis had previously brought a declaratory and mandamus action and emergency TRO in the Michigan Court of Claims seeking to prevent the Secretary of State from certifying either Savit or Gilchrist. *See Davis v. Benson*, Case No. 26-000187-MB (Mich. Ct. Cl.). That action was dismissed with prejudice because Davis lacked a private right of action to enforce the MCFA and he had not pursued an MCFA complaint with the Secretary of State in relation to either candidate. *See id.* at ECF No. 44-2. The Court of Claims'

decision was upheld both on appeal to the Michigan Court of Appeals and the Michigan Supreme Court. *See* ECF Nos. 44-3, 44-4.

The MDP Defendants contend that Davis fails to establish redressability here because the WCEC did not, and was not required to, *certify* Savit or Gilchrist for the ballot. Rather, the Secretary of State, as the official with whom the nominees filed their affidavits of identity, certified them, as required by statute. ECF No. 44, PageID.1062 (citing M.C.L. § 168.558(1), (4)). The MDP Defendants assert that the WCEC's role under M.C.L. § 168.689 is to prepare the ballots containing the names of the candidates already "properly certified" to it by the Secretary of State. This is a ministerial function. *See Davis v Wayne Cnty. Election Comm'n*, 28 N.W.3d 354, 368 (Mich. Ct. App. 2023). Therefore, the MDP Defendants argue, even if the Court enjoined WCEC's actions taken at its September 8, 2026 meeting, such an order would not invalidate the Secretary of State's certifications of the candidates for placement on the ballot. Further, the relief requested, directed to a *single* county's election commission, would not remedy Davis's alleged *statewide* electoral injury.

The Court agrees that to the extent Davis's claims require this Court to adjudicate whether Savit and Gilchrist submitted proper affidavits of identity, and thus whether they were "properly certified" by the Secretary of State, Davis lacks standing to bring those claims under the express provisions of M.C.L. § 169.215(17), which provides that there is no private right of action to enforce the provisions of the MCFA. Davis's

claim that the WCEC did not fulfill its obligation to ensure the legitimacy of the statements in the affidavits of identity provided to the Secretary of State assumes that there will be a finding in Davis's favor that Savit and Gilchrist owed additional reports or otherwise violated the MCFA, thus requiring a decision on the issue of whether the candidates violated the MCFA. The Court further finds that Davis has failed to show a redressable injury, because the Secretary of State, *not* the WCEC, is the entity responsible for certifying Savit and Gilchrist, as statewide candidates, for the ballot. Therefore, enjoining the WCEC's September 8, 2026 resolutions would not invalidate the Secretary of State's certifications of Savit and Gilchrist for placement on ballots statewide or remove either candidate from the statewide ballot. Davis's TRO motions could therefore be denied for lack of standing.

**2. Procedural due process claim (Count VIII)**

The Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property" without "due process of law." U.S. Const. amend. XIV. To prevail on his due process claim, Davis must show that WCEC deprived him of a "liberty or property interest." And he must show that it did so without "process"—without according him the procedural protections the Federal Constitution requires. *See Phillips v. McCollom*, 788 F.3d 650, 653 (6th Cir. 2015) (citing *Sickles v. Campbell Cnty.*, 501 F.3d 726, 730 (6th Cir.2007)).

As to his procedural due process claim in Count VIII of his FAC, Davis claims that he has a protected "property" interest in the proper enforcement of M.C.L. § 168.558(4) with respect to the "proper" certification of candidates for public office by both Defendants Secretary of State and the WCEC. FAC ¶¶ 291–93; ECF No. 29-1, PageID.478. He also contends that he has protected "liberty" interests in the appointment of a replacement for an absent member of the Commission at the September 8, 2026 meeting under M.C.L. § 168.23(1) and for the correction of "errors" on the printed ballots under M.C.L. §§ 168.567 and 168.689. FAC ¶¶ 294–301; ECF No. 29, PageID.477–91. He complains that the WCEC violated its own policy and practices by denying Davis's request to be placed on the September 8, 2026 meeting agenda to present his challenges to the placement of Defendants Savit's and Gilchrest's names on the ballots. FAC ¶ 293, ECF No. 20.

Defendant WCEC argues that Davis's due process claim fails because an alleged failure to comply with state procedural requirements does not constitute a federal constitutional violation. ECF No. 42, PageID.925–26. To the extent Davis claims his constitutional due process rights were violated because he was not placed on the agenda for the September 8, 2026 meeting, or because the WCEC allegedly failed to comply with procedures governing an absent Commission member, Davis fails to establish a substantial likelihood of success on those claims. As the Sixth Circuit has explained, "'the Supreme Court has rejected the

notion that an interest in process itself warrants process, holding that 'an expectation of receiving process is not, without more,' an 'interest protected by the Due Process Clause.'" *Phillips*, 788 F.3d at 653 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983)); *see also Cook v. Takacs*, 808 F. App'x 373, 375 (6th Cir. 2020) (finding that plaintiff lacked a constitutionally protected interest in a probable cause hearing under Ohio state statute).

In *Phillips*, the plaintiff asserted that the city's failure to provide him a hearing to challenge a tax law violated his constitutional due process rights. 788 F.3d at 653–54. The plaintiff contended that the law required the City to create a Board of Occupational License Appeals, but the city never did. *Id.* The Sixth Circuit found that the plaintiff did not have a constitutionally protected due process interest in airing his grievances before a regulatory board. *Id.* The court explained that "[p]rocess is not an end in itself' after all, but a means to protect other interests." *Id* (quoting *Olin*, 461 U.S. at 250)). The court explained that "[t]o rule otherwise creates this tail-chasing dilemma: 'If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing." *Id.* (quoting *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996) (per curiam)).

Thus, merely alleging a failure "'to comply with state law does not ... automatically translate into a deprivation of procedural due process under the United States Constitution.'" *Phillips*, 788 F.3d at 654 (quoting *DePiero v. City of Macedonia,* 180 F.3d 770, 788 (6th Cir.1999)). "It is a long-established principle 'that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.'" *Lauve v. Winfrey*, 852 F. App'x 184, 186 (6th Cir. 2021) (quoting *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010)). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Id.* (quoting *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996)). Such a consequence appears to be at issue here; Davis had previously brought these same claims as state law claims in his original Complaint, *see* Complaint, Counts V and VI, ECF No. 1, and now seeks to constitutionalize them by transforming them into federal due process and equal protection claims. Federal courts, however, "have uniformly declined to endorse action[s] under [§] 1983 with respect to garden variety election irregularities." *Griffin v. Burns,* 570 F.2d 1065, 1076 (6th Cir. 1978); *see also League of Women Voters of Ohio v. Brunner,* 548 F.3d 463, 478 (6th Cir. 2008) ("[T]he federal courts should not be asked to count and validate ballots and enter into the details of the administration of the election." (citation and internal quotation marks omitted)).

But even so, it does appear that Davis had enjoyed some notice and opportunity to be heard, typical hallmarks of due process. Davis was provided with notice of the proceedings, allowed to petition the WCEC with his complaints, and given an opportunity to be fully heard during the public comment part of the September 8th meeting. The MDP Defendants further point out that Davis has previously litigated this claim before the Michigan Court of Claims and contends that he is also apparently pursuing a Wayne County Circuit Court action against the WCEC on the same "properly certified" theory. ECF No. 44, PageID.1073 (citing *Davis v. Wayne Cnty. Election Comm'n*, Case No. 26-015190 (Wayne Cnty. Cir. Ct.)) (the Court has been unable to confirm the claims at issue in that suit from the publicly available record). Davis therefore has had multiple opportunities to pursue his rights in state court. Moreover, in view of the above-cited case law, it appears that he is unlikely to succeed on a claim that the WCEC's failure to place him on the September 8, 2026 meeting agenda, or failure to appoint a person to act in a third member's absence, deprived him of a constitutionally protected liberty interest.

Further, Davis is unlikely to succeed on his claim that the WCEC had an independent duty to determine whether Gilchrist and Savit were not "properly certified" because their affidavits of identify allegedly contained false campaign-finance statements, and that a three-member Commission would have reached that conclusion. Under Michigan

Election Law, the Secretary of State is Michigan's "chief election officer" and exercises supervisory control over local election officials. M.C.L. § 168.21. For statewide offices, as in this case, affidavits of identity for candidates nominated at a party convention are filed with the Secretary of State. M.C.L. § 168.558(1). Consistent with that provision, the affidavits of identity for Gilchrist and Savit were filed with the Secretary of State, not the Wayne County Clerk or the WCEC. ECF No. 29-3, PageID.508; ECF No. 29-4, PageID.530. And the Secretary of State, as the "filing official," was assigned the relevant investigative and disqualification responsibilities for those nominees. Mich. Admin. Code R 168.1(c), 168.2(3)–(4). The WCEC therefore did not receive the affidavits of either candidate or serve as their "filing official," and its role instead only arose *after* their certification for placement on the ballot had been undertaken as provided by M.C.L. §§ 168.72 and 168.689.

The Michigan Court of Appeals explained this in Davis's prior state court case, *Davis v. Wayne County Election Commission*, 28 N.W.3d 354 (Mich. Ct. App. 2023). In that case, Davis had argued, as he does here, that the WCEC was required to independently determine whether a candidate the Secretary of State had submitted for placement on the ballot was disqualified and, if so, to refuse to print ballots bearing his name. *Davis*, 28 N.W.3d at 367–68. The Court of Appeals held that there was "no support for Davis's contention that the Wayne County Election Commission is authorized to independently determine" a candidate's

disqualification "and then refuse to authorize ballots including him as a candidate on that basis." *Id.* at 368. The court explained that WCEC's duty is "to 'determine that, *on its face*, the [candidate] is entitled to placement on the ballot,'" and a "facial" review "amounts to a ministerial review." *Id.* (emphasis added) (quoting *Southeastern Mich. Fair Budget Coal. v. Killeen*, 395 N.W.2d 325, 329 (Mich. Ct. App. 1986)). The court stated that the WCEC may not act "as both fact-finders, tasked with reviewing whatever evidence Davis presents," and as an interpreter of contested law, as this type of review "would go far beyond the 'face' of the matter." *Id.* (noting that the court's review in *Southeastern Michigan* "required no fact-finding and no investigation").

The Michigan Court of Appeals further explained in *Davis v. Wayne County Election Commission* that M.C.L. § 168.567 is not a source of investigative authority for the WCEC, but is merely "a mechanism by which boards of election commissioners must correct errors in ballots that are later found," and "[n]othing in the plain language of the statute suggests or implies that it creates a duty to investigate." 28 N.W.3d at 369. Michigan courts have since found that an election commission did not have a clear legal duty to remove a candidate's name from the ballot when there was not such a facial disqualification on the affidavit of identity. *See, e.g., Nykoriak v. Napoleon*, 964 N.W.2d 895, 902–03 (Mich. Ct. App. 2020) (holding the Wayne County defendants did not have a "clear legal duty" to remove a candidate's name from the ballot when his

affidavit was "facially compliant" with the statutory requirements, even if not completed properly); *Stumbo v. Roe*, 957 N.W.2d 830 (Mich. Ct. App. 2020) (holding that affidavit was "strictly compliant with the [statutory] requirements" even though the date accompanying the candidate's signature differed from the date of notarization). Therefore, the Michigan courts have not transformed M.C.L. § 168.567 into an independent source of investigative authority on behalf of the WCEC. *See Davis*, 28 N.W.3d at 369 ("MCL 168.567 is a mechanism by which boards of election commissioners must correct errors in ballots that are later found. Nothing in the plain language of the statute suggests or implies that it creates a duty to investigate a highly fact-intensive matter of constitutional law[.]").

Davis's reliance on *Berry v. Garrett*, 890 N.W.2d 882 (Mich. Ct. App. 2016), and *Wilcoxon v. Garrett*, No. 375547, 2026 WL 2120818 (Mich. Ct. App. July 22, 2026) is of no help because those cases are easily distinguishable from the facts in this case. In *Berry*, a mandamus action, the Michigan Court of Appeals recognized that a county clerk may not certify to the board of election commissioners a ballot containing two *local* candidates whose affidavits of identity had facial disqualifications under M.C.L. § 168.558(4). *Berry*, 890 N.W.2d at 886–87. The candidates' affidavits of identity in *Berry* were filed with the local county clerk, not the Secretary of State, and did not contain, *on their face*, the "precinct where registered" to vote, as required by M.C.L. § 168.558(2). *Id.* The

affidavits therefore were facially defective and the Michigan court of appeals stated that because the defendants "failed to perform their clear legal duty under § 558(4), they now have a legal duty to 'correct' such errors as may be found in the resulting, improper ballots." *Id.* at 887. *Berry* thus did not involve candidates for a statewide election, who must file their affidavits of identity with the Secretary of State, or allegations of improper or incomplete campaign finance disclosures, requiring a fact-intensive inquiry, as in this case.

The court in *Wilcoxon* addressed the duties of a county clerk acting as a filing official for a candidate seeking office in a single county. *Wilcoxon*, 2026 WL 2120818, at *1. The county clerk, *acting as the filing official* for the local candidate, disqualified the plaintiff from the ballot because she owed money for late filing fees and fines for her earlier campaigns, and the court of appeals affirmed the trial court's ruling that the county officials properly disqualified the plaintiff because of her past-due filing fees. *Id.* at *4–5. *Wilcoxon* thus did not involve a candidate for a statewide election, who must file their affidavits of identity with the Secretary of State, or allegations against an election commission, as in this case.

Here, the State Bureau of Elections reviewed Savit's and Gilchrist's campaign-finance records maintained by the Secretary of State and the relevant county filing officials and determined that no reports or fees were outstanding when the affidavits were signed. Adam Fracassi

Affidavit ("Fracassi Aff.") ¶¶ 10–18, ECF No. 44-5. At oral argument, Davis argued that he was raising a "facial violation" because he had a pending challenge to Savit's and Gilchrist's affidavits of identity before the Secretary of State, which had not yet been resolved, so the WCEC could not find those candidates were "properly certified" with the challenges pending. However, this argument fails because such a complaint requires much more than a "facial" review. WCEC would be required to actually do an investigation into Davis's alleged campaign-finance violations to make a certification decision, which is not a "facial" review of the kind that occurred in *Berry* or *Killeen*. *See also Davis*, 28 N.W.3d at 361 (affirming circuit court's rejection of plaintiff's request that the WCEC determine whether the candidate was properly certified, in the event the Secretary of State did not do so, because "the Commission had no such authority"). To the extent Davis was effectively asking the WCEC to second-guess the Secretary of State's determination and investigate and adjudicate alleged campaign finance violations, the MCFA establishes an exclusive administrative process for complaints, investigations, hearings, and civil penalties for such allegations and provides that "there is no private right of action, either in law or in equity, under this act." M.C.L. § 169.215(5)–(12), (17).

Davis therefore has failed to demonstrate a substantial likelihood of success on his due process claims in Count VIII of his FAC.

### 3. "Class of one" equal protection claim (Count IX)

In Count IX of his FAC, Davis alleges a "class of one" Equal Protection claim. FAC ¶¶ 330–57, ECF No. 20. He pleads that when he was denied the opportunity to be added to the agenda as a speaker at the September 8, 2026 WCEC meeting, he was "treated differently from other similarly situated individuals who petitioned the Defendant [WCEC] challenging if a candidate was 'properly certified' by a filing official prior to the Defendant [WCEC] voting to authorize the printing of the ballot for a particular election." *Id.* ¶ 342.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Board of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Here, Davis expressly relies on that third argument and asserts an equal protection claim against the WCEC based on a "class-of-one" theory. FAC Count IX, ECF No. 30. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

To assert a cognizable class-of-one equal protection claim, a plaintiff "must plead and prove that they were 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Rapp v. Dutcher*, 557 F. App'x 444, 449 (6th Cir. 2014) (quoting *Willowbrook, supra*). "[A] comparator must

be 'similarly situated in all relevant respects.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012) (citation omitted). With respect to the second element, a plaintiff can establish a lack of rational basis by either "(1) 'negat[ing] every conceivable basis which might support the government action or [(2)] demonstrat[ing] that the challenged government action was motivated by animus or ill-will.'" *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)). Davis fails to show a substantial likelihood of success on this claim.

In support of his class-of-one equal protection claim, Davis alleges that he requested to be placed on the agenda at the September 8, 2026 WCEC meeting to challenge whether Defendants Savit and Gilchrist were "properly certified," but his request was refused, and that he was treated differently than other similarly situated individuals who petitioned the WCEC challenging if a candidate was "properly certified." ECF No. 30-1, PageID.567. Davis alleges in his FAC an example from 2024 where two Wayne County Probate Court judicial candidates petitioned the WCEC concerning the "proper certification" of another Wayne County Probate Court candidate prior to the WCEC authorizing the printing of ballots. ECF No. 30-1, PageID.568–70. The judicial candidates were placed on the agenda to be heard and the WCEC subsequently determined that the other judicial candidate was not properly certified and removed her name from the ballot as a candidate for Judge of the Wayne County Probate Court. *Id.* What is not clear, from

the example given, is whether the challenge to the certification of the judicial candidate was a facial challenge or otherwise.

Nonetheless, this example fails to support Davis's class-of-one equal protection claim because the comparison is not valid. There are no allegations as to the basis for the challenge to the judicial candidate's certification, and that it was based on a fact-intensive inquiry into campaign finance records, as in this case. In addition, the Wayne County Probate Court position does not involve a statewide office that includes more than one county, as do the offices of State Attorney General and Secretary of State at issue here. Savit and Gilchrist were required to file affidavits of identity with the Secretary of State, and the Secretary of State is the filing official responsible for reviewing and investigating those documents. Mich. Admin. Code R. 168.1(c), 168.2(3)–(4). Judicial candidates for probate courts, on the other hand, file affidavits and additional documents with their respective county clerk's office, and the county clerk, as the filing official, is responsible for reviewing and investigating those documents. *See* M.C.L. §§ 168.433, 168.433a.[2] Davis's

---

[2] At the hearing, Davis contended that probate court judges file affidavits of identity with the Secretary of State. This is not true for the Wayne County Probate Court position at issue here. Most counties in Michigan, like Wayne County, have their own individual probate court, and candidates for such positions file nominating petitions or affidavits with the county clerk. M.C.L. §§ 168.433, 168.433a. However, a small number of rural counties are combined into multi-county probate districts. Candidates for such multi-county probate court district positions are required to file the required documents with the Secretary

alleged "comparators" therefore are not at all similarly situated to Savit and Gilchrist in this case.

Davis otherwise has failed to identify any other challenger whose campaign-finance objections to a statewide candidate were adjudicated by the WCEC at a ballot-approval meeting. Davis therefore fails to establish a substantial likelihood of success on his equal protection claim. "[A] finding that there is no likelihood of success on the merits is usually fatal[.]" *Gonzales*, 225 F.3d at 625. Davis's motion therefore will be denied.

**B. Irreparable Harm**

"The second factor ... asks whether the movant is likely to suffer irreparable harm in the absence of the injunction." *Univ. of Cincinnati*, 872 F.3d at 407. Showing irreparable harm is "indispensable" and [i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 885 (6th Cir. 2025) (quoting *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019)).

Davis argues in his motions only that he has suffered irreparable injury "because [his] procedural due process and equal protection constitutional rights have been implicated and violated by Defendant

---

of State. *See id.*; *see also Oakland Cnty. v. Michigan*, 566 N.W.2d 616, 620 n. 8 (Mich. 1997) (Michigan law "allows less populous counties to join together to form a probate district").

[WCEC].” ECF No. 29-1, PageID.494; *see also* ECF No. 30-1, PageID.571. While it is true that “when reviewing a motion for preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated,” *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001), as discussed above, this Court does not find that Davis has established a substantial likelihood of success on his claims that his constitutional rights are being threatened or impaired. Davis therefore has failed to demonstrate that he will suffer irreparable injury absent an injunction. While no one factor is dispositive on a motion for preliminary injunction or TRO, the absence of irreparable injury is dispositive. *EOG Res.*, 134 F.4th at 885. Davis’s motion therefore will be denied.

**C. Substantial Harm to Others and the Public Interest**

“The third factor [the Court] must consider is whether the issuance of the injunction would cause substantial harm to others.” *Handel’s Enters., Inc.*, 765 F. App’x at 125. The fourth factor the Court must consider is “whether the public interest would be served by the issuance of the injunction.” *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 551 (citation omitted). Courts frequently consider these two factors together. *See, e.g., Bonnell*, 241 F.3d at 826.

Davis again argues primarily that he has established a substantial likelihood of success on his constitutional claims and that no harm to others arises from stopping unconstitutional conduct. ECF No. 29-1,

PageID.494–95; ECF No. 30-1, PageID.571–72. As discussed above, the Court rejects finding a substantial likelihood of success on both constitutional violation arguments. Davis further contends that it is in the public interest to prevent a violation of constitutional rights and to enforce the state's laws. *Id.*

WCEC and the MDP Defendants respond that the balance of harms and public interest strongly weigh against granting Davis the extraordinary relief he seeks, ECF Nos. 42, PageID.929–30; ECF No. 44, PageID.1074–78, and the Court agrees. The Defendants contend that granting the TRO, without any determination that either candidate is disqualified, would cause an immense burden on Wayne County and local election officials, as well as the voters themselves because the ballots for the November election have already been approved by WCEC and the Wayne County Clerk's office has already delivered the ballots to local clerks who have in turn already delivered those ballots to absentee voters. *Id.* In addition, the election is only weeks away, some absentee voters have already voted, and there is a substantial risk that updated ballots would not be ready in time for the election. *Id.* Finally, as this Court previously recognized in this case, such election-law issues "are best addressed by state–not federal—courts." *Davis v. Benson*, No. 26-CV-13454, 2026 WL 2807106, at *6 (E.D. Mich. Sept. 18, 2026). The public interest is furthered by allowing the November election to be

administered according to the duly enacted and promulgated laws and rules and is not served by granting Davis's motions.

## IV. CONCLUSION

Accordingly, because Davis has not shown any likelihood of success on his claim, or that he is likely to suffer an irreparable injury absent a preliminary injunction, and has not shown that the other preliminary injunction factors weigh in his favor, he is not entitled to the extraordinary remedy of a TRO or preliminary injunction.

For the reasons set out in detail above, Davis's emergency motions for TRO or preliminary injunction, ECF Nos. 29, 30, therefore are **DENIED**.

Davis's emergency motion to supplement the record, ECF No. 51, is **GRANTED**. The Court has considered the documents and audio recording included in the motion.

**IT IS SO ORDERED.**

Dated: October 26, 2026

/s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE