# STATE OF MICHIGAN

# COURT OF CLAIMS

MICHELLE McQUEER, individually and in her capacity as Bridgwater Township Clerk,

Plaintiff,

and

REPUBLICAN NATIONAL COMMITTEE and MICHIGAN REPUBLICAN PARTY,

Intervening Plaintiffs,

v

JOCELYN BENSON, in her official capacity as Michigan Secretary of State, JONATHAN BRATER, in his Official Capacity as Director of Elections, and MICHIGAN DEPARTMENT OF STATE,

Defendants.

_____________________________________ /

Case No. 26-000172-MZ

Hon. Michael J. Riordan

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY DISPOSITION, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AND THE INTERVENORS' MOTION FOR SUMMARY DISPOSITION, AND GRANTING PLAINTIFF AND THE INTERVENORS' REQUEST FOR A PERMANENT INJUNCTION

On September 22, 2026, this Court entered an Opinion and Order denying the parties' cross-motions for summary disposition. The Court rejected the bid of defendants—Secretary of State (SOS) Jocelyn Benson, Director of the Bureau of Elections (BOE) Jonathan Brater, and Michigan Department of State (MDOS)—to dismiss this matter based on plaintiff's alleged failure to exhaust her administrative remedies, defendants' incorrect characterization of plaintiff Michelle

McQueer's claim as raising a forbidden cause of action under Title III of the Help America Vote Act (HAVA), and laches. The Court declined to address plaintiff's motion on the merits at that time because defendants claimed to be unable to argue their position fully while certain HAVA administrative proceedings and plaintiff's two prior declaratory ruling requests raising similar legal issues were pending. Those proceedings have resolved, and the parties have filed additional briefing on their competing motions under MCR 2.116(C)(10). The Court also issued a temporary restraining order (TRO) to preserve the status quo pending resolution of this matter. The Court subsequently granted the motion of the Republican National Committee (RNC) and the Michigan Republican Party (MRP) to intervene as plaintiffs. The intervenors filed a third-party complaint and the Court thereafter extended its TRO to all voting precincts.

The Court now GRANTS defendants' motion for summary disposition of plaintiff's claim that Mich Admin Code, Rule 168.48 is inconsistent with and preempted by federal law and DENIES plaintiff and intervenors' motion in this regard. The Court DENIES defendants' motion for summary disposition and GRANTS summary disposition in favor of plaintiff and the intervenors on the claim that Rule 168.48 violates MCL 168.811 and is therefore invalid. Consistent with this judgment, the Court GRANTS plaintiff and the intervenors' motion for a permanent injunction requiring the preservation of electronic pollbooks (EPBs) and prohibiting the enforcement of Rule 168.48.

## I. BACKGROUND

The Court summarized the factual, legal, and procedural background of this case in great detail in the September 22, 2026 Opinion and Order and will not repeat that analysis here. The questions before the Court are whether Mich Admin Code, Rule 168.48 conflicts with MCL

168.811 of the Michigan Election Law (MEL), MCL 168.1 *et seq*., and Const 1963, art 2, § 4(1)(*l*), and/or 52 USC 20701 and 20702 of the HAVA chapter of the federal Civil Rights Act (CRA),[1] or alternatively whether Rule 168.48 was not promulgated in conformance with the Administrative Procedures Act (APA), MCL 24.201 *et seq*.

At issue are the sections of these legal authorities governing the retention of documents and information from elections for federal offices:

- Rule 168.48 provides that local clerks "must" delete "from all devices by the seventh day following the final canvass and certification of the election" "the [EPB] software and associated files" absent limited exceptions that do not apply in this action.
- MCL 168.811 of the MEL requires the retention for 22 months of "[a]ll election returns, including poll lists, statements, tally sheets, absent voters' return envelopes . . ., absent voters' records . . ., and other returns made by the election inspectors of the several precincts" as well as "[a]ll ballots containing a federal office, and all presidential primary ballot selection forms."
- Const 1963, art 2, § 4(1)(*l*) provides that "[e]very citizen of the United States who is an elector qualified to vote in Michigan shall have" the right to have election results audited.

[1] These provisions of the HAVA of 2002, Pub L 107–252, Title III, § 302, 116 Stat. 1706 (originally codified at 42 USC 15301 *et seq*.), were originally located at 42 USC 1974 and 1974a, before being transferred to a chapter of the CRA.

- 52 USC 20701 requires election officials to "retain and preserve" for 22 months after any election for a federal office "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." This provision also requires election officials to deliver to a designated custodian "such records and papers" when required by law and then "the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian."
- 52 USC 20702 makes it a criminal offense to willfully steal, destroy, conceal, mutilate, or alter such records and papers.

As noted in the prior Opinion and Order, Director Brater released his final determination in the HAVA review proceedings on August 31, 2026. That decision did not resolve any question presented in this case. On September 30, 2026, MDOS issued a declaratory ruling answering the questions raised by plaintiff and other local clerks and deputy clerks in the October 22, 2025 and July 6, 2026 declaratory ruling requests.

## A. THE DECLARATORY RULING

In the declaratory ruling, MDOS provided a detailed summary of the operation of the EPB. On the eve of Election Day, local clerks "download the EPB package" from the qualified voter file (QVF) maintained by MDOS onto an encrypted flash drive. The EPB package then is downloaded onto one laptop per precinct for use on Election Day. The EPB Package is comprised of "the EPB software and a data file that includes the list of registered voters for each precinct, including any relevant status indicators for each voter (for example, whether the voter has already returned an absentee ballot)." MDOS describes the information transferred from the QVF to the EPB as "essentially a 'snap shot' of the QVF for each precinct."

On Election Day, voters first complete a paper application to vote and then are checked in by election inspectors using the EPB. The inspector "enters the voter's information into the EPB along with relevant information about the voter, including that the voter has been issued a ballot and any remarks or other information (such as provisional ballot information)." Each precinct also has a paper printout of the EPB in the event of technical difficulties.

At the close of Election Day, election inspectors save to the encrypted flash drive "a file drive that contains voting history," as well as three reports in PDF format: ballot summary, list of voters, and remarks. Those reports are also printed and saved in paper form. The inspectors deliver the day's "paper applications to vote" and the encrypted flash drive in a sealed envelope to the local clerk. Pursuant to Mich Admin Code, R 168.47, within seven days of the election, the local clerk uploads to the QVF from the flash drive: the list of voters, provisional ballot information, and a log of activity on the EPB. Within seven days of certification of the election, the local clerk deletes the information from the laptop and the flash drive pursuant to Rule 168.48.

As further explained in the declaratory ruling:

> In total, the following information for each voter and for EPB activity in general is retained after the clerk copy of EPB software and associated files are deleted:
>
> - A physical, paper application to vote completed by each voter
> - A physical, paper printout of the list of voters, including all voters issued a ballot and all remarks entered into the pollbook by election inspectors
> - An electronic list of voters
> - Electronic voter history, which is added to the QVF from the list of voters
> - Records of provisional ballots
> - An electronic log of activity on the EPB

MDOS ruled in its declaratory ruling that Rule 168.48 is consistent with MCL 168.811. MDOS declared that MCL 168.811 requires the preservation of "all election returns, 'including *poll lists, statements*, tally sheets,' " certain absent voter return envelopes and records, " '*and other returns made by the election inspectors* of the several precincts.' " (Emphasis in ruling.) MDOS noted that "poll lists" exist in several forms: "a completed paper application to vote for each voter"; "a paper pollbook that is printed and includes the list of voters"; and "the EPB data uploaded to QVF" which "includes a list of voters, which is used to update voter history in QVF." MDOS opined that the terms "statements" and "returns" apply to results rather than to voters. If it did apply in this matter, however, MDOS ruled that "statements" would include "election inspector remarks, which are on the paper pollbook" and possibly "provisional ballot information," which "is uploaded to and stored in the QVF."

MDOS continued that the law permits the retention of public records in digital form and "the reproduction of a record in a different format for retention, including by 'data transfer,' 'digital migration,' or '[p]rinting.' " In other words, "[t]he law does not require government agencies to retain a public record in multiple formats and does not generally specify a format in which records must be preserved." For example, "MCL 168.811 does not expressly refer to the retention of electronic election records." MDOS concluded:

> Consistent with these laws and the state's approved retention schedule, the EPB data is either printed or transferred via upload from the encrypted flash drives to the QVF for purposes of retention. All EPB data or information that constitutes a public record is preserved as required in MCL 168.811 either electronically or in printed form (or both).

MDOS explained its conclusion that Rule 168.48 is consistent with 52 USC 20701. 52 USC 20701 "requires retaining and preserving 'all election records and papers which come into the possession of an election official relating to any application . . . or other act requisite to voting

in such election.' " MDOS described that the applications referred to in the federal statute come in "multiple formats": the paper application to vote completed by each voter, the paper pollbook that includes the list of voters, and the uploaded EPB data which includes a list of voters that is used to update voter history in the QVF." The "acts requisite to voting" additionally include provisional ballot information that is uploaded to and stored in the QVF. MDOS was aware of no other information in the EPB that qualified as an application or other act requisite to voting and noted that the parties seeking the declaratory ruling suggested no other materials that would.

While 52 USC 20701 requires the retention and preservation of records and papers, it does not dictate the form those materials are saved in, nor does it require retention in multiple formats, MDOS concluded. The data that must be retained is kept, "either in paper format or by uploading the data to QVF (or both)." Pursuant to Rule 168.48, election inspectors print those reports required to be retained from the EPB and include them in the physical pollbook. Pursuant to Rule 168.47, the voter history and other required files are uploaded from the EPB to the QVF. Following these procedures, MDOS found, "all record information that is deleted from the devices under Rule 168.48 has already been retained and preserved either in a paper format or in the QVF and the deleted information is simply a copy of the information that is saved (more securely) elsewhere." By the time the material is deleted, it is "extra" and no longer needed.

MDOS continued that the declaratory ruling requests could be seen as implicitly arguing that even if local clerks print or upload the required reports, they are also required by federal law to keep their local copy. But, MDOS noted, 52 USC 20701 expressly states that local clerks may deliver the records to another custodian and then "the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian." When the local clerk uploads the EPB to the QVF, retention responsibility is transferred to MDOS. "The county clerk retains the reports

that are printed from the EPB and placed in the physical pollbook and is the custodian responsible for their retention. The [SOS] is the custodian responsible for the uploaded electronic data."

MDOS also opined that the declaratory ruling request could be interpreted as implicitly arguing that the EPB software and the encrypted flash drive and its contents are themselves "records" that must be "retained and preserved in the exact state in which they were used on Election Day." MDOS found this to be "a fundamental misunderstanding of the difference between election software and equipment on the one hand, and election records on the other. Software and election equipment may *contain*, but are not *themselves*, records under the ambit of section 20701." (Emphasis in ruling.)

MDOS then relied on the recent federal court decision in *United States v Benson*, 819 F Supp 3d 753 (WD Mich, 2026) (*Benson I*), aff'd 179 F4th 470 (CA 6, 2026) (*Benson II*), for the proposition that election officials need only retain election-related materials that come into their possession, not records and other materials they *create*. The federal matter pertained to the QVF. MDOS reasoned that although the QVF may contain records and be considered a record in some contexts, "it is not a record that comes into the possession of the state relating to registration" as contemplated in 52 USC 20701, "because it is a software program." Similarly, MDOS found, "the EPB software and associated files are programs that are created by the state and used by clerks and election inspectors to administer elections" but the "fact that the EPB is used to administer voting on Election Day does not in and of itself render the entirety of the EPB program a record to be retained and preserved under" 52 USC 20701. "Rather, only those records on the EPB that come into the possession of election officials and relate to applications or acts requisite to voting are records covered by" the federal statute. The statute "requires retention of encrypted flash drive contents (in some form) only to the extent they are records or papers that come into the election

official's possession. If they are, they must be retained or preserved (or transferred for retention and preservation as required by law). If they are not, they need not be."

MDOS also relied upon the longstanding and widespread nature of this practice:

> Michigan's current EPB retention practice has spanned not only multiple Michigan [SOS] administrations but multiple federal administrations.
>
> Even more pertinent, the longstanding practice of storing data externally, deleting the copy of the data remaining on the equipment, and then re-using the equipment is not limited to EPBs and is not limited to Michigan. For years, Michigan and virtually every election jurisdiction in the country has used electronic voting equipment to tabulate ballots. In order to function, tabulators rely upon removable drives (similar to encrypted flash drives used in the EPB). These drives contain the programming for a specific election and ballot style, and on Election Day, also store the electronic copies of the election results (including cast vote records). After each election, data from these drives is uploaded to an external source for retention and then the copies of the data on these drives are deleted, so that the drives can be used for future elections. This practice is specifically authorized by the Voluntary Voting System Guidelines (VVSG), and has been for more than 20 years. . . .
>
> Given this longstanding guidance, it is overwhelmingly unlikely that the practice of using a removable media device to upload data to an external source for retention for the 22-month retention period, deleting the copy of the data on the removable media device, and then re-using the removable media for future elections violates the record retention requirements of [52 USC 20701]. The VVSG is approved by the Election Assistance Commission, a bipartisan federal agency that coordinates with the DOJ and other federal agencies. It is equally implausible that voting equipment used nationwide to administer federal elections for more than two decades would be designed to be used in a way to follow a practice that violates federal law.
>
> The state's EPB retention practice mirrors tabulator data practice almost exactly: a removable drive containing software/programming and data is used to temporarily store the electronic data when it is removed from the operating device (laptop computer or tabulator), the electronic data is uploaded to an external source for retention, and the removable device is then deleted and re-used for future elections. The state's practice falls well within federal requirements.

Finally, MDOS noted that it "is a practical necessity" for the data to be wiped from electronic equipment and stored separately so that equipment can be reused from election to

election. If it is deemed that an encrypted flash drive and its contents must be retained, it could be said that the laptop and even the tabulation machines must be retained after an election, far exceeding the financial means of any jurisdiction.

The declaratory ruling wrapped up with a discussion of policy considerations underlying Rule 168.48's deletion requirement.

## B. SUPPLEMENTAL BRIEFS

Following MDOS's issuance of the declaratory ruling, the parties again filed cross-motions for summary disposition. The RNC and MRP also filed a third-party complaint consistent with plaintiff's complaint. The United States has moved to file a statement of interest and the Court GRANTS that motion.

Defendants now seek dismissal pursuant to MCR 2.116(C)(4), contending that because they have entered the declaratory ruling, plaintiff's action has transformed into an administrative appeal of that decision. MCL 24.263 states, "A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case." MCL 24.303(1) provides that appeals under the APA are filed in circuit court. As a result, defendants contend the Court of Claims has been divested of jurisdiction.

If this Court retains jurisdiction, defendants contend that it must employ the standard of review applicable to appellate review of administrative decisions. This means the Court's review "is limited to determining whether the ruling was authorized by law and supported by competent, material, and substantial evidence on the whole record." Defendants also urge the Court to accord due deference to MDOS's "administrative expertise" in this area of law.

Ultimately, and consistent with the declaratory ruling, defendants contend that Rule 168.48 is valid and does not conflict with either federal or state law.

Plaintiff, on the other hand, contends that the Activity Log Summary from the QVF reveals that the information uploaded from the EPB to the QVF does not encompass all information from the EPB. Plaintiff also relies on defendants' instructional materials as revealing holes in the EPB data saved to the QVF. Plaintiff cites MCL 24.401(2)(b) as supporting that a copy can stand for the record only if it does not alter the content, context, or structure of a record. Because certain information does not follow the EPB to the QVF and the structure is altered, the QVF cannot stand in for the EPB.

Alternatively, plaintiff contends that defendants did not promulgate Rule 168.48 in conformance with the APA. She notes that the public notice and Regulatory Impact Statement (RIS) connected with the rules under consideration omitted reference to the record retention and deletion provision.

In their third-party complaint, the RNC and MRP raise the same claims as plaintiff. The intervenors, however, seek to prevent the application and enforcement of Rule 168.48 statewide, while plaintiff's request is limited to her township. On October 30, 2026, the Court extended the TRO requiring preservation of EPBs following the November 3, 2026 General Election to all clerks statewide.

In the Statement of Interest attached to its motion, the Office of the United States Attorney for the Western District of Michigan states that it "would not prioritize prosecution under Title III" of the CRA and "would not find deletions pursuant to Rule 168.48 as described in Defendants'

Declaratory Ruling to be an enforcement priority in 2026."[2] The United States expresses concern that the piecemeal EPB system developed in Michigan may not comply with HAVA's requirement that states maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level." 52 USC 21083(a)(1)(A). However, that is not a question placed before the Court by the parties to this suit and this Court will not address it.

## II. APPLICABLE LAW

Plaintiff and the intervening plaintiffs seek a declaratory judgment that Rule 168.48 is invalid because it is preempted by 52 USC 20701 and conflicts with MCL 168.811 and thus it was not in defendants' authority to promulgate this rule. In the alternative, they seek a declaratory judgment that the Rule is invalid because it was not promulgated in compliance with the APA.

MCR 2.605 governs a trial court's power to enter a declaratory judgment. The court rule provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). See also *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017). The language in this rule is permissive, and the decision whether to grant declaratory relief is within the Court's sound discretion. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*,

[2] This nonbinding statement offers little comfort, especially to plaintiff who resides within the jurisdiction of the United States Attorney's Office for the Eastern District of Michigan. Additionally, the statement is not binding on the United States Department of Justice Civil Rights Division, Voting Rights Section.

270 Mich App 110, 126; 715 NW2d 398 (2006). An actual controversy exists "when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Shavers v Attorney General*, 402 Mich 554, 588-589; 267 NW2d 72 (1978).

Plaintiff and the intervenors also seek a permanent injunction preventing the enforcement of Rule 168.48. An injunction is an "extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 613-614; 821 NW2d 896 (2012) (quotation marks and citation omitted); see also *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). The Court of Appeals has outlined various factors relevant to a decision to enter a permanent injunction, including:

> (a) the nature of the interest to be protected, (b) the relative adequacy to the plaintiff of injunction and of other remedies, (c) any unreasonable delay by the plaintiff in bringing suit, (d) any related misconduct on the part of the plaintiff, (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied, (f) the interests of third persons and of the public, and (g) the practicability of framing and enforcing the order or judgment. [*Janet Travis, Inc*, 306 Mich App at 274 (quotation marks and citations omitted).]

The Court must "balance the benefit of an injunction to a requesting plaintiff against the damage and inconvenience to the defendant, and will grant an injunction if doing so is most consistent with justice and equity." *Id*. at 274-275.

The case before the Court involves the proper interpretation of state and federal statutes, as well as the consideration of whether an administrative rule conflicts with those statutes. MDOS analyzed both considerations in its declaratory ruling. "An administrative interpretation of a state statute by those charged with its execution is entitled to respectful consideration, but such an administrative interpretation is not controlling and may not overcome a statute's plain meaning."

*In re Rovas Complaint*, 482 Mich 90, 103, 117-118; 754 NW2d 259 (2008). The United States Supreme Court more strictly held in *Loper Bright Enterprises v Raimondo*, 603 US 369, 392-393; 144 S Ct 2244; 219 L Ed 2d 832 (2024), that under the federal Administrative Procedures Act, the judicial branch retains the sole constitutional and statutory authority to interpret the Constitution and statutes, and no deference is owed to an agency's interpretation of those provisions. Accordingly, this Court must interpret the statutes in question on a blank slate.

The Michigan Court of Appeals outlined the principles of statutory interpretation in *Le Gassick v Univ of Mich Bd of Regents*, 330 Mich App 487, 495-496; 948 NW2d 452 (2019):

> The primary goal of statutory interpretation is to give effect to the intent of the Legislature. The most reliable evidence of legislative intent is the plain language of the statute. If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. The court's interpretation of a statute must give effect to every word, phrase, and clause. Further, an interpretation that would render any part of the statute surplusage or nugatory must be avoided. Common words and phrases are given their plain meaning as determined by the context in which the words are used, and a dictionary may be consulted to ascertain the meaning of an undefined word or phrase. In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used. [Quotation marks and citations omitted.]

Plaintiff seeks summary disposition in her favor under MCR 2.116(C)(10). Defendants seek summary disposition pursuant to MCR 2.116(C)(4) and (C)(10). Summary disposition must be granted under subrule (C)(4) when the court lacks subject matter jurisdiction over an action. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 714; 909 NW2d 890 (2017). The parties may support or oppose a (C)(4) motion with affidavits, depositions, admissions, or other documentary evidence. *Id.*, citing MCR 2.116(G)(2). "[T]he court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter

of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact" on the issue of jurisdiction. *Id.*

"A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis in original). The Court must consider all the evidence presented by the parties in the light most favorable to the opposing party and dismiss the action if there are no genuine issues of material fact for trial. *Id.* "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks and citation omitted).

## III. JURISDICTION

As noted, defendants contend that MDOS's issuance of the declaratory ruling transformed this case into an appeal from an administrative decision, divesting this Court of jurisdiction.

The circuit courts of this State have general jurisdiction over almost all legal actions. Const 1963, art 6, § 13 grants the circuit courts "original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as otherwise provided by law; . . . and jurisdiction of other cases and matters as provided by rules of the supreme court." MCL 600.605 of the Revised Judicature Act grants circuit courts "original jurisdiction to hear and determine all civil claims and remedies . . . ." MCL 600.631 governs circuit court jurisdiction over appeals from agency decisions:

> An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction

> with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court.

One exception to circuit court jurisdiction is where a statute grants exclusive jurisdiction to another court. MCL 600.605. One such exception comes from the grant of jurisdiction to the Court of Claims. MCL 600.6419(1) of the Court of Claims Act defines the jurisdiction of the statutorily created Court of Claims, in relevant part, as follows:

> Except as provided in [MCL 600.6421 and MCL 600.6440], the jurisdiction of the court of claims, as conferred upon it by this chapter, is exclusive. All actions initiated in the court of claims shall be filed in the court of appeals. . . . Except as otherwise provided in this section, the court has the following power and jurisdiction:
>
> (a) To hear and determine any claim or demand, statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief or any demand for an extraordinary writ against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court. [MCL 600.6419(1)(a).]

MCL 600.6419(5) provides an exception to the Court of Claims' jurisdiction: "This chapter does not deprive the circuit court of exclusive jurisdiction over appeals from the district court and administrative agencies as authorized by law."

This case is not an appeal from an administrative ruling; it is an original and independent action seeking a declaration of rights and duties under state law. Plaintiff filed suit on August 12, 2026, in part, because MDOS had not acted on her requests for a declaratory ruling. Defendants avoided making any substantive arguments in this case for seven weeks because they did not want to make inconsistent statements. The Court granted defendants that leeway. MDOS finally issued the long-anticipated declaratory ruling on September 30, 2026. Only then did defendants make a substantive motion for summary disposition on the merits in the current matter. Although defendants' arguments in this case are consistent with MDOS's declaratory ruling, this Court's

review began independently and will continue independently from the declaratory ruling process. The Court will independently assess whether Rule 168.48 conflicts with federal or state law without deference to MDOS's declaratory ruling. *Loper Bright Enterprises*, 603 US at 392-393; *Rovas Complaint*, 482 Mich at 103, 117-118.

Accordingly, the Court DENIES defendants' motion for summary disposition pursuant to MCR 2.116(C)(4).

IV. DEFENDANTS' MOTION TO DISMISS INTERVENORS' COMPLAINT

Defendants seek dismissal of the third-party complaint filed by the RNC and MRP on several grounds that do not invoke the merits of the case.

A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

First, defendants contend that the intervenors were required to exhaust their administrative remedies separate from plaintiff before filing suit. Because intervenors did not request a declaratory ruling from defendants, defendants contend that their third-party complaint is premature. The Court permitted intervenors to participate in this action on October 5, 2026. By that time, defendants had already issued a declaratory ruling regarding the validity of Rule 168.48.

Requiring a plaintiff to exhaust its administrative remedies serves several purposes:

> "(1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary." [*Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 52-53; 620

> NW2d 546 (2000), quoting *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 610; 255 NW2d 702 (1977).]

Here, administrative proceedings have already occurred and defendants reached a decision. Requiring the intervenors to file their own request for a declaratory ruling asking the same questions presented by plaintiff would be an exercise in futility and would not further the purposes of the exhaustion doctrine. When it is clear that resort to an administrative agency would be "an exercise in futility and nothing more than a formal step on the way to the courthouse," a court may excuse the exhaustion of administrative remedies. *Manor House Apartments v City of Warren*, 204 Mich App 603, 605; 516 NW2d 530 (1994) (emphasis, quotation marks and citations omitted). The Court finds that the futility exception applies in this case.

B. STANDING

Defendants next contend that this Court should summarily dismiss the intervenors' third-party complaint because they lack standing to seek a declaratory judgment. To secure a declaratory judgment, there must be an actual controversy. MCR 2.605(A)(1). "An actual controversy exists when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Van Buren Charter Twp*, 319 Mich App at 545-546. The retention of election records such as the EPB does not impact the intervenors in the same way as plaintiff, a local election official who requires guidance on how to perform her duties legally. But this does not mean that intervenors lack an interest in determining the validity of Rule 168.48. As the national and state arms of a major political party, intervenors commonly play a role in seeking election audits and raising election challenges. The retention of election records is a vital step in pursuing such audits and challenges. Accordingly, intervenors have standing to seek a declaratory judgment in this action.

## C. LACHES

Defendants also contend that intervenors' claims are barred by the doctrine of laches because they filed their third-party complaint less than 45 days before the November 3, 2026 General Election. MCL 691.1031 provides a rebuttable presumption of laches in cases related to elections when the action is commenced less than 45 days before the election. Here, the Court permitted intervenors first to proceed as amicus on August 25, 2026. The Court granted intervenors' motion to intervene as party plaintiffs on October 2, 2026. Intervenors then filed a third-party complaint consistent with the arguments raised by plaintiff. The only difference is that intervenors seek a statewide injunction for the retention of the EPB. Defendants have not been prejudiced by intervenors raising claims that were already raised in this action. Accordingly, defendants are not entitled to summary disposition on this ground either.

# V. ANALYSIS OF THE MERITS

## A. RULE 168.48 DOES NOT CONFLICT WITH AND IS NOT PREEMPTED BY 52 USC 20701

The Court now turns its attention to the parties' arguments on the merits.

The Supremacy Clause of US Const, art VI, cl 2, provides that the federal Constitution and federal laws are the supreme law of the land. "Federal preemption of state law is grounded in the Supremacy Clause and, relevant to this matter, "invalidates state laws that interfere with, or are contrary to, federal law." *Beek v City of Wyoming*, 495 Mich 1, 10; 846 NW2d 531 (2014) (quotation marks and citations omitted). Plaintiff and the intervenors contend that Rule 168.48 conflicts with 52 USC 20701 and, therefore, is preempted by this federal law.

52 USC 20701 was originally enacted as part of the HAVA at 42 USC 1974, and has since been moved along with related statutes to a chapter of the federal Civil Rights Act. It states:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

52 USC 20701 requires "[e]very officer of election" to "retain and preserve" for 22 months following an election in which candidates for federal office are on the ballot "all records and papers" that "come into his possession" and that "relat[e] to any application, registration, payment of poll tax, or other act requisite to voting in such election." States may pass laws requiring "such records and papers may be delivered to another officer of election" or "deposited" with a state-delegated custodian. The duty to retain and preserve is then transferred: "[T]he duty to retain and preserve any record or paper so deposited shall devolve upon such custodian."

Plaintiff and defendants are election officers who are required to retain and preserve "all records and papers" described in the statute. The EPB clearly is a record. It is a record of activity at the voting precinct on Election Day. However, the EPB does not "come into [the] possession" of an "officer of election" as contemplated by 52 USC 20701. In this regard, the Court finds federal caselaw regarding Michigan's QVF instructional.

The United States District Court for the Western District of Michigan recently ruled, and the United States Court of Appeals for the Sixth Circuit affirmed, that the QVF does not "come into [the] possession of" Michigan election officials. *Benson I*, 819 F Supp 3d 753, aff'd *Benson II*, 179 F4th 470.[3] The question in that case was whether SOS Benson was required to provide upon request from the federal government "not only the names on Michigan's voter rolls, but also the dates of birth, partial social security numbers, and driver's license numbers of every registered voter in the state" information held in Michigan's QVF. *Benson II*, 179 F4th at 474.

The federal District Court agreed with intervening parties that "a voter registration list is not a 'record' that 'c[a]me into [the state's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election' " under 52 USC 20701, and "that this language refers only to documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials." *Benson I*, 819 F Supp 3d at 768. The District Court reasoned that Congress "frequently uses the phrase 'come into possession' to refer to items that a person *obtains* rather than *creates*." *Id.* (emphasis in original). Accordingly, "[i]n order to give effect to the phrase 'come into [their] possession' and prevent it from being surplusage, the Court interprets the phrase as referring to only those documents that state election officials receive from prospective voters." *Id.*

The District Court found that the words following "come into [their] possession" "bolstered" this interpretation. By stating that the statute applied to records and papers " 'relating

[3] While federal court opinions are not binding on this court, nonetheless, the Court finds the reasoning of the U.S. District Court for the Western District of Michigan and the U.S. Sixth Circuit Court of Appeals to be persuasive. See *Abela v General Motor Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

to any application, registration, payment of poll tax, or other act requisite to voting in such election,' " Congress referred "to something that the voter submits or does as part of the registration process." *Id*. at 768-769.

> Here, the meaning of "come into possession" is clarified by the rest of the sentence, which indicates the sorts of records covered by the statute: namely, records that election officials receive, rather than create. This fact supports the conclusion that the provision requires officials to preserve voters' submissions to the State so that the federal government can determine whether the State is improperly rejecting voter registration applications. Such an interpretation makes sense given that when the CRA was passed, the federal government's attempts to protect the voting rights of Black citizens had been frustrated by state officials' destruction of voter registration applications. The CRA responded to that problem by requiring states to preserve records that voters submit to them—not records that states create. [*Id*. at 769 (citation omitted).]

Further supporting this interpretation was that Congress required the release of documents, not information. *Id*.

The District Court then reasoned that 52 USC 20701 also requires preservation of documents subject to disclosure under the statute.

> If the Court were to hold that the voter registration list is disclosable because it contains the same information as the individual voter registration applications, that holding would entail that the voter registration list—and any document produced by a state that contains voter information—must be preserved. But nothing in the CRA's text implies an intent to require states to preserve every election-related record that they create. And if the states can destroy records that they create, then they also have no obligation to disclose them. [*Id*. at 770.]

The Sixth Circuit Court of Appeals affirmed that Michigan's QVF is not subject to 52 USC 20701. The Sixth Circuit defined "come into possession" consistent with the definition of these terms at the time the statute was enacted as "to 'acquire,' 'obtain,' or 'receive.' " *Benson II*, 179 F4th at 478 (citations omitted). The Court further determined that SOS Benson "did not acquire, obtain, or receive the [QVF] from a third party. Instead, Michigan officials created it themselves."

*Id*. at 478-479. The QVF is "an internally generated electronic database," and "not a record acquired from an outside source." *Id*. "An ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained." *Id*.

The Sixth Circuit also noted that 52 USC 20702 permits the government to prosecute anyone who willfully alters any record that must be preserved and retained under 52 USC 20701. Yet, the law requires state officials to continually alter the QVF to keep it up to date. This too demonstrated that the QVF was not subject to 52 USC 20701. *Id*.

Likewise, this Court finds as a matter of law that the EPB, which is taken directly from the QVF, is a record created by state officials, not one that comes into their possession. EPB is not a defined term in the election statutes but it is defined in Mich Admin Code, R 168.41(d) as "computer software that receives information from the [QVF] and is used during elections to process voters and generate reports." The EPB is created by election officials by copying precinct-relevant portions of the QVF, which is also created by election officials, onto a new medium. Just as the QVF is altered regularly by election officials to keep the information up to date, the EPB is altered throughout Election Day as poll workers receive voting applications and disseminate ballots.

Because the EPB does not come into the possession of election officials, and is instead created by those officials, the EPB is not subject to 52 USC 20701's retention mandate. Rule 168.48 does not conflict with, and therefore is not preempted by, 52 USC 20701. Accordingly, the Court GRANTS defendants' motion for summary disposition of plaintiff's and intervenors' claim based on the federal statutes pursuant to MCR 2.116(C)(10), and DENIES plaintiff's motion to the contrary.

B. RULE 168.48 CONFLICTS WITH MCL 168.811

Plaintiffs and intervenors also contend that Rule 168.48 violates MCL 168.811 of the MEL and a Michigan constitutional provision adopted in 2018 and now located at Const 1963, art 2, § 4(1)(*l*), giving qualified electors "[t]he right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections."

As noted, the constitutional right to election audits was not granted until 2018. Michigan Supreme Court Justice DAVID F. VIVIANO stated in his concurrence to the order denying the application for leave in *Bailey v Antrim Co*, 510 Mich 1100; 982 NW2d 175 (2022), that "The precise contours of this new audit right are unclear and have never been addressed by this Court." This remains true.

The Legislature delegated the duty to audit statewide elections to the SOS. MCL 168.31a. The Constitution does not describe the manner in which audits are to be conducted. MCL 168.31a(2) imposes a duty on the SOS to "prescribe the procedures for election audits that include reviewing the documents, ballots, and procedures used during an election." The audits are conducted by the SOS and county clerks. *Id*. The statute provides few parameters for the constitutionally required audit:

> An election audit must include an audit of the results of at least 1 race in each precinct selected for an audit. A statewide election audit must include an audit of the results of at least 1 statewide race or statewide ballot question in a precinct selected for an audit. An audit conducted under this section is not a recount and does not change any certified election results. [*Id*.]

The Legislature has clarified that "[a] recount is not an investigation or an audit of the conduct of the election." MCL 168.861(3).

The United States Election Assistance Commission published a report entitled *Election Audits Across the United States* (October 6, 2021), available at https://www.eac.gov/sites/default/files/bestpractices/Election_Audits_Across_the_United_States.pdf (accessed October 26, 2026). The Commission explains: "Election audits ensure voting systems operate accurately, that election officials comply with regulations or internal policies, and identify and resolve discrepancies in an effort to promote voter confidence in the election administration process." *Id.* at 3.

Plaintiff and the intervenors contend that the retention of election-related materials is key to protecting the right to an election audit. They focus on MCL 168.811 of the MEL, which states:

> All election returns, including poll lists, statements, tally sheets, absent voters' return envelopes bearing the statement required by section 761, absent voters' records required by section 760, and other returns made by the election inspectors of the several precincts must be carefully preserved and may be destroyed after the expiration of 22 months following the primary or election at which the same were used. All applications executed under section 523, all voter registration applications executed by applicants under section 497(3) and (4), and all absent voters' applications must be carefully preserved and may be destroyed after the expiration of 6 years following the primary or election at which those applications were executed. All ballots used at any primary or election, other than ballots containing a federal office, may be destroyed after 30 days following the final determination of the board of canvassers with respect to the primary or election unless a petition for recount has been filed and not completed or unless the destruction of the ballots is stayed by an order of a court. All ballots containing a federal office, and all presidential primary ballot selection forms, may be destroyed after the expiration of 22 months following the primary or election at which those ballots were cast or forms were used.

The second sentence of this statute requires the retention of applications to vote filled out on Election Day, as well as voter registration and absent voter applications for six years. The third sentence requires the retention of all ballots for 30 days after the final determination of the election. The fourth sentence, consistent with 52 USC 20701, requires the retention of ballots including an election for a federal office for 22 months. These sentences clearly do not apply to the EPB.

The first sentence of MCL 168.811 does not describe the items to be retained as clearly as the subsequent sentences. And the parties do not agree on whether the EPB is an "election return[]" as contemplated by the statute.

The phrase "election returns" is not defined in the statute, but the descriptive list following the phrase is led by the word "including." The verb "including" introduces examples, not an exhaustive list. Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 132. "As [our Supreme Court has] stated previously, 'including' is a term of enlargement, not limitation." *NACG Leasing v Dep't of Treasury*, 495 Mich 26, 31; 843 NW2d 891 (2014). Further, "[w]hen used in a statutory definition, the word 'includes' is a term of enlargement, not of limitation. It conveys the conclusion that there are other items includable, though not specifically enumerated." *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 479; 518 NW2d 808 (1994) (quotation marks, citation, and alteration omitted). "Such a definition suggests, if not requires, a construction broad enough to encompass other items not explicitly mentioned." *Id*. Thus, by using the word "including," the Legislature in MCL 168.811 indicates that the general term "election returns" has a broader meaning than the list included within the text of the statute. The Legislature does not require the retention of "election returns" standing alone. Instead, the Legislature requires the retention for 22 months of "election returns, *including* poll lists, statements, tally sheets, absent voters' return envelopes bearing the statement required by section 761, absent voters' records required by section 760, and other returns made by the election inspectors of the several precincts." MCL 168.811 (emphasis added). See e,g., *Fed Land Bank of St Paul v Bismark Lumber Co*, 314 US 95, 100; 62 S Ct 1; 86 L Ed 65 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application

of the general principle."); *Richardson v Nat'l City Bank of Evanston*, 141 F3d 1228, 1232 (CA 7, 1998) (explaining that "include" is a term of "illustration, not limitation").[4]

By including items that do not relate to election results, the Legislature expanded the meaning of "election returns." This expansive meaning indicates that the disputed contents of the EPB may be encompassed by MCL 168.811 as "election returns" even if those contents are not one of the specifically enumerated examples such as "tally sheets."

Regardless, based on the record before it, the Court assumes that defendants only will be required to retain the EPB if it contains poll lists, statements, or other returns made by the election inspectors, i.e., one of the specifically enumerated examples, although the expansive meaning of "election returns" should inform its analysis.

"Poll list" is defined in MCL 168.523b(4), which relates to the establishment of election day voting centers. That provision states, "The collected voter registration receipts under subsection (3) serve as 1 of the required poll lists,[5] and the list of electors issued a ballot in the poll book serves as the second required poll list." The list of electors who are issued a ballot are

---

[4] In further support, "[w]hen interpreting a statute, words grouped in a list should be given related meaning." *Estate of John Swanzy v Kryshak*, 336 Mich App 370, 382; 970 NW2d 407 (2021) (quotation marks and citation omitted). While it is a limiting doctrine of statutory construction, the doctrine of *ejusdem generis* offers further guidance. Under the doctrine of *ejusdem generis*, "a broad term following a series of specific items" must be limited "to include only things of the same kind, class, character, or nature as those specifically enumerated; that is, because the listed items have a commonality, the general term is taken as sharing it." *Id.* at 349-350 (quotation marks and citation omitted). This canon of statutory interpretation also applies "[w]hen a statute uses a general term followed by specific examples included within the general term." *Huggett v Dep't of Nat Resources*, 464 Mich 711, 718; 629 NW2d 915 (2001).

[5] MCL 168.523b(3) requires individuals who register to vote or update their voter registrations on election day to provide their voter registration receipt to the election inspector at the polls.

noted in the EPB as well as the paper poll book at each voting precinct. MCL 168.578, pertaining to primary elections, similarly demonstrates that the EPB contains the same information as a poll list. That statute states that when a registered elector asks for a ballot at the polls, the election inspector must enter that person's "name upon the poll list, and the number of the ballot given to the elector." *Id.*

The Court concludes that the EPB includes an electronic poll list and, in other words, constitutes an election return.[6] When a ballot is provided to a registered elector at the polls, the election inspector enters the ballot number next to the individual's name in the EPB. MCL 168.735(1), which relates to all elections, also states, "At each primary and election, election inspectors shall keep 1 poll book and 1 poll list." The statute then focuses solely on the "poll book," stating: "An election inspector shall enter in the poll book, in the order in which electors are given ballots, the name of each elector who is given a ballot and immediately after the name, on the same line, shall enter the number of the ballot given to the elector."

Reading these statutes comprehensively, the EPB includes a poll list, or at least contains the information required of the poll list. Page 9 of the April 2026 *Election Day Electronic Pollbook: Election Inspector Manual*, which was filed under seal with the Court, describes the three sections that make up the EPB main screen and the information found on each. The third section is a simple three columned table entitled "List of Voters." The first column simply numbers

[6] Absent voter envelopes and applications do not pertain to election results. In any event, the EPB does not contain absent voter envelopes required by MCL 168.761 or absent voter applications required by MCL 168.760, although the EPB would include notations about registered voters who had already participated in absent ballot or early voting. Neither plaintiffs nor the intervenors contend that the EPB contains tally sheets.

the entries beginning at one. The second records the name of the registered elector, and the third lists the ballot number given to that individual. This single section of the EPB main page contains all the information needed for the poll list, meaning the information in the remainder of the EPB goes beyond that required to be kept on a poll list. At the close of Election Day, the election inspector prints a paper List of Voters report from the EPB. That list is included in the paper poll book that is then delivered to the local clerk.

Defendants concede that the EPB arguably contains "statements" that fall into the category of "election returns." In this regard, defendants point to notes included by election inspectors in the EPB throughout Election Day. These notations certainly fall within the general definition of the term "statement," which includes "something stated," "a single declaration or remark," and "a report of facts or opinions." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 1219. The Court's search uncovered no legal definition for the term "statements" in the MEL. MCL 168.806 requires election inspectors to "prepare duplicate statements of the returns showing the whole number of votes cast," which suggests that the "statements" mentioned in MCL 168.811 include memos or letters through which election returns are communicated. However, this reference does not legally limit the definition of "statements" used elsewhere in the MEL. Communicative statements regarding irregularities or issues arising during the election that are included by election inspectors in the EPB, although not "statements of the returns," are statements.

Because the list-of-voters report is printed and included in the paper pollbook that is retained following the election, defendants contend that the poll list from the EPB is retained by the local clerk. They contend that because the list-of-voters report is uploaded to the QVF, along with notations made by the election inspectors within the EPB, these items are also saved in an electronic format by defendants. Plaintiff and intervenors argue that the EPB itself must be retained

to preserve the metadata behind the list of voters and statements in the EPB. This would include information such as the time the information was entered, who entered the information, and whether the information was undone or corrected at some point during the day. In her motion for summary disposition, plaintiff also enumerates information in the EPB, such as status flags for every voter in the precinct, which are not saved in the paper reports or QVF following the upload and deletion of the EPB.

The Court concludes that the poll lists and statements contained in the EPB are electronic documents or records. Modern electronic documents and records are more than the words shown on the screen or on a print-out. An integral part of an electronic record or document is the metadata and other relevant electronic information associated with the record or document.

First, the Court relies on our own Court Rules. MCR 1.109(B) defines "document" as including "a record . . . originally created by an approved electronic means." The Court Rule does not explain what qualifies as "an approved electronic means." However, the EPB is an electronic means created by MDOS. MDOS not only approves of the EPB but requires its use.

The Court next turns to the rules set forth by our Legislature for the retention and preservation of the records an arm of the State creates. Pursuant to MCL 691.1101, a state officer, agency or department may destroy an original record only if it reproduces the record in a manner prescribed by the Records Reproduction Act. MCL 24.401(2)(b) of the Records Reproduction Act permits reproduction by "data transfer," which means "the copying or transmission of electronic information . . . from 1 medium to another medium." The statute limits the propriety of this reproduction method to the copying or transmission of electronic information "that does not alter the content, context, or structure of a record." *Id.*

The EPB does not retain its content, context, or structure when uploaded into the QVF. Instead, information or data from the EPB is incorporated into and overwrites specific information or data in the QVF. As recognized by defendants in their declaratory ruling, after the clerk copy of the EPB is deleted from the encrypted flash drive, an electronic list of voters, the electronic voter history which is added to the QVF from the list of voters, and an electronic log of activity remains. Once incorporated into the larger QVF, the EPB information is no longer in the same structure, and it is placed into a different, broader context. And as noted by plaintiff in her motion for summary disposition, and not adequately disputed by defendants, certain content is not transferred and retained, such as status flags, time voters are checked in on the system, and the identity of the user who made the entry.

Also missing is the background information, or metadata, necessary to complete the document or record. "[M]etadata is an inherent part of an electronic document, and its removal ordinarily requires an affirmative act by the producing party that alters the electronic document." *Williams v Sprint/United Mgmt Co*, 230 FRD 640, 652 (D Kan 2005). The United States Department of Commerce National Institute of Standards and Technology, available at <https://csrc.nist.gov/glossary/term/metadata> (accessed November 1, 2026), defines "metadata" as "[i]nformation describing the characteristics of data including, for example, structural metadata describing data structures (e.g., data format, syntax, and semantics) and descriptive metadata describing data contents (e.g., information security labels)." Federal courts have recognized the importance of metadata, especially for records and documents that are designed to be altered and updated. " 'As a general rule of thumb, the more interactive the application, the more important the metadata is to understanding the application's output.' Thus, while metadata may add little to one's comprehension of a word processing document, it is often critical to understanding a

database application." *Aguilar v Immigration & Customs Enforcement Div*, 255 FRD 350, 353-354 (SD NY 2008), quoting *Williams*, 230 FRD at 647.

The EPB is designed to be altered and updated throughout Election Day. Depending on the precinct, one or more individuals may have access to make and alter entries in the EPB. Defendants cannot dispute that the EPB is an interactive application. Metadata is critical to understanding the EPB and the data within. Retaining the metadata is as crucial as retaining the data itself.

The Court also finds useful a comparison of the right to production of electronic public records as contemplated by the Freedom of Information Act (FOIA). For purposes of the FOIA, "writings include electronic copies and computer tapes" and "[i]f a writing exists in an electronic format, the plaintiff is entitled to an electronic copy." *Ellison v Dep't of State*, 320 Mich App 169, 176; 906 NW2d 221 (2017) (quotation marks and citations omitted). In *City of Warren v Detroit*, 261 Mich App 165; 680 NW2d 57 (2004), the Court of Appeals held that an electronic public record included not just the data and information listed in the record, but also a formula used in a program to generate data.

Ultimately, the EPB is an electronic record or document. To retain the poll lists and statements as required by MCL 168.811, the EPB must be retained with its metadata intact. The data in the EPB does not retain its full content, context, and structure when transferred to the QVF and the metadata is largely if not completely lost. Accordingly, Rule 168.48's requirement that the EPB be deleted by local clerks within seven days of the final certification and canvass of the election is inconsistent with and violates MCL 168.811. "When an administrative rule conflicts with a statute, the statute controls." *Brightmoor Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 161; 975 NW2d 52 (2021). Rule 168.48 is invalid. The Court GRANTS

plaintiff's motion for summary disposition and DENIES defendants' motion for summary disposition in this regard.[7]

## VI. PERMANENT INJUNCTION

Because Rule 168.48 is invalid, the Court now enters a permanent injunction against its enforcement. The parties instead must comply with MCL 168.811 to retain the poll lists and statements in the EPB in the form they currently exist.

In entering this permanent injunction, the Court has considered the factors outlined in *Janet Travis, Inc*, 306 Mich App at 274. Retention of the EPB is required by law and protects the rights of all Michiganders in the event an audit is pursued. There is no other means to ensure the retention of the EPB than for the Court to enjoin the mass deletion of EPBs following the General Election and future elections.

The Court also has balanced the benefit of an injunction against the damage and inconvenience to defendants as required by *Janet Travis, Inc*, 306 Mich App at 274-275. Plaintiff argues that the inconvenience of retaining the encrypted flash drives onto which the EPB is transferred at the close of an election day is, at most, $100 per additional flash drive that must be purchased. Local clerks are already required to maintain various items for up to six years following an election. The addition of small flash drives to that cache will not cause undue inconvenience.

---

[7] Given the Court's determination that Rule 168.48 is invalid because it conflicts with MCL 168.811, any consideration of the propriety of the Rule's promulgation would be dicta. The Court therefore declines to consider this alternative ground for invalidation raised by plaintiff and the intervenors.

Moreover, after 22 months, the local clerks may erase the information on the flash drives and reuse them in the next election.

Defendants contend that the retention of the EPB on the encrypted flash drive is a slippery slope to requiring the retention of the laptops used at a polling precinct or even the vote tabulating machines in the same condition as during the election. Defendants have cited no law under which such an extreme remedy would be required. The Court will not deny plaintiff and the intervenors, and the citizens of this state, the relief to which they are entitled based on such speculation.

The Court acknowledges, however, that elections are not in the control of the Judicial Branch. It would violate the constitutional separation of powers for the Court to dictate the manner in which the EPB is retained following an election. Accordingly, the Court directs the SOS and MDOS, as the elected official and state department constitutionally and statutorily vested with the power to control elections, to consider all relevant details and draft instructions in accordance with the Court's Opinion and Order for local election officials to comply therewith.

## VII. CONCLUSION

Although Rule 168.48's mandate that the EPB be deleted within seven days of the canvass and certification of the election does not conflict with 52 USC 20701, it is inconsistent with MCL 168.811 of the MEL. Accordingly:

1. The Court GRANTS IN PART and DENIES IN PART defendants' motion for summary disposition of plaintiff's complaint and the third-party complaint of the RNC and MRP pursuant to MCR 2.116(C)(10).
2. The Court GRANTS IN PART and DENIES IN PART plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10).

3. The Court GRANTS the motion of plaintiff and the intervenors for a permanent injunction against the enforcement of Mich Admin Code, Rule 168.48.

4. This is a final order resolving all issues in this case.

Date: Nov. 2, 2026

Michael J. Riordan
Judge, Court of Claims